FRIEDMAN DUMAS & SPRINGWATER LLP
CECILY A. DUMAS (S.B. NO. 111449)
150 Spear Street, Suite 1600
San Francisco, CA 94105
Telephone Number: (415) 834-3800
Facsimile Number: (415) 834-1044
Email Address: cdumas@friedumspring.com

ALSTON & BIRD LLP
GRANT T. STEIN
1201 West Peachtree Street
Atlanta, GA 30309
Telephone Number: (404) 881-7000
Facsimile Number: (404) 881-7777
Email Address: grant.stein@alston.com
(admitted *pro hac vice*)

*Attorneys for Dennis J. Connolly in His Capacity as Chapter 11 Trustee for SONICblue Incorporated, et al.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PORTSIDE GROWTH & OPPORTUNITY FUND et al.,<br><br>Appellants,<br><br>vs.<br><br>OFFICIAL COMMITTEE OF UNSECURED CREDITORS et al.,<br><br>Appellees.<br><br>(Appeal from In re SONICblue, Incorporated et al., Bankr. N.D. Cal. (San Jose), No. 03-51775 MM) | Case No. C-07-02553 RMW<br><br>**CHAPTER 11 TRUSTEE'S MOTION TO DISMISS APPEAL**<br><br>[No hearing requested]<br><br>Judge: Hon. Ronald M. Whyte |

TO APPELLANTS PORTSIDE GROWTH & OPPORTUNITY FUND, SMITHFIELD FIDUCIARY LLC, AND CITADEL EQUITY FUND LTD., AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Dennis J. Connolly, the duly-appointed Chapter 11 Trustee in the chapter 11 cases of SONICblue Incorporated and its three operating

subsidiaries, Diamond Multimedia Systems, Inc.; ReplayTV, Inc; and Sensory Science Corporation (collectively, "SONICblue"), does hereby move this Court, pursuant to Rule 8011(a) of the Federal Rules of Bankruptcy Procedure, for an order dismissing the above-captioned appeal for lack of jurisdiction.

This motion is made on the grounds that the appeal does not challenge the substance of the decision below, but only certain factual statements that are unnecessary to the decision. Such statements standing alone are not subject to appellate review.

This motion is based on this Motion, the supporting Memorandum of Points and Authorities, the declaration of Cecily A. Dumas, the record on appeal, and any further evidence or argument the court may consider.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  ISSUE TO BE DECIDED**

The bankruptcy court entered an order disqualifying debtor's counsel and directing the appointment of a Chapter 11 trustee, based primarily on counsel's failure to disclose a conflict of interest with respect to a particular group of creditors. Those creditors have appealed the court's order, but they do not challenge the substance of the court's decision. Rather, they dispute certain factual statements in the order, including statements critical of them and their counsel. Does this court have jurisdiction to review those factual statements, which were not necessary to the bankruptcy court's decision?

**II.  RELEVANT FACTS**

The relevant facts are set forth in the bankruptcy court's Memorandum Decision and Order on Motion to Appoint a Chapter 11 Trustee, Motion to Convert Case, and Motion to Disqualify Pillsbury Winthrop Shaw Pittman LLP and for Disgorgement of Attorneys' Fees, entered on March 26, 2007 [Bankruptcy Court Docket No. 2200] (the "Memorandum Order"), beginning with two pre-bankruptcy events. The first was a joint

venture agreement between SONICblue and VIA Technologies to make use of certain patents SONICblue had cross-licensed from Intel Corporation. The agreement provided for liquidated damages of up to $70 million if the joint venture were ever enjoined from using the cross-license. Memorandum Order at 2. The second event was a 2002 bond issue in the amount of $75 million financed by the three appellants in this case (the "2002 Noteholders"). SONICblue's counsel, Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury"), issued a written opinion to the 2002 Noteholders concerning the notes' enforceability. Memorandum Order at 3–4.

On March 21, 2003, SONICblue filed for bankruptcy, retaining Pillsbury as bankruptcy counsel. Memorandum Order at 4. Four months later, VIA and the joint venture filed proofs of claim for breach of the joint venture agreement. Lengthy settlement negotiations ensued among VIA, the estate, the creditors' committee, Intel, and the 2002 Noteholders. Memorandum Order at 6–7. When a settlement was eventually reached, it included a provision that the allowed claim ($12.5 million) is not and would not be "Senior Indebtedness" under the indenture for the 2002 bond issue in the amount of $75 million (the "2002 Indenture"). Memorandum Order at 8–9.

Around that time, Pillsbury communicated to the 2002 Noteholders the substance of an objection to the claim of the 2002 Noteholders, based on an analysis suggesting that the Noteholders had received an original-issue discount of $43 million. Memorandum Order at 9–10. After learning of this potential objection, counsel for the Noteholders told Pillsbury that they would demand indemnification by Pillsbury for any resulting losses, based on the opinion Pillsbury had given them in connection with the bond issue. Pillsbury transferred responsibility for the objection to counsel for the creditors' committee, but it did not disclose its conflict with the Noteholders to the bankruptcy court. Memorandum Order at 10.

After the court approved the VIA settlement, SONICblue and the creditors' committee jointly filed a plan and disclosure statement. The disclosure statement included both a description of the terms of the VIA settlement and a brief reference to the conflict

1    between Pillsbury and the 2002 Noteholders and Pillsbury's consequent transfer of
2    responsibility for prosecuting the claim objection, but no explanation of the nature of that
3    conflict. Memorandum Order at 11. Following an objection by creditors, the disclosure
4    statement was amended to contain a brief description of the pre-petition written opinion upon
5    which the conflict and transfer were based. It did not mention, however, that the
6    2002 Noteholders themselves were members of the creditors' committee to whom
7    responsibility for objecting to the claim had been transferred. Memorandum Order at 11–12.
8    On March 5, 2007, after the U.S. Trustee moved to disqualify Pillsbury from representing
9    SONICblue, the firm filed a supplemental Bankruptcy Rule 2014 disclosure of its relation to
10   the 2002 Noteholders and their demand for indemnification. It asserted that its failure to file
11   the disclosure earlier was inadvertent. Memorandum Order at 13.

12           The bankruptcy court granted the U.S. Trustee's motion to disqualify Pillsbury
13   and appoint a trustee. The court found that Pillsbury's conflict with the 2002 Noteholders
14   was significant and disabling, and that the failure to disclose the conflict mandated immediate
15   disqualification, even if that failure was inadvertent. Memorandum Order at 14–15. The
16   court also found that appointment of a Chapter 11 trustee was needed to restore creditor
17   confidence in the bankruptcy system and to assure that there would be no lingering taint from
18   Pillsbury's representation. Memorandum Order at 16.

19           The court also considered a motion by SonicBlue Claims, LLC ("SB Claims")
20   to convert the case to Chapter 7, in part to remove the influence of the creditors' committee
21   from the case. Memorandum Order at 16. The court acknowledged an appearance of
22   impropriety by the committee and its counsel. Memorandum Order at 16–18. The court
23   concluded, however, that it was preferable to keep the case in Chapter 11 in order to allow a
24   trustee to be chosen from a nationwide search and with the disclosure protections afforded
25   under Chapter 11. Memorandum Order at 18–19.

26           None of these three decisions—to disqualify Pillsbury; to appoint a Chapter 11
27   trustee; and to keep the case in Chapter 11—has been challenged. The appellants only
28   disagree with the inclusion of certain factual statements in the court's order. The first

statement comes from the first paragraph of the court's factual recitation, in which the court describes the importance of the Intel patents to the VIA joint venture agreement:

> The rights to use Intel's graphics patents were so important that the joint venture agreement included a liquidated damages clause at article 5.6 entitling the joint venture and VIA each to damages of up to $70 million if the joint venture were ever enjoined from using the Intel cross-license.

Memorandum Order at 2. In their "Statement of Issues on Appeal," the appellants characterize this passage as "determining that VIA has a claim … against debtor SonicBlue relating to the loss of use of technology by a joint venture in which VIA is a member," Appellants' Designation of Items To Be Included In the Record On Appeal and Statement of Issues on Appeal [District Court Docket No. 3] ("Appellants' Statement of Issues") at 7, though the order itself does not purport to adjudge any such claim.

        A second set of challenged statements appears in the court's discussion of SB Claims' motion to convert the case to Chapter 7, in which the court describes the role the 2002 Noteholders and their counsel played in negotiating the VIA settlement, particularly its provision that the settled claim would not be "Senior Indebtedness" relative to the 2002 Indenture:

> Because the bondholders appear to have used their position on the committee to insert themselves into the settlement negotiations without revealing a hidden agenda, they may have breached their fiduciary duty to the unsecured creditor body. Whether their motive was simply to save litigation costs for the estate by avoiding future litigation over the priority of VIA's claim, or, instead, to assure a larger return on their individual investments is not known. In fact, as [the 2002 Noteholders' counsel Bruce] Bennett noted, he had never personally appeared in court until March 19, 2007. During the four years of this case, he has operated in the shadows and, until January 23, 2007, it was not generally known to this court or the creditor body that the three senior bondholders were serving on the committee.

Memorandum Order at 17. With respect to this passage, the appellants ask: "Did the Bankruptcy Court make factual or legal errors in describing the role of the Senior Noteholders and their counsel (as well as the role of various other involved professionals) in settlement negotiations and the bankruptcy case?" Appellants' Statement of Issues at 7.

Before filing this appeal, the 2002 Noteholders challenged the inclusion of the above-quoted statements in a "Motion for Clarification, Or In the Alternative, Leave to File a Motion for Reconsideration" [Bankruptcy Court Docket No. 2231] ("Motion for Clarification"). They emphasized that they were not attacking the substance of the court's order: "The Senior Noteholders do not challenge the result reached in the Opinion." Motion for Clarification at 1. They also insisted that the statements were not necessary to the court's decision, and did not even amount to factual findings, though they might be misconstrued as such: "Clarification is necessary to eliminate the chance that certain statements in the Opinion could be misconstrued as deciding factual issues that are not supported by the evidence, that are not necessary to the Court's decision, and that are subject to investigation by the new trustee whom the Court will appoint." Motion for Clarification at 1. They asked the court to remove or revise the statements, or at least clarify that they were not intended as factual determinations.

The bankruptcy court denied the Motion for Clarification on May 4, 2007.[1] The 2002 Noteholders have appealed both the March 26 and the May 4 orders.

### III. ARGUMENT

Under 28 U.S.C. § 158(a), the district court has jurisdiction to review final orders of the bankruptcy court, and discretion to hear appeals from interlocutory orders. The bankruptcy court's March 26 order has both interlocutory and final aspects. *See In re Westwood Shake & Shingle, Inc.*, 941 F.2d 387, 389 (9th Cir. 1992) (decision disqualifying counsel is interlocutory); *In re Martech USA, Inc.*, 188 B.R. 847, 849–50 (9th Cir. BAP 1995) (decision to appoint a trustee is considered final for purposes of appeal). But whether final or interlocutory, none of the bankruptcy court's actual decisions in this case have been

---

[1] Although it denied the Motion for Clarification, the court subsequently explained in open court that it did not consider its rulings to have prejudged any of the issues still subject to investigation. Speaking to counsel for the 2002 Noteholders, the court stated: "I want to make plain that I don't feel that I have predetermined any of the issues that are going to come before us. I want to say that the issues that I ruled on previously arose in a different context. And you'll have since then and will be in the future conducting discovery, so that you will be able to more fully flush out those issues for the future hearings that we'll have." Transcript of June 14, 2007 hearing [Bankruptcy Court Docket No. 2375, Exhibit A to Dumas declaration], at 23–24.

challenged. The appellants take issue only with certain factual statements in the court's opinion. Such an appeal is generally not permitted. "[I]t is an abecedarian rule that federal appellate courts review decisions, judgments, orders, and decrees—not opinions, factual findings, reasoning, or explanations." *In re Williams*, 156 F.3d 86, 90 (1st Cir. 1998). That is to say, "courts review judgments, not statements in opinions." *Environmental Protection Information Center, Inc. v. Pacific Lumber Co.*, 257 F.3d 1071, 1075 (9th Cir. 2001) ("*EPIC, Inc.*") (quoting *California v. Rooney*, 483 U.S. 307, 311 (1987)) (internal quotation marks omitted).

This principle is illustrated in the case of *In re Duro Industries, Inc.*, 293 B.R. 271 (1st Cir. BAP 2003). Following revelations of misleading conduct by the debtor, the bankruptcy court entered a minute order dismissing the case, then issued a memorandum opinion explaining its decision. The debtor did not appeal the order of dismissal, but did ask the court to reconsider or amend its explanation. When the court refused, the debtor appealed both the explanatory memorandum and the court's denial of its reconsideration motion. The bankruptcy appellate panel dismissed the appeal, finding that it had jurisdiction only to review "judgments, orders, and decrees," and that "[n]othing of that ilk is before us," but only "the bankruptcy court's unflattering 'findings'" concerning the debtor's behavior. *Id.* at 276. Because "[t]he memorandum is not a final order—or an order of any stripe," the appellate panel had no jurisdiction to review its content, either directly or by way of the order denying reconsideration. *Id.* at 277.

In this case, we do have an order which in principle is subject to appeal. Pillsbury might appropriately have sought leave to bring an interlocutory appeal of the decision to disqualify them from representing the debtor, for example, or SONICblue could have appealed the order appointing a trustee. But since the appellants have expressed no disagreement with the substance of the bankruptcy court's decision, all that is left for this court to consider is a collection of "unflattering 'findings'" concerning the 2002 Noteholders' behavior and some passing statements about the nature of the VIA claim. As the above-cited cases indicate, such findings and statements are not by themselves subject to review.

Some cases hold that, under certain circumstances, a party who has prevailed in the lower court may nevertheless maintain an appeal to challenge adverse collateral decisions that do not affect the ultimate outcome—if, for example, the collateral decision could have preclusive effect in subsequent litigation or will result in future economic loss (aside from the cost of relitigating the issue), or if the judgment itself unnecessarily decides a collateral issue. *See EPIC, Inc.*, 257 F.3d at 1075–76.  Although the 2002 Noteholders are not presently challenging any collateral decision entered by the bankruptcy court, they may try to exploit a somewhat loose formulation of one of these principles in *EPIC, Inc.*: "[T]he Supreme Court has held that a party may seek reformation of a favorable decree—but not review of its merits—that contains discussion of issues 'immaterial to the disposition of the cause.'" *Id.* at 1075 (quoting *Electrical Fittings Corp. v. Thomas & Betts Co.*, 307 U.S. 241, 242 (1939)).

In fact, *Electrical Fittings* does not permit review of the "discussion of issues" in a court's opinion, but rather is concerned with judgments that actually decide issues unnecessarily.  A more complete quotation clarifies the point:

> A party may not appeal from a judgment or decree in his favor, for the purpose of obtaining a review of findings he deems erroneous which are not necessary to support the decree.  But here the decree itself purports to adjudge the validity of claim 1, and though the adjudication was immaterial to the disposition of the cause, it stands as an adjudication of one of the issues litigated.  We think the petitioners were entitled to have this portion of the decree eliminated….

*Electrical Fittings Corp.*, 307 U.S. at 242.  The *EPIC, Inc.* court itself goes on to draw effectively the same distinction: "We have … strictly interpreted 'decree' to mean 'judgment.'"  *See also Deposit Guaranty National Bank, Jackson Mississippi v. Roper*, 445 U.S. 326, 334–35 & n.7 (1980) (discussing the holding of *Electrical Fittings*).

Here, the order does not purport to adjudge either the nature of the VIA claim or the role of the 2002 Noteholders in its settlement.  The 2002 Noteholders do not claim otherwise—they have acknowledged, and have even asked the bankruptcy court to confirm, that the matters at issue have not yet been conclusively decided, but rather are still subject to investigation by the Chapter 11 trustee and final determination by the bankruptcy court.  Once

such a decision has been made, an appeal may be appropriate, but until then, there is nothing over which this court can assume appellate jurisdiction.

## IV.  CONCLUSION

Courts review judgments, not statements in opinions.  The appellants do not disagree with the judgment below; they only disagree with a handful of statements in the opinion.  Those statements are not subject to review independent of the underlying decision.  The appeal should be dismissed.

Dated: October 22, 2007                           FRIEDMAN DUMAS & SPRINGWATER LLP

                                                  By:  /s/Cecily A. Dumas
                                                       Cecily A. Dumas

                                                  -and-

                                                  ALSTON & BIRD LLP
                                                  Grant T. Stein
                                                  1201 West Peachtree Street
                                                  Atlanta, GA 30309-3424
                                                  (404) 881-7000