## Pillsbury Winthrop Shaw Pittman LLP

Client No. 044845
Matter No. 0000017
Jorge. A. del Calvo

November 1, 2006
Invoice No. 7309937
Page 66

| Name | Date | Service | Hours | Rate | Amount |
|------|------|---------|-------|------|--------|
| | | stipulations allowing late claims. | | | |
| M. D. Houle | 07/12/06 | Exchange correspondence with T. Arnold regarding Arise claim allowance. | 0.30 | 450.00 | 135.00 |
| M. D. Houle | 07/12/06 | Telephone conference with E. Hurshowitz regarding extension of exclusivity. | 0.30 | 450.00 | 135.00 |
| M. D. Houle | 07/12/06 | Draft correspondence to E. Hurshowitz regarding extension of exclusivity. | 0.20 | 450.00 | 90.00 |
| M. D. Houle | 07/12/06 | Analysis regarding preparation of request to committee to extend exclusivity. | 0.40 | 450.00 | 180.00 |
| P. L. Breeden | 07/12/06 | Prepare e-mail to A. Barron at O'Melveny & Myers regarding pending fees in preparation of Plan. | 0.40 | 185.00 | 74.00 |
| M. S. Walker | 07/13/06 | Email to Mr. Smith regarding plan. | 0.10 | 465.00 | 46.50 |
| M. S. Walker | 07/13/06 | Respond to Mr. Smith's email regarding review of disclosure statement. | 0.20 | 465.00 | 93.00 |
| M. S. Walker | 07/13/06 | Email to Mr. Smith regarding timing of exclusivity extension. | 0.20 | 465.00 | 93.00 |
| M. S. Walker | 07/13/06 | Respond to A. Wells' email regarding subordination of claims. | 0.20 | 465.00 | 93.00 |
| M. S. Walker | 07/13/06 | Call with potential asset buyer American communications. | 0.20 | 465.00 | 93.00 |
| M. S. Walker | 07/13/06 | Revise plan of reorganization. | 2.70 | 465.00 | 1,255.50 |
| M. D. Houle | 07/13/06 | Telephone conference with A. Wells regarding recommendation for Committee Agreement to extension of exclusivity. | 0.20 | 450.00 | 90.00 |
| M. D. Houle | 07/13/06 | Analysis regarding revision to disclosure statement regarding status of via litigation. | 0.60 | 450.00 | 270.00 |
| M. D. Houle | 07/13/06 | Review and revise Disclosure Statement regarding rejection deadlines in connection with Asset Sales. | 0.60 | 450.00 | 270.00 |
| C. A. Barbarosh | 07/14/06 | Review and revise draft plan and disclosure statement. | 2.00 | 550.00 | 1,100.00 |
| M. S. Walker | 07/14/06 | Respond to Mr. Smith's email regarding extension of exclusivity. | 0.10 | 465.00 | 46.50 |
| M. S. Walker | 07/14/06 | Analyze American communications' proposal for purchase of residual assets after plan. | 0.20 | 465.00 | 93.00 |
| M. S. Walker | 07/14/06 | Email to American communications regarding issues raised by its purchase proposal. | 0.10 | 465.00 | 46.50 |
| M. S. Walker | 07/14/06 | Specify late-filed claims to be subordinated under plan. | 0.80 | 465.00 | 372.00 |
| M. S. Walker | 07/14/06 | Respond to American Communications' further email regarding purchase of assets. | 0.20 | 465.00 | 93.00 |
| M. S. Walker | 07/14/06 | Email to OCC's counsel A. Wells regarding | 0.10 | 465.00 | 46.50 |

## Pillsbury Winthrop Shaw Pittman LLP

Client No. 044845
Matter No. 0000017
Jorge. A. del Calvo

November 1, 2006
Invoice No. 7309937
Page 67

| Name | Date | Service | Hours | Rate | Amount |
|------|------|---------|-------|------|--------|
| | | American Communications' proposal. | | | |
| M. S. Walker | 07/14/06 | Draft disclosure statement sections pertaining to Via Litigation. | 0.90 | 465.00 | 418.50 |
| M. S. Walker | 07/14/06 | Analyze rejection deadline issues for description in disclosure statement. | 0.50 | 465.00 | 232.50 |
| M. S. Walker | 07/14/06 | Revise analysis of financial impact of substantive consolidation on creditor constituencies based on additional information provided by Mr. Smith. | 0.50 | 465.00 | 232.50 |
| M. S. Walker | 07/14/06 | Revise plan of reorganization. | 1.10 | 465.00 | 511.50 |
| M. D. Houle | 07/14/06 | Exchange correspondence with M. Smith regarding Riverside Contracting Agreement to extend exclusivity. | 0.20 | 450.00 | 90.00 |
| M. D. Houle | 07/14/06 | Analysis regarding rejections of executory contracts and bar dates in connection with Asset Sales for Disclosure Statement. | 1.80 | 450.00 | 810.00 |
| M. D. Houle | 07/14/06 | PACER search regarding Notices of Rejection pursuant to Sale Orders. | 0.60 | 450.00 | 270.00 |
| N. J. Youssef | 07/16/06 | Research information regarding bar date rejection notices and bar date for Sobrato claim for inclusion in plan. | 0.80 | 420.00 | 336.00 |
| M. S. Walker | 07/17/06 | Call with American communications regarding sale of tax attributes. | 0.20 | 465.00 | 93.00 |
| M. S. Walker | 07/17/06 | Draft distribution analysis for disclosure statement.. | 2.60 | 465.00 | 1,209.00 |
| M. S. Walker | 07/17/06 | Revise plan of reorganization. | 1.00 | 465.00 | 465.00 |
| M. S. Walker | 07/17/06 | Draft motion extending exclusivity. | 2.50 | 465.00 | 1,162.50 |
| L. L. Partrick | 07/18/06 | Review disclosure statement provisions and provide explanation of accountant reports that accompany Form 5500 filings. | 0.30 | 225.00 | 67.50 |
| C. A. Barbarosh | 07/18/06 | Review and analyze draft motion to extend exclusivity. | 0.30 | 550.00 | 165.00 |
| C. A. Barbarosh | 07/18/06 | Review and analyze revised plan distribution analysis. | 0.20 | 550.00 | 110.00 |
| M. S. Walker | 07/18/06 | Email to Administar regarding timing of service of plan and disclosure statement. | 0.20 | 465.00 | 93.00 |
| M. S. Walker | 07/18/06 | Read Administar's email regarding plan and disclosure statement timing. | 0.10 | 465.00 | 46.50 |
| M. S. Walker | 07/18/06 | Email to OCC regarding plan interest rate. | 0.10 | 465.00 | 46.50 |
| M. S. Walker | 07/18/06 | Call with A. Wells to discuss extension of exclusivity. | 0.20 | 465.00 | 93.00 |
| M. S. Walker | 07/18/06 | Call with Mr. Smith to discuss changes to disclosure statement. | 0.30 | 465.00 | 139.50 |

## Pillsbury Winthrop Shaw Pittman LLP

Client No. 044845
Matter No. 0000017
Jorge. A. del Calvo

November 1, 2006
Invoice No. 7309937
Page 68

| Name | Date | Service | Hours | Rate | Amount |
|------|------|---------|-------|------|--------|
| M. S. Walker | 07/18/06 | Call with A. Wells regarding dissemination of plan to OCC members. | 0.10 | 465.00 | 46.50 |
| M. S. Walker | 07/18/06 | Revise exclusivity motion per OCC request. | 0.70 | 465.00 | 325.50 |
| M. S. Walker | 07/18/06 | Analyze claims spreadsheet sent by Administar to verify accuracy of claim estimates. | 0.60 | 465.00 | 279.00 |
| M. S. Walker | 07/18/06 | Prepare claim distributions estimates for disclosure statement. | 1.20 | 465.00 | 558.00 |
| M. S. Walker | 07/18/06 | Call with American Communications regarding terms of bid to purchase assets. | 0.20 | 465.00 | 93.00 |
| M. S. Walker | 07/18/06 | Draft Smith declaration supporting exclusivity extension. | 0.70 | 465.00 | 325.50 |
| M. S. Walker | 07/18/06 | Email to Mr. Smith regarding exclusivity motion. | 0.10 | 465.00 | 46.50 |
| M. S. Walker | 07/18/06 | Revise disclosure statement. | 2.20 | 465.00 | 1,023.00 |
| P. L. Breeden | 07/18/06 | Prepare and e-mail correspondence to A. Barron at O'Melveny & Myers regarding request for pending and outstanding professional fees owed. | 0.60 | 185.00 | 111.00 |
| M. S. Walker | 07/19/06 | Read Mr. Smith's email regarding exclusivity motion. | 0.10 | 465.00 | 46.50 |
| M. S. Walker | 07/19/06 | Email to A. Wells regarding her approval of exclusivity motion. | 0.10 | 465.00 | 46.50 |
| M. S. Walker | 07/19/06 | Email to client regarding providing breakdown of professional fees shown in operating report. | 0.20 | 465.00 | 93.00 |
| M. S. Walker | 07/19/06 | Draft stipulation extending exclusivity. | 0.30 | 465.00 | 139.50 |
| M. S. Walker | 07/19/06 | Revise Mr. Smith's declaration for exclusivity motion per his comments. | 0.30 | 465.00 | 139.50 |
| M. S. Walker | 07/19/06 | Call with A. Wells to discuss exclusivity stipulation. | 0.20 | 465.00 | 93.00 |
| M. S. Walker | 07/19/06 | Revise exclusivity stipulation per A. Wells' comments. | 0.40 | 465.00 | 186.00 |
| M. S. Walker | 07/19/06 | Draft notice of exclusivity motion. | 0.40 | 465.00 | 186.00 |
| M. S. Walker | 07/19/06 | Revise plan distribution analysis based on changed assumptions relating to Senior Notes and Junior Notes. | 1.10 | 465.00 | 511.50 |
| M. S. Walker | 07/19/06 | Email to client regarding distribution analysis. | 0.20 | 465.00 | 93.00 |
| M. S. Walker | 07/19/06 | Email to OCC regarding execution of exclusivity stipulation. | 0.10 | 465.00 | 46.50 |
| M. S. Walker | 07/19/06 | Email to Mr. Smith regarding exclusivity stipulation and notice. | 0.10 | 465.00 | 46.50 |
| M. S. Walker | 07/19/06 | Respond to American Communications' attorney's email regarding sale of residual assets under plan. | 0.20 | 465.00 | 93.00 |

## Pillsbury Winthrop Shaw Pittman LLP

Client No. 044845
Matter No. 0000017
Jorge. A. del Calvo

November 1, 2006
Invoice No. 7309937
Page 69

| Name | Date | Service | Hours | Rate | Amount |
|------|------|---------|-------|------|--------|
| M. S. Walker | 07/19/06 | Call with OCC's counsel A. Wells regarding American communication's proposal. | 0.10 | 465.00 | 46.50 |
| M. S. Walker | 07/19/06 | Email to American communications' counsel specifying conditions for review of plan. | 0.30 | 465.00 | 139.50 |
| M. S. Walker | 07/19/06 | Analyze issues regarding balloting procedures motion. | 1.30 | 465.00 | 604.50 |
| M. S. Walker | 07/19/06 | Call with American communications' principal regarding sale of corporate shell. | 0.20 | 465.00 | 93.00 |
| M. S. Walker | 07/19/06 | Respond to T. Arnold's email regarding late filed claims. | 0.10 | 465.00 | 46.50 |
| M. S. Walker | 07/20/06 | Read and respond to M. Smith's email regarding attorneys' fees. | 0.10 | 465.00 | 46.50 |
| M. S. Walker | 07/20/06 | Read M. Smith's email and fax regarding exclusivity motion. | 0.10 | 465.00 | 46.50 |
| M. S. Walker | 07/20/06 | Email to OCC's counsel A. Wells regarding filing exclusivity motion. | 0.10 | 465.00 | 46.50 |
| M. S. Walker | 07/20/06 | Instruct P. Breeden regarding filing of motion. | 0.10 | 465.00 | 46.50 |
| M. S. Walker | 07/20/06 | Respond to M. Smith's email regarding plan distribution analysis. | 0.20 | 465.00 | 93.00 |
| M. S. Walker | 07/20/06 | Revise distribution analysis to implement Ms. Smith's comments. | 0.10 | 465.00 | 46.50 |
| M. S. Walker | 07/20/06 | Respond to T. Arnold's email regarding notification of continued status conference. | 0.10 | 465.00 | 46.50 |
| M. S. Walker | 07/20/06 | Analyze emails regarding professional fees. | 0.20 | 465.00 | 93.00 |
| M. S. Walker | 07/20/06 | Respond to American Communications' email regarding terms of agreement. | 0.10 | 465.00 | 46.50 |
| P. L. Breeden | 07/20/06 | Finalize pleadings, prepare proofs of service, serve and e-file motion on tenth exclusivity periods and accompanying pleadings. | 2.40 | 185.00 | 444.00 |
| M. S. Walker | 07/21/06 | Respond to American Communications' counsel's email regarding providing plan and disclosure statement. | 0.20 | 465.00 | 93.00 |
| M. S. Walker | 07/21/06 | Revise disclosure statement to describe potential litigation with Senior Noteholders and Junior Noteholders and to describe VIA litigation. | 2.90 | 465.00 | 1,348.50 |
| C. A. Barbarosh | 07/24/06 | Review and analyze various correspondence regarding proposed acquisition. | 0.20 | 550.00 | 110.00 |
| M. S. Walker | 07/24/06 | Email to American Communications' counsel regarding plan and terms for release of same. | 0.30 | 465.00 | 139.50 |
| M. S. Walker | 07/24/06 | Revise disclosure statement to include allowed and disputed claim amounts. | 0.90 | 465.00 | 418.50 |
| M. S. Walker | 07/24/06 | Email to OCC regarding professional fees and | 0.10 | 465.00 | 46.50 |

## Pillsbury Winthrop Shaw Pittman LLP

Client No. 044845                                                November 1, 2006
Matter No. 0000017                                          Invoice No. 7309937
Jorge. A. del Calvo                                                        Page 70

| Name | Date | Service | Hours | Rate | Amount |
|------|------|---------|-------|------|--------|
| | | expenses. | | | |
| M. S. Walker | 07/24/06 | Review O'Melveny email regarding fees. | 0.10 | 465.00 | 46.50 |
| M. S. Walker | 07/24/06 | Email to Mr. Smith regarding recurring administrative expenses. | 0.10 | 465.00 | 46.50 |
| M. S. Walker | 07/24/06 | Respond to American's Communications' message regarding due diligence items. | 0.20 | 465.00 | 93.00 |
| M. S. Walker | 07/24/06 | Revise disclosure statement and plan. | 2.50 | 465.00 | 1,162.50 |
| P. L. Breeden | 07/24/06 | Prepare and send reminder e-mail to Suzzanne Uhland at O'Melveney & Myers regarding professional fees. | 0.20 | 185.00 | 37.00 |
| M. D. Houle | 07/24/06 | Analysis regarding plan provision for rejection of existing executory contracts and claims bar dates. | 0.80 | 450.00 | 360.00 |
| M. S. Walker | 07/25/06 | Read and respond to American Communications' email regarding timing of due diligence. | 0.20 | 465.00 | 93.00 |
| M. S. Walker | 07/25/06 | Analyze O'Melveny's fee spreadsheet for information necessary for distribution analysis and disclosure. | 0.30 | 465.00 | 139.50 |
| M. S. Walker | 07/25/06 | Email to O'Melveny seeking additional information regarding fees. | 0.30 | 465.00 | 139.50 |
| M. S. Walker | 07/25/06 | Revise distribution analysis to show O'Melveny professional fees. | 0.10 | 465.00 | 46.50 |
| M. S. Walker | 07/25/06 | Revise distribution projections in disclosure statement. | 0.90 | 465.00 | 418.50 |
| M. S. Walker | 07/25/06 | Revise plan and disclosure statement. | 4.50 | 465.00 | 2,092.50 |
| P. L. Breeden | 07/25/06 | Correspond with records to obtain copies of memorandum decisions relating to professional fees and costs chart. | 0.60 | 185.00 | 111.00 |
| P. L. Breeden | 07/25/06 | Correspond with accounting department regarding payments received and billed since date of petition. | 0.40 | 185.00 | 74.00 |
| W. Freeman | 07/26/06 | Review and revise description of VIA settlement in disclosure statement. | 0.50 | 540.00 | 270.00 |
| W. Freeman | 07/26/06 | Draft multiple e-mails regarding amendments to disclosure statement. | 0.80 | 540.00 | 432.00 |
| M. S. Walker | 07/26/06 | Email to client describing issues with American Communications' proposal. | 0.30 | 465.00 | 139.50 |
| M. S. Walker | 07/26/06 | Revise distribution analysis based on expense information provided by Mr. Smith. | 0.20 | 465.00 | 93.00 |
| M. S. Walker | 07/26/06 | Revise plan and disclosure statement. | 1.20 | 465.00 | 558.00 |
| M. S. Walker | 07/26/06 | Email to OCC regarding disclosure statement hearing date selection. | 0.20 | 465.00 | 93.00 |

**Pillsbury Winthrop Shaw Pittman** LLP

Client No. 044845
Matter No. 0000017
Jorge. A. del Calvo

November 1, 2006
Invoice No. 7309937
Page 71

| Name | Date | Service | Hours | Rate | Amount |
|------|------|---------|-------|------|--------|
| M. S. Walker | 07/26/06 | Email to client and OCC regarding plan. | 0.10 | 465.00 | 46.50 |
| M. S. Walker | 07/26/06 | Email to OCC and client regarding disclosure statement and assumptions underlying projections. | 0.30 | 465.00 | 139.50 |
| M. S. Walker | 07/26/06 | Begin drafting balloting procedures motion. | 1.00 | 465.00 | 465.00 |
| G. A. Lombardi | 07/27/06 | Telephone conference with M. Walker regarding shareholder mailing logistics and record holder list; review solicitation procedures. | 0.50 | 550.00 | 275.00 |
| C. A. Barbarosh | 07/27/06 | Update regarding plan issues. | 0.20 | 550.00 | 110.00 |
| M. S. Walker | 07/27/06 | Read American communications' email regarding meeting. | 0.10 | 465.00 | 46.50 |
| M. S. Walker | 07/27/06 | Read and respond to American Communications' counsel's email regarding due diligence items. | 0.30 | 465.00 | 139.50 |
| M. S. Walker | 07/27/06 | Read Mr. Smith's email regarding revised plan and disclosure statement. | 0.10 | 465.00 | 46.50 |
| M. S. Walker | 07/27/06 | Email to Junior Noteholders' counsel regarding solicitation procedures for ballot procedures motion. | 0.20 | 465.00 | 93.00 |
| M. S. Walker | 07/27/06 | Continue drafting balloting procedures motion. | 3.60 | 465.00 | 1,674.00 |
| M. S. Walker | 07/27/06 | Begin drafting ballots for plan. | 0.70 | 465.00 | 325.50 |
| M. D. Houle | 07/27/06 | Analysis regarding Notice of Disclosure Statement to equity holders and noteholders. | 0.30 | 450.00 | 135.00 |
| W. Freeman | 07/28/06 | Telephone conference with M. Walker regarding Disclosure Statement hearing date. | 0.50 | 540.00 | 270.00 |
| W. Freeman | 07/28/06 | Draft memorandum regarding VIA/Intel issues in Disclosure Statement. | 0.40 | 540.00 | 216.00 |
| C. A. Barbarosh | 07/28/06 | Confer with B. Freeman regarding plan issues. | 0.20 | 550.00 | 110.00 |
| C. A. Barbarosh | 07/28/06 | Review and analyze memorandum regarding plan | 0.20 | 550.00 | 110.00 |
| J. D. Monarrez | 07/28/06 | Verify citation language still valid per M. Walker. | 0.50 | 105.00 | 52.50 |
| M. D. Houle | 07/28/06 | Analysis regarding revisions to plan regarding rejection of executory contracts. | 0.80 | 450.00 | 360.00 |
| M. S. Walker | 07/28/06 | Continue preparing master form of ballot. | 0.90 | 465.00 | 418.50 |
| M. S. Walker | 07/28/06 | Begin revising disclosure statement to address contact rejection damages. | 0.40 | 465.00 | 186.00 |
| M. S. Walker | 07/28/06 | Revise ballot form for class 4 claims. | 0.30 | 465.00 | 139.50 |
| M. S. Walker | 07/28/06 | Revise ballot form for class 6 and 8 claims with Class 8 election. | 0.70 | 465.00 | 325.50 |
| M. S. Walker | 07/28/06 | Analyze disclosure issues concerning Via. | 0.70 | 465.00 | 325.50 |
| M. S. Walker | 07/28/06 | Call with American Communications' counsel | 0.20 | 465.00 | 93.00 |

**Pillsbury Winthrop Shaw Pittman** LLP

Client No. 044845                                                November 1, 2006
Matter No. 0000017                                            Invoice No. 7309937
Jorge. A. del Calvo                                                      Page 72

| Name | Date | Service | Hours | Rate | Amount |
|------|------|---------|-------|------|--------|
| | | regarding sale of company shell. | | | |
| M. S. Walker | 07/28/06 | Analyze potential damages for contract rejection under plan. | 0.60 | 465.00 | 279.00 |
| M. S. Walker | 07/28/06 | Email to client regarding locating due diligence items for American Communications proposal. | 0.20 | 465.00 | 93.00 |
| M. S. Walker | 07/28/06 | Revise balloting procedures motion to reflect SEC regulations regarding proxy solicitation. | 0.30 | 465.00 | 139.50 |
| W. Freeman | 07/30/06 | Review revised version of disclosure statement. | 1.60 | 540.00 | 864.00 |
| W. Freeman | 07/31/06 | Draft e-mail regarding VIA/Intel portion of Disclosure Statement. | 0.40 | 540.00 | 216.00 |
| N. J. Youssef | 07/31/06 | Further research regarding bar date rejection notices. | 1.30 | 420.00 | 546.00 |
| C. A. Barbarosh | 07/31/06 | Office conference with B. Freeman regarding disclosure statement issues. | 0.20 | 550.00 | 110.00 |
| M. D. Houle | 07/31/06 | Participate in conference call with Committee regarding plan and Disclosure Statement preparation and via/intel settlement. | 0.80 | 450.00 | 360.00 |
| M. S. Walker | 07/31/06 | Analyze proposed via settlement agreement for impact on disclosure statement and plan. | 0.70 | 465.00 | 325.50 |
| M. S. Walker | 07/31/06 | Conference call with OCC and Via/Intel litigators to assess effect of plan confirmation on settlement and disclosure of Via settlement. | 0.80 | 465.00 | 372.00 |
| M. S. Walker | 07/31/06 | Revise plan and disclosure statement to address contracts pending assumption on the effective date. | 0.30 | 465.00 | 139.50 |
| M. S. Walker | 07/31/06 | Revise class 4, 6 and 8 ballots. | 0.40 | 465.00 | 186.00 |
| M. S. Walker | 07/31/06 | Read and respond to Mr. Smith's email regarding executory contracts pertaining to transfer agent. | 0.20 | 465.00 | 93.00 |
| M. S. Walker | 07/31/06 | Email to American Communications regarding scope of due diligence request and continuing lack of obligation by the parties other than confidentiality agreement. | 0.30 | 465.00 | 139.50 |
| M. S. Walker | 07/31/06 | Revise distribution analysis based on professional fee information provided by OCC. | 0.20 | 465.00 | 93.00 |
| M. S. Walker | 07/31/06 | Email to OCC's counsel A. Wells regarding form of plan ballots. | 0.20 | 465.00 | 93.00 |
| M. D. Houle | 08/01/06 | Analysis regarding service list for Disclosure Statement and Plan. | 0.20 | 460.00 | 92.00 |
| W. Freeman | 08/01/06 | Review and respond to M. Walker e-mail regarding distribution of Disclosure Statement notices. | 0.30 | 540.00 | 162.00 |
| W. Freeman | 08/01/06 | Revise draft of plan of reorganization. | 2.30 | 540.00 | 1,242.00 |

## Pillsbury Winthrop Shaw Pittman LLP

Client No. 044845
Matter No. 0000017
Jorge. A. del Calvo

November 1, 2006
Invoice No. 7309937
Page 73

| Name | Date | Service | Hours | Rate | Amount |
|------|------|---------|-------|------|--------|
| W. Freeman | 08/01/06 | Draft e-mail regarding ballot agent. | 0.30 | 540.00 | 162.00 |
| M. S. Walker | 08/01/06 | Respond to N. Salvucci's email regarding tax return email. | 0.20 | 475.00 | 95.00 |
| M. S. Walker | 08/01/06 | Email to American Communications' counsel regarding failure to specify Debtors for requested tax returns. | 0.10 | 475.00 | 47.50 |
| M. S. Walker | 08/01/06 | Analyze issues regarding preparations for noticing debt and shareholder. | 0.40 | 475.00 | 190.00 |
| M. S. Walker | 08/01/06 | Call with J. Pirrung to discuss procedures for noticing shareholders and public debtholders. | 0.30 | 475.00 | 142.50 |
| M. S. Walker | 08/01/06 | Email to M. Smith to advise him regarding discussions with J. Pirrung. | 0.30 | 475.00 | 142.50 |
| M. S. Walker | 08/01/06 | Email to JPMorgan regarding scope of noticing engagement for plan and disclosure statement. | 0.30 | 475.00 | 142.50 |
| M. S. Walker | 08/01/06 | Draft ballot procedure motion sections for notice of confirmation hearing. | 0.40 | 475.00 | 190.00 |
| M. S. Walker | 08/01/06 | Respond to A. Wells' request for information regarding tax returns. | 0.10 | 475.00 | 47.50 |
| M. S. Walker | 08/01/06 | Analyze rights of rejecting interest holders to alternate notification. | 0.40 | 475.00 | 190.00 |
| M. S. Walker | 08/01/06 | Email to client regarding balloting agent for plan. | 0.20 | 475.00 | 95.00 |
| M. S. Walker | 08/01/06 | Revise ballot motion procedures regarding transmission of notices and Solicitation Packages to creditors and shareholders. | 0.40 | 475.00 | 190.00 |
| M. S. Walker | 08/01/06 | Draft ballot motion procedures regarding substitution of Non-Voting Class Notice for Solicitation Package for non-voting classes. | 0.50 | 475.00 | 237.50 |
| M. S. Walker | 08/01/06 | Draft ballot motion provisions for deletion of bad addresses from mailing list. | 0.30 | 475.00 | 142.50 |
| M. S. Walker | 08/01/06 | Draft notice of disclosure statement hearing. | 0.80 | 475.00 | 380.00 |
| M. S. Walker | 08/01/06 | Begin drafting notice of confirmation hearing and related notices. | 0.50 | 475.00 | 237.50 |
| P. L. Breeden | 08/01/06 | Research and obtain memorandum decisions of debtors' fees applications for professional fee summary chart. | 1.80 | 185.00 | 333.00 |
| P. L. Breeden | 08/01/06 | Research order employing servicing agent for M. Walker and forward same. | 0.40 | 185.00 | 74.00 |
| P. L. Breeden | 08/01/06 | Edit and forward revised version of professional fee chart to M. Walker and M. Houle for review and comment. | 1.20 | 185.00 | 222.00 |
| M. S. Walker | 08/02/06 | Analyze attorneys' fees chart to determine amount still to be paid for disclosure statement | 0.20 | 475.00 | 95.00 |

## Pillsbury Winthrop Shaw Pittman LLP

Client No. 044845
Matter No. 0000017
Jorge. A. del Calvo

November 1, 2006
Invoice No. 7309937
Page 74

| Name | Date | Service | Hours | Rate | Amount |
|------|------|---------|-------|------|--------|
| | | purposes. | | | |
| M. S. Walker | 08/02/06 | Email to Mr. Smith regarding conference to address noticing issues. | 0.10 | 475.00 | 47.50 |
| M. S. Walker | 08/02/06 | Email to client and OCC describing proposal for not distributing plan and disclosure statement to interest holders. | 0.40 | 475.00 | 190.00 |
| M. S. Walker | 08/02/06 | Revise class 6 and 8 ballot to include Class 3 and 5 election. | 0.50 | 475.00 | 237.50 |
| M. S. Walker | 08/02/06 | Complete drafting notice of confirmation hearing. | 0.90 | 475.00 | 427.50 |
| M. S. Walker | 08/02/06 | Draft non-voting notice. | 0.70 | 475.00 | 332.50 |
| M. S. Walker | 08/02/06 | Draft ballot motion sections relating to employment of JPMorgan as balloting agent. | 0.60 | 475.00 | 285.00 |
| M. S. Walker | 08/02/06 | Revise ballot motion sections regarding Solicitation Packages. | 0.80 | 475.00 | 380.00 |
| M. S. Walker | 08/02/06 | Revise plan to correct treatment of Multiple Zones remaining secured claim. | 0.20 | 475.00 | 95.00 |
| M. S. Walker | 08/02/06 | Begin drafting balloting motion provisions relating to proposed ballots. | 0.30 | 475.00 | 142.50 |
| M. S. Walker | 08/03/06 | Call with client and JPMorgan to address securing notification lists for shareholders. | 0.60 | 475.00 | 285.00 |
| M. S. Walker | 08/03/06 | Draft ballot motion Section regarding approval of proposed ballots. | 0.80 | 475.00 | 380.00 |
| M. S. Walker | 08/03/06 | Email to Junior Noteholders regarding CUSIP number. | 0.10 | 475.00 | 47.50 |
| M. S. Walker | 08/03/06 | Analyze requirements for notice of plan solicitation to shareholders. | 0.90 | 475.00 | 427.50 |
| M. S. Walker | 08/03/06 | Email to client and Creditors' Committee advising on notification issue. | 0.20 | 475.00 | 95.00 |
| M. S. Walker | 08/03/06 | Email to accountant regarding amount of funds in trust account for disclosure statement. | 0.10 | 475.00 | 47.50 |
| M. S. Walker | 08/03/06 | Email to American Communications regarding deadline for advising regarding document copying. | 0.30 | 475.00 | 142.50 |
| M. S. Walker | 08/03/06 | Revise ballot motion. | 2.40 | 475.00 | 1,140.00 |
| C. A. Barbarosh | 08/03/06 | Review and analyze memorandum regarding updated plan assumptions. | 0.10 | 550.00 | 55.00 |
| M. D. Houle | 08/03/06 | Participate in conference call with J. P. Morgan (claims agent) regarding modification to plan and disclosure statement filing and service requirements for equity holders and noteholders. | 0.60 | 460.00 | 276.00 |
| M. D. Houle | 08/03/06 | Analysis regarding service of plan and | 0.30 | 460.00 | 138.00 |

## Pillsbury Winthrop Shaw Pittman LLP

Client No. 044845                                                          November 1, 2006
Matter No. 0000017                                                    Invoice No. 7309937
Jorge. A. del Calvo                                                               Page 75

| Name | Date | Service | Hours | Rate | Amount |
|------|------|---------|-------|------|--------|
| | | disclosure statement on equity holders. | | | |
| P. L. Breeden | 08/03/06 | Attend conference call regarding procedures for Plan and Disclosure Statement. | 0.60 | 185.00 | 111.00 |
| M. S. Walker | 08/04/06 | Email to client and OCC reporting on Intel/Via settlement status and impact of same on Plan and disclosure statement timing. | 0.50 | 475.00 | 237.50 |
| M. S. Walker | 08/04/06 | Read five emails from American Communications and counsel regarding taxes and documents requested. | 0.20 | 475.00 | 95.00 |
| M. S. Walker | 08/04/06 | Analyze advantages of cancellation of indentures under the plan. | 0.50 | 475.00 | 237.50 |
| M. S. Walker | 08/04/06 | Revise plan and disclosure statement to maintain indentures for limited purposes after Effective Date. | 0.30 | 475.00 | 142.50 |
| M. S. Walker | 08/04/06 | Email to Junior Note Indenture Trustee's counsel with questions regarding his client' preference in balloting process, position regarding whether his clients are deemed to reject, and his input on indenture cancellation provision. | 0.40 | 475.00 | 190.00 |
| M. S. Walker | 08/04/06 | Analyze proposed balloting procedures for Junior Noteholders. | 0.40 | 475.00 | 190.00 |
| M. S. Walker | 08/04/06 | Revise ballot motion to address disclosure to Class 9 subordinated claims. | 0.30 | 475.00 | 142.50 |
| M. S. Walker | 08/04/06 | Email to Junior Note Indenture Trustee's counsel regarding need for information regarding notes. | 0.20 | 475.00 | 95.00 |
| M. S. Walker | 08/04/06 | Begin drafting class 7 ballot. | 0.70 | 475.00 | 332.50 |
| M. S. Walker | 08/04/06 | Read and analyze OCC's Counsel A. Well's comments on ballot. | 0.30 | 475.00 | 142.50 |
| M. S. Walker | 08/04/06 | Begin drafting procedures for distribution of Class 7 ballots and voting. | 1.10 | 475.00 | 522.50 |
| M. D. Houle | 08/04/06 | Exchange multiple correspondence with A. Wells regarding extension of exclusivity and Riverside contractors consent. | 0.30 | 460.00 | 138.00 |
| M. D. Houle | 08/07/06 | Telephone conference with A. Wells regarding extension of exclusivity and Riverside consent. | 0.30 | 460.00 | 138.00 |
| M. D. Houle | 08/07/06 | Draft correspondence to S. Uhland regarding conference call with E. Hurskowitz regarding extension of exclusivity. | 0.30 | 460.00 | 138.00 |
| P. L. Breeden | 08/07/06 | Correspond with internal finance and account receivable department regarding payments received and applied to professional fees and | 2.20 | 185.00 | 407.00 |

## Pillsbury Winthrop Shaw Pittman LLP

Client No. 044845
Matter No. 0000017
Jorge. A. del Calvo

November 1, 2006
Invoice No. 7309937
Page 76

| Name | Date | Service | Hours | Rate | Amount |
|------|------|---------|-------|------|--------|
| | | update spreadsheet accordingly. | | | |
| C. A. Barbarosh | 08/08/06 | Upate regarding plan preparation and exclusivity. | 0.20 | 550.00 | 110.00 |
| M. D. Houle | 08/08/06 | Telephone conference with E. Hurskowitz of Riverside Capital regarding extension of exclusivity. | 0.30 | 460.00 | 138.00 |
| M. D. Houle | 08/08/06 | Draft correspondence to S. Uhland regarding conference call with E. Hurskowitz. | 0.20 | 460.00 | 92.00 |
| M. D. Houle | 08/08/06 | Draft correspondence to E. Hurskowitz regarding conference all to request extension of exclusivity. | 0.30 | 460.00 | 138.00 |
| M. D. Houle | 08/08/06 | PACER search regarding Riverside contracting withdrawal of opposition to Exclusivity. | 0.30 | 460.00 | 138.00 |
| M. D. Houle | 08/08/06 | Draft correspondence to A. Wells regarding Riverside withdrawal of opposition to Exclusivity. | 0.20 | 460.00 | 92.00 |
| M. S. Walker | 08/08/06 | Read email from American Communications regarding timing of plan comments. | 0.10 | 475.00 | 47.50 |
| M. S. Walker | 08/08/06 | Evaluate strategy regarding plan exclusivity issues. | 0.20 | 475.00 | 95.00 |
| M. S. Walker | 08/08/06 | Email to M. Smith regarding proposed letter to DTC regarding stock owners. | 0.20 | 475.00 | 95.00 |
| M. S. Walker | 08/08/06 | Revise disclosure statement to include provisions relating to consensual allowance of disputed claims for voting purposes. | 0.50 | 475.00 | 237.50 |
| M. S. Walker | 08/08/06 | Email to client regarding status of tax return copying. | 0.10 | 475.00 | 47.50 |
| M. S. Walker | 08/08/06 | Email to American Communications regarding delivery of tax returns and failure to provide redline of changes to plan. | 0.10 | 475.00 | 47.50 |
| M. S. Walker | 08/08/06 | Continue drafting solicitation and voting procedures order. | 2.50 | 475.00 | 1,187.50 |
| M. S. Walker | 08/08/06 | Begin drafting voting procedures for balloting motion. | 0.70 | 475.00 | 332.50 |
| M. S. Walker | 08/08/06 | Email to N. Weil at JPMorgan regarding CUSIP numbers on Junior Notes. | 0.10 | 475.00 | 47.50 |
| M. S. Walker | 08/09/06 | Read and respond to Mr. Smith's email regarding CUSIP numbers on bonds. | 0.20 | 475.00 | 95.00 |
| M. S. Walker | 08/09/06 | Read and respond to N. Salvucci's email regarding tax return timing. | 0.10 | 475.00 | 47.50 |
| M. S. Walker | 08/09/06 | Analyze strategy regarding extending exclusivity in light of status of VIA settlement. | 0.20 | 475.00 | 95.00 |
| M. S. Walker | 08/09/06 | Call with Riverside contracting and via/Intel | 1.00 | 475.00 | 475.00 |

## Pillsbury Winthrop Shaw Pittman LLP

Client No. 044845

Matter No. 0000017

Jorge. A. del Calvo

November 1, 2006

Invoice No. 7309937

Page 77

| Name | Date | Service | Hours | Rate | Amount |
|------|------|---------|-------|------|--------|
| | | team to address ability to file plan before VIA settlement and strategic issues regarding using expiration of exclusivity to force settlement. | | | |
| M. S. Walker | 08/09/06 | Revise balloting and procedures motion to add voting and tabulation procedures. | 2.10 | 475.00 | 997.50 |
| M. D. Houle | 08/09/06 | Participate in conference call with E. Herskowitz regarding extension of exclusivity periods. | 1.20 | 460.00 | 552.00 |
| M. D. Houle | 08/09/06 | Draft correspondence to E. Herskowitz regarding confirmation of exclusivity extension. | 0.20 | 460.00 | 92.00 |
| M. D. Houle | 08/09/06 | Exchange correspondence with A. Wells regarding exclusivity. | 0.20 | 460.00 | 92.00 |
| M. S. Walker | 08/10/06 | Email to America Communications regarding reimbursement payment and extension of exclusivity. | 0.20 | 475.00 | 95.00 |
| M. S. Walker | 08/10/06 | Read Junior Note Indenture Trustee's counsel's email regarding CUSIP numbers for Junior Notes. | 0.10 | 475.00 | 47.50 |
| M. S. Walker | 08/10/06 | Second email to America Communications regarding payment. | 0.10 | 475.00 | 47.50 |
| M. S. Walker | 08/10/06 | Email to M. Smith regarding negotiation of reimbursement check. | 0.10 | 475.00 | 47.50 |
| M. S. Walker | 08/10/06 | Read Junior Noteholders' suggested changes to plan. | 0.20 | 475.00 | 95.00 |
| M. S. Walker | 08/10/06 | Call with Junior Noteholders' counsel regarding issues concerning distributions to and voting by Junior Noteholders. | 0.30 | 475.00 | 142.50 |
| M. S. Walker | 08/10/06 | Revise plan and disclosure statement to eliminate prospect of partial election of class 8 treatment. | 0.30 | 475.00 | 142.50 |
| M. S. Walker | 08/10/06 | Revise balloting motion to conform beneficial holder notification procedures as requested by JPMorgan. | 1.60 | 475.00 | 760.00 |
| M. S. Walker | 08/10/06 | Email to Junior Note Indenture Trustee's counsel regarding balloting and voting procedures. | 0.20 | 475.00 | 95.00 |
| M. S. Walker | 08/10/06 | Email to JPMorgan regarding procedures order. | 0.10 | 475.00 | 47.50 |
| M. S. Walker | 08/10/06 | Revise entire balloting motion. | 1.40 | 475.00 | 665.00 |
| J. D. Monarrez | 08/10/06 | Research into Legislative history of Statute per M. Walker. | 0.75 | 105.00 | 78.75 |
| M. D. Houle | 08/11/06 | Telephone conference with A. Wells regarding request to committee to consent to exclusivity | 0.20 | 460.00 | 92.00 |

**Pillsbury Winthrop Shaw Pittman** LLP

Client No. 044845
Matter No. 0000017
Jorge. A. del Calvo

November 1, 2006
Invoice No. 7309937
Page 78

| Name | Date | Service | Hours | Rate | Amount |
|------|------|---------|-------|------|--------|
| | | extension. | | | |
| M. S. Walker | 08/11/06 | Email to client regarding transfer of check and delivery of tax returns. | 0.20 | 475.00 | 95.00 |
| M. S. Walker | 08/11/06 | Respond to Mr. Smith's email regarding CUSIP for SONICblue stock. | 0.20 | 475.00 | 95.00 |
| M. S. Walker | 08/11/06 | Read and respond to Junior Note Indenture Trustee's counsel's email regarding form of ballot procedures motion. | 0.20 | 475.00 | 95.00 |
| M. S. Walker | 08/11/06 | Draft request for entry of default order, supporting declaration and order extending exclusivity. | 0.90 | 475.00 | 427.50 |
| M. S. Walker | 08/11/06 | Email to OCC regarding extension of exclusivity. | 0.10 | 475.00 | 47.50 |
| M. S. Walker | 08/11/06 | Revise balloting procedures motion. | 0.90 | 475.00 | 427.50 |
| P. L. Breeden | 08/11/06 | Prepare exhibits, proof of service, finalize pleadings, serve and e-file request for entry of default order relating to tenth exclusivity motion. | 1.80 | 185.00 | 333.00 |
| M. S. Walker | 08/14/06 | Read two emails from M. Smith regarding stock query. | 0.10 | 475.00 | 47.50 |
| M. S. Walker | 08/14/06 | Read N. Weil's email regarding stock query. | 0.10 | 475.00 | 47.50 |
| M. S. Walker | 08/14/06 | Revise balloting motion. | 0.60 | 475.00 | 285.00 |
| M. S. Walker | 08/14/06 | Email to OCC describing issues with balloting motion. | 0.40 | 475.00 | 190.00 |
| M. S. Walker | 08/15/06 | Read and respond to N. Salvucci's email regarding delivery of returns. | 0.20 | 475.00 | 95.00 |
| M. S. Walker | 08/15/06 | Email to American communications regarding delivery of returns. | 0.10 | 475.00 | 47.50 |
| M. S. Walker | 08/15/06 | Analyze list of shareholders provided by M. Smith. | 0.20 | 475.00 | 95.00 |
| M. S. Walker | 08/15/06 | Email to Mr. Smith regarding issues raised by shareholder list. | 0.10 | 475.00 | 47.50 |
| M. S. Walker | 08/15/06 | Begin drafting motion to extend exclusivity. | 1.00 | 475.00 | 475.00 |
| M. S. Walker | 08/15/06 | Email to Mr. Smith regarding availability to sign exclusivity motion on short notice. | 0.20 | 475.00 | 95.00 |
| M. S. Walker | 08/16/06 | Respond to Mr. Smith's email regarding details on exclusivity extension. | 0.20 | 475.00 | 95.00 |
| M. S. Walker | 08/16/06 | Email to OCC's counsel A. Wells to advise of short deadline for filing motion. | 0.10 | 475.00 | 47.50 |
| M. S. Walker | 08/16/06 | Call with H. Grobstein regarding completion of substantive consolidation analysis. | 0.10 | 475.00 | 47.50 |
| M. S. Walker | 08/16/06 | Draft exclusivity extension stipulation. | 1.00 | 475.00 | 475.00 |
| M. S. Walker | 08/16/06 | Email to OCC regarding exclusivity extension. | 0.20 | 475.00 | 95.00 |

### Pillsbury Winthrop Shaw Pittman LLP

Client No. 044845                                                  November 1, 2006
Matter No. 0000017                                          Invoice No. 7309937
Jorge. A. del Calvo                                                        Page 79

| Name | Date | Service | Hours | Rate | Amount |
|------|------|---------|-------|------|--------|
| M. S. Walker | 08/16/06 | Revise stipulation regarding exclusivity per OCC's comments | 0.50 | 475.00 | 237.50 |
| M. S. Walker | 08/16/06 | Revise exclusivity motion to address OCC's comments. | 0.60 | 475.00 | 285.00 |
| M. S. Walker | 08/16/06 | Draft M. Smith declaration supporting exclusivity extension motion. | 0.50 | 475.00 | 237.50 |
| M. S. Walker | 08/16/06 | Email to Mr. Smith regarding execution of declaration supporting exclusivity extension motion. | 0.20 | 475.00 | 95.00 |
| M. S. Walker | 08/16/06 | Draft notice of motion to extend exclusivity. | 0.20 | 475.00 | 95.00 |
| H. E. Mayon | 08/17/06 | Research status of EquiServe contracts. | 0.40 | 400.00 | 160.00 |
| M. S. Walker | 08/17/06 | Read and respond to Mr. Smith's message regarding exclusivity stipulation. | 0.20 | 475.00 | 95.00 |
| M. S. Walker | 08/17/06 | Finalize exclusivity motion. | 0.20 | 475.00 | 95.00 |
| P. L. Breeden | 08/17/06 | Prepare proofs of service, finalize pleadings, serve and e-file motion to approve 11th exclusivity motion and supporting documents. | 2.40 | 185.00 | 444.00 |
| H. E. Mayon | 08/18/06 | Research EquiServe files; telephone call with M Houle re: EquiServe file location. | 0.30 | 400.00 | 120.00 |
| M. S. Walker | 08/18/06 | Email to Mr. Smith regarding delivery of financial information to Congress. | 0.20 | 475.00 | 95.00 |
| M. S. Walker | 08/18/06 | Read Mr. Smith's emails regarding shareholders. | 0.20 | 475.00 | 95.00 |
| M. S. Walker | 08/18/06 | Read and respond to American Communication's email regarding plan changes. | 0.20 | 475.00 | 95.00 |
| M. S. Walker | 08/21/06 | Read two emails from American Communications regarding tax returns. | 0.10 | 475.00 | 47.50 |
| M. S. Walker | 08/21/06 | Email to A. Wells regarding Senior Noteholders approval of reallocation provisions. | 0.10 | 475.00 | 47.50 |
| M. S. Walker | 08/21/06 | Email to H. Grobstein regarding SONICblue offer to guaranty debt. | 0.20 | 475.00 | 95.00 |
| M. S. Walker | 08/22/06 | Call with D. Grotenhuis to discuss sale of corporate shell under plan. | 0.20 | 475.00 | 95.00 |
| M. S. Walker | 08/22/06 | Review American Communications' proposed changes to plan to facilitate shell sale. | 0.60 | 475.00 | 285.00 |
| M. S. Walker | 08/22/06 | Email to American Communications regarding incompleteness of revisions to plan and seeking summary of proposed changes to plan. | 0.20 | 475.00 | 95.00 |
| M. S. Walker | 08/23/06 | Call with D. Grotenhuis regarding analysis of shell sale proposal and tax returns. | 0.20 | 475.00 | 95.00 |

Total Hours:                                      321.45

## Pillsbury Winthrop Shaw Pittman LLP

Client No. 044845
Matter No. 0000017
Jorge. A. del Calvo

November 1, 2006
Invoice No. 7309937
Page 80

| Name | Date | Service | Hours | Rate | Amount |
|------|------|---------|-------|------|--------|
| | | | **Total Fees:** | | **$144,310.75** |

**Timekeeper Summary**

| Timekeeper | Hours | Rate | Value Billed |
|------------|-------|------|--------------|
| G. A. Lombardi | 1.00 | $550.00 | $550.00 |
| C. B. Wainwright | 1.50 | 675.00 | 1,012.50 |
| W. Freeman | 10.70 | 540.00 | 5,778.00 |
| L. L. Partrick | 1.90 | 225.00 | 427.50 |
| M. S. Walker | 186.00 | 465.00 | 86,490.00 |
| M. S. Walker | 44.60 | 475.00 | 21,185.00 |
| C. A. Barbarosh | 8.30 | 550.00 | 4,565.00 |
| P. L. Breeden | 19.00 | 185.00 | 3,515.00 |
| M. D. Houle | 37.20 | 450.00 | 16,740.00 |
| M. D. Houle | 5.10 | 460.00 | 2,346.00 |
| J. D. Monarrez | 2.75 | 105.00 | 288.75 |
| H. E. Mayon | 0.40 | 365.00 | 146.00 |
| H. E. Mayon | 0.70 | 400.00 | 280.00 |
| N. J. Youssef | 2.10 | 420.00 | 882.00 |
| K. B. Dine | 0.20 | 525.00 | 105.00 |
| **Total:** | **321.45** | | **$144,310.75** |

**Disbursements Incurred**

| Date | Type | Description | Amount |
|------|------|-------------|--------|
| 08/11/06 | Computer Research | Summary | $597.06 |
| 08/17/06 | Reproductions | Summary | 509.58 |
| 05/31/06 | Document Service | VENDOR: GKL Corporate/Search (SD); INVOICE#: 0551616-IN; DATE: 5/31/2006 - Downloading documents, 5/31/06, J. Monarrez | 316.00 |
| 05/31/06 | Document Service | VENDOR: GKL Corporate/Search (SD); INVOICE#: 0551619-IN; DATE: 5/31/2006 - Downloading documents, 5/31/06, J. Monarrez | 36.00 |
| 05/31/06 | Document Service | VENDOR: GKL Corporate/Search (SD); INVOICE#: 0551664-IN; DATE: 5/31/2006 - Downloading documents, 5/31/06, J. Monarrez | 204.00 |
| 06/30/06 | Document Service | VENDOR: CT Corporation System (SD); | 57.00 |

## Pillsbury Winthrop Shaw Pittman LLP

Client No. 044845                                                                                              November 1, 2006
Matter No. 0000017                                                                                       Invoice No. 7309937
Jorge. A. del Calvo                                                                                                        Page 81

---

| Date | Type | Description | Amount |
|------|------|-------------|--------|
| 07/06/06 | Document Service | INVOICE#: 2832716-RI; DATE: 6/30/2006 - Filings, 6/30/06, J. Monarrez VENDOR: Pacer Service Center (SD); INVOICE#: PM0054/072006; DATE: 7/6/2006 - Download documents from Pacer, 04/01/06 - 06/30/06, J. Monarrez | 48.00 |
| 07/06/06 | Document Service | VENDOR: Pacer Service Center (SD); INVOICE#: PM0054/72006; DATE: 7/6/2006 - Download documents from pacer, 4/01/06 - 6/30/06, J. Monarrez | 48.00 |

|  | **Total Disbursements:** | **$1,815.64** |
|--|--------------------------|---------------|

---

**Disbursement Summary**

| Type | Amount |
|------|--------|
| Computer Research | 597.06 |
| Document Service | 709.00 |
| Reproductions | 509.58 |
| **Total:** | **$1,815.64** |

|  | **Total Due For Matter 0000017:** | **$146,126.39** |
|--|-----------------------------------|-----------------|

## Pillsbury Winthrop Shaw Pittman LLP

Client No. 044845                                      November 1, 2006
Matter No. 0000018                               Invoice No. 7309937
Jorge. A. del Calvo                                          Page 82

**Retention of Professionals**

For Professional Services Rendered And Disbursements Incurred Through August 23, 2006

| Name | Date | Service | Hours | Rate | Amount |
|---|---|---|---|---|---|
| M. D. Houle | 05/26/06 | Analysis regarding preparation of seventh supplemental employment declaration. | 0.40 | 450.00 | $180.00 |
| M. D. Houle | 05/26/06 | Draft seventh supplemental employment declaration. | 0.40 | 450.00 | 180.00 |
| M. D. Houle | 06/01/06 | Analysis regarding revisions to employment disclosure declaration. | 0.30 | 450.00 | 135.00 |
| W. Freeman | 06/02/06 | Review and revise supplemental declaration employment disclosure. | 0.80 | 540.00 | 432.00 |
| M. D. Houle | 06/02/06 | Instruct P. Breeden regarding filing and service of supplemental disclosure declaration. | 0.20 | 450.00 | 90.00 |
| P. L. Breeden | 06/05/06 | Finalize and prepare proof of service, serve on limited service list and e-file seventh Supplemental Disclosure Declaration. | 2.80 | 185.00 | 518.00 |
| P. L. Breeden | 06/28/06 | Finalize pleadings, prepare proof of service, serve and e-file Stipulation and Order for Further Employment of Marcus Smith as Chief Financial Officer. | 1.20 | 185.00 | 222.00 |
| P. L. Breeden | 06/28/06 | Finalize pleadings, prepare proof of service, serve and e-file Stipulation and Order for Further Employment of Nanci Salvucci as Controller. | 1.20 | 185.00 | 222.00 |
| C. A. Barbarosh | 08/03/06 | Review and analyze ruling regarding sixth interim fee applicaiton. | 0.30 | 550.00 | 165.00 |

|  |  |  | Total Hours: |  | 7.60 |
|---|---|---|---|---|---|
|  |  |  | **Total Fees:** |  | **$2,144.00** |

**Timekeeper Summary**

| Timekeeper | Hours | Rate | Value Billed |
|---|---|---|---|
| W. Freeman | 0.80 | $540.00 | $432.00 |
| C. A. Barbarosh | 0.30 | 550.00 | 165.00 |
| P. L. Breeden | 5.20 | 185.00 | 962.00 |
| M. D. Houle | 1.30 | 450.00 | 585.00 |
| **Total:** | **7.60** |  | **$2,144.00** |

**Pillsbury Winthrop Shaw Pittman** LLP

Client No. 044845
Matter No. 0000018
Jorge. A. del Calvo

November 1, 2006
Invoice No. 7309937
Page 83

---

**Disbursements Incurred**

| Date | Type | Description | Amount |
|------|------|-------------|--------|
| 06/28/06 | Reproductions | Summary | $674.88 |
| | | **Total Disbursements:** | **$674.88** |

---

**Disbursement Summary**

| Type | Amount |
|------|--------|
| Reproductions | 674.88 |
| **Total:** | **$674.88** |

**Total Due For Matter 0000018:**     **$2,818.88**

## Pillsbury Winthrop Shaw Pittman LLP

Client No. 044845
Matter No. 0000020
Jorge. A. del Calvo

November 1, 2006
Invoice No. 7309937
Page 84

---

**SEC Compliance**

For Professional Services Rendered And Disbursements Incurred Through August 23, 2006

| Name | Date | Service | Hours | Rate | Amount |
|------|------|---------|-------|------|--------|
| H. E. Mayon | 04/11/06 | Draft Form 8-K for filing with the Securities and Exchange Commission. | 0.30 | 365.00 | $109.50 |
| H. E. Mayon | 05/05/06 | Draft Form 8-K for monthly operating report; coordinate with financial printer. | 0.40 | 365.00 | 146.00 |
| H. E. Mayon | 06/14/06 | Draft 8-K; coordinate with financial printer for filing. | 0.40 | 365.00 | 146.00 |
| H. E. Mayon | 06/20/06 | File Form 8-K with Securities and Exchange Commission. | 0.30 | 365.00 | 109.50 |
| H. E. Mayon | 07/13/06 | Draft Form 8-K for monthly operating report. | 0.30 | 365.00 | 109.50 |
| H. E. Mayon | 07/14/06 | Draft Form 8-K; coordinate filing with financial printer. | 0.40 | 365.00 | 146.00 |
| H. E. Mayon | 07/17/06 | Coordinate filing of Form 8-K with the Securities and Exchange Commission. | 0.30 | 365.00 | 109.50 |
| H. E. Mayon | 08/08/06 | Draft Form 8-K for filing with Securities and Exchange Commission. | 0.30 | 400.00 | 120.00 |
| H. E. Mayon | 08/09/06 | Review Form 8-K for filing with the Securities and Exchange Commission. | 0.30 | 400.00 | 120.00 |

Total Hours: 3.00
**Total Fees:** **$1,116.00**

---

**Timekeeper Summary**

| Timekeeper | Hours | Rate | Value Billed |
|------------|-------|------|--------------|
| H. E. Mayon | 2.40 | $365.00 | $876.00 |
| H. E. Mayon | 0.60 | 400.00 | 240.00 |
| **Total:** | **3.00** | | **$1,116.00** |

**Total Due For Matter 0000020:**          **$1,116.00**

## Pillsbury Winthrop Shaw Pittman LLP

Client No. 044845
Matter No. 0000027
Jorge. A. del Calvo

November 1, 2006
Invoice No. 7309937
Page 85

### VIA/S3 Litigation

For Professional Services Rendered And Disbursements Incurred Through August 23, 2006

| Name | Date | Service | Hours | Rate | Amount |
|------|------|---------|-------|------|--------|
| T. V. Loran | 04/01/06 | Review email regarding Intel comments regarding settlement agreement. | 0.20 | 550.00 | $110.00 |
| W. Freeman | 04/10/06 | Review and revised settlement agreement with VIA/Intel. | 0.80 | 540.00 | 432.00 |
| A. J. Boro, Jr. | 04/10/06 | Review settlement agreement revisions proposed by VIA and analyze same, and draft further revisions to settlement agreement. | 2.80 | 500.00 | 1,400.00 |
| A. J. Boro, Jr. | 04/10/06 | Analyze issues in transfer of patents and other intellectual property of SONICblue as part of settlement with VIA. | 0.80 | 500.00 | 400.00 |
| J. A. Catz | 04/10/06 | Prepare for and have call with D. Gershon regarding patent schedules for settlement. | 1.00 | 365.00 | 365.00 |
| C. A. Barbarosh | 04/11/06 | Review and analyze revised settlement agreement. | 1.00 | 550.00 | 550.00 |
| M. S. Walker | 04/11/06 | Review and comment on proposed VIA settlement agreements as it relates to substantive consolidation and priority issues. | 0.80 | 465.00 | 372.00 |
| A. J. Boro, Jr. | 04/11/06 | Review status of work on schedules for transfer of intellectual property as part of settlement of VIA adversary proceedings. | 0.10 | 500.00 | 50.00 |
| C. A. Barbarosh | 04/12/06 | Review and analyze proposed revisions to Via settlement agreement. | 0.30 | 550.00 | 165.00 |
| W. Freeman | 04/17/06 | Participate in conference call with Rankin & Gorbstein to analyze substantive consolidation. | 0.50 | 540.00 | 270.00 |
| M. S. Walker | 04/17/06 | Call with A. Boro to revise changes in settlement agreement. | 0.40 | 465.00 | 186.00 |
| A. J. Boro, Jr. | 04/17/06 | Review and revise terms on definitions and releases in draft settlement agreement with VIA. | 0.80 | 500.00 | 400.00 |
| A. J. Boro, Jr. | 04/17/06 | Review materials on proposed assignment of patents as part of VIA settlement. | 0.10 | 500.00 | 50.00 |
| J. A. Catz | 04/17/06 | Review patent schedule to Amended Investment Agreement for settlement schedules and follow up calls to D. Gershon. | 0.80 | 365.00 | 292.00 |
| M. D. Houle | 04/18/06 | Analysis regarding remaining patents for VIA settlement. | 0.80 | 450.00 | 360.00 |
| A. J. Boro, Jr. | 04/18/06 | Telephone conference with H. Kevane, attorney for VIA, regarding status of settlement discussions and pending issues in identifying | 0.20 | 500.00 | 100.00 |

**Pillsbury Winthrop Shaw Pittman** LLP

Client No. 044845

Matter No. 0000027

Jorge. A. del Calvo

November 1, 2006

Invoice No. 7309937

Page 86

| Name | Date | Service | Hours | Rate | Amount |
|------|------|---------|-------|------|--------|
| | | intellectual property that is to be transferred to JV as part of settlement. | | | |
| J. A. Catz | 04/18/06 | Locate copies of patents previously sold through sources identified by D. Gershon. | 2.00 | 365.00 | 730.00 |
| T. V. Loran | 04/19/06 | Voicemail message from A. Boro regarding review of settlement draft. | 0.10 | 550.00 | 55.00 |
| J. A. Catz | 04/19/06 | Locate copies of patents previously sold through sources identified by D. Gershon. | 1.00 | 365.00 | 365.00 |
| T. V. Loran | 04/20/06 | Review A. Boro's draft settlement agreement. | 0.60 | 550.00 | 330.00 |
| A. J. Boro, Jr. | 04/21/06 | Review and revise proposed terms of settlement agreement with VIA and S3 Graphics on SONICblue's duties to locate and transfer intellectual property of the former Graphics Chip Business to S3 Graphics, and send email to clients and S. Uhland of O'Melveny & Myers regarding proposed changes to draft settlement agreement. | 1.00 | 500.00 | 500.00 |
| A. J. Boro, Jr. | 04/21/06 | Send emails to counsel for VIA and S3 Graphics regarding extension of discovery deadlines in adversary case pending execution of settlement documents. | 0.20 | 500.00 | 100.00 |
| T. V. Loran | 04/21/06 | Request extension of mutual discovery deadlines. | 0.20 | 550.00 | 110.00 |
| T. V. Loran | 04/21/06 | Revise settlement draft and analyze changes with A. Boro. | 0.60 | 550.00 | 330.00 |
| T. V. Loran | 04/24/06 | Review email regarding further revisions to settlement. | 0.10 | 550.00 | 55.00 |
| A. J. Boro, Jr. | 04/24/06 | Analyze remaining issues to finalize settlement documents and review comments of client on settlement with VIA. | 0.30 | 500.00 | 150.00 |
| M. S. Walker | 04/25/06 | Review, analyze and comment on additional changes to settlement agreement. | 0.30 | 465.00 | 139.50 |
| T. V. Loran | 04/25/06 | Review redraft of settlement agreement. | 0.20 | 550.00 | 110.00 |
| A. J. Boro, Jr. | 04/25/06 | Participate in telephone conference with S. Uhland, D. Eberhart, and A. Barron of O'Melveny & Myers to discuss possible revisions to SONICblue settlement documents and strategies for finalizing settlement. | 0.80 | 500.00 | 400.00 |
| A. J. Boro, Jr. | 04/25/06 | Review proposed edits by A. Barron of O'Melveny & Myers to SONICblue settlement documents. | 0.30 | 500.00 | 150.00 |
| M. D. Houle | 04/25/06 | Analysis regarding itemized intellectual property list for VIA/Intel settlement. | 1.60 | 450.00 | 720.00 |

## Pillsbury Winthrop Shaw Pittman LLP

Client No. 044845                                                        November 1, 2006
Matter No. 0000027                                                    Invoice No. 7309937
Jorge. A. del Calvo                                                            Page 87

| Name | Date | Service | Hours | Rate | Amount |
|------|------|---------|-------|------|--------|
| A. J. Boro, Jr. | 04/26/06 | Review and make further revisions to proposed settlement agreement with VIA and S3 Graphics, and send suggested edits to S. Uhland and A. Barron of O'Melveny & Myers. | 1.10 | 500.00 | 550.00 |
| M. D. Houle | 04/27/06 | Analysis regarding list of intellectual property for VIA/Intel settlement. | 0.60 | 450.00 | 270.00 |
| W. Freeman | 04/27/06 | Review revised Settlement Agreement including redlined comments. | 1.30 | 540.00 | 702.00 |
| M. W. Visconti | 04/27/06 | Draft comparison of patents listed on Schedule 1 to the Draft Assignment of Patents, Applications and Disclosures to those appearing on Schedule 3.14(a)(ii) to the 8/28/00 Amended and Restated Investment Agreement. | 2.00 | 140.00 | 280.00 |
| M. W. Visconti | 04/27/06 | Verify that no patents previously sold are listed on Schedule 1 to the Draft Assignment of Patents, Applications and Disclosures. | 0.50 | 140.00 | 70.00 |
| T. V. Loran | 04/27/06 | Review settlement draft; develop client responses to comments regarding same. | 0.60 | 550.00 | 330.00 |
| C. A. Barbarosh | 04/28/06 | Review and analyze revised version of Intel settlement agreement. | 1.00 | 550.00 | 550.00 |
| W. Freeman | 05/04/06 | Meeting with M. Smith to discuss claims and VIA. | 0.40 | 540.00 | 216.00 |
| M. W. Visconti | 05/04/06 | Update comparison of patents listed on Schedule 1 to the Draft Assignment of Patents, Applications and Disclosures. | 0.40 | 140.00 | 56.00 |
| T. V. Loran | 05/04/06 | Telephone conversation with A. Boro regarding calling creditors, looming expiration of plan exclusivity deadlines, status of Intel negotiations. | 0.20 | 550.00 | 110.00 |
| A. J. Boro, Jr. | 05/04/06 | Review proposed revisions to settlement agreement of adversary proceeding and revise same. | 0.70 | 500.00 | 350.00 |
| A. J. Boro, Jr. | 05/04/06 | Participate in joint defense telephone conference with M. Walker and creditors' counsel on status of settlement negotiations and preparation of Plan of Distribution. | 0.50 | 500.00 | 250.00 |
| A. J. Boro, Jr. | 05/04/06 | Draft email to S. Uhland and A. Barron of O'Melveny and Myers and Tom Loran regarding revisions to settlement agreement with VIA. | 0.20 | 500.00 | 100.00 |
| T. V. Loran | 05/05/06 | Organize key client files. | 0.20 | 550.00 | 110.00 |
| A. J. Boro, Jr. | 05/08/06 | Review proposed patent transfer documents | 2.40 | 500.00 | 1,200.00 |

## Pillsbury Winthrop Shaw Pittman LLP

Client No. 044845
Matter No. 0000027
Jorge. A. del Calvo

November 1, 2006
Invoice No. 7309937
Page 88

| Name | Date | Service | Hours | Rate | Amount |
|------|------|---------|-------|------|--------|
| | | from VIA and patents and analyze steps for transferring other intellectual property previously promised to VIA as part of formation of Joint Venture and analyze work needed on intellectual property transfer as part of settlement. | | | |
| A. J. Boro, Jr. | 05/08/06 | Telephone conference with D. Gershon of SONICblue and J. Catz regarding transfer of SONIC patents and intellectual property files to VIA. | 0.60 | 500.00 | 300.00 |
| T. V. Loran | 05/08/06 | Review email regarding deadline for filing Case Management Conference Statement. | 0.10 | 550.00 | 55.00 |
| T. V. Loran | 05/08/06 | Review email regarding Intel settlement draft comments. | 0.10 | 550.00 | 55.00 |
| J. A. Catz | 05/08/06 | Draft and revise patent comparison document for review by D. Gershon, draft email to D. Gershon and confer with A. Boro. | 5.50 | 365.00 | 2,007.50 |
| J. A. Catz | 05/08/06 | Prepare for meeting with A. Boro regarding settlements issues, confer with A. Boro and D. Gershon regarding settlement issues and follow up with D. Gershon. | 4.00 | 365.00 | 1,460.00 |
| T. V. Loran | 05/09/06 | Review email from A. Boro attaching latest version of settlement agreement and review same. | 0.20 | 550.00 | 110.00 |
| A. J. Boro, Jr. | 05/10/06 | Consult with patent attorney J. Karceski regarding issues with and possible revisions to make to VIA's proposed patent transfer documents. | 0.50 | 500.00 | 250.00 |
| A. J. Boro, Jr. | 05/10/06 | Analyze differences in multiple drafts of settlement agreement and draft revised provisions. | 2.60 | 500.00 | 1,300.00 |
| G. A. Lombardi | 05/10/06 | Telephone conference with J. Catz regarding assets sold in modem transaction and review files related to same. | 0.50 | 550.00 | 275.00 |
| T. V. Loran | 05/10/06 | Evaluate competing settlement drafts; conference with A. Boro regarding same. | 0.60 | 550.00 | 330.00 |
| J. D. Karceski | 05/11/06 | Review the materials forwarded by Mr. A. Boro and confer with Mr. A. Boro to provide input regarding the Patent Assignment. | 1.10 | 445.00 | 489.50 |
| T. V. Loran | 05/11/06 | Review and reply to D. Gershon email regarding document review. | 0.20 | 550.00 | 110.00 |
| A. J. Boro, Jr. | 05/12/06 | Review and analyze most recent changes to settlement agreement for adversary | 1.00 | 500.00 | 500.00 |

## Pillsbury Winthrop Shaw Pittman LLP

Client No. 044845
Matter No. 0000027
Jorge. A. del Calvo

November 1, 2006
Invoice No. 7309937
Page 89

| Name | Date | Service | Hours | Rate | Amount |
|------|------|---------|-------|------|--------|
| A. J. Boro, Jr. | 05/12/06 | proceedings, and review revised draft circulated to parties and incorporating all comments, and make further changes to same. Telephone conference with S. Uhland of O'Melveny & Myers to review changes in draft settlement agreement, and to make further revisions to same. | 0.90 | 500.00 | 450.00 |
| A. J. Boro, Jr. | 05/12/06 | Review email of D. Gershon on search for Graphics Chip Business intellectual property as part of settlement with VIA, and analyze further steps to be taken. | 0.70 | 500.00 | 350.00 |
| T. V. Loran | 05/12/06 | Review A. Boro email regarding revisions to draft settlement agreement. | 0.10 | 550.00 | 55.00 |
| C. A. Barbarosh | 05/15/06 | Review and analyze stipulation regarding amended briefing schedule for Intel motion. | 0.10 | 550.00 | 55.00 |
| C. A. Barbarosh | 05/15/06 | Update regarding Intel settlement. | 0.10 | 550.00 | 55.00 |
| W. Freeman | 05/15/06 | Telephone conference with R. Bender regarding status of Intel/VIA negotiations. | 0.40 | 540.00 | 216.00 |
| T. V. Loran | 05/15/06 | Review emails regarding settlement agreement revisions. | 0.20 | 550.00 | 110.00 |
| A. J. Boro, Jr. | 05/15/06 | Analyze issues on patent transfers to VIA and further work needed to finalize same. | 0.30 | 500.00 | 150.00 |
| A. J. Boro, Jr. | 05/15/06 | Draft joint Case Management Conference statement. | 0.30 | 500.00 | 150.00 |
| T. V. Loran | 05/16/06 | Evaluate Via's proposed revisions to 3-way settlement agreement. | 0.60 | 550.00 | 330.00 |
| M. P. Ellis | 05/16/06 | Review case management conference statement and file same with court. | 0.20 | 420.00 | 84.00 |
| A. J. Boro, Jr. | 05/16/06 | Revise draft joint Case Management Statement and send email to counsel for VIA and S3 Graphics regarding issues in same, and prepare same for filing with Court. | 0.90 | 500.00 | 450.00 |
| A. J. Boro, Jr. | 05/16/06 | Review draft settlement documents and analyze open issues to finalize settlement documents. | 1.00 | 500.00 | 500.00 |
| A. J. Boro, Jr. | 05/16/06 | Review differences between VIA's proposed Schedule of patents to transfer and Schedule 3.14 of Amended and Restated Merger Agreement, and next steps to be taken to resolve same. | 0.80 | 500.00 | 400.00 |
| J. A. Catz | 05/16/06 | Prepare for call with D. Gershon, review patent documents with D. Gershon and discuss status of his document collection and review in support of settlement with D. Gershon. | 1.50 | 365.00 | 547.50 |

## Pillsbury Winthrop Shaw Pittman LLP

Client No. 044845                                                      November 1, 2006
Matter No. 0000027                                                Invoice No. 7309937
Jorge. A. del Calvo                                                         Page 90

| Name | Date | Service | Hours | Rate | Amount |
|------|------|---------|-------|------|--------|
| W. Freeman | 05/17/06 | Review latest version of proposed settlement documentation. | 1.20 | 540.00 | 648.00 |
| T. V. Loran | 05/17/06 | Schedule Court Call for May 23 Case Management Conference. | 0.10 | 550.00 | 55.00 |
| M. W. Visconti | 05/17/06 | Review comparison of Samsung Agreement and Schedule 1 to the Draft Assignment of Patents, Applications and Disclosures. | 0.50 | 140.00 | 70.00 |
| J. A. Catz | 05/17/06 | Analyzing proposed patent transfer and drafting charts to provide to VIA commenting on proposed patent transfers identifying documents for review by D. Gershon and teleconference with M. Powers regarding SONICblue documents for D. Gershon's review. | 5.50 | 365.00 | 2,007.50 |
| A. J. Boro, Jr. | 05/18/06 | Research issues on 7-3/4% senior debenture note and exchange emails with A. Barron of O'Melveny & Myers regarding same. | 0.40 | 500.00 | 200.00 |
| T. V. Loran | 05/22/06 | Review email regarding settlement negotiations, documentation. | 0.10 | 550.00 | 55.00 |
| A. J. Boro, Jr. | 05/23/06 | Participate in telephonic Case Management Conference  Status Conference with VIA concerning adversary proceeding. | 0.50 | 500.00 | 250.00 |
| A. J. Boro, Jr. | 05/23/06 | Exchange emails with S. Uhland of O'Melveny & Myers regarding further settlement negotiations. | 0.20 | 500.00 | 100.00 |
| T. V. Loran | 05/23/06 | Evaluate parties' competing drafts for settlement agreement in preparation for meeting. | 1.20 | 550.00 | 660.00 |
| A. J. Boro, Jr. | 05/24/06 | Analyze issues for upcoming settlement negotiations with VIA. | 0.20 | 500.00 | 100.00 |
| M. W. Visconti | 05/25/06 | Update and file research, document production and settlement negotiation files and documents, prepare on-site boxes for review by D. Gershon and prepare working and pleading files. | 2.50 | 140.00 | 350.00 |
| T. V. Loran | 05/25/06 | Review A. Boro email regarding June 1 settlement meeting. | 0.10 | 550.00 | 55.00 |
| A. J. Boro, Jr. | 05/25/06 | Analyze preparation needed for upcoming settlement negotiations. | 0.10 | 500.00 | 50.00 |
| M. W. Visconti | 05/26/06 | Set up documents for review by D. Gershon. | 1.00 | 140.00 | 140.00 |
| T. V. Loran | 05/30/06 | Prepare for settlement conference (June 1). | 0.40 | 550.00 | 220.00 |
| M. S. Walker | 05/30/06 | Email to A. Boro regarding possible settlement strategy. | 0.10 | 465.00 | 46.50 |
| A. J. Boro, Jr. | 05/30/06 | Review prior settlement drafts to prepare for | 0.40 | 500.00 | 200.00 |

## Pillsbury Winthrop Shaw Pittman LLP

Client No. 044845
Matter No. 0000027
Jorge. A. del Calvo

November 1, 2006
Invoice No. 7309937
Page 91

| Name | Date | Service | Hours | Rate | Amount |
|------|------|---------|-------|------|--------|
| | | settlement meeting with VIA. | | | |
| J. A. Catz | 05/31/06 | Assist A. Boro in preparation for settlement meeting, review IP documents proposed for assignment to VIA, confer with M. Visconti regarding documents necessary for VIA settlement and identify documents reviewed by D. Gershon. | 6.00 | 365.00 | 2,190.00 |
| T. V. Loran | 05/31/06 | Prepare for settlement meeting (June 1). | 0.60 | 550.00 | 330.00 |
| M. W. Visconti | 05/31/06 | Update research files and adversary proceeding files. | 1.00 | 140.00 | 140.00 |
| A. J. Boro, Jr. | 05/31/06 | Prepare for upcoming settlement conference with VIA and review documents relating to issues involving releases, intellectual property, and claim allowed VIA. | 1.10 | 500.00 | 550.00 |
| A. J. Boro, Jr. | 05/31/06 | Analyze scope of intellectual property files that would be turned over to S3 Graphics. | 0.20 | 500.00 | 100.00 |
| A. J. Boro, Jr. | 05/31/06 | Review lists of discrepancies between VIA requests for patents of Graphics Chip business and those listed in January 2001 Amended Investment Agreement, and revise schedules describing issues with VIA's request for patents and draft email memo to H. Kevane, A. Moore, and L. Orton, counsel for VIA and S3 Graphics, discussing analysis of (1) patents requested by VIA as part of settlement, (2) information needed from VIA to substantiate patent assignment request, and (3) changes to assignment documents, and prepare emails to M. Smith and D. Gershon of SONICblue updating them on same. | 4.20 | 500.00 | 2,100.00 |
| M. S. Walker | 06/01/06 | Advise A. Boro regarding Via settlement issues relating to substantive consolidation. | 1.00 | 465.00 | 465.00 |
| A. J. Boro, Jr. | 06/01/06 | Attend settlement negotiations with attorneys and business people for VIA, S3 Graphics, and Intel with S. Uhland, D. Eberhart, and A. Barron of O'Melveny & Myers and T. Loran. | 5.30 | 500.00 | 2,650.00 |
| A. J. Boro, Jr. | 06/01/06 | Exchange emails with M. Smith of SONICblue regarding patent transfer issues and settlement timing. | 0.20 | 500.00 | 100.00 |
| T. V. Loran | 06/01/06 | Revise draft settlement agreement. | 1.60 | 550.00 | 880.00 |
| T. V. Loran | 06/02/06 | Prepare for face-to-face settlement negotiations this week. | 0.30 | 550.00 | 165.00 |
| A. J. Boro, Jr. | 06/05/06 | Research lists of SONICblue boxes held in | 0.60 | 500.00 | 300.00 |

**Pillsbury Winthrop Shaw Pittman** LLP

Client No. 044845
Matter No. 0000027
Jorge. A. del Calvo

November 1, 2006
Invoice No. 7309937
Page 92

| Name | Date | Service | Hours | Rate | Amount |
|------|------|---------|-------|------|--------|
| | | warehouses for possible Graphics Chip Business intellectual property files as part of settlement with VIA, and determine further work needed to identify intellectual property files, and send email to H. Kevane, counsel for VIA discussing same. | | | |
| T. V. Loran | 06/05/06 | Review A. Boro email regarding face-to-face settlement meeting (June 8). | 0.10 | 550.00 | 55.00 |
| M. W. Visconti | 06/06/06 | Compile list of reviewed documents in preparation for settlement meeting and locate additional files of substantive materials. | 1.70 | 140.00 | 238.00 |
| T. V. Loran | 06/06/06 | Review A. Boro email regarding June 8 conference regarding settlement documents. | 0.10 | 550.00 | 55.00 |
| A. J. Boro, Jr. | 06/07/06 | Review reports on searches for Graphics Chip Business intellectual property files and analyze work product to assemble for responding to VIA's request for files as part of settlement, including licensing agreements and data tapes. | 1.30 | 500.00 | 650.00 |
| A. J. Boro, Jr. | 06/07/06 | Review emails from D. Gershon of SONICblue regarding search for Graphics Chip Business intellectual property files. | 0.30 | 500.00 | 150.00 |
| M. W. Visconti | 06/08/06 | Draft index of reviewed, responsive and non-responsive documents and boxes; prepare responsive documents for review by VIA. | 3.50 | 140.00 | 490.00 |
| T. V. Loran | 06/08/06 | Appear at Gibson (SF) to negotiate final settlement documents. | 0.80 | 550.00 | 440.00 |
| J. A. Catz | 06/08/06 | Draft report assessing documents reviewed by D. Gershon; review of documents identified by D. Gershon as relevant to graphics chip business. | 5.50 | 365.00 | 2,007.50 |
| A. J. Boro, Jr. | 06/08/06 | Review spreadsheets summarizing potential Graphics Chip Business intellectual property files, and analyze further research needed on same, and prepare for discussion of same with VIA's counsel at settlement meeting. | 2.00 | 500.00 | 1,000.00 |
| A. J. Boro, Jr. | 06/08/06 | Review revised draft settlement agreement with VIA and S3 Graphics and analyze open issues in settlement discussions to prepare for settlement meeting. | 0.50 | 500.00 | 250.00 |
| M. W. Visconti | 06/09/06 | Prepare trademark and patent files for review by VIA. | 2.00 | 140.00 | 280.00 |
| J. A. Catz | 06/09/06 | Review documents identified by D. Gershon as relevant to graphics chip business. | 6.00 | 365.00 | 2,190.00 |

## Pillsbury Winthrop Shaw Pittman LLP

Client No. 044845                                                                November 1, 2006
Matter No. 0000027                                                           Invoice No. 7309937
Jorge. A. del Calvo                                                                      Page 93

| Name | Date | Service | Hours | Rate | Amount |
|------|------|---------|-------|------|--------|
| A. J. Boro, Jr. | 06/09/06 | Attend three-way settlement meeting among VIA, S-3 Graphics, Intel and SONICblue, and analyze open issues on VIA's claims and transfer of Graphics Chip Business intellectual property as part of settlement. | 4.10 | 500.00 | 2,050.00 |
| T. V. Loran | 06/12/06 | Telephone call with A. Boro regarding VIA negotiations regarding intellectual property records. | 0.20 | 550.00 | 110.00 |
| T. V. Loran | 06/12/06 | Review VIA proposal regarding proposed intellectual property record protocols. | 0.20 | 550.00 | 110.00 |
| M. W. Visconti | 06/12/06 | Prepare trademark and patent files for review by VIA. | 4.50 | 140.00 | 630.00 |
| J. A. Catz | 06/12/06 | Review documents identified by D. Gershon as relevant to graphics chip business. | 10.00 | 365.00 | 3,650.00 |
| A. J. Boro, Jr. | 06/12/06 | Make arrangements for VIA/S3 Graphics review of Graphics Chip Business. | 0.20 | 500.00 | 100.00 |
| A. J. Boro, Jr. | 06/12/06 | Review and analyze list of SONICblue executory contracts. | 0.30 | 500.00 | 150.00 |
| A. J. Boro, Jr. | 06/12/06 | Telephone conference with S. Wan of VIA regarding transfer of Intellectual Property. | 0.30 | 500.00 | 150.00 |
| M. W. Visconti | 06/13/06 | Review privileged and non-privileged trademark and patent files in preparation for review by VIA. | 3.70 | 140.00 | 518.00 |
| J. A. Catz | 06/13/06 | Review documents identified by D. Gershon as relevant to graphics chip business and review Pillsbury legal files relevant to the graphics chip business for post settlement transfer to VIA. | 8.50 | 365.00 | 3,102.50 |
| A. J. Boro, Jr. | 06/13/06 | Review issues on transfer of trademark files to VIA as part of settlement. | 0.30 | 500.00 | 150.00 |
| A. J. Boro, Jr. | 06/13/06 | Review list of SONICblue executory contracts. | 0.10 | 500.00 | 50.00 |
| A. J. Boro, Jr. | 06/13/06 | Exchange emails with S. Wan of VIA and attorney H. Kevane regarding patent assignments to VIA as part of settlement with SONICblue and send email to clients M. Smith and D. Gershon regarding same. | 0.40 | 500.00 | 200.00 |
| A. J. Boro, Jr. | 06/14/06 | Review and revise list of SONICblue boxes stored in warehouses relating to IP files to be transferred to VIA and joint Venture as part of settlement, and draft email to S. Wan of VIA and VIA attorney H. Kevane discussing IP file review and privilege issues. | 2.80 | 500.00 | 1,400.00 |
| M. W. Visconti | 06/14/06 | Review privileged and non-privileged | 3.60 | 140.00 | 504.00 |

## Pillsbury Winthrop Shaw Pittman LLP

Client No. 044845
Matter No. 0000027
Jorge. A. del Calvo

November 1, 2006
Invoice No. 7309937
Page 94

| Name | Date | Service | Hours | Rate | Amount |
|------|------|---------|-------|------|--------|
| | | trademark and patent files in preparation for review by VIA. | | | |
| J. A. Catz | 06/14/06 | Review documents identified by D. Gershon as relevant to graphics chip business; review Pillsbury legal files relevant to the graphics chip business for post settlement transfer to VIA; revise and edit chart detailing file review for VIA. | 9.50 | 365.00 | 3,467.50 |
| T. V. Loran | 06/14/06 | Review email from D. Gershon regarding document review and trademark assignment. | 0.10 | 550.00 | 55.00 |
| A. J. Boro, Jr. | 06/15/06 | Revise email memo to VIA in-house counsel S. Wan, VIA counsel H. Kevane and S3 Graphics counsel L. Orton regarding review of SONICblue IP files as part of VIA settlement. | 0.80 | 500.00 | 400.00 |
| A. J. Boro, Jr. | 06/15/06 | Meet with VIA in-house counsel S. Wan and J. Catz to discuss transfer of Graphics Chip Business IP files as part of settlement with VIA and Joint Venture and review of same and appropriate IP transfer documentation. | 1.00 | 500.00 | 500.00 |
| A. J. Boro, Jr. | 06/15/06 | Analyze open issues on transfer of Graphics Chip Business patents and review materials from S. Wan of VIA regarding same. | 0.70 | 500.00 | 350.00 |
| M. W. Visconti | 06/15/06 | Set-up documents for review by VIA and assist with and supervise patent and trademark review. | 5.50 | 140.00 | 770.00 |
| T. V. Loran | 06/15/06 | Review drafts of settlement agreement. | 0.20 | 550.00 | 110.00 |
| J. A. Catz | 06/15/06 | Meet with S. Wan and oversee his document review, analyze VIA's response to PWSP comments to patent transfer documents and analyze and identify additional boxes for review. | 8.00 | 365.00 | 2,920.00 |
| A. J. Boro, Jr. | 06/16/06 | Prepare for settlement meeting and review status of IP file review for transfer to VIA and S-3 Graphics. | 0.40 | 500.00 | 200.00 |
| A. J. Boro, Jr. | 06/16/06 | Attend three-way settlement meeting with attorneys for VIA, S3 Graphics, Intel and S. Uhland and A. Baron of O'Melveny & Myers. | 3.00 | 500.00 | 1,500.00 |
| M. S. Walker | 06/16/06 | Email to A. Boro regarding settlement agreement language. | 0.20 | 465.00 | 93.00 |
| J. A. Catz | 06/16/06 | Meet with S. Wan regarding documents for post-settlement transfer to VIA. | 3.50 | 365.00 | 1,277.50 |
| C. A. Barbarosh | 06/19/06 | Review and analyze stipulation regarding amended briefing schedule for relief from stay. | 0.10 | 550.00 | 55.00 |

## Pillsbury Winthrop Shaw Pittman LLP

Client No. 044845
Matter No. 0000027
Jorge. A. del Calvo

November 1, 2006
Invoice No. 7309937
Page 95

| Name | Date | Service | Hours | Rate | Amount |
|------|------|---------|-------|------|--------|
| M. W. Visconti | 06/21/06 | Draft schedule of selected nondisclosure agreements selected by VIA upon review. | 3.00 | 140.00 | 420.00 |
| T. V. Loran | 06/21/06 | Telephone call with A. Boro regarding settlement negotiations. | 0.20 | 550.00 | 110.00 |
| A. J. Boro, Jr. | 06/26/06 | Review lists of Nondisclosure Agreements. | 0.10 | 500.00 | 50.00 |
| A. J. Boro, Jr. | 06/29/06 | Review information on Nondisclosure Agreements identified by VIA as requested for transfer as part of settlement. | 0.20 | 500.00 | 100.00 |
| A. J. Boro, Jr. | 06/29/06 | Review email and document from VIA attorney S. Wan regarding proposed power of attorney for SONICblue Trademarks. | 0.20 | 500.00 | 100.00 |
| R. B. Burlingame | 06/30/06 | Review correspondence and proposed Power of Attorney from VIA Telecom regarding EU trademark renewals, check status and details of registrations and correspondence with EU associate regarding proposed renewals. | 1.50 | 425.00 | 637.50 |
| A. J. Boro, Jr. | 06/30/06 | Review edits from trademark attorney B. Burlingame on VIA's proposed power of attorney for European trademarks, and discuss legal issues on same with him. | 0.30 | 500.00 | 150.00 |
| A. J. Boro, Jr. | 06/30/06 | Analyze issues in VIA's request for power of attorney on European trademarks and draft email memo to M. Smith and D. Gershon of SONICblue regarding same. | 1.00 | 500.00 | 500.00 |
| P. L. Cotton | 06/30/06 | Telephone calls with B. Burlingame regarding trademark issues for remaining active trademarks of SONICBLUE. | 0.50 | 440.00 | 220.00 |
| P. L. Cotton | 06/30/06 | Investigate status of same and most recent instructions regarding trademarks from D. Gershon. | 0.50 | 440.00 | 220.00 |
| P. L. Cotton | 07/03/06 | Review files regarding status of various Sonicblue trademark registrations for S3 marks. | 0.75 | 440.00 | 330.00 |
| R. B. Burlingame | 07/03/06 | Review and revise draft Trademark Assignment from VIA's counsel, draft report regarding schedule of marks and correspondence with EU associate regarding proposed trademark renewals. | 1.50 | 425.00 | 637.50 |
| P. L. Cotton | 07/03/06 | Prepare email to A. Boro regarding same. | 0.25 | 440.00 | 110.00 |
| P. L. Cotton | 07/03/06 | Prepare trademark status report per request of A. Boro. | 1.00 | 440.00 | 440.00 |
| D. Hodgkinson | 07/04/06 | Phone OHIM to discuss requirements for filing Trademark Renewal and email B Burlingame. | 0.30 | 150.00 | 45.00 |
| A. J. Boro, Jr. | 07/05/06 | Analyze work needed to preserve SONICblue | 0.20 | 500.00 | 100.00 |

**Pillsbury Winthrop Shaw Pittman** LLP

Client No. 044845
Matter No. 0000027
Jorge. A. del Calvo

November 1, 2006
Invoice No. 7309937
Page 96

| Name | Date | Service | Hours | Rate | Amount |
|------|------|---------|-------|------|--------|
| | | S3 trademarks in European Union and review email from D. Gershon. | | | |
| R. B. Burlingame | 07/05/06 | Correspondence with EU associate regarding proposed renewal of EU trademark registrations. | 0.25 | 425.00 | 106.25 |
| A. J. Boro, Jr. | 07/06/06 | Review status of efforts to locate Graphics Chip Business intellectual property files for VIA and Joint Venture, and further work needed on trademark files. | 0.20 | 500.00 | 100.00 |
| M. W. Visconti | 07/07/06 | Search and cross-reference the schedule of patent disclosures with Schedule 1 to the Assignment of Patents and selected list of patents for transfer. | 4.00 | 140.00 | 560.00 |
| R. B. Burlingame | 07/07/06 | Correspondence with EU associate regarding proceeding with filing name change and renewals of EU trademark registrations for S3 and S3D ON BOARD marks. | 0.75 | 425.00 | 318.75 |
| A. J. Boro, Jr. | 07/07/06 | Review status of search for Graphics Chip Business intellectual property files. | 0.30 | 500.00 | 150.00 |
| A. J. Boro, Jr. | 07/07/06 | Review prior drafts of settlement agreement with VIA and draft language addressing transfer of Graphics Chip Business patents and trademarks. | 0.80 | 500.00 | 400.00 |
| A. J. Boro, Jr. | 07/07/06 | Telephone conference with M. Smith of SONICblue regarding renewal of SONICblue trademarks being transferred to Joint Venture as part of settlement, and status of settlement negotiations. | 0.20 | 500.00 | 100.00 |
| A. J. Boro, Jr. | 07/07/06 | Analyze issues over access to SONICblue documents by VIA and Intel as part of settlement and obligations in draft settlement agreement on preserving confidential information and producing documents in response to future subpoenas. | 0.50 | 500.00 | 250.00 |
| J. A. Catz | 07/07/06 | Review 15 patent boxes for documentation requested by S. Wan. | 3.80 | 365.00 | 1,387.00 |
| A. J. Boro, Jr. | 07/10/06 | Analyze open issues on settlement. | 0.30 | 500.00 | 150.00 |
| M. S. Walker | 07/10/06 | Analyze proposed revisions to "bankruptcy successor" definition for settlement agreement. | 0.30 | 465.00 | 139.50 |
| T. V. Loran | 07/10/06 | Review and clarify section of settlement agreement relating to (a) intellectual property assignment, (b) release language, and (c) O'Melveney confidentiality agreement | 0.60 | 550.00 | 330.00 |

## Pillsbury Winthrop Shaw Pittman LLP

Client No. 044845

Matter No. 0000027

Jorge. A. del Calvo

November 1, 2006

Invoice No. 7309937

Page 97

| Name | Date | Service | Hours | Rate | Amount |
|------|------|---------|-------|------|--------|
| J. A. Catz | 07/10/06 | Review patent boxes for documentation requested by S. Wan; review licensing boxes for specific agreements requested by S. Wan. | 3.50 | 365.00 | 1,277.50 |
| R. B. Burlingame | 07/11/06 | Correspondence with EU associate regarding renewals filed for "S3 device" and "S3D ON BOARD device" trademark registrations. | 0.50 | 425.00 | 212.50 |
| D. Hodgkinson | 07/11/06 | Prepare and file 2 OHIM CTM trademark renewals for S3 and S3D ON BOARD, and email copies B Burlingame. | 0.70 | 150.00 | 105.00 |
| A. J. Boro, Jr. | 07/11/06 | Telephone conference with S. Uhland and A. Barron of O'Melveny & Myers regarding (1) remaining settlement issues, (2) disclosure plan and (3) confidential information held by debtor. | 0.40 | 500.00 | 200.00 |
| R. B. Burlingame | 07/12/06 | Correspondence with EU associate regarding recording change of owner name for "S3 device" and "S3D ON BOARD device" trademark registrations. | 0.25 | 425.00 | 106.25 |
| J. A. Catz | 07/12/06 | Select documentation for review by D. Gershon; teleconference with D. Gershon regarding VIA documentation requests; call with S. Wan. | 1.80 | 365.00 | 657.00 |
| A. J. Boro, Jr. | 07/13/06 | Review emails on status of renewal of S3 Trademarks requested by VIA in settlement, and prepare email report on same to VIA's attorneys S. Wan and H. Kevane. | 0.40 | 500.00 | 200.00 |
| A. J. Boro, Jr. | 07/13/06 | Review and revise settlement agreement language. | 0.50 | 500.00 | 250.00 |
| A. J. Boro, Jr. | 07/13/06 | Review status of transfer of intellectual property files for VIA. | 0.30 | 500.00 | 150.00 |
| R. B. Burlingame | 07/13/06 | Check status of EU trademark renewals and owner name change for "S3 device" and "S3D ON BOARD device" registrations. | 0.50 | 425.00 | 212.50 |
| T. V. Loran | 07/13/06 | Telephone call with A. Boro regarding status of latest settlement agreement draft and evaluate VIA's requested mechanism for resolving handling of data tapes, employee records and patent and trademark records. | 0.30 | 550.00 | 165.00 |
| J. A. Catz | 07/14/06 | Review patent documents in preparation for conference with S. Wan; telephone conference with S. Wan regarding licensing and patent documents. | 2.50 | 365.00 | 912.50 |
| A. J. Boro, Jr. | 07/17/06 | Analyze open issues in transfer of Graphics Chip Business intellectual property to VIA and | 2.00 | 500.00 | 1,000.00 |

## Pillsbury Winthrop Shaw Pittman LLP

Client No. 044845
Matter No. 0000027
Jorge. A. del Calvo

November 1, 2006
Invoice No. 7309937
Page 98

| Name | Date | Service | Hours | Rate | Amount |
|------|------|---------|-------|------|--------|
| | | the Joint Venture pursuant to the settlement agreement, and cost-effective measures for accomplishing the locating of intellectual property files, licenses, and data tapes. | | | |
| A. J. Boro, Jr. | 07/17/06 | Review and analyze proposed Trademark Assignment agreement from VIA and comments of trademark counsel. | 0.50 | 500.00 | 250.00 |
| A. J. Boro, Jr. | 07/17/06 | Revise settlement agreement terms relating to SONICblue's transfer of Graphics Chip Business intellectual property. | 1.70 | 500.00 | 850.00 |
| J. A. Catz | 07/17/06 | Analyze box of patent disclosures for relevancy to the graphics chip business; revise chart presenting potentially relevant patent disclosures; email disclosure list to D. Gershon. | 2.00 | 365.00 | 730.00 |
| A. J. Boro, Jr. | 07/18/06 | Review and revise discussion of VIA adversary proceeding and potential settlement for Disclosure Plan. | 0.50 | 500.00 | 250.00 |
| D. Hodgkinson | 07/19/06 | Receive notification of payment by OHIM and update records accordingly. | 0.10 | 150.00 | 15.00 |
| T. V. Loran | 07/20/06 | Respond to A. Boro voicemail regarding settlement strategy. | 0.10 | 550.00 | 55.00 |
| M. P. Ellis | 07/20/06 | Draft stipulation and proposed order to continue hearing; send to A. Boro for review. | 0.80 | 420.00 | 336.00 |
| A. J. Boro, Jr. | 07/20/06 | Analyze options for upcoming CMC conference and review Judge M. Morgan's standing order, and review and revise draft Stipulation and Proposed Order to continue CMC. | 0.40 | 500.00 | 200.00 |
| A. J. Boro, Jr. | 07/20/06 | Analyze procedures for review of data tapes to determine if part of Graphics Chip Business and privilege issues. | 0.60 | 500.00 | 300.00 |
| A. J. Boro, Jr. | 07/20/06 | Review client emails on Graphic Chip Business licenses to be transferred to the Joint Venture as part of the settlement with VIA, and analyze open issues on same. | 0.40 | 500.00 | 200.00 |
| J. A. Catz | 07/20/06 | Teleconference with S. Wan regarding remaining patent and licensing document issues. | 1.50 | 365.00 | 547.50 |
| M. P. Ellis | 07/21/06 | Finalize stipulation and order and file same with court regarding July 27 case management conference statement. | 0.50 | 420.00 | 210.00 |
| A. J. Boro, Jr. | 07/21/06 | Review schedules on patents and patent disclosures and open issues with VIA regarding | 0.70 | 500.00 | 350.00 |

## Pillsbury Winthrop Shaw Pittman LLP

Client No. 044845
Matter No. 0000027
Jorge. A. del Calvo

November 1, 2006
Invoice No. 7309937
Page 99

| Name | Date | Service | Hours | Rate | Amount |
|------|------|---------|-------|------|--------|
| | | same, and revise emails to VIA attorney S. Wan on patent disclosures and patent application to be transferred to VIA as part of settlement. | | | |
| A. J. Boro, Jr. | 07/21/06 | Review and analyze VIA requests on Graphics Chip Business intellectual property files, data tapes, licenses and patent disclosures. | 0.80 | 500.00 | 400.00 |
| A. J. Boro, Jr. | 07/21/06 | Revise draft Stipulation and prepare email to counsel for VIA and Joint Venture requesting their agreement to Stipulation, and exchange emails with VIA attorneys H. Kevane and A. Moore regarding same. | 0.60 | 500.00 | 300.00 |
| A. J. Boro, Jr. | 07/21/06 | Draft proposed exhibits to settlement agreement on Graphics Chip Business intellectual property. | 0.50 | 500.00 | 250.00 |
| A. J. Boro, Jr. | 07/21/06 | Telephone conference with VIA attorney A. Moore regarding Stipulation to take CMC off calendar. | 0.10 | 500.00 | 50.00 |
| A. J. Boro, Jr. | 07/21/06 | Telephone conference with S3 Graphics attorney L. Orton regarding Stipulation to take CMC off calendar. | 0.10 | 500.00 | 50.00 |
| T. V. Loran | 07/21/06 | Review stipulation to continue case management conference (July 27). | 0.10 | 550.00 | 55.00 |
| T. V. Loran | 07/21/06 | Analyze proposed final revisions to settlement agreement; evaluate strategy for discharging debtor's IP transfer obligation to VIA. | 0.50 | 550.00 | 275.00 |
| J. A. Catz | 07/21/06 | Review patent transfer documentation; revise chart tracking remaining issues for patent transfer authorization; call to S. Wan; emails to S. Wan. | 1.80 | 365.00 | 657.00 |
| M. P. Ellis | 07/24/06 | Revise proposed order approving stipulation per court's instruction that will not take hearing of calendar; file same with court. | 0.20 | 420.00 | 84.00 |
| A. J. Boro, Jr. | 07/24/06 | Review Order from Court on proposed continuance of CMC or removal from calendar, and review revised Order and prepare email to counsel for VIA and S3 Graphics regarding revised order. | 0.40 | 500.00 | 200.00 |
| A. J. Boro, Jr. | 07/24/06 | Analyze VIA request for continued access to SONICblue documents after effective date of settlement, and consider possible alternatives to address same, and analyze further work that could be done to identify and transfer | 1.80 | 500.00 | 900.00 |

## Pillsbury Winthrop Shaw Pittman LLP

Client No. 044845
Matter No. 0000027
Jorge. A. del Calvo

November 1, 2006
Invoice No. 7309937
Page 100

| Name | Date | Service | Hours | Rate | Amount |
|------|------|---------|-------|------|--------|
| | | intellectual property files at the Effective Date in lieu of VIA proposal. | | | |
| A. J. Boro, Jr. | 07/24/06 | Draft and revise settlement agreement provisions to address intellectual property issues. | 1.20 | 500.00 | 600.00 |
| M. P. Ellis | 07/26/06 | Call to Court regarding status conference; advise opposing counsel regarding continuance. | 0.20 | 420.00 | 84.00 |
| T. V. Loran | 07/26/06 | Review A. Boro email regarding settlement. | 0.10 | 550.00 | 55.00 |
| A. J. Boro, Jr. | 07/27/06 | Revise settlement agreement provisions on transfer of Intellectual Property to VIA. | 1.30 | 500.00 | 650.00 |
| R. B. Burlingame | 07/28/06 | Correspondence with EU associate regarding S3 trademark renewals; review proposed trademark assignment documents from VIA. | 2.00 | 425.00 | 850.00 |
| A. J. Boro, Jr. | 07/28/06 | Analyze issues in settlement with VIA on availability of documents held by liquidating trustee and discuss with M. Walker possible provisions on document review procedures with a liquidating trustee. | 0.40 | 500.00 | 200.00 |
| A. J. Boro, Jr. | 07/28/06 | Analyze procedures for review of data tapes for possible transfer of same to Via, and draft summary of procedure for parties to utilize to complete review. | 1.20 | 500.00 | 600.00 |
| A. J. Boro, Jr. | 07/28/06 | Review and analyze draft patent transfer documents and trademark transfer documents and analyze further information needed from VIA. | 1.30 | 500.00 | 650.00 |
| A. J. Boro, Jr. | 07/28/06 | Draft and revise settlement agreement terms on transfer of Graphics Chip Business intellectual property. | 4.80 | 500.00 | 2,400.00 |
| A. J. Boro, Jr. | 07/28/06 | Draft emails to counsel for VIA, S3 Graphics and Intel discussing changes to provisions in settlement agreement on intellectual property transfer by SONICblue, and send consolidated draft settlement agreement reflecting latest changes to settlement agreement. | 0.50 | 500.00 | 250.00 |
| T. V. Loran | 07/28/06 | Revise section 5 of draft settlement agreement regarding IP procedures; conference with A. Boro regarding same. | 1.40 | 550.00 | 770.00 |
| T. V. Loran | 07/28/06 | Review email exchange between J. Catz and S. Wan (of VIA) regarding VIA document review. | 0.20 | 550.00 | 110.00 |
| C. A. Barbarosh | 07/28/06 | Review correspondence regarding status of Via litigation. | 0.10 | 550.00 | 55.00 |

**Pillsbury Winthrop Shaw Pittman** LLP

Client No. 044845
Matter No. 0000027
Jorge. A. del Calvo

November 1, 2006
Invoice No. 7309937
Page 101

| Name | Date | Service | Hours | Rate | Amount |
|------|------|---------|-------|------|--------|
| J. A. Catz | 07/28/06 | Telephone call with storage facility regarding history of data tape boxes; brief examination of data tape boxes at PWSP. | 0.50 | 365.00 | 182.50 |
| D. Hodgkinson | 07/30/06 | Compile current status file on S3 and S3D ON BOARD and email B Burlingame. | 0.50 | 150.00 | 75.00 |
| W. Freeman | 07/30/06 | Review and analyze most recent version of settlement documents and explanatory memorandums. | 2.30 | 540.00 | 1,242.00 |
| R. B. Burlingame | 07/31/06 | Correspondence with EU associate and VIA's counsel regarding renewals of S3 and S3D on BOARD filed and processed, and change of owner and representative filed and being processed. | 1.00 | 425.00 | 425.00 |
| W. Freeman | 07/31/06 | Prepare for conference call with all parties regarding VIA-Intel. | 0.80 | 540.00 | 432.00 |
| W. Freeman | 07/31/06 | Participate in all hands conference call regarding VIA negotiations. | 0.70 | 540.00 | 378.00 |
| A. J. Boro, Jr. | 07/31/06 | Analyze impact of filing Disclosure Statement on proposed settlement with VIA. | 0.30 | 500.00 | 150.00 |
| A. J. Boro, Jr. | 07/31/06 | Conference call with M Walker and T. Loran to discuss potential issues with disclosure of proposed VIA settlement terms in disclosure statement. | 0.30 | 500.00 | 150.00 |
| A. J. Boro, Jr. | 07/31/06 | Joint Defense conference call with A. Wells of Creditors Committee, S. Uhland and A. Barron of O'Melveny & Myers, and B. Freeman, M. Walker and T. Loran regarding issues with Disclosure Statement and VIA settlement. | 0.70 | 500.00 | 350.00 |
| A. J. Boro, Jr. | 07/31/06 | Telephone negotiations with VIA attorney H. Kevane and T. Loran regarding settlement agreement provisions on transfer of Graphics Chip Business intellectual property. | 0.50 | 500.00 | 250.00 |
| A. J. Boro, Jr. | 07/31/06 | Analyze comments of VIA counsel H. Kevane and further changes to make to settlement provision on transfer of Graphics Chip Business intellectual property. | 0.60 | 500.00 | 300.00 |
| A. J. Boro, Jr. | 07/31/06 | Analyze transfer of trademark and patent files to VIA and Joint Venture as part of settlement and further work needed on same. | 0.60 | 500.00 | 300.00 |
| A. J. Boro, Jr. | 07/31/06 | Draft and revise email report to client on status of settlement with VIA and S3 Graphics and recommended further steps, and exchange emails with M. Smith and D. Gershon of | 1.00 | 500.00 | 500.00 |

**Pillsbury Winthrop Shaw Pittman** LLP

Client No. 044845
Matter No. 0000027
Jorge. A. del Calvo

November 1, 2006
Invoice No. 7309937
Page 102

| Name | Date | Service | Hours | Rate | Amount |
|------|------|---------|-------|------|--------|
| | | SONICblue regarding same. | | | |
| A. J. Boro, Jr. | 07/31/06 | Review and analyze VIA information on patent disclosures and assignment of patents. | 0.30 | 500.00 | 150.00 |
| T. V. Loran | 07/31/06 | Telephone call with M. Walker and A. Boro in preparation for teleconference with creditors (July 31) regarding preliminary disclosure. | 0.30 | 550.00 | 165.00 |
| T. V. Loran | 07/31/06 | Telephone call with A. Boro, B. Freeman, O'Melveney attorneys and creditors' committee attorneys regarding preliminary distribution. | 0.70 | 550.00 | 385.00 |
| T. V. Loran | 07/31/06 | Telephone call with H. Kevane regarding finalizing settlement. | 0.50 | 550.00 | 275.00 |
| T. V. Loran | 07/31/06 | Review and revise email to D. Gershon and M. Smith regarding settlement strategy. | 0.30 | 550.00 | 165.00 |
| T. V. Loran | 07/31/06 | Review emails regarding settlement strategy from creditors. | 0.10 | 550.00 | 55.00 |
| T. V. Loran | 07/31/06 | Telephone call with A. Boro regarding advice to client. | 0.10 | 550.00 | 55.00 |
| T. V. Loran | 07/31/06 | Review M. Smith email response to advice. | 0.10 | 550.00 | 55.00 |
| T. V. Loran | 08/01/06 | Review A. Boro email regarding settlement meeting with attorneys on August 2 or August 3. | 0.10 | 550.00 | 55.00 |
| T. V. Loran | 08/02/06 | Prepare for conference with VIA attorneys (July 3) to finalize settlement. | 0.30 | 550.00 | 165.00 |
| A. J. Boro, Jr. | 08/02/06 | Review latest version of settlement agreement to prepare for further settlement meeting. | 0.30 | 500.00 | 150.00 |
| T. V. Loran | 08/03/06 | Prepare for and attend meeting with VIA attorneys, Intel attorneys and O'Melveney attorneys to finalize settlement language. | 2.90 | 550.00 | 1,595.00 |
| W. Freeman | 08/03/06 | Review and respond to e-mail regarding status of VIA/Intel negotiations. | 0.30 | 540.00 | 162.00 |
| W. Freeman | 08/03/06 | Review current documents regarding VIA/Intel settlement. | 1.70 | 540.00 | 918.00 |
| A. J. Boro, Jr. | 08/03/06 | Analyze VIA's position on transfer of Graphics Chip Business intellectual property and draft alternative settlement provisions. | 0.70 | 500.00 | 350.00 |
| A. J. Boro, Jr. | 08/03/06 | Attend settlement negotiation meeting with VIA attorney C. Bal, Intel attorney S. Johnson and Intel business people, and S. Uhland and B. Austin of O'Melveny & Myers and T. Loran to resolve final differences in settlement language. | 2.80 | 500.00 | 1,400.00 |
| W. Freeman | 08/04/06 | Review and respond to e-mail regarding current status of VIA/intel settlement and documentation. | 0.40 | 540.00 | 216.00 |

## Pillsbury Winthrop Shaw Pittman LLP

Client No. 044845
Matter No. 0000027
Jorge. A. del Calvo

November 1, 2006
Invoice No. 7309937
Page 103

| Name | Date | Service | Hours | Rate | Amount |
|---|---|---|---|---|---|
| C. A. Barbarosh | 08/04/06 | Review and analyze revised version of settlement agreement. | 0.60 | 550.00 | 330.00 |
| A. J. Boro, Jr. | 08/04/06 | Telephone conference with M. Walker regarding results of settlement meeting with VIA and effects on timing of filing of Disclosure Statement. | 0.20 | 500.00 | 100.00 |
| A. J. Boro, Jr. | 08/04/06 | Revise Settlement Agreement with VIA to reflect settlement negotiations on transfer of intellectual property and files of Graphics Chip Business. | 3.80 | 500.00 | 1,900.00 |
| T. V. Loran | 08/04/06 | Revise settlement IP transfer language. | 0.80 | 550.00 | 440.00 |
| T. V. Loran | 08/04/06 | Review emails exchanging new settlement drafts. | 0.20 | 550.00 | 110.00 |
| W. Freeman | 08/07/06 | Review and respond to S. Uhland e-mail regarding status of VIA/Intel negotiations and documentation. | 0.20 | 540.00 | 108.00 |
| A. J. Boro, Jr. | 08/07/06 | Review and analyze revised terms in Settlement Agreement on obligation of SONICblue and its bankruptcy successor to protect confidential information. | 0.30 | 500.00 | 150.00 |
| R. B. Burlingame | 08/08/06 | Correspondence with EU associate regarding EU Trademark Office's inquiry about SONICblue's address. | 0.25 | 440.00 | 110.00 |
| T. V. Loran | 08/08/06 | Review emails regarding August 9 teleconference. | 0.10 | 550.00 | 55.00 |
| C. A. Barbarosh | 08/08/06 | Update regarding settlement discussions with Intel and Via. | 0.20 | 550.00 | 110.00 |
| M. D. Houle | 08/08/06 | Analysis regarding potential O'Melvany conflict issue regarding via litigation. | 0.30 | 460.00 | 138.00 |
| D. Hodgkinson | 08/09/06 | Email OHIM to confirm SONICblue's address. | 0.10 | 150.00 | 15.00 |
| A. J. Boro, Jr. | 08/09/06 | Exchange voice messages for VIA attorney C. Bal regarding VIA position on revisions to settlement terms on transfer of Graphics Chip Business intellectual property. | 0.20 | 500.00 | 100.00 |
| A. J. Boro, Jr. | 08/09/06 | Analyze open issues on settlement and intellectual property transfer and possible impact on timing of filing the disclosure schedule. | 0.40 | 500.00 | 200.00 |
| A. J. Boro, Jr. | 08/09/06 | Participate in conference call with creditors and S. Uhland of O'Melveny & Myers regarding extension of time to file creditors claim. | 1.00 | 500.00 | 500.00 |
| T. V. Loran | 08/09/06 | Review emails regarding results of teleconference with creditors. | 0.20 | 550.00 | 110.00 |

## Pillsbury Winthrop Shaw Pittman LLP

Client No. 044845
Matter No. 0000027
Jorge. A. del Calvo

November 1, 2006
Invoice No. 7309937
Page 104

| Name | Date | Service | Hours | Rate | Amount |
|------|------|---------|-------|------|--------|
| D. Hodgkinson | 08/10/06 | Email OHIM Recordals Register notice that S3 and S3D ON BOARD transferred to SONICblue from S3 Inc. to B Burlingame, P Cotton, and CPI records database. | 0.10 | 150.00 | 15.00 |
| R. B. Burlingame | 08/10/06 | Review official notice from EU Trademark Office regarding owner change recorded for S3 and S3D ON BOARD registrations. | 0.25 | 440.00 | 110.00 |
| T. V. Loran | 08/10/06 | Review emails between defense group regarding timing of exclusivity. | 0.10 | 550.00 | 55.00 |
| A. J. Boro, Jr. | 08/11/06 | Review and analyze VIA requested changes on assignment of patent disclosures and inventions. | 0.30 | 500.00 | 150.00 |
| T. V. Loran | 08/11/06 | Review email regarding settlement negotiations timing. | 0.10 | 550.00 | 55.00 |
| A. J. Boro, Jr. | 08/15/06 | Exchange emails with A. Barron of O'Melveny & Myers regarding open issues on Settlement Agreement with Via. | 0.20 | 500.00 | 100.00 |
| P. L. Cotton | 08/16/06 | Review and respond to email from B. Burlingame regarding status of S3/SONICBLUE trademarks. | 0.25 | 440.00 | 110.00 |
| T. V. Loran | 08/21/06 | Review email regarding revisions to settlement agreement; evaluate same. | 0.30 | 550.00 | 165.00 |
| T. V. Loran | 08/22/06 | Review proposed changes to paragraph 5 of draft settlement agreement. | 0.60 | 550.00 | 330.00 |
| T. V. Loran | 08/22/06 | Telephone call with Via's attorney regarding proposed revisions to agreement. | 0.30 | 550.00 | 165.00 |

Total Hours: 292.10
**Total Fees:** **$118,769.75**

### Timekeeper Summary

| Timekeeper | Hours | Rate | Value Billed |
|------------|-------|------|--------------|
| A. J. Boro, Jr. | 96.00 | $500.00 | $48,000.00 |
| P. L. Cotton | 3.25 | 440.00 | 1,430.00 |
| G. A. Lombardi | 0.50 | 550.00 | 275.00 |
| T. V. Loran, III | 22.80 | 550.00 | 12,540.00 |
| W. Freeman | 11.00 | 540.00 | 5,940.00 |
| M. S. Walker | 3.10 | 465.00 | 1,441.50 |
| C. A. Barbarosh | 3.50 | 550.00 | 1,925.00 |
| J. D. Karceski | 1.10 | 445.00 | 489.50 |

## Pillsbury Winthrop Shaw Pittman LLP

Client No. 044845
Matter No. 0000027
Jorge. A. del Calvo

November 1, 2006
Invoice No. 7309937
Page 105

| Timekeeper | Hours | Rate | Value Billed |
|---|---|---|---|
| R. B. Burlingame | 8.25 | 425.00 | 3,506.25 |
| R. B. Burlingame | 0.50 | 440.00 | 220.00 |
| M. P. Ellis | 1.90 | 420.00 | 798.00 |
| M. D. Houle | 3.00 | 450.00 | 1,350.00 |
| M. D. Houle | 0.30 | 460.00 | 138.00 |
| J. A. Catz | 95.70 | 365.00 | 34,930.50 |
| M. W. Visconti | 39.40 | 140.00 | 5,516.00 |
| D. Hodgkinson | 1.80 | 150.00 | 270.00 |
| **Total:** | **292.10** | | **$118,769.75** |

**Disbursements Incurred**

| Date | Type | Description | Amount |
|---|---|---|---|
| 06/21/06 | Computer Research | Summary | $238.80 |
| 08/11/06 | Reproductions | Summary | 383.04 |
| 04/19/06 | Copy Service | VENDOR: Plaza Copy & Imaging; INVOICE#: X221486; DATE: 4/19/2006, Copy binders, 4/19/06, M. Houle | 259.60 |
| 07/11/06 | Patent/Trademark Fees | PAYEE: Office for Harmonisation for Internal Markets; REQUEST#: 448041; DATE: 7/11/06. Renewal fee | 2,146.40 |
| 07/11/06 | Patent/Trademark Fees | PAYEE: Office for Harmonisation for Internal Markets; REQUEST#: 448042; DATE: 7/11/06. Renewal fee | 2,146.40 |
| | | **Total Disbursements:** | **$5,174.24** |

**Disbursement Summary**

| Type | Amount |
|---|---|
| Computer Research | 238.80 |
| Copy Service | 259.60 |
| Patent/Trademark Fees | 4,292.80 |
| Reproductions | 383.04 |
| **Total:** | **$5,174.24** |

**Pillsbury Winthrop Shaw Pittman** LLP

Client No. 044845                                          November 1, 2006
Matter No. 0000027                                      Invoice No. 7309937
Jorge. A. del Calvo                                              Page 106

**Total Due For Matter 0000027:**     **$123,943.99**



Pillsbury
Winthrop
Shaw
Pittman LLP

Tax ID No. 94-1311126

Nancy G. Denison
Analyst
SONICblue, Inc. - Debtor-In-Possession
7 West 41st Avenue, #74
San Mateo, CA 94403

November 1, 2006
Invoice No. 7309937
Client No. 044845
Jorge A del Calvo
(650) 233-4500

---

# Remittance Advice

| Matter Number | Services | Disbursements | Balance Due |
|---|---|---|---|
| 0000004 | $589.00 | $0.00 | $589.00 |
| 0000007 | 2,509.00 | 0.00 | 2,509.00 |
| 0000008 | 10,493.50 | 461.25 | 10,954.75 |
| 0000009 | 50,425.50 | 881.75 | 51,307.25 |
| 0000010 | 26,838.50 | 862.59 | 27,701.09 |
| 0000011 | 6,883.25 | 0.00 | 6,883.25 |
| 0000012 | 6,826.00 | 105.07 | 6,931.07 |
| 0000015 | 7,700.00 | 18.01 | 7,718.01 |
| 0000017 | 144,310.75 | 1,815.64 | 146,126.39 |
| 0000018 | 2,144.00 | 674.88 | 2,818.88 |
| 0000020 | 1,116.00 | 0.00 | 1,116.00 |
| 0000024 | 2,916.50 | 0.00 | 2,916.50 |
| 0000027 | 118,769.75 | 5,174.24 | 123,943.99 |
| **Total This Invoice:** | **$381,521.75** | **$9,993.43** | **$391,515.18** |

PILLSBURY WINTHROP SHAW PITTMAN LLP
THOMAS V. LORAN III #95255
CRAIG A. BARBAROSH #160224
ALBERT J. BORO, JR. #126657
WILLIAM B. FREEMAN #137276
ANA N. DAMONTE # 215504
50 Fremont Street
San Francisco, CA 94105
Telephone: (415) 983-1000
Facsimile: (415) 983-1200
Attorneys for Debtors and Debtors-In-Possession

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE:<br><br>SONICBLUE INCORPORATED, a Delaware corporation, DIAMOND MULTIMEDIA SYSTEMS, INC., a Delaware corporation, REPLAYTV, INC., a Delaware corporation, and SENSORY SCIENCE CORPORATION, a Delaware corporation,<br><br>         Debtors and Debtors-in-Possession. | Case No. 03-51775<br><br>CHAPTER 11 Cases<br><br>(Case Nos. 03-51775 through 03-51778 MM) (Jointly Administered)<br><br>**DECLARATION OF NANCY B. RAPOPORT**<br><br>Hearing Date: March 19, 2007<br>Hearing Time: 10:30 a.m.<br>Location:      Courtroom 3070<br>                 280 South First Street<br>                 San Jose, CA 95113<br><br>Hon. Marilyn Morgan |

1    I, Nancy B. Rapoport, declare as follows:

2    **I.    Background Information**

3        A.    Statement of Assignment

4        1.    On February 23, 2007, I was engaged by Pillsbury Winthrop Shaw Pittman

5    LLP ("Pillsbury") to serve as an expert witness on its behalf in this case. I understand that

6    Pillsbury is counsel to SONICblue Incorporated and three of its subsidiaries, Diamond

7    Multimedia Systems, Inc., ReplayTV, Inc. and Sensory Science Corporation ("together,

8    SONICblue," "debtor," or "debtor-in-possession"). During the course of my engagement, I

9    have been asked to render an opinion as to Pillsbury's disclosure obligations related to its

10   initial appointment as counsel for the debtor under 11 U.S.C. § 327(a), as well as

11   Pillsbury's ongoing disclosure obligations pursuant to Bankruptcy Rule 2014.

12       B.    Qualifications

13       2.    I am a Professor of Law at the University of Houston Law Center, and

14   served as Dean and Professor of Law from July 2000 to May 2006. I am currently on

15   sabbatical from the University of Houston Law Center until summer 2007, when I will

16   leave the University of Houston to become the Gordon & Silver, Ltd. Professor of Law at

17   the William S. Boyd School of Law, University of Nevada, Las Vegas. A true and correct

18   copy of my resume is attached as Exhibit 1.

19       3.    Among my areas of expertise are bankruptcy ethics generally and conflicts

20   of interest in bankruptcy in particular. I have been a law professor since 1991, and taught

21   Bankruptcy, Chapter 11 Reorganization, Professional Responsibility, Contracts, Sales

22   (Article 2), Legal Writing, and Contract Drafting.

23       4.    Prior to my employment with the University of Houston, I was Dean and

24   Professor of Law at the University of Nebraska College of Law from 1998 to 2000, and

25   from 1991 to 1998 I held various academic positions (including Associate Dean for Student

26   Affairs and Professor) at The Ohio State University College of Law. Before my

27   employment with The Ohio State University, I practiced law (primarily bankruptcy law)

28   with Morrison & Foerster in San Francisco from 1986-1991.

5. I received a Bachelor of Arts degree, *summa cum laude*, from Rice University in 1982, and a Juris Doctor from Stanford Law School in 1985. From 1985 to 1986, I clerked for the Honorable Joseph T. Sneed on the United States Court of Appeals for the Ninth Circuit.

6. I was found qualified as an expert in the following proceedings, and testified as such. My expert testimony in each of these proceedings included testimony on issues relating to bankruptcy ethics.

   a. *In re Mirant Corporation*, Case No. 03-46590 (Bankr. N.D. Tex 2003), in which I was appointed as the Court's expert with respect to professional fees and as chair of a fee review committee from 2003 to 2006.

   b. *In re ACandS, Inc.,* Case No. 02-12687 (Bankr. Del. 2002), in which I testified as the debtor's expert.

   c. *In re Charles William Ewing*, Case No. 97-5, in which I testified in 1998 as an expert witness for the Office of Disciplinary Counsel before the Board of Commissioners on Grievances and Discipline of the Bar of the Supreme Court of Ohio.

7. My published works regarding bankruptcy ethics and other bankruptcy issues generally include, without limitation:

- *Bankruptcy Ethics Issues for Solos and Small Firms*, in ATTORNEY LIABILITY IN BANKRUPTCY (Corinne Cooper, ed. & Catherine E. Vance, contributing ed., ABA 2006) (solicited manuscript).

- *Enron and the New Disinterestedness-—The Foxes Are Guarding the Henhouse*, 13 AM. BANKR. INST. L. REV. 521 (2005) (solicited manuscript).

- *Recent Developments in Bankruptcy Law*, 35 TEXAS TECH. L. REV. 543 (2004) (solicited manuscript).

- Enron: Corporate Fiascos and Their Implications (Foundation Press 2004) (co-edited with Professor Bala G. Dharan of Rice University).

- *The Intractable Problem of Bankruptcy Ethics: Square Peg, Round Hole*, 30 HOFSTRA L. REV. 977 (2002) (ethics symposium).

- *Just When You Thought it Was Safe to Go Back in The Water: The Lasting Effect of State Disciplinary Proceedings For Bankruptcy Ethics Violations*, American Bankruptcy Institute, Winter Leadership Conference 2000.

- *Moral Bankruptcy: Modeling Appropriate Attorney Behavior in Bankruptcy Cases*, THE NEBRASKA LAWYER 14 (March 1999) (solicited manuscript).

3

- *The Need For New Bankruptcy Ethics Rules: How Can "One Size Fits All" Fit Anybody?*, 10 PROFESSIONAL LAWYER 20 (1998) (solicited manuscript).

- *Our House, Our Rules: The Need for a Uniform Code of Bankruptcy Ethics*, 6 AM. BANKR. INST. L. REV. 45 (1998) (solicited manuscript).

- *Has the DIP's Attorney Become the Ultimate Creditors' Lawyer in Bankruptcy Reorganization Proceedings?*, 5 AM. BANKR. INST. L. REV. 47 (1997) (symposium manuscript) (with co-author C.R. Bowles, Jr.).

- *Ethics: Is Disinterestedness Still a Viable Concept? A Roundtable Discussion*, 5 AM. BANKR. INST. L. REV. 201 (1997) (solicited transcript) (with co-panelists John D. Ayer, the Hon. Charles N. Clevert, the Hon. Joel Pelofsky & Bettina Whyte).

- *Turning the Microscope on Ourselves: Self-Assessment by Bankruptcy Lawyers of Potential Conflicts of Interest in Columbus, Ohio*, 58 OHIO ST. L.J. 1421 (1997).

- *Avoiding Judicial Wrath: The Ten Commandments for Bankruptcy Practitioners*, 5 J. BANKR. L. & PRAC. 615 (September/October 1996) (solicited manuscript).

- *Seeing the Forest and The Trees: The Proper Role of the Bankruptcy Attorney*, 70 IND. L.J. 783 (1995).

- *Wrestling with the Problem of Potential Conflicts of Interest in Bankruptcy*, 26 BANKRUPTCY COURT DECISIONS WEEKLY NEWS AND COMMENT (LRP Publications), March 7, 1995, at A3 (solicited editorial).

- *Worth Reading: Review of Annual Survey of Bankruptcy Law*, TURNAROUNDS AND WORKOUTS (Beard Group, Inc.), January 15, 1995, at 6 (solicited book review).

- *Turning and Turning in the Widening Gyre: The Problem of Potential Conflicts of Interest in Bankruptcy*, 26 CONN. L. REV. 913 (1994).

- *Duties of Officers and Directors of a Debtor Corporation, in* COLLIER ON BANKRUPTCY (15th ed. Revised) (work in progress).

8.    My academic presentations regarding bankruptcy ethics and other

bankruptcy issues include, without limitation:

- Adjunct professor, St. John's University School of Law, LL.M. in Bankruptcy Program (Enron seminar) & invited speaker, St. John's University School of Law Faculty, *Enron: Is It Still Relevant?* (March 2006 & March-April 2007).

- Invited panelist, *Current Bankruptcy Ethics Issues: It's Not That You Ought To! It's That You "Got To!,"* National Conference of Bankruptcy Judges (October 2004).

- Invited panelist, *Ethics, Governance, and Bankruptcy After Enron,* 4th Annual Barry L. Zaretsky Roundtable, Brooklyn Law School (April 2003).

4

1

- Invited speaker, *Teaching Bankruptcy as a Vehicle for Teaching Other Values,* AALS Bankruptcy Workshop, St. Louis, Missouri (May 2001).

2

3

- Invited speaker, *Disinterestedness and the Chapter 11 Professional,* National Conference of Bankruptcy Judges, Annual Meeting (October 1997).

4

5

- Invited faculty member, *Bankruptcy Issues,* Eastern District of Pennsylvania Bankruptcy Conference (January 1996, January 1997, January 1998, and January 1999).

6    9.    My continuing legal education and other professional presentations relating

7  to bankruptcy ethics and other bankruptcy issues include, without limitation:

8

9

10

- Invited speaker (with Martin Bienenstock), *Conflicts Writ Large: Intercreditor Issues and Issues with Fees and Overbilling,* 25th Anniversary Jay L. Westbrook Bankruptcy Conference, University of Texas CLE (November 2006).

11

- Invited panelist, *Bankruptcy Ethics,* Commercial Law League of America, Annual Meeting (April 2003).

12

13

- Invited speaker, *Images of Judges in Movies,* College for New Judges, Texas Center for the Judiciary (December 2002 & November 2003).

14

15

- Invited speaker, *Debtor Wrongdoing: Ethical Implications for Lawyers*, The University of Texas School of Law CLE:  The 21st Annual Bankruptcy Conference & Personal Injury Conference (November 2002).

16

17

- Invited panelist, *A Look Inside the Mega-Case*, 10th Annual Southwest Bankruptcy Conference, American Bankruptcy Institute (September 2002).

18

19

- Invited speaker, *Conflicts, Ethical Duties and Independence: Lessons from Enron*, The University of Texas School of Law CLE:  The 24th Annual Corporate Counsel Institute (August 2002).

20

21

22

- Invited speaker, *Bankruptcy Ethics—How Do We Find Out What We're Doing Wrong (Or Right)?,* 20th Annual Bankruptcy Conference, University of Texas Law School (November 2001).

23

24

- Invited speaker, *Bankruptcy Ethics—How Do We Find Out What We're Doing Wrong (Or Right)?,* 20th Annual Bankruptcy Conference, University of Texas Law School (November 2001).

25

26

- Invited panelist, *Bankruptcy Ethics,* Winter Leadership Conference, American Bankruptcy Institute (December 2000).

27

28

5

1    C.    Compensation

2    10.    I am being compensated at my normal hourly rate of $750 for my work on

3  this assignment. In addition, Pillsbury is reimbursing my expenses.

4    D.    Summary of Factual Background

5    11.    I understand, from conversations with attorneys at Pillsbury and from my

6  own review of certain documents, that in April 2002 SONICblue issued 7-3/4% Secured

7  Senior Subordinated Convertible Debentures Due 2005 (the "Debentures") to three

8  investors: Portside Growth & Opportunity Fund, Smithfield Fiduciary LLC and Citadel

9  Equity Fund Ltd. (the "Senior Noteholders"). The Debentures were issued pursuant to a

10  Securities Purchase Agreement dated as of April 21, 2002 (the "Purchase Agreement"), an

11  Indenture dated as of April 22, 2002 (the "Indenture"), and other related agreements.

12    12.    I further understand that Pillsbury, acting as counsel to SONICblue in

13  connection with the issuance of the Debentures, issued an opinion letter in April 2002 (the

14  "Opinion Letter") to the Senior Noteholders, attesting that SONICblue had the requisite

15  corporate power and authority to execute and deliver the Purchase Agreement, the

16  Indenture, and related instruments, and that SONICblue had duly authorized the issuance

17  and sale of the Debentures.

18    13.    I additionally understand that, on March 21, 2003, SONICblue filed a

19  voluntary petition for bankruptcy in this Court under Chapter 11 of the United States

20  Bankruptcy Code. I further understand that Pillsbury, having served as corporate and

21  litigation counsel to SONICblue since 1989, was appointed by this Court as bankruptcy

22  counsel to SONICblue in April 2003 pursuant to 11 U.S.C. § 327(a).

23    14.    I am informed by Pillsbury that one of the issues presently before the Court

24  is the sufficiency of Pillsbury's disclosures in its April 2003 application for employment as

25  bankruptcy counsel; in particular, whether Pillsbury had either a general or specific

26  obligation to disclose that it had issued the Opinion Letter in connection with the

27  Debentures.

28

6

1    15.    I am further informed by Pillsbury that another issue before the Court

2    concerns the effect of Pillsbury's failure in 2006 to update its Bankruptcy Rule 2014

3    statement in light of the allegations about the Opinion Letter.

4    16.    In preparing my opinions, I have reviewed, without limitation, the following

5    (as well as other background materials in this case):

6    - "7-3/4% Secured Senior Subordinated Convertible Debentures Due 2005,"
     issued by SONICblue in April 2002.

7

8    - Pillsbury's April 3, 2003 "Application for Order Pursuant to Bankruptcy
     Code section 327(a) Authorizing the Employment of Pillsbury Winthrop
9    LLP as General Insolvency Counsel to the Debtors," including the
     Declaration of Craig A. Barbarosh attached thereto.

10

11   - The September 5, 2006 letter from the Senior Noteholders' counsel,
     Hennigan, Bennett & Dorman LLP, to Pillsbury on the claim under the April
12   2002 Opinion Letter; the April 2002 Opinion Letter; and Pillsbury's
     February 8, 2007 reply to Hennigan, Bennett & Dorman LLP.

13

14   - "Disclosure Statement Describing Liquidating Plan of Reorganization Dated
     as of December 15, 2006 Proposed Jointly by Debtors and Creditors'
15   Committee."

16   - Riverside Contracting, LLC's and Riverside Claims, LLC's "Objection to
     Joint Disclosure Statement," dated January 11, 2007.

17

18   - Riverside Contracting, LLC's and Riverside Claims, LLC's "Supplemental
     Objection to Joint Disclosure Statement," dated January 22, 2007.

19

20   - Argo Partners, Inc.'s "Objection to Proposed Disclosure Statement Dated
     January 18, 2007," dated January 22, 2007.

21   - "Disclosure Statement Describing First Amended Liquidating Plan of
     Reorganization Dated as of January 18, 2007 Proposed Jointly by Debtors
22   and Creditors' Committee."

23   - "Submission of Redlined Version of Disclosure Statement Describing First
     Amended Liquidating Plan of Reorganization Dated as of January 18, 2007
24   Proposed Jointly by Debtors and Creditors' Committee," dated January 18,
25   2007.

26   - "Debtors' and Creditors' Committee's Response to Riverside's Objection to
     Disclosure Statement Describing Liquidating Plan of Reorganization
27

28

7

Proposed Jointly by Debtors and Creditors' Committee," dated January 19, 2007.

- Transcript of January 23, 2007 hearing before this Court on approval of disclosure statement filed jointly by debtor and the Official Unsecured Creditors Committee.

- The Preliminary Status Report by counsel to the Creditors' Committee dated February 12, 2007; SONICblue Claims, LLC's February 13, 2007 Response to the Preliminary Status Report; and the February 14, 2007 Reply by counsel to the Creditors' Committee to SONICblue Claims, LLC's Response to the Preliminary Status Report.

- The United States Trustee's Motion for Appointment of a Chapter 11 Trustee or, in the alternative, an Examiner, dated February 15, 2007.

- Transcript of February 15, 2007 proceedings before this Court re "(a) Motion for Authority to Disclose Confidential Information to Persons Who Are Not Parties to the Via/Intel Confidentiality Agreement by the Official Committee of Creditors Holding Unsecured Claims; and (b) Response by Via Technologies, Inc.

- The United States Trustee's Motion to Disqualify Pillsbury, dated February 20, 2007; SONICblue Claims, LLC's joinder in the United States Trustee's motion to disqualify Pillsbury, dated March 2, 2007.

- The United States Trustee's Amended Motion for Appointment of a Chapter 11 Trustee," dated February 27, 2007.

- SONICblue Claims, LLC's Motion to Convert to Chapter 7, dated February 27, 2007.

## II.    Opinions

### A.    Pillsbury's Disclosures in Connection with its Application for Employment

17.    Paragraph 3 of the Declaration of Craig A. Barbarosh attached to Pillsbury's April 3, 2003 "Application for Order Pursuant to Bankruptcy Code section 327(a) Authorizing the Employment of Pillsbury Winthrop LLP as General Insolvency Counsel to the Debtors" (the "Application") states, in pertinent part:

The Firm has been engaged as the debtors' corporate and litigation counsel since approximately 1989. During this time, the Firm has provided legal representation to the debtors in a variety of areas, including corporate and

8

securities matters, mergers and acquisitions, litigation, and intellectual property matters.

18.    During the course of my career, I have seen hundreds of section 327(a) applications for approval of employment of professionals representing debtors-in-possession. Many of these section 327(a) applications were, like Pillsbury's, submitted by law firms that had acted as the debtor's outside general counsel prior to the petition date. In my experience, Pillsbury's Application comports with standards of professional conduct concerning the basic level of disclosure for professionals seeking to represent a debtor-in-possession. Furthermore, I cannot recall seeing a section 327(a) application that describes the pre-petition work of debtor's counsel in more elaborate detail by describing each individual matter performed for the debtor pre-petition.

19.    The purpose of listing, in a section 327(a) application for employment, all of the relevant work that a professional has performed prior to the bankruptcy is to enable the Bankruptcy Court to determine whether the professional is qualified to serve as counsel for the debtor-in-possession. Section 327(a) applications for employment traditionally list by category – rather than by individual matter – the pertinent work that the applicant has performed. In addition, there are significant time constraints in every Chapter 11 case with respect to first-day motions, such as a section 327(a) application for employment.

20.    As relevant here, enumerating each and every pre-bankruptcy matter on which Pillsbury had worked for SONICblue since 1989 would have been a classic case of "overkill." Such an approach would create a danger of burying truly significant information amidst unnecessary detail. More specifically, although opinion letters are often provided by Company counsel in connection with corporate financing transactions, applicable standards of professional conduct do not mandate their disclosure in a section 327(a) application for employment.

21.    Typical of the hundreds of section 327(a) applications for employment I have seen throughout my career is the section 327(a) application submitted to the United

9

1   States Bankruptcy Court for the Southern District of New York on September 14, 2005 by

2   Davis Polk & Wardwell ("DPW"), attorneys for debtor-in-possession Delta Air Lines, Inc.

3   ("Delta").   An excerpt of the declaration in support of DPW's application is attached hereto

4   at Exhibit 2.  In language comparable to Pillsbury's, the declaration in support of DPW's

5   section 327(a) application describes – by category only – the pre-petition work that DPW

6   had performed for Delta.  See Exhibit 2, Declaration of John Fouhy, at ¶ 7, stating in

7   pertinent part:

8        DPW has rendered legal services to the Debtor since 1983.  During that
         time, DPW has played a significant role in advising the Debtors concerning
9        a wide range of matters, including aircraft leasing, credit and capital markets
         transactions, mergers and acquisitions and litigation.
10

11       22.     I would expect that DPW's pre-petition work for Delta, as so described,

12  would include the issuance of legal opinions.  My expectation is confirmed by a Delta

13  prospectus supplement dated March 30, 1993 (excerpt attached hereto at Exhibit 3), which

14  states at p. 31, under "Legal Matters," that "[u]nless otherwise indicated in the applicable

15  Prospectus Statement, legality of the Pass Through Certificates offered hereby will be

16  passed upon for Delta by Davis Polk & Wardwell . . . ."

17       23.     Also typical of the section 327(a) applications I have seen is the section

18  327(a) application submitted to the United States Bankruptcy Court for the Southern

19  District of New York on March 17, 2006 by Shearman & Sterling LLP ("Shearman &

20  Sterling"), attorneys for debtor-in-possession Oneida Ltd. ("Oneida").   An excerpt of the

21  affidavit in support of Shearman & Sterling's application is attached hereto at Exhibit 4.

22  The affidavit in support of Shearman & Sterling's section 327(a) application likewise

23  describes – by category only – the pre-petition work that Shearman & Sterling had

24  performed for Oneida.  See Exhibit 4, Affidavit of Douglas P. Bartner, at ¶ 6, stating in

25  pertinent part:

26       Shearman & Sterling has had an ongoing relationship with the Debtors since
         the early part of the twentieth century.  During the course of this
27       relationship, Shearman & Sterling has represented the Debtors across a
         broad range of practice areas, including mergers and acquisitions, litigation,
28

10

1  corporate reorganization, capital markets, bank finance, tax, executive
2  compensation and employee benefits and property.

3      24.    I would further expect that Shearman & Sterling's pre-petition work for
4  Oneida, as so described, would include the issuance of legal opinions.  My expectation is
5  confirmed by an Oneida Amended and Restated Note Agreement dated January 1, 1992.
6  See Exhibit 5 attached hereto, setting forth at "Exhibit B" the "opinion of Shearman &
7  Sterling, counsel for the Company" concerning the sale of the Notes.  It is further
8  confirmed by an October 30, 1998 Shearman & Sterling opinion letter concerning a Form
9  S-8 registration statement filed with the Securities and Exchange Commission relating to
10 common stock to be issued under certain of Oneida's stock option plans.  See Exhibit 6
11 attached hereto.

12     25.    A further typical example of the section 327(a) applications I have seen is
13 the section 327(a) application submitted to the United States Bankruptcy Court for the
14 Northern District of Illinois on January 22, 2002 by Skadden, Arps, Slate, Meagher & Flom
15 ("Skadden"), attorneys for debtor-in-possession Kmart Corporation ("Kmart").  An excerpt
16 of the affidavit in support of Skadden's application is attached hereto at Exhibit 7.  The
17 affidavit in support of Skadden's section 327(a) application likewise describes – by
18 category only – the pre-petition work that Skadden had performed for Kmart.  See Exhibit
19 7, Affidavit of John Wm. Butler, Jr. at ¶ 3, stating in pertinent part:

20     Previously, Skadden, Arps has performed legal work for the Debtors in
       connection with certain corporate, financing, litigation, restructuring,
21     securities, tax and other significant matters since 1988.

22     26.    I would further expect that Skadden's pre-petition work for Kmart, as so
23 described, would include the issuance of legal opinions.  My expectation is confirmed by a
24 Kmart prospectus supplement dated June 10, 1996 (excerpt attached hereto at Exhibit 8),
25 which states at p. S-86, under "Legal Matters," that "[T]he validity of [the securities,
26 debentures, and related matters and certain federal income tax matters] will be passed upon
27 for Kmart and Kmart financing by Skadden, Arps, Slate, Meagher & Flom . . . ."

28

11

1    27.    The Application filed by Pillsbury, and the DPW, Shearman & Sterling, and

2    Skadden applications discussed above, are typical of the section 327(a) applications I have

3    seen. They describe work done for clients of the applicant law firm that may be creditors of

4    the debtor or may otherwise affect the law firm's disinterestedness under 11 U.S.C. §

5    101(14). It is important for an applicant law firm to identify such client relationships

6    because those relationships may give rise to conflicts of interest under state rules governing

7    professional responsibilities and because of the requirements of 11 U.S.C. § 327(a)

8    regarding the employment of professionals.

9    28.    An exception to the general rule of listing work performed by category in a

10   section 327(a) application occurs when the professional has reason to know particular

11   circumstances of which the Court should be aware in order to rule on the professional's

12   application. In my view, the Opinion Letter did not present such a circumstance. It did not

13   affirmatively represent that the Debentures would somehow be unaffected by a bankruptcy

14   of SONICblue, and Pillsbury could not reasonably have anticipated that the Senior

15   Noteholders would draw such an inference from the wording of the bankruptcy proviso in

16   the Opinion Letter.

17   29.    Thus, in my opinion, nothing in the Opinion Letter would have triggered a

18   particular duty for Pillsbury to have disclosed its work on the Opinion Letter when

19   submitting the Application.

20   30.    My opinion is buttressed by the fact that when the Application was filed,

21   none of the parties in interest inquired of Pillsbury about the scope of its corporate

22   representation of SONICblue. Had any of the parties in interest been aware of any

23   allegations regarding the Opinion Letter at the time that Pillsbury submitted its Application,

24   I would have expected that any such party would have filed an objection to the Application.

25   I am not aware of any objections to the Application.

26

27

28

12

B.     The Effect of Pillsbury's Failure to Update its Rule 2014 Statement

31.     Bankruptcy Rule 2014 statements are part of the process of advising the Court and parties in interest of any connections that would render ineligible a professional's continuing employment by the debtor-in-possession.

32.     There are two rationales underlying the requirement that an updated Rule 2014 statement must be filed with the Court: (1) the Court and the United States Trustee must be promptly apprised of any potentially disqualifying events; and (2) any other parties in interest must also be promptly apprised of any potentially disqualifying events.

33.     In its original Bankruptcy Rule 2014 filing and in all supplements thereto, Pillsbury represented that "as it discovers additional information requiring disclosure, [it] will promptly supplement [its] application with any appropriate disclosures." Pillsbury should have updated its Rule 2014 statement to advise the Court of the Senior Noteholders' assertion of a claim against Pillsbury based on the Opinion Letter when Pillsbury learned of the claim in late August / early September 2006. I understand that Pillsbury did not do so.

34.     Notwithstanding Pillsbury's failure to update its Rule 2014 statement, it is my opinion that Pillsbury otherwise took reasonable precautions to avoid prejudice to the estate or the creditors by immediately transferring its work on analyzing the claims of the Senior Noteholders and the Junior Noteholders to the relevant non-Pillsbury professionals: counsel to the Creditors' Committee. I further understand from the materials I have reviewed that, by virtue of the transfer to counsel for the Creditors' Committee and consistent with common practice, the Senior Noteholders "[a]re completely recused from any [Creditors' Committee] matter involving any decision making involving the analysis of the Junior Notes Claims and the Senior Notes Claims, as well as the prosecution by the Creditors' Committee of any objections to the Junior Notes Claims and the Senior Notes Claims." See "Debtors' and Creditors' Committee's Response to Riverside's Objection to Disclosure Statement Describing Liquidating Plan of Reorganization Proposed Jointly by Debtors and Creditors' Committee," dated January 19, 2007, at 4.

13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

35.     In my opinion, had Pillsbury filed an updated Rule 2014 statement, the end result would have been no different from that which has in fact occurred.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this ___ day of _____, 2007 at

_____.


                                        _____

                                          Nancy B. Rapoport

1    35.    In my opinion, had Pillsbury filed an updated Rule 2014 statement, the end

2    result would have been no different from that which has in fact occurred.

3        I declare under penalty of perjury under the laws of the United States of America

4    that the foregoing is true and correct.

5        Executed this 4th day of _March_____, 2007 at

6    _Las Vegas, Nevada._

7

8                                        Nancy B. Rapoport

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                14

# EXHIBIT 1

NANCY B. RAPOPORT

UNIVERSITY OF HOUSTON LAW CENTER
100 LAW CENTER
HOUSTON, TX 77204-6060
(713) 743-2100
Cell: (713) 202-1881
nrapoport@uh.edu
nrapoport@money-law.org
www.law.uh.edu/faculty/NRapoport/resume.html
SSRN author page:  http://ssrn.com/author=260022
IMDB.com page:  http://imdb.com/name/nm1904564/
Blog:  http://nancyrapoport.blogspot.com

## EMPLOYMENT

### University of Houston Law Center, Houston, Texas

- June 1, 2006-present:  Professor of Law (until summer 2007, when I will become the Gordon & Silver, Ltd. Professor of Law at the Boyd School of Law, University of Nevada, Las Vegas).
- August 2000-May 31, 2006: Dean and Professor of Law.

*Responsibilities as Dean:*  Managed all areas of Law Center life; served as primary external spokesperson for the Law Center; facilitated internal programs of the Law Center; raised public and private funds for the Law Center; highlighted the University's and Law Center's programs in discussions with various Texas legislators; and served the state of Texas as CEO of the state's premier urban, public law school.  As Dean, taught one course per year.

The Associate Dean for Academic Affairs, the Associate Dean for Student Affairs, the Director of the O'Quinn Law Library, the Associate Dean for Information Technology, the Associate Dean for Finance and Administration and Chief Operating Officer of the Law Foundation, the Associate Dean for External Affairs and Executive Director of the Law Foundation, and the Director of CLE all reported directly to me.

*Significant accomplishments as Dean:*  Facilitated the establishment of several new centers, programs, and institutes, including the Criminal Justice Institute, the Institute for Energy, Law & Enterprise (now the Program In Energy, Environment & Natural Resources), and the Center for Consumer Law; reinvigorated the Blakely Advocacy Institute (BAI) and acquired the A.A. White Center for Dispute Resolution as part of the BAI; encouraged the first major revamping of the Law Center's curriculum in twenty years; hired fourteen new faculty members (three of whom hold endowed chairs at the Law Center); presided over a record increase in the amount and size of gifts to the Law Center, even during a downturn in the economy.  Raised seven new Law Center professorships, in partnership with a special campaign of the University of Houston, in under two months.  Facilitated the Law Center's recovery from the devastation caused by Tropical Storm Allison on June 9, 2001, which poured over 12 feet of water into the Law Center's sub-basement and destroyed much of its library collection (over 175,000 volumes and 1,000,000 microfiche lost) as well as much of its facilities.

*Service highlights:*  The Hon. Arthur L. Moller / David B. Foltz, Jr. Inn of Court (Bankruptcy Inn) (2003-2007), Executive Committee (2004-2006); UH Faculty Senate Commission on University Governance (2004-2006); Texas General Counsel Forum Statewide Advisory Committee (2004-2006); member, Search Committee for Vice President/Vice Chancellor of University Advancement (2004-2005); Garland Walker Inn of Court (2004-2007); State Bar of Texas's Women in the Profession Committee (2002-2005); Texas Supreme Court's Gender Equity Taskforce (2002-2006); Rice University Business & Professional Women (2002-2006); Texas Accountants & Lawyers for the Arts

(2002-2006); Houston Bar Association (2000-2007); Houston Bar Foundation, Selection Committee for the Best Article Award (2000-2006); City of Houston Mayor's Pension Governance Advisory Committee (2004-2006); UH Commission on Women (ex officio) (2004-2005); Houston Bar Foundation Fellow (2003-2007); Texas Supreme Court's Gender Fairness Task Force (2002-2006); Executive Committee, A.A. White Inn of Court (2000-2002); community associate, Wiess College (Rice University) (2000-2007).

**University of Nebraska College of Law, Lincoln, Nebraska**

- July 1998-August 2000: Dean and Professor of Law.

*Responsibilities:* CEO of Nebraska's land-grant law school. 1999-2000 state budget for the Law College (excluding the Schmid Law Library) was approximately $3.5 million; 1998-1999 private funds had a market value of approximately $35.5 million and a book value of approximately $15.9 million. The Associate Dean, the Assistant Dean for Administration and Student Services, the Assistant Dean for Career Services and Alumni Relations, the Director of the Law Library, the Director of Development, the Office Manager, and the Acting Head of the Nebraska Institute for Technology in the Practice of Law all reported directly to me.

*Achievements:* Instituted the creation of a new Access database to enable all Law College administrative units to organize and share information; encouraged the establishment of new student organizations (including an organization for law students who prefer non-traditional career paths and a GLBT student organization); encouraged the development of a link between an undergraduate "learning community" and the Law College; helped to organize a campus-wide cross-disciplinary ethics initiative; instituted systems facilitating the scheduling of Law College events, the timely review of employees, and the cultivation and stewardship of donors; initiated the design of the new "image" of the Law College; revamped the furnishings of the student lounge (at zero cost to the Law College); and raised significant funds for such needs as scholarships and professorships. I was the point person for completing the fund-raising for, and coordinating the design and construction of, the planned addition to the Schmid Law Library. I also taught at least one course a year, including Sales, Images of Lawyers in Film, and the Skills course for first-year law students; I supervised several independent studies; and I maintained an active research agenda in my areas of professional responsibility and bankruptcy ethics.

*Service:* Rotary Club #14, Lincoln, Nebraska (1999-2000); chair, UNL Search Committee for Dean of College of Arts & Sciences (2000); chair, UNL Search Committee for Dean of College of Architecture (1999-2000); member, Chancellor's Special Budget Advisory Committee (1999); member, UNL's Robert Wood Johnson Foundation Partnership Initiative, Policy and Enforcement Workgroup (1998-2000); UNL Mentoring Program (mentoring then-Assistant Professor Julia McQuillan) (1998-2000); member, University-Wide Assessment Committee (1998-2000); member, NSBA Bankruptcy Section Sub-Committee on Legislative Issues (1999-2000); co-chair of Homestead Girl Scout Council's Task Force on Diversity (1999); head of portion of YMCA's "Building Strong Kids" Campaign dealing with UNL contributions (1999).

**The Ohio State University College of Law, Columbus, Ohio**

- 1998: Professor (promoted to the rank of Professor as I was leaving to become Dean at Nebraska).
- 1996-98: Associate Dean for Student Affairs.

*Responsibilities:* Supervised admissions, financial aid, and placement offices; managed a staff that included the Assistant Dean of Admissions and Financial Aid, the Financial Aid Counselor and Staff Assistant, the Placement Director, and their associated support personnel; was directly responsible for admissions budget; supervised budgets for financial aid and placement; counseled potential applicants regarding admission to College of Law; counseled existing students on academic and non-academic issues; worked with Development Director regarding the establishment and maintenance of scholarships and other relationships with donors; worked with Assistant Dean of Alumni Affairs to use alumni in

recruiting activities; acted as "Chief Morale Officer" of College. Concurrently taught a half-load of courses.

- 1995-98: Associate Professor (with tenure).

*Teaching innovations:* Established e/mail listservs in all of my courses, leading to significant additional out-of-class contacts with students; integrated in-class exercises on drafting and negotiation in my Sales and Contracts courses; created "Friday Learning Sessions" to bring 1L, 2L, and 3L students together for discussions of general interest.

- 1991-95: Assistant Professor.

*Principal subjects:* Debtor-Creditor Law; Advanced Bankruptcy Seminar (Chapter 11 Issues); Contracts; Sales; Professional Responsibility; Contract Drafting and Negotiation; Legal Writing & Analysis (OSU used full-time faculty to teach this course).

*Service:* Member, leadership learning community, Leadership for Institutional Change (1998); member, College of Law Teaching Retreat Planning Committee (1998); member, University Search Committee for the Student Gender & Sexuality Services Director (1997); member, College Search Committee for various internal positions, including Placement Director (1997), Assistant to the Registrar (1997), Assistant to the Dean (1996), and Assistant Dean for Admissions and Financial Aid (1996); vice chair, Special Committee on College Housing (1997-98); member, Faculty Advisory Board, OSU Pro Bono Research Group (1997-98); member, College of Law Affirmative Action/Minority Affairs Committee (1996-98); coordinator, Ohio Women in Legal Education (1995-96); chair, College of Law Admissions Committee (1995-96; 1997-98); member, College of Law Planning Committee (1994-95); member, College of Law Placement and Judicial Clerkship Committee (1991-94); member, College of Law Administration Committee (1991-92); member, College of Law Admissions Committee (1992-94; 1996-97); member, College of Law Minority Affairs Committee (1996-98); faculty advisor to the following College organizations: the College's chapter of the Association of Trial Lawyers of America (1996-98); Delta Theta Phi (1997-98); the Jewish Law Students' Network (1991-98); and the Women's Law Caucus (1991-98); faculty advisor to the Ballroom Dance Association at Ohio State (1992-98); invited speaker at various College of Law events, including *How to Survive the First-Year Blues* and *How to Outline Law School Courses,* College of Law (1993-96), and various brown-bag discussions (1991-98); member, Teachers' Round Table (affiliated with the Center for Instructional Resources at Ohio State) (1993-96); advisor to The Ohio State University Press regarding the 25th anniversary edition of GRANT GILMORE, THE DEATH OF CONTRACT (25th anniv. ed. 1994); founding member, Junior Faculty Support Network (affiliated with the Office of Faculty & TA Development at Ohio State) (1994-96); dance demonstrator, Hispanic Awareness Week (1993-94); consultant on drafts of lender liability provisions in pending Ohio environmental legislation (1993); co-leader, Brownie Troop 2426 (Discovery Service Unit), Seal of Ohio Girl Scout Council, Inc. (1996-97); co-leader, Junior Girl Scout Troop 654 (Discovery Service Unit), Seal of Ohio Girl Scout Council, Inc. (1996); representative for the North-Central Region, United States Dance Sport Council Rules Committee (the national rules-making committee of the United States Amateur Ballroom Dancers Association) (1995-98); vice-president, Mid-Ohio Chapter of the United States Amateur Ballroom Dancers Association (1993-95).

## Morrison & Foerster, San Francisco, California

- 1986-91: Associate; Bankruptcy and Workouts Group, Business Department.

Bankruptcy cases included *In re Toy Liquidating Co. (Worlds of Wonder), Plexus, Greyhound, Nucorp,* and *California Land & Cattle Co.;* significant experience in bankruptcies involving industries such as toy manufacturers, computers, livestock, and television stations. Advised clients on such matters as pre-bankruptcy planning (creditor side), environmental issues, purchase of assets from bankruptcy estates,

and creditor protection generally.

**The Hon. Joseph T. Sneed, United States Court of Appeals for the Ninth Circuit, San Francisco, California**

- 1985-86: Judicial Clerk.

## EDUCATION

**Stanford Law School, Stanford, California**

- J.D., 1985.
- Note Editor, STANFORD LAW REVIEW, 1984-85.
- Thesis: *Computer Program for Secured Transactions* (1985).

*Activities and Honors:* Member, STANFORD LAW REVIEW (1983-84); member, Student Assistants to Admissions Program (1984); member, Law School Film Society (1982-85); member, Orientation Committee (1983-84); Vice-President (Alumni Programs), Law Forum (1983-84); technical assistant in various law school and all-university plays (1983-85); First Place, Stanford Women's Intramural Powerlifting Competition (1985).

**Rice University, Houston, Texas**

- B.A., *summa cum laude,* 1982.
- *Majors:* Legal Studies, Honors Psychology.
- Senior Thesis: *The Effects of Time of Day on Cognitive Performance,* Psychology Department (1982).

*Activities, Honors, and Scholarships:* Phi Beta Kappa (1981); Houston Psychological Association Award for Excellence in Psychology (1982); Jones College Scholar (1981-82); Academic Coordinator, Jones College (1980-82); President, Rice Hillel (1980-82); Student Advisor, Lovett College (1979-80); member, Student Admissions Committee (1979-82); Rice Pre-Law Society (1979-82); founder, Rapoport Prize in Legal Studies (1982); Max Roy Scholarship (1979-80, 1981-82); Jones College Scholarship (1981-82); Board of Governors Scholarship (1980-81).

## PUBLICATIONS, GRANTS, AND PRESENTATIONS

### Publications

- MANAGING BY AMBUSH: WHY UNIVERSITIES CAN'T KEEP PACE WITH THE REAL WORLD (work in progress).

- LEMMINGS: HOW LEGAL EDUCATION FAILS LAW STUDENTS (work in progress).

- *Duties of Officers and Directors of a Debtor Corporation, in* COLLIER ON BANKRUPTCY (15th ed. revised) (work in progress).

- *Federalism and Attorney Admission in Bankruptcy Courts* (solicited for the National Conference of Bankruptcy Judges October 2007 conference) (work in progress).

- *The Pornography of Overstaffing* (work in progress).

- *An Empirical Study of Bankruptcy Ethics: How Square Is the Peg and How Round Is the Hole?* (work in progress).

- *Reflections of a Former Dean, in* LAW SCHOOL LEADERSHIP STRATEGIES: TOP DEANS ON BENCHMARKING SUCCESS, INCORPORATING FEEDBACK FROM FACULTY AND STUDENTS, AND BUILDING THE ENDOWMENT 199 (Aspatore Books 2006).

- *Not Quite "Them," Not Quite "Us": Why It's Difficult for Former Deans to Go Home Again,* __ TOLEDO L. REV. __ (2006) (solicited manuscript).

- *Eating Our Cake and Having It, Too: Why Real Change Is So Difficult in Law Schools,* 81 IND. L.J. 359 (2006) (solicited manuscript for a symposium at Indiana University-Bloomington School of Law—*The Next Generation of Law School Rankings*).

- *Bankruptcy Ethics Issues for Solos and Small Firms, in* ATTORNEY LIABILITY IN BANKRUPTCY (Corinne Cooper, ed. & Catherine E. Vance, contributing ed., ABA 2006) (solicited manuscript).

- *Lord of the Flies: The Development of Rules Within an Adolescent Culture, in* SCREENING JUSTICE—THE CINEMA OF LAW: FIFTY SIGNIFICANT FILMS OF LAW, ORDER AND SOCIAL JUSTICE 253 (Rennard Strickland, Teree Foster & Taunya Banks, eds. 2006) (solicited manuscript).

- *Enron and the New Disinterestedness—The Foxes Are Guarding the Henhouse,* 13 AM. BANKR. INST. L. REV. 521 (2005) (solicited manuscript).

- *Decanal Haiku,* 37 TOLEDO L. REV. 131 (2005) (solicited manuscript).

- *Recent Developments in Bankruptcy Law,* 35 TEXAS TECH. L. REV. 543 (2004) (solicited manuscript).

- ENRON: CORPORATE FIASCOS AND THEIR IMPLICATIONS (with Prof. Bala G. Dharan, Rice University) (Foundation Press 2004).

- *Dr, Jekyll & Mr. Skilling; How Enron's Public Image Morphed from the Most Innovative Company in the* Fortune 500 *to the Most Notorious Company Ever, in* ENRON: CORPORATE FIASCOS AND THEIR IMPLICATIONS 77 (Nancy B. Rapoport & Bala G. Dharan, eds.) (Foundation Press 2004) (essay co-written with Jeffrey D. Van Niel).

- *Zen and the Art of Shared Governance,* 35 U. TOLEDO L. REV. 169 (2003) (solicited manuscript).

- *Examining Enron's enablers: Watkins' perspective makes Swartz's account stand out,* HOUSTON CHRONICLE, March 23, 2003, at *Zest* 15 (book review).

- *Enron, Titanic, and the Perfect Storm,* 71 FORDHAM L. REV. 1373 (2003) (solicited essay for a special issue on ethics); also included as an essay in ENRON: CORPORATE FIASCOS AND THEIR IMPLICATIONS 927 (Nancy B. Rapoport & Bala G. Dharan, eds.) (Foundation Press 2004).

- *The Intractable Problem of Bankruptcy Ethics: Square Peg, Round Hole,* 30 HOFSTRA L. REV. 977 (2002) (ethics symposium).

- *"Retail Choice" Is Coming: Have You Hugged Your Utilities Lawyer Today? (Part II)* (with Jeffrey D. Van Niel), August 2002 NORTON BANKRUPTCY LAW ADVISER 2.

- *Multidisciplinary Practice After In Re Enron: Should the Debate on MDP Change At All?,* TEXAS BAR JOURNAL 446 (May 2002).

- *"Retail Choice" Is Coming: Have You Hugged Your Utilities Lawyer Today? (Part I)* (with Jeffrey D. Van Niel), February 2002 NORTON BANKRUPTCY LAW ADVISER 4.

- *Enron an Example: Grads Lost in Trees,* HOUSTON CHRONICLE, February 24, 2002.

- *Is "Thinking Like a Lawyer" Really What We Want to Teach?,* in *Erasing Lines: Integrating the Law School Curriculum,* 2001 ALWD CONF. PROCEEDINGS 91.

- *When Local IS Global: Using a Consortium of Law Schools to Encourage Global Thinking,* 20 PENN STATE INT'L LAW REVIEW 19 (2001) (transcript of AALS Annual Meeting session).

- *Of Cat-Herders, Conductors, Fearless Leaders, and Tour Guides,* 33 U. TOLEDO L. REV. 161 (2001) (solicited manuscript).

- *Presidential Ethics: Should a Law Degree Make a Difference?,* 14 GEO. J. L. ETHICS 725 (2001).

- *Going from "Us" to "Them" in Sixty Seconds,* 31 U. TOLEDO L. REV. 703 (2000) (solicited manuscript).

- *Just When You Thought it Was Safe to Go Back in The Water: The Lasting Effect of State Disciplinary Proceedings For Bankruptcy Ethics Violations,* American Bankruptcy Institute, Winter Leadership Conference 2000.

- *Dressed for Excess: How Hollywood Affects the Professional Behavior of Lawyers,* 14 NOTRE DAME J. OF LAW, ETHICS & PUBLIC POLICY 49 (2000) (solicited manuscript).

- *Ratings, Not Rankings: Why* U.S. News & World Report *Shouldn't Want To Be Compared To* Time *and* Newsweek—*or* The New Yorker, 60 OHIO ST. L.J. 1097 (1999).

- *Living "Top-Down" in a "Bottom-Up" World: Musings on the Relationship Between Jewish Ethics and Legal Ethics,* 78 NEB. L. REV. 18 (1999).

- *Moral Bankruptcy: Modeling Appropriate Attorney Behavior in Bankruptcy Cases,* THE NEBRASKA LAWYER 14 (March 1999) (solicited manuscript).

- *The Need For New Bankruptcy Ethics Rules: How Can "One Size Fits All" Fit Anybody?,* 10 PROFESSIONAL LAWYER 20 (1998) (solicited manuscript).

- *Our House, Our Rules: The Need for a Uniform Code of Bankruptcy Ethics,* 6 AM. BANKR. INST. L. REV. 45 (1998) (solicited manuscript).

- *Has the DIP's Attorney Become the Ultimate Creditors' Lawyer in Bankruptcy Reorganization Proceedings?,* 5 AM. BANKR. INST. L. REV. 47 (1997) (symposium manuscript) (with co-author C.R. Bowles, Jr.).

- *Ethics: Is Disinterestedness Still a Viable Concept? A Roundtable Discussion,* 5 AM. BANKR. INST. L. REV. 201 (1997) (solicited transcript) (with co-panelists John D. Ayer, the Hon. Charles N. Clevert, the Hon. Joel Pelofsky & Bettina Whyte).

- *Turning the Microscope on Ourselves: Self-Assessment by Bankruptcy Lawyers of Potential Conflicts of Interest in Columbus, Ohio,* 58 OHIO ST. L.J. 1421 (1997).

- *Avoiding Judicial Wrath: The Ten Commandments for Bankruptcy Practitioners,* 5 J. BANKR. L. & PRAC. 615 (September/October 1996) (solicited manuscript).

- *Seeing the Forest* and *The Trees: The Proper Role of the Bankruptcy Attorney,* 70 IND. L.J. 783 (1995).

- *Wrestling with the Problem of Potential Conflicts of Interest in Bankruptcy,* 26 BANKRUPTCY COURT DECISIONS WEEKLY NEWS AND COMMENT (LRP Publications), March 7, 1995, at A3 (solicited editorial).

- *Worth Reading: Review of Annual Survey of Bankruptcy Law,* TURNAROUNDS AND WORKOUTS (Beard Group, Inc.), January 15, 1995, at 6 (solicited book review).

- *Turning and Turning in the Widening Gyre: The Problem of Potential Conflicts of Interest in Bankruptcy,* 26 CONN. L. REV. 913 (1994).

- AN ORAL HISTORY OF THE HONORABLE JOSEPH T. SNEED, Ninth Circuit Historical Society (1994) (solicited oral history) (with co-author David B. Goodwin).

## Grants

- Member of Advisory Panel of American Bankruptcy Institute's chapter 11 fee study (2005-present) (Professor Stephen Lubben of Seton Hall Law School is the primary investigator).

- 2002 Participant, Harvard Institutes for Higher Education MLE Program (partial scholarship from Harvard, $1,000 in 2001—had to withdraw, due to the aftermath of Tropical Storm Allison, but returned to participate in 2002).

- 1999 Participant, Harvard Institutes for Higher Education Management Development Program (partial scholarship from Harvard, $1,000).

- 1995 Instructional Technology Small Grant (Ohio State funds; $850).

- 1995 West Publishing/NCAIR Fellow ($15,000 grant for developing a computer program that teaches law students about conflicts of interest in bankruptcy law).

- 1994 participant in Summer Institute of the Law & Society Association (Wellesley, Massachusetts).

- 1993 University Seed Grant for the study of creditor representation in bankruptcy (1993 grant from Ohio State University's Office of Research & the College of Law).

## Selected academic presentations

- Adjunct professor, St. John's University School of Law, LL.M. in Bankruptcy Program (Enron seminar) & invited speaker, St. John's University School of Law Faculty, *Enron: Is It Still Relevant?* (March 2006 & March-April 2007).

- Presentations at the 2007 annual meeting of Association of American Law Schools:
  - *Workshop on the Ratings Game (or not!): The Search for Sensible Assessment,* moderator for plenary discussion, *We Didn't Even Bring the Box: A Roundtable Discussion on Creative Alternatives,* http://www.aals.org/am2007/wednesday/ratings.html.
  - Panelist, Section on Continuing Legal Education, Co-Sponsored by Section on Professional Responsibility, *Legal Ethics CLE in the Law School Setting: Can It Be Practical, Academic, and Interesting at the Same Time?*
  - Panelist, Section for the Law School Dean, *What I Wish I Had Known Then: A Conversation Among Deans.*

- Invited panelist, *Eating Our Cake and Having It, Too: Why Real Change Is So Difficult in Law Schools,* Symposium at Indiana University-Bloomington School of Law (March 2005).

- Invited panelist, ABA Luncheon Meeting, *Examining the Examiner,* National Conference of Bankruptcy Judges (October 2004).

- Invited panelist, *Current Bankruptcy Ethics Issues: It's Not That You Ought To! It's That You "Got To!,"* National Conference of Bankruptcy Judges (October 2004).

- Invited panelist, *Ethics, Governance, and Bankruptcy After Enron,* 4th Annual Barry L. Zaretsky Roundtable, Brooklyn Law School (April 2003).

- Keynote speaker, *Corporate Scandals (Enron, Andersen, Tyco & World Com)—What Went Wrong?,* Southeastern Finance Association (March 2003) and Southern Academy of Legal Studies (March 2003).

- Invited panelist, *What's Wrong With Us??!!—A Fascinating Look at Ourselves, Through the Eyes of Judges and Others,* National Association of Bankruptcy Trustees, Annual Conference (August 2002).

- Invited speaker, *Legal Education in the 21st Century: Radical Design for a Changing Profession,* "Better Learning, Better Lawyers" Conference (August 2002).

- Invited panelist, *Legal Ethics—What Needs Fixing?,* The 2001 Legal Ethics Conference, Hofstra University School of Law (September 2001).

- Invited speaker, *Teaching Bankruptcy as a Vehicle for Teaching Other Values,* AALS Bankruptcy Workshop, St. Louis, Missouri (May 2001).

- Moderator of plenary session of the Association of American Law School's *Mini-Workshop on Major Issues of the 21st Century: The Impact on the Legal Academy and Law Students,* Washington, D.C. (January 2000).

- Invited panelist, *Local Cultures + Judicial Discretion ' National Confusion?: Equities, Equations, and the "Uniformity" of the Bankruptcy Code,* Annual Conference of the Association of American

Law Schools, Creditors' & Debtors' Rights Section (January 1998).

- Invited speaker, *Disinterestedness and the Chapter 11 Professional,* National Conference of Bankruptcy Judges, Annual Meeting (October 1997).

- Invited faculty member, *Bankruptcy Issues,* Eastern District of Pennsylvania Bankruptcy Conference (January 1996, January 1997, January 1998, and January 1999).

**Selected CLE and other professional presentations**

- Invited speaker (with Martin Bienenstock), *Conflicts Writ Large: Intercreditor Issues and Issues with Fees and Overbilling,* 25th Anniversary Jay L. Westbrook Bankruptcy Conference, University of Texas CLE (November 2006).

- Invited speaker, *Lessons To Be Learned From the Rise and Fall of High-Profile Corporate Entities—The Scandals—How to Identify Red Flags in Revenue Reporting and Financial Statements* (NACD Houston Chapter, Sept. 2004) (with Bala G. Dharan and Steven C. Currall).

- Invited panelist, State Bar of Texas Annual Meeting, Business Law & Corporate Counsel Sections, *Moral Independence of Lawyers vs. Moral Interdependence* (June 2003).

- Invited speaker, State Bar of Texas Annual Meeting, Women & the Law Section, *Images of Women Lawyers in the Media* (June 2003).

- Invited panelist, *Bankruptcy Ethics,* Commercial Law League of America, Annual Meeting (April 2003).

- Invited speaker, *Images of Judges in Movies,* College for New Judges, Texas Center for the Judiciary (December 2002 & November 2003).

- Invited speaker, *Debtor Wrongdoing: Ethical Implications for Lawyers*, The University of Texas School of Law CLE: The 21st Annual Bankruptcy Conference & Personal Injury Conference (November 2002).

- Invited panelist, *A Look Inside the Mega-Case,* 10th Annual Southwest Bankruptcy Conference, American Bankruptcy Institute (September 2002).

- Invited speaker, *Conflicts, Ethical Duties and Independence: Lessons from Enron,* The University of Texas School of Law CLE: The 24th Annual Corporate Counsel Institute (August 2002).

- Invited speaker, *Lessons in Character from Enron,* NASA National Managers Association (April 2002).

- Invited speaker, *Conflicts, Ethical Duties and Independence: Lessons from Enron,* The University of Texas School of Law CLE: The 24th Annual Corporate Counsel Institute (April 2002—Dallas & Houston).

- Invited panelist, *Overcoming Barriers and Opening Doors to Your Personal Success*, Houston Bar Minority Opportunities in the Legal Profession Committee & Minority Corporate Counsel Association: Business Development in a Belt-Tightening Economy (February 2002).

- Invited panelist, *The Changing Face of the Deanship,* AALS Workshop—Do You Know Where Your Students Are? Langdell Logs on to the 21st Century, AALS Annual Meeting (January 2002).

- BAR/BRI, lecturer on *Succeeding in Law School* (2002-present).

- Invited speaker, *Dressed for Excess,* The University of Texas School of Law CLE: The 25th Annual Page Keeton Products Liability & Personal Injury Conference (November 2001).

- Invited speaker, *Bankruptcy Ethics—How Do We Find Out What We're Doing Wrong (Or Right)?,* 20th Annual Bankruptcy Conference, University of Texas Law School (November 2001).

- Invited panelist, *Tell Me What You Really Want—How Behavior (On Both Sides of the Bench) Can Impact Your Case,* National Conference of Bankruptcy Judges (October 2001).

- Invited speaker, *Do "Best Practices" in Legal Education Include an Obligation to the Legal Profession to Integrate Theory, Skills, and Doctrine in the Law School Curriculum?,* ALWD (Association of Legal Writing Directors) Biennial Conference (July 2001).

- Invited panelist, *Bankruptcy Ethics,* Winter Leadership Conference, American Bankruptcy Institute (December 2000).

- Invited speaker, *Satisfying Your Multiple Constituencies (How Your Dean Can Help),* AALS Workshop for New Law Teachers (July 2000 & July 1999).

- Invited panelist, *Why Support Academic Support Programs?,* LSAC Academic Support Conference (June 2000).

- Invited speaker, *Establishing a Partnership With a New Dean,* LSAC Annual Meeting (June 2000).

- Invited speaker, *Ethical Problems: Dual Representation in Chapter 11,* and *Ethics: Pre-Bankruptcy Planning and Ethical Limitations,* Twenty-Fourth Annual Bankruptcy Law & Practice Seminar, Stetson University College of Law (December 1999).

- Invited speaker, *Reflections of an Ex-Novice Dean,* American Bar Association's Workshop for New Law Deans (June 1999).

- Invited speaker, *Reliable Evaluation of Law Schools: Going Beyond Law School Rankings,* Annual Conference of the National Association for Law Placement (April 1999).

**Expert witness activity**

- Expert for Beirne, Maynard & Parsons in *Brazos Electric Power Cooperative, Inc. v. Tenaska IV Texas Partners* and related cases (2006-present).
- Expert for Beirne, Maynard & Parsons in *Hicks v. Charles Pfizer & Co.,* Civil Action No. 1:04CV201 (U.S. District Court, E.D. Texas) (2006).
- Expert for Benjamin Hall in *Costilla Energy, Inc., by and through its litigation trustee, George Hicks v. Joint Energy Development Investments II,* 49th Judicial District, Zapata County, Texas (2006-present).
- Expert for Winstead, Secrest & Minick in issue involving conflicts of interest (2005).
- Expert witness in *Fremont Investment & Loan v. Beckley Singleton, Chtd. and Sidney Bailey,* Case No. CV-S-03-1406-JCM-RJJ (D. Nevada 2003) (2005-2006).
- Debtor's expert in *In re ACandS, Inc.,* Case No. 02-12687 (Bankr. Dela. 2002) (2004-2005).

- Court-appointed expert in *In re Mirant Corporation,* Case No. 03-46590 (Bankr. N.D. Tex 2003) (appointed as the court's expert with respect to professional fees and as chair of a fee review committee) (2003-2006).
- Expert for Beirne, Maynard & Parsons regarding executory contracts in bankruptcy and reasonableness of attorneys' fees (2003-2004).
- Expert witness for Latham & Watkins regarding Section 414 of H.R. 333 (changes in "disinterestedness" standard of 11 U.S.C. § 101(14)) (March-April 2003).
- Expert witness for the Office of Disciplinary Counsel, *In re Charles William Ewing,* Case No. 97-5, before the Board of Commissioners on Grievances and Discipline of the Bar of the Supreme Court of Ohio (case initiated in October 1997; I testified in January 1998).

## Media appearances

- Appearances on a variety of local, national, and international news broadcasts, and in local, national, and international news articles, on various bankruptcy and corporate law issues, including the Enron bankruptcy case and the Arthur Andersen trial (December 2001-present).
- Appeared in Academy Award®-nominated documentary, *Enron: The Smartest Guys in the Room* (Magnolia Pictures 2005).
- *Due Process* with William F. Schenck, Prosecuting Attorney, Greene County, Ohio (October 23, 1996) (discussing legal education).

## Contributor to the following blogs:

- MONEYLAW, http://money-law.blogspot.com/.
- JURIST, Contributing Editor, http://jurist.law.pitt.edu/.
- THECONGLOMERATE, http://www.theconglomerate.org/.
- FEMINIST LAW PROFESSORS, http://feministlawprofs.law.sc.edu/.
- LEGAL PROFESSION, Contributing Editor: http://lawprofessors.typepad.com/legal_profession/.

# HONORS, BAR ADMISSIONS, MEMBERSHIPS, AND COMMUNITY SERVICE

## Honors

- Fellow, American College of Bankruptcy (2005-present).
- Named a "Woman of Vision" by the Houston Delta Gamma Foundation (2004).
- Admitted to American Leadership Forum, Class XXII (2004).  Withdrew due to family illness.
- Named "Best Local Girl Made Good," HOUSTON PRESS, September 25, 2003, at 24.
- Fellow, American Bar Foundation (2002-present).
- Received a Distinguished Alumna Award from Rice University (2002).
- Named by the Greater Houston Area Chapter of the National Council of Jewish Women as a "Woman of Influence" (2001).
- Elected to membership in the American Law Institute (2001).
- Honored in 2000 by the Nebraska State Bar Association as a Legal Pioneer for Women in the Law (first woman to serve as the dean of a Nebraska law school).
- Awarded 1998 Fellowship from the AMERICAN BANKRUPTCY LAW JOURNAL (awarded to five academics attending the 1998 National Conference of Bankruptcy Judges).
- 1997 Outstanding Professor of the Year, The Ohio State University College of Law (third-year students voting) (co-winner, with Professor Barbara Rook Snyder).
- 1998 Louis Nemzer Memorial Lecture (yearly lecture honoring a Jewish member of the Ohio State faculty).

**Bar admissions**

- Sitting for Nevada bar, February 2007.
- United States District Court, Northern District of Texas (2003).
- Texas Supreme Court (2001).
- United States Supreme Court (2000).
- Nebraska Supreme Court (1999).
- Ohio Supreme Court (1993).
- California Supreme Court (1987).
- United States District Court for the District of Hawaii (1988).
- United States Court of Appeals for the Ninth Circuit (1987).
- United States District Courts for the Northern, Eastern, Central, and Southern Districts of California (1987).

**Editorial boards**

- Association of American Law Schools, JOURNAL OF LEGAL EDUCATION (2007-2010).
- JURIST, Contributing Editor (2006-present).
- LEGAL PROFESSION BLOG Contributing Editor (2007-present).
- State Bar of Texas, TEXAS BAR JOURNAL Board of Editors (2003-06).
- State Bar of Texas, TEXAS BAR JOURNAL, Editorial Board Committee (2001-2004).
- CALIFORNIA BANKRUPTCY JOURNAL (1995-2002).

**Selected board memberships**

- American Board of Certification (board certification for bankruptcy lawyers) (2007-present).
- Association of Rice Alumni Board (2006-2009).
- NALP Foundation for Law Career Research and Education (2005-present).
- Texas Center for Legal Ethics (2004-2006).
- Texas Supreme Court Historical Society (2004); Advisory Board (2004-2006).
- Vinson & Elkins Women's Initiative Advisory Board (2003-present).
- Houston Area Women's Center (2003-2006).
- Advisory Council Member, WWW United, Inc. (2002-2006).
- Texas Environmental Health Institute (a joint project of the Texas Department of Health & the Texas Natural Resource Conservation Commission, which is the Texas Commission on Environmental Quality (TCEQ)) (2002-2004).
- Houston World Affairs Council (2002-2005).
- Houston Hillel (2002-2007).
- Mayor's Advisory Board of World Energy Cities Partnership (2001-2004).
- Houston Disaster Relief Advisory Board (2001-2004).
- Houston Chapter of the Texas General Counsel Forum (2001-2005).
- Anti-Defamation League Southwest Regional Board (2001-2006).
- Law School Admissions Council Board of Trustees (2001-2004).

**Selected national service activities**

- Advisory Committee, American Bankruptcy Institute's fee study (advisor to Professor Stephen Lubben of Seton Hall) (2005-present).
- American Bar Association's Task Force on Attorney Discipline (2005-present).
- Planning committee, Association of American Law Schools' 2007 Annual Meeting *Workshop on The Ratings Game* (2006-2007).

- City of Houston Mayor's Pension Governance Advisory Committee (2004-2006).
- American Bar Association, Advisory Group on Loan Repayment, Standing Committee on Legal Aid & Indigent Defendants (SCLAID) (2003-2006).
- Faculty member, ABA New Deans' School (May-June 2003, June 2004, and June 2005).
- Advisory Committee, Baylor College of Medicine-UH Law Center MD/JD Program (2004-2006).
- Academic advisor, National Governmental Affairs Committee, Commercial Law League of America (CLLA) (2002-2006).
- Co-chair (with Dean Stuart Deutsch), ABA Deans' Workshop (for mid-year ABA meeting in 2003).
- Advisory Committee, *The Birth of the Dot-Com Era,* project for the Library of Congress (Project Manager, Prof. David Kirsch, University of Maryland) (advising the Library of Congress on what to do with the records of now-defunct law firm of Brobeck, Phleger & Harrison) (2004-2006).
- National Association of Corporate Directors (2004-present).
- Commercial Law League of America, Professional Responsibility Committee (2003-2005).
- Advisor, Commercial Law League of America's National Government Affairs Committee (2002-2003).
- ABA Commission on Loan Repayment & Forgiveness (2001-2003).
- Member, AALS Professional Development Committee (2000-2003).
- Communication Skills Committee, ABA Section of Legal Education and Admissions to the Bar (1998-2002).
- Chair, AALS Planning Committee for the *Mini-Workshop on Major Issues of the 21st Century: the Impact on the Legal Academy and Law Students* (1999-2000).
- Member, Law School Admission Council (LSAC) Services & Programs Committee (1999-2000), Workgroup on Alternative Admissions Models (2000-2003), and Gay, Lesbian, Bisexual & Transgendered Issues Workgroup (2000-2001).
- Nebraska State Bar Association (1999-present).
- National Association of College & University Attorneys (1998-2006).
- Commercial Law League of America (1998-present).
- Ohio State Bar Association (1997-present).
- American Bankruptcy Institute (1994-present).
- AIDS Legal Referral Panel of the Bar Association of San Francisco (1989-91).
- Bar Association of San Francisco (1987-91).
- American Bar Association (1987-present).

## INTERESTS (INCLUDING SELECTED BALLROOM DANCE COMPETITION RESULTS)

- Ailurophile; avid collector of Disneyana; obsessed with the history of the Titanic and with the U.S. space program.
- Tae kwon do; competitive ballroom and Latin dancing; golf; black-and-white photography; blues music; and movies. Returned to International Latin amateur competition (pro/am with instructor Billy King) in May 2005.
- Won the B Division, Open-to-the-World Latin Pro/Am Competition at the Embassy Ball in Los Angeles in 2005.
- United States Amateur Dance Sport Competition (national ranking competition) results: 1996, third place, American Rhythm Division (with Christopher Holgate); 1994 & 1995, second place, American Rhythm Division (with Christopher Holgate).
- Selected Ohio Star Ball results: 2005, DanceSport SuperBowl Region 5 Representative, Ladies' B Latin (with Billy King); 1993, champion, Amateur American Rhythm (with David Freeman) and International Latin (B) Scholarship (with Bill Sparks) Divisions; 1993, sixth place, Amateur American Smooth Division (with David Freeman).

## PERSONAL INFORMATION

# EXHIBIT 2

**Exhibit A**

DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 450-6539
John Fouhey, Esq. (JF 9006)
Marshall S. Huebner, Esq. (MH 7800)
Benjamin S. Kaminetzky, Esq. (BK 7741)

Attorneys for Debtors and
    Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                              :
**In re:**                                                    :
                                                              :
                                                              :    **Chapter 11 Case No.**
                                                              :
**DELTA AIR LINES, INC., et al.,**                            :
                                                              :    **05-_____ (    )**
                                                              :
                                                              :    **(Jointly Administered)**
**Debtors.**                                                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DECLARATION OF JOHN FOUHEY AND DISCLOSURE STATEMENT**
**OF DAVIS POLK & WARDWELL IN SUPPORT OF THE APPLICATION**
**OF THE DEBTORS TO EMPLOY AND RETAIN**
**DAVIS POLK & WARDWELL AS ATTORNEYS FOR THE DEBTORS**

John Fouhey declares as follows:

　　　　1.　　I am a partner of the firm of Davis Polk & Wardwell ("**DPW**" or the

"**Firm**"), a law firm with its principal office at 450 Lexington Avenue, New York, New

York 10017, and other offices in Washington, D.C.; Menlo Park, California; London,

England; Paris, France; Frankfurt, Germany; Madrid, Spain; Tokyo, Japan; and Hong

Kong.

2.    I submit this declaration (the "**Declaration**") in connection with the application (the "**Application**"), dated September 14, 2005 (the "**Petition Date**"), of the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**")[1] for approval of the Debtors' retention of DPW as their attorneys in the above-captioned chapter 11 cases at rates that do not exceed the Firm's customary hourly rates in effect from time to time and in accordance with the Firm's normal reimbursement policies, in compliance with sections 328(a), 329 and 504 of title 11 of the United States Code (the "**Bankruptcy Code**"), and to provide disclosure required under rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"). Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein. To the extent any information disclosed herein requires amendment or modification upon DPW's completion of further review or as additional party in interest information becomes available to it, a supplemental declaration will be submitted to the Court reflecting such amended or modified information.

3.    Neither I, DPW, nor any partner, counsel to, or associate of the Firm represents any entity other than the Debtors in connection with the Debtors' chapter 11 cases. In addition, except as set forth herein, to the best of my knowledge, after due inquiry, neither I, DPW, nor any partner, counsel to, or associate of the Firm represents

---

[1] The Debtors are the following entities: ASA Holdings, Inc.; Comair Holdings, LLC; Comair, Inc.; Comair Services, Inc.; Crown Rooms, Inc.; DAL Aircraft Trading, Inc.; DAL Global Services, LLC; DAL Moscow, Inc.; Delta AirElite Business Jets, Inc.; Delta Air Lines, Inc.; Delta Benefits Management, Inc.; Delta Connection Academy, Inc.; Delta Corporate Identity, Inc.; Delta Loyalty Management Services, LLC; Delta Technology, LLC; Delta Ventures III, LLC; Epsilon Trading, Inc.; Kappa Capital Management, Inc.; and Song, LLC.

2

(a)    are not creditors, equity security holders or insiders of the Debtors, except in the de minimis ways set forth below;

(b)    are not and were not investment bankers for any outstanding security of the Debtors;

(c)    have not been, within three years before the Petition Date, investment bankers for a security of the Debtors, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the Debtors;

(d)    are not and were not, within two years before the Petition Date, a director, officer, or employee of the Debtors or any investment banker specified in subparagraph (b) or (c) of this paragraph; and

(e)    do not have an interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors or an investment banker specified in subparagraph (b) or (c) of this paragraph, or for any other reason, other than as set forth herein.

7.    Disclosure with respect to any connections DPW has or has had with the Debtors, their significant creditors, or any other significant parties in interest, any of their respective attorneys and accountants, the United States Trustee or any employee of that office, insofar as I know or have been able to ascertain after reasonable inquiry, is set forth below:

(a)    DPW has rendered legal services to the Debtors since 1983. During that time, DPW has played a significant role in advising the Debtors concerning a wide range of matters, including aircraft leasing, credit and capital markets transactions, mergers and acquisitions and litigation. Most recently, DPW has advised the Debtors concerning their restructuring alternatives, debt obligations and postpetition financing, and has performed services necessary to enable the Debtors to file for protection under chapter 11. DPW (along with the Debtors) was primarily responsible for the preparation of the chapter 11 petitions, initial motions and applications relating to these chapter 11 cases and their commencement.

(b)    DPW previously has represented within the last two years and/or currently represents, and may represent in the future, the entities listed on Exhibit 1 (or their affiliates) in matters unrelated to the Debtors (except for with respect to,

5

other entity to share with such entity any compensation received by DPW or by such entity.

15.    DPW intends to apply pursuant to section 330 of the Bankruptcy Code for allowances of compensation for professional services rendered in these chapter 11 cases and for reimbursement of actual and necessary expenses incurred in connection therewith in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Guidelines and any applicable orders of the Court.

16.    The foregoing constitutes the statement of DPW pursuant to sections 327(a), 328(a), 329 and 504 of the Bankruptcy Code and Bankruptcy Rules 2014(a) and 2016(b).

17.    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this Declaration was executed on September 14, 2005.

/s/ John Fouhey
Declarant:    John Fouhey
Title:        Partner

16

# EXHIBIT 3

PROSPECTUS SUPPLEMENT
(To Prospectus dated June 10, 1992)

## $276,000,000

# ▲DELTA AIR LINES, INC.

## 1993 PASS THROUGH TRUSTS
### 1993 PASS THROUGH CERTIFICATES, SERIES A1
### 1993 PASS THROUGH CERTIFICATES, SERIES A2

The Pass Through Certificates offered hereby consist of Delta Air Lines 1993 Pass Through Certificates, Series A1 in the aggregate amount of $104,678,000, and Delta Air Lines 1993 Pass Through Certificates, Series A2 in the aggregate amount of $171,322,000, which will represent fractional undivided interests in the Delta Air Lines Pass Through Trust, 1993-A1 and the Delta Air Lines Pass Through Trust, 1993-A2, respectively. Each Pass Through Trust will be formed pursuant to the Pass Through Agreement and a related Series Supplement, in each case between Delta Air Lines, Inc. and NationsBank of South Carolina, National Association, not in its individual capacity but solely as the Pass Through Trustee under such Pass Through Trust. The property of each Pass Through Trust will consist of Equipment Trust Certificates from each of four separate series of Equipment Trust Certificates being issued to refinance all of the outstanding loan certificates issued by the Owner Trustee for each of four separate Owner Trusts in connection with the purchase by the Owner Trustee for each such Owner Trust of one of two McDonnell Douglas MD-11 aircraft, or one of two Boeing 767-332ER aircraft (each, and collectively, the "Aircraft"), and to refund some of the equity portion of the purchase price paid by such Owner Trustee for such Aircraft. Each Aircraft was leased to Delta by the Owner Trustee at the time of such purchase. For each of the four Aircraft, two Equipment Trust Certificates, each of which will have a different principal amount, interest rate, maturity date and schedule of principal payments, will be issued under the related Indenture as nonrecourse obligations of Wilmington Trust Company, acting not in its individual capacity but solely as Owner Trustee of each separate Owner Trust.

For each Pass Through Trust, all of the Equipment Trust Certificates purchased by the Pass Through Trustee will have identical interest rates, in each case equal to the rate applicable to the Pass Through Certificates of such Pass Through Trust as set forth below, and will have a maturity date on or before the final distribution date for such Pass Through Trust.

Interest paid on the Equipment Trust Certificates held in each Pass Through Trust will be passed through to the related Certificateholders on each April 30 and October 30, commencing on April 30, 1993, at the rate per annum set forth below for the related Pass Through Certificates, until the final distribution date for such Pass Through Trust. Principal paid on the Equipment Trust Certificates held in each Pass Through Trust through mandatory sinking fund redemptions will be passed through to the related Certificateholders in scheduled amounts on April 30 or October 30, or both, of each year, commencing on April 30, 1993, for the Series A1 Pass Through Certificates, and commencing on October 30, 2007, for the Series A2 Pass Through Certificates, until the final distribution date for such Pass Through Trust.                                                (continued on following page)

No employee benefit plan subject to Title I of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), or individual retirement account or employee benefit plan subject to Section 4975 of the Internal Revenue Code of 1986, as amended (the "Code"; such plans are hereinafter collectively referred to as an "ERISA Plan"), may acquire or hold the Pass Through Certificates. Certain governmental and non-electing church plans, however, are not subject to Title I of ERISA or Section 4975 of the Code and, therefore, may invest in the Pass Through Certificates. The purchase by any person of any Pass Through Certificates constitutes a representation by such person to Delta, the Owner Participants, the Owner Trustee, the Indenture Trustee and the Pass Through Trustee that such person is not an ERISA Plan and such person is not acquiring, and has not acquired, such Pass Through Certificate with assets of an ERISA Plan. See "Prospectus Summary — The Offering — ERISA Considerations."

Prior to their issuance there has been no market for the Pass Through Certificates and there can be no assurance that one will develop. See "Underwriting" in this Prospectus Supplement.

**THESE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THIS PROSPECTUS. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.**

| Pass Through Certificates | Final Distribution Date | Aggregate Amount | Applicable Interest Rate | Price to Public(1) | Discounts and Commission(2) | Proceeds to the Pass Through Trustee(1)(2) |
|---|---|---|---|---|---|---|
| Series A1 | April 30, 2008 | $104,678,000 | 9⅛% | 100% | .560% | 100% |
| Series A2 | April 30, 2016 | 171,322,000 | 10½ | 100 | .705 | 100 |
| Total .... | | $276,000,000 | | $276,000,000 | $1,794,017 | $276,000,000 |

(1) Plus accrued interest, if any, at the applicable rate from the date of issuance of such Pass Through Certificate.
(2) The underwriting commissions and certain other expenses relating to the offering estimated at $2,008,850 will be paid ratably by the Owner Participants, while certain other expenses relating to the offering estimated at $200,000 will be paid by Delta. All of the proceeds from the sale of the Pass Through Certificates will be used to purchase the Equipment Trust Certificates from the Owner Trustee on behalf of the Owner Trusts. Delta has agreed to indemnify the Underwriters against certain liabilities, including liabilities under the Securities Act of 1933, as amended (the "Securities Act").

The Pass Through Certificates are offered by the several Underwriters, subject to prior sale, when, as and if delivered to and accepted by the Underwriters, and subject to approval of certain legal matters by counsel for the Underwriters and to certain other conditions. The Underwriters reserve the right to withdraw, cancel or modify the offer and to reject orders in whole or in part. It is expected that delivery of the Pass Through Certificates will be made in New York, New York against payment therefor in immediately available funds on or about April 6, 1993.

# Merrill Lynch & Co.                    Goldman, Sachs & Co.

The date of this Prospectus Supplement is March 30, 1993.

# DELTA AIR LINES, INC.
## Pass Through Trusts
## Pass Through Certificates

Up to $1,000,000,000 aggregate amount of Pass Through Certificates may be offered for sale from time to time pursuant to this Prospectus and one or more Prospectus Supplements. The Pass Through Certificates may be offered in one or more series in amounts, at prices and on terms to be determined at the time of sale. For each Series of Pass Through Certificates offered pursuant to this Prospectus and a Prospectus Supplement, a separate Pass Through Trust will be formed pursuant to the Pass Through Trust Agreement (the "Pass Through Agreement") and a supplement thereto (a "Series Supplement") between Delta Air Lines, Inc. ("Delta") and The Citizens and Southern National Bank of South Carolina, not in its individual capacity but solely as the Pass Through Trustee under such Pass Through Trust. Each Pass Through Certificate in a Series will evidence a fractional undivided interest in the related Pass Through Trust and will have no rights, benefits or interest in respect of any other Pass Through Trust or the Trust Property held in any other such Pass Through Trust. The Trust Property of each Pass Through Trust will consist of equipment trust certificates (the "Equipment Trust Certificates") issued as nonrecourse obligations by certain Owner Trustees, each acting not in its individual capacity but solely as the Owner Trustee of a separate Owner Trust, in connection with separate leveraged lease transactions, in each case to finance or refinance a portion of the payment by each such Owner Trust of the purchase price for a specified aircraft (each, an "Aircraft" and collectively, the "Aircraft"), which has been or will be leased to Delta. The Prospectus Supplement relating to each offering will describe certain terms of the Pass Through Certificates offered thereby, the respective Pass Through Trusts, the Equipment Trust Certificates to be purchased by such Pass Through Trusts and the leveraged lease transactions and Aircraft relating to such Equipment Trust Certificates.

For each Aircraft, the related Owner Trustee may issue one or more Equipment Trust Certificates, each of which may have a different interest rate and final maturity date. For each Series of Pass Through Certificates, the Pass Through Trustee will purchase one or more Equipment Trust Certificates issued with respect to each of one or more Aircraft such that all of the Equipment Trust Certificates held in the related Pass Through Trust will have identical interest rates, in each case equal to the rate applicable to the Pass Through Certificates issued by such Pass Through Trust, and such that the latest maturity date for such Equipment Trust Certificates will occur on or before the final distribution date for such Pass Through Certificates. The Equipment Trust Certificates issued with respect to each Aircraft will be secured by a security interest in such Aircraft and by the Lease relating thereto, including the right to receive rent payable by Delta under such Lease. Although neither the Pass Through Certificates nor any Equipment Trust Certificates held in the respective Pass Through Trusts will be obligations of, or guaranteed by, Delta, the amounts payable by Delta under the Lease of each Aircraft will be sufficient to pay in full when due all principal of, premium, if any, and interest on the Equipment Trust Certificates related to such Aircraft.

Interest paid on the Equipment Trust Certificates held in each Pass Through Trust will be passed through to the registered holders of the Pass Through Certificates for such Pass Through Trust (for each Pass Through Trust, the "Certificateholders") on the dates and at the rate per annum set forth in the Prospectus Supplement relating to such Pass Through Certificates until the final distribution date for such Pass Through Trust. Principal paid on the Equipment Trust Certificates held in each Pass Through Trust will be passed through to the Certificateholders in scheduled amounts on the dates set forth in the Prospectus Supplement relating to such Pass Through Certificates until the final distribution date for such Pass Through Trust.

The Pass Through Certificates represent interests in the related Pass Through Trust only and all payments and distributions shall be made only from the property of such Pass Through Trust. The Pass Through Certificates do not represent an interest in or obligation of Delta.

The Pass Through Certificates may be sold to or through underwriters or directly to other purchasers or through agents. The Prospectus Supplement relating to each offering will set forth the names of any underwriters, dealers or agents involved in the sale of the Pass Through Certificates in connection with which this Prospectus is being delivered, the amounts, if any, to be purchased by underwriters and the compensation, if any, of such underwriters or agents.

For the Pass Through Certificates of any Series, prior to their issuance there will have been no market for such Pass Through Certificates and there can be no assurance that one will develop. Unless otherwise indicated in the applicable Prospectus Supplement, Delta does not intend to apply for the listing of any Series of Pass Through Certificates on a national securities exchange. See "Plan of Distribution".

This Prospectus may not be used to consummate sales of any Pass Through Certificates unless accompanied by the Prospectus Supplement applicable to the Pass Through Certificates being sold.

---

THESE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THIS PROSPECTUS. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

---

The date of this Prospectus is June 10, 1992.

may be made include commercial and savings banks, insurance companies, pension funds, investment companies, educational and charitable institutions and others, but in all cases such institutions must be approved by Delta. The obligations of any purchaser under any such contract will be subject to the condition that the purchase of the Pass Through Certificates is not at the time of delivery prohibited under the laws of the jurisdiction to which such purchaser is subject. The underwriters and such other agents will not have any responsibility in respect of the validity or performance of such contracts.

Unless otherwise indicated in the applicable Prospectus Supplement, Delta does not intend to apply for the listing of any Series of Pass Through Certificates on a national securities exchange. If the Pass Through Certificates of any Series are sold to or through underwriters, the underwriters may make a market in such Pass Through Certificates, as permitted by applicable laws and regulations. No underwriter would be obligated, however, to make a market in such Pass Through Certificates, and any such market-making could be discontinued at any time at the sole discretion of the underwriters. Accordingly, no assurance can be given as to the liquidity of, or trading markets for, the Pass Through Certificates of any Series.

Certain of the underwriters or agents and their associates may be customers of, engage in transactions with, and perform services for, Delta in the ordinary course of business.

## LEGAL MATTERS

Unless otherwise indicated in the applicable Prospectus Supplement, the legality of the Pass Through Certificates offered hereby will be passed upon for Delta by Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017, and by counsel for any agents, dealers or underwriters ("Underwriters' Counsel"). Unless otherwise indicated in the applicable Prospectus Supplement, both Davis Polk & Wardwell and Underwriters' Counsel may rely on the opinion of Powell, Goldstein, Frazer & Murphy, counsel for The Citizens and Southern National Bank of South Carolina, individually and as Pass Through Trustee, as to matters relating to the authorization, execution and delivery of the Pass Through Agreement and of each Series of Pass Through Certificates by the Owner Trustee and on corporate counsel of Delta, as to Delta's authorization, execution and delivery of the Pass Through Agreement.

## EXPERTS

The consolidated financial statements and schedules of Delta included or incorporated by reference in Delta's Annual Report on Form 10-K for the year ended June 30, 1991 and incorporated by reference herein, have been audited by Arthur Andersen & Co., independent public accountants, as indicated in their reports with respect thereto, and are incorporated by reference herein in reliance upon the authority of said firm as experts in accounting and auditing in giving said reports.

With respect to the unaudited interim financial information included in Delta's Quarterly Reports on Form 10-Q for the quarters ended September 30, 1991, December 31, 1991, and March 31, 1992, Arthur Andersen & Co. has applied limited procedures in accordance with professional standards for a review of that information. However, their reports thereon state that they did not audit and they do not express an opinion on that interim financial information. Accordingly, the degree of reliance on their reports on that information should be restricted in light of the limited nature of the review procedures applied. In addition, the accountants are not subject to the liability provisions of Section 11 of the Securities Act for their reports on the unaudited interim financial information because those reports are not a "report" or a "part" of the registration statement prepared or certified by the accountants within the meaning of Sections 7 and 11 of the Securities Act.

# EXHIBIT 4

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------x
                                                            :
                                                            :
                                                            :
In re:                                                      :      Chapter 11
                                                            :
ONEIDA LTD., et al.,                                        :      Case No. 06 – _____ (____)
                                                            :
                          Debtors.                          :      (Jointly Administered)
                                                            :
                                                            :
                                                            :
------------------------------------------------------------x
```

**AFFIDAVIT OF DOUGLAS P. BARTNER IN SUPPORT OF APPLICATION OF
DEBTORS FOR INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 327(a)
AND 328(a) (I) AUTHORIZING EMPLOYMENT AND RETENTION OF
SHEARMAN & STERLING LLP AS COUNSEL FOR DEBTORS AND
(II) SCHEDULING FINAL HEARING THEREON**

STATE OF NEW YORK      )
                       )   ss:
COUNTY OF NEW YORK     )

        Douglas P. Bartner, being duly sworn, deposes and says:

        1.      I am an attorney admitted to practice law in the State of New York, the

State of California and before the United States District Courts for the Southern and Eastern

Districts of New York. I am a member of the firm of Shearman & Sterling LLP ("Shearman &

Sterling"), which maintains its offices at 599 Lexington Avenue, New York, New York 10022. I

am familiar with the matters set forth herein and make this affidavit in support of the application

(the "Application") filed by Oneida Ltd. ("Oneida") and certain of its direct and indirect

domestic subsidiaries,[1] as debtors and debtors in possession in the above-captioned cases

---

[1]      In addition to Oneida Ltd., the following entities are debtors in these related cases: Sakura, Inc.; Buffalo
China, Inc.; Delco International, Ltd.; Kenwood Silver Company, Inc.; Oneida Food Service, Inc.; Oneida
International Inc.; Oneida Silversmiths Inc.; and THC Systems, Inc.

(collectively, the "Debtors"), for entry of interim and final orders pursuant to 11 U.S.C.

§§ 327(a) and 328(a) (i) authorizing the employment and retention of Shearman & Sterling as

counsel for the Debtors and (ii) scheduling a final hearing thereon.

2.      Unless otherwise stated, I have personal knowledge of the facts set forth

hereinafter.  To the extent that any information disclosed herein requires amendment or

modification upon Shearman & Sterling's completion of further analysis or as additional

party-in-interest information becomes available to me, I will submit a supplemental affidavit to

this Court.

3.      Except as otherwise disclosed herein, neither I, Shearman & Sterling, nor

any member, counsel or associate of Shearman & Sterling, insofar as I have been able to

ascertain, (i) represents entities other than the Debtors in connection with the Debtors' chapter 11

cases, (ii) has any connections with the Debtors, their creditors or stockholders, or any other

party-in-interest or (iii) holds any interest adverse to the Debtors or their estates with respect to

the matters on which Shearman & Sterling is to be retained and employed in these chapter 11

cases.

4.      More specifically, Shearman & Sterling, its partners, counsel and

associates:

    (i)     are not creditors, equity security holders or insiders of the Debtors;

    (ii)    are not and were not, within two years before the date of the filing of the
            Debtors' chapter 11 petitions, directors, officers or employees of the
            Debtors; and

    (iii)   do not have an interest materially adverse to the interest of the Debtors'
            estates or any class of creditors or equity security holders, by reason of
            any direct or indirect relationship to, connection with, or interest in the
            Debtors or for any other reason.

2

5.    Accordingly, I submit that Shearman & Sterling is a "disinterested person," as that term is defined in section 101(14) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended (the "Bankruptcy Code").

### Shearman & Sterling's Prepetition Relationship
### with the Debtors and Nature of Retention

6.    Shearman & Sterling is familiar with the Debtors' businesses, operations and financial affairs and is well qualified to provide the services required by the Debtors in these chapter 11 cases.  Shearman & Sterling has had an ongoing relationship with the Debtors since the early part of the twentieth century.  During the course of this relationship, Shearman & Sterling has represented the Debtors across a broad range of practice areas, including mergers and acquisitions, litigation, corporate reorganization, capital markets, bank finance, tax, executive compensation and employee benefits and property.

7.    Moreover, prior to the Petition Date, in November 2005, the Debtors engaged Shearman & Sterling to provide advice in connection with their recapitalization options, including preparation for the commencement of these chapter 11 cases.  This representation has included structuring, negotiating and preparing legal documentation to file these chapter 11 proceedings.  In providing such prepetition services to the Debtors, Shearman & Sterling's professionals have worked closely with the Debtors' management and have become well acquainted with the Debtors' businesses, operations, finances, debt structure and related matters. Accordingly, Shearman & Sterling has developed significant relevant experience and expertise regarding the Debtors that will assist in providing effective and efficient services in these chapter 11 cases.

8.    Shearman & Sterling is not a creditor of the Debtors.  In the one year prior to the Petition Date, the Debtors advanced $3,129,151.58 to Shearman & Sterling on account of

3

services performed and to be performed and expenses incurred and to be incurred in connection with the Debtors' recapitalization efforts and the commencement and prosecution of these chapter 11 cases, including an advance of an estimate of the fee charges and expenses for the period from March 13, 2006 through March 19, 2006. The exact amounts of actual charges for fees and expenses for such period will be determined upon the final recording of all time and expense charges and debited against such advance. In addition, Shearman & Sterling received an advance retainer of $250,000 for professional services performed and to be performed and expenses incurred and to be incurred in connection with these chapter 11 cases. After application of amounts for payment of any additional prepetition professional services and related expenses, the excess advance amounts will be held by Shearman & Sterling for application toward and payment of postpetition fees and expenses finally allowed by this Court.

9.      I understand that the Debtors have selected Shearman & Sterling to be their bankruptcy counsel because of Shearman & Sterling's long-standing relationship with the Debtors, in the course of which Shearman & Sterling has advised the Debtors in connection with certain corporate, financing, litigation, tax, employment, recapitalization and other significant matters. As a result of Shearman & Sterling's prepetition representation of the Debtors, Shearman & Sterling has become informed about the Debtors' businesses and legal affairs and is familiar with the Debtors' capital structure and the issues and material agreements relating to Shearman & Sterling's representation of the Debtors. It is my further understanding that the Debtors also have selected Shearman & Sterling based upon its experience in similar but unrelated matters of this type.

10.      Shearman & Sterling has a broad range of experience in reorganization and bankruptcy proceedings and is qualified to represent the Debtors as bankruptcy counsel.

4

I have read the Affidavit, and, to the best of my knowledge, information and belief, the contents of said Affidavit are true and correct.

/s/ Douglas P. Bartner
Douglas P. Bartner

SUBSCRIBED AND SWORN to
before me this 17th day of
March, 2006.

/s/ Nicholas W. Pullen
Notary Public
Commission # 01PU6130499
Notary Public, State of New York
New York County
My Comm. Expires July 18, 2009

16

# **<u>EXHIBIT 5</u>**

# SECURITIES AND EXCHANGE COMMISSION
## WASHINGTON, D.C. 20549

# FORM 10-K

Annual Report Pursuant to Section 13 or 15(d) of the
Securities Exchange Act of 1934

For the fiscal year ended January 27, 2001 Commission File Number 1-5452

# ONEIDA LTD.
### 163-181 KENWOOD AVENUE
### ONEIDA, NEW YORK 13421-2899
(315) 361-3636

```
        NEW YORK                              15-0405700
(State of Incorporation)          (I.R.S. Employer Identification No.)
```

### Securities registered pursuant to Section 12(b) of the Act:

```
                                        Name of exchange
        Title of Class                 on which registered
        --------------                 -------------------
Common Stock, par value $1.00 per share   New York Stock Exchange
with attached Preferred Stock purchase rights
```

### Securities registered pursuant to Section 12(g) of the Act:

### 6% Cumulative Preferred Stock, par value $25 per share
(Title of Class)

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. YES [X] NO [ ]

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. [X]

The aggregate market value of the voting stock held by non-affiliates of the registrant based on a closing price of $16.65 per share as reported on the New York Stock Exchange Composite Index on April 16, 2001 was $263,973,812.

The number of shares of Common Stock ($1.00 par value) outstanding as of April 16, 2001, was 16,465,578.

### Documents Incorporated by Reference

1. Portions of Oneida Ltd.'s Annual Report to Stockholders for the fiscal year ended January 27, 2001 (Parts I and II of Form 10-K).
2. Portions of Oneida Ltd.'s Definitive Proxy Statement dated April 24, 2001 (Part III of Form 10-K).

Page 0 of 17. See list of Exhibits on pages 11-13.

**EXHIBIT 4(a)(i)**

**ONEIDA LTD.**

**AMENDED AND RESTATED NOTE AGREEMENT**

**Dated as of January 1, 1992**

$30,000,000 Principal Amount
8.52% Senior Notes
Due January 15, 2002

PPN: 682505 B# 8

## EXHIBIT B

### LEGAL OPINIONS

A. The opinion of Gardner, Carton & Douglas, special counsel for the Purchasers, shall be to the effect that:

1. The Company is a corporation organized and validly existing in good standing under the laws of the State of New York, with all requisite corporate power and authority to carry on its business as now conducted, to enter into and perform the Agreement and to issue and sell the Notes.

2. The Agreement has been duly authorized by proper corporate action on the part of the Company, has been duly executed and delivered by an authorized officer of the Company and constitutes the legal, valid and binding agreement of the Company, enforceable in accordance with its terms, except to the extent that enforcement of the Agreement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws of general application relating to or affecting the enforcement of the rights of creditors or by equitable principles, regardless of whether enforcement is sought in a proceeding in equity or at law.

3. The Notes have been duly authorized by proper corporate action on the part of the Company, have been duly executed and delivered by an authorized officer of the Company and constitute the legal, valid and binding obligations of the Company, enforceable in accordance with their terms, except to the extent that enforcement of the Notes may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws of general application relating to or affecting the enforcement of the rights of creditors or by equitable principles, regardless of whether enforcement is sought in a proceeding in equity or at law.

4. Based upon the representations set forth in the Agreement, the offering, sale and delivery of the Notes do not require the registration of the Notes under the Securities Act of 1933, as amended, nor the qualification of an indenture under the Trust Indenture Act of 1939, as amended.

5. The issuance and sale of the Notes and compliance with the terms and provisions of the Notes and the Agreement will not conflict with or result in any breach of any of the provisions of the Certificate of Incorporation or By-Laws of the Company.

The opinion of Gardner, Carton & Douglas also shall state that the opinion of Shearman & Sterling, counsel for the Company, delivered to you pursuant to the Agreement, is satisfactory in form and scope to Gardner, Carton & Douglas, and, in their opinion, the Purchasers and it are justified in relying thereon and shall cover such other matters relating to the sale of the Notes as the Purchasers may reasonably request. Gardner, Carton & Douglas may rely, as to matters of New York law, on the opinion of Shearman & Sterling.

B. The opinion of Shearman & Sterling, counsel for the Company, shall cover all matters specified in clauses 1 through 6 set forth above and also shall be to the effect that:

1. The Company has full corporate power and authority to conduct the activities in which it is now engaged and own its property.

2. Each Subsidiary of the Company is a corporation duly organized and validly existing in good standing under the laws of its jurisdiction of incorporation, and each has all requisite corporate power and authority to carry on its business as now conducted and own its property.

3. Each of the Company and its Subsidiaries is duly qualified or licensed and in good standing as a foreign corporation authorized to do business in each jurisdiction where the nature of the business transacted by it or the character of its properties owned or leased makes such qualification or licensing necessary except where

37

failure to so qualify would not, individually or in the aggregate, have a material adverse affect on its business, properties, or condition, financial or otherwise.

4. No authorization, approval or consent of any governmental or regulatory body is necessary or required in connection with the lawful execution and delivery by the Company of the Agreement or the lawful offering, issuance and sale of the Notes, and no designation, filing, declaration, registration and/or qualification with any governmental authority is required by the Company in connection with such offer, issuance and sale.

5. The issuance and sale of the Notes and the execution, delivery and performance by the Company of the Agreement will not conflict with, or result in any breach or violation of any of the provisions of, or constitute a default under, or result in the creation of any Lien on the property of the Company or any Subsidiary pursuant to, (i) the provisions of the Certificate of Incorporation or other charter document or by-laws of the Company or any Subsidiary or any loan agreement under which the Company or any Subsidiary is bound, or other agreement or instrument known to such counsel (after due inquiry) to which the Company or any Subsidiary is a party or by which any of them or their property is bound or (ii) any New York law (including usury laws) or regulation, order, writ, injunction or decree of any court or governmental authority applicable to the Company known to such counsel.

6. There are no actions, suits or proceedings pending or, to the best of such counsel's knowledge after due inquiry, threatened against, or affecting the Company or its Subsidiaries, at law or in equity or before or by any Federal, state, municipal or other governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign, which are likely to result, either individually or in the aggregate, in any material adverse change in the business, properties, operations or condition, financial or otherwise, of the Company and its Subsidiaries taken as a whole.

7. All of the issued and outstanding shares of capital stock of each Subsidiary have been duly and validly issued, are fully paid and nonassessable and, to the knowledge of such counsel, are owned by the Company free and clear of any Lien.

8. The issuance of the Notes and the use of the proceeds of the sale of the Notes do not violate or conflict with Regulation G, T, U or X of the Board of Governors of the Federal Reserve System (12 C.F.R., Chapter II).

9. Neither the Company nor any Subsidiary is: (i) a "public utility company" or a "holding company," or an "affiliate" or a "subsidiary company" of a "holding company," or an "affiliate" of such a "subsidiary company," as such terms are defined in the Public Utility Holding Company Act of 1935, as amended, or (ii) a "public utility" as defined in the Federal Power Act, as amended, or (iii) an "investment company" or an "affiliated person" thereof or an "affiliated person" of any such "affiliated person," as such terms are defined in the Investment Company Act of 1940, as amended.

The opinion of Shearman & Sterling shall cover such other matters relating to the sale of the Notes as the Purchasers may reasonably request. With respect to matters of fact on which such opinion is based, such counsel shall be entitled to rely on appropriate certificates of public officials and officers of the Company and with respect to matters governed by the laws of any jurisdiction other than the United States of America and the State of New York, such counsel may rely upon the opinions of counsel deemed (and stated in their opinion to be deemed) by them to be competent and reliable.

38

# EXHIBIT 6

# ONEIDA LTD (ONDPQ)

C/O INTERNAL AUDITOR
163 –181 KENWOOD AVE
ONEIDA, NY 13421
315. 361.3636

# EX−5

**EXHIBIT 5**
**S−8 Filed on 10/30/1998**
File Number 333−66425



GSI

LIVEDGAR® Information Provided by Global Securities Information, Inc.
800.669.1154
www.gsionline.com

EXHIBIT 5

October 30, 1998

Oneida Ltd.
163-181 Kenwood Avenue
Oneida, New York  13421

Ladies and Gentlemen:

       We have acted as counsel for Oneida Ltd., a New York
corporation (the "Company"), in connection with the Registration Statement on
Form S-8 (the "Registration Statement") of the Company filed with the Securities
and Exchange Commission under the Securities Act of 1933, as amended (the
"Securities Act"), with respect to approximately 1,100,000 shares (the "Shares")
of common stock, par value $6.25 per share, of the Company (the "Common Stock"),
to be issued from time to time pursuant to the (i) Oneida Ltd. 1998 Stock Option
Plan and (ii) the Oneida Ltd. 1998 Non-Employee Directors Stock Option Plan
(each, a "Plan").

       In so acting, we have examined the Registration Statement and
we have also examined and relied as to factual matters upon the representations
and warranties contained in originals, or copies certified or otherwise
identified to our satisfaction, of such documents, records, certificates and
other instruments as in our judgment are necessary or appropriate to enable us
to render the opinion expressed below. In such examination, we have assumed the
genuineness of all signatures, the authenticity of all documents, certificates
and instruments submitted to us as originals and the conformity with originals
of all documents submitted to us as copies.

       The opinion expressed below is limited to the law of the State
of New York and the federal law of the United States, and we do not express any
opinion herein concerning any other law.

       Based upon the foregoing and having regard for such legal
considerations as we have deemed relevant, we are of the opinion that the Shares
have been duly authorized by the Company and, when (a) issued and delivered by
the Company in accordance with the terms of the relevant Plan and (b) paid for
in full in accordance with the terms of the relevant Plan, the Shares will be
validly issued, fully paid and non-assessable.

10

Oneida Ltd.                          2                     October 30, 1998

We hereby consent to the filing of this opinion as an exhibit
to the Registration Statement.

Sincerely yours,

SHEARMAN & STERLING

11

# EXHIBIT 7

JAN 23 2002

FILED

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JAN 2 2 2002

SUSAN PIERSON SONDERBY
CHIEF BANKRUPTCY JUDGE

In re:                                    )    Case No. 02-
                                          )    (Jointly Administered)
KMART CORPORATION, et al.,                )    Chapter 11
                                          )    Hon.
                                          )    Hearing Date:
          Debtors.                        )    Hearing Time:

## AFFIDAVIT AND STATEMENT OF JOHN WM. BUTLER, JR., PURSUANT TO BANKRUPTCY RULES 2014 AND 2016 IN SUPPORT OF APPLICATION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 327(a) AND 329 AUTHORIZING THE EMPLOYMENT AND RETENTION OF SKADDEN, ARPS, SLATE, MEAGHER & FLOM (ILLINOIS) AND AFFILIATED LAW PRACTICE ENTITIES AS ATTORNEYS FOR THE DEBTORS

STATE OF ILLINOIS        )
                         ) ss:
COUNTY OF COOK           )

JOHN WM. BUTLER, JR., being duly sworn, deposes and says:

1.    I am a member of the firm of Skadden, Arps, Slate, Meagher & Flom

(Illinois), which maintains an office for the practice of law at 333 West Wacker

Drive, Chicago, Illinois 60606-1225. I am a member in good standing of the bars of,

and am admitted to practice in, the States of Illinois and Michigan, the United States

District Courts for the Northern District of Illinois and the Eastern and Western

Districts of Michigan, the United States Court of Appeals for the Sixth and Seventh

Circuits, and the United States Supreme Court. I submit this affidavit pursuant to 11

U.S.C. §§ 327 and 329 and Fed. R. Bank. P. 2014 and 2016 in support of the

Application for Order Pursuant to 11 U.S.C. §§ 327(a) and 329 Authorizing the

Employment and Retention of Skadden, Arps, Slate, Meagher & Flom (Illinois) and



Affiliated Law Practice Entities as Attorneys for the Debtors (the "Application"),
filed contemporaneously herewith by the Debtors. Except as otherwise indicated, I
have personal knowledge of the matters set forth herein and if called as a witness,
would testify competently thereto.[1]

QUALIFICATION OF PROFESSIONALS

2.    As of January 2002, Skadden, Arps, Slate, Meagher & Flom (Illinois)
and its affiliated law practice entities (collectively, "Skadden, Arps") began repre-
senting Kmart Corporation ("Kmart") and certain of its subsidiaries and affiliates
(collectively, the "Debtors") in their present efforts to restructure their businesses
pursuant to an engagement agreement with Skadden, Arps dated as of January 7,
2002 (the "Engagement Agreement"), a copy of which is attached hereto as Exhibit
A. Previously, Skadden, Arps has performed legal work for the Debtors in connec-
tion with certain corporate, financing, litigation, restructuring, securities, tax and
other significant matters since 1988.

3.    Skadden, Arps believes it has assembled a highly qualified team of
attorneys to service the Debtors during their reorganization efforts. I am the co-
leader of Skadden, Arps' worldwide corporate restructuring practice and have served
as counsel in transactional work with debtors, sellers, purchasers and creditors of
financially troubled companies, in nonjudicial restructurings, and in chapter 11
reorganization cases in several hundred transactions across North America and in

---

[1]    Certain of the disclosures herein relate to matters within the knowledge of
other attorneys at Skadden, Arps and are based on information provided by
them.

2

FURTHER AFFIANT SAYETH NOT.

John Wm. Butler, Jr.

Sworn to before me this ___
day of January 2002

Notary Public

"OFFICIAL SEAL"
PAULINE P. CHOW
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 11/1/2003