7.   **Rules of Construction**.

    a.   No reference to "proceeds" in this Agreement authorizes any sale, transfer, or other disposition of the Collateral by the Borrower.

    b.   "Includes" and "including" are not limiting.

    c.   "Or" is not exclusive.

    d.   "All" includes "any" and "any" includes "all."

8.   **Integration and Modifications.**

    (i)   This Agreement is the entire agreement of the Borrower and Lender concerning its subject matter.

    (ii)  Any modification to this Agreement must be made in writing and signed by the party adversely affected.

9.   **Waiver.**  Any party to this Agreement may waive the enforcement of any provision to the extent the provision is for its benefit.

10.  **Counterparts.**  This Agreement may be executed in any number of counterparts, all of which will constitute one agreement.

PWSP 00001.45

The parties have signed this Agreement as of the day and year first above written.

"Borrower"

SONICBLUE INCORPORATED

By: _____

    Ken Potashner
    Chief Executive Officer

"Lender"

VIA TECHNOLOGIES, INC.

By: _____

    Wen-Chi Chen
    President

20

EXHIBIT A

Registration Rights Agreement

PWSP 00001.47

EXHIBIT B

Prior Liens, Security Interests and
Restrictions on Transfer or Pledge on Collateral

[TO COME]

PWSP 00001.48

189624 v06.LA (42BC06!.DOC)

PWSP 00001.49

# REGISTRATION RIGHTS AGREEMENT

THIS REGISTRATION RIGHTS AGREEMENT (this "Agreement") is made as of the ____ day of _____, 2002, by and between SONICBLUE INCORPORATED, a Delaware corporation, formerly known as S3 Incorporated (the "Company") and VIA TECHNOLOGIES, INC., a corporation organized under the laws of the Republic of China (the "Lender").

WHEREAS, the Company and the Lender have entered into that certain Loan and Security Agreement dated _____, 2002 (the "Loan Agreement") whereby the Lender loaned U.S.$15,000,000 to the Company (the "Loan");

WHEREAS, the principal and accrued but unpaid interest on the Loan is convertible into Common Stock (as defined below) at the option of Lender, in its sole discretion, at any time after the issuance of the Loan proceeds; and

WHEREAS, in connection with the possible conversion of the Loan into shares of the Company's Common Stock (the "Shares"), the Company and the Lender desire to provide for the rights of the Lender with respect to the registration of the Shares according to the terms of this Agreement.

NOW, THEREFORE, THE PARTIES HEREBY AGREE AS FOLLOWS:

1.    Definitions.

1.1    The term "Commission" means the Securities and Exchange Commission or any other federal agency at the time administering the Securities Act.

1.2    The term "Common Stock" means the common stock, par value $0.0001 per share, of the Company, and excludes any securities convertible into, exchangeable for or otherwise derivative of such Common Stock.

1.3    The term "Exchange Act" means the Securities Exchange Act of 1934, as amended, or any similar successor federal statute and the rules and regulations thereunder, all as the same shall be in effect from time to time.

1.4    The term "Form S-3" means such form under the Securities Act as in effect on the date hereof or any form for the registration of securities subsequently adopted by the Commission in lieu of Form S-3 that permits the inclusion or incorporation of information by reference to other documents filed with the Commission.

-1-

1.5     The term "Holder" means any person owning or having the right to acquire Registrable Securities or any assignee thereof in accordance with Section 9 hereof.

1.6     The terms "Register," "Registered" and "Registration" refer to a registration effected by preparing and filing a registration statement or similar document in compliance with the Securities Act, and the declaration or ordering of effectiveness of such registration statement or document.

1.7     The term "Registrable Securities" means (i) the Shares and (ii) Common Stock issued as a dividend or other distribution with respect to, or in exchange for or in replacement of, the Shares, excluding in all cases, however, any Registrable Securities sold by a person in a transaction in which such person's registration rights are not assigned; provided, however, that any shares previously sold to the public pursuant to a registered public offering or pursuant to Rule 144 under the Securities Act shall cease to be Registrable Securities.

1.8     The term "Securities Act" means the Securities Act of 1933, as amended, or any similar successor federal statute and the rules and regulations thereunder, all as the same shall be in effect from time to time.

1.9     All other capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Loan Agreement to which this Exhibit A is attached.

2.      Registration on Form S-3.

2.1     The Company shall file a registration statement under the Securities Act covering the registration of at least _____ shares [such number of shares to cover the conversion of the all principal and interest on the Loan] (as adjusted for stock splits, dividends and other similar occurrences that may take place after the Closing Date) of Registrable Securities, and shall:

(i)     promptly give written notice of the proposed registration to all other Holders; and

(ii)    as soon as practicable, subject to the limitations set forth in this Section 2, use all reasonable efforts to effect such registration on Form S-3 (including, without limitation, filing post-effective amendments, appropriate qualifications under applicable blue sky or other state securities laws, and appropriate compliance with the Securities Act) and as would permit or facilitate the sale and distribution of all such Registrable Securities as are specified above.

The Company shall not be obligated to effect, or to take any action to effect, any such registration pursuant to this Section 2, in any particular

-2-

jurisdiction in which the Company would be required to execute a general consent to service of process in effecting such registration, qualification, or compliance, unless the Company is already subject to service in such jurisdiction and except as may be required by the Securities Act.

2.2    Subject to the last paragraph of Section 2.1, the Company shall file a Form S-3 registration statement covering the Registrable Securities as soon as practicable after the execution of this Agreement, but in no event later than twenty (20) calendar days after the execution of this Agreement. If the Company fails to file a Form S-3 registration statement within twenty (20) calendar days after the execution of this Agreement, the interest rate on the Loan shall increase from prime plus 2%, as announced by [name of bank] to prime plus __%, as announced by [name of bank]. The registration on Form S-3 pursuant to this Section 2 shall not be underwritten, and such registration statement shall be kept effective no longer than _____ (__) days. The registration statement filed pursuant to this Section 2 may include, at the Company's election, securities of the Company being sold for the account of the Company.

3.    Company Registration.

If (but without any obligation to do so) prior to the termination of the Company's obligations hereunder as set forth in Section 10 hereof, the Company proposes to register (including for this purpose a registration effected by the Company for stockholders other than the Holders) any of its Common Stock under the Securities Act in connection with a firmly underwritten public offering solely of such Common Stock and solely for cash (other than a registration on any form that does not include substantially the same information as would be required to be included in a registration statement covering the sale of the Registrable Securities), the Company shall, at such time, promptly give each Holder written notice of such registration. Upon the written request of the Holder given within 10 days after mailing of such notice by the Company in accordance with Section 11.2 of this Agreement, the Company shall, subject to the provisions of Section 6 hereof, cause to be registered under the Securities Act all of the Registrable Securities that each such Holder has requested to be registered.

4.    Obligations of the Company.

Whenever required under this Agreement to effect the registration of any Registrable Securities, the Company shall, as expeditiously as reasonably possible and subject to Section 2 hereof, as applicable:

4.1    Prepare and file with the Commission a registration statement with respect to such Registrable Securities and use all reasonable efforts to cause such registration statement to become effective.

-3-

PWSP 00001.52

4.2    Prepare and file with the Commission such amendments and supplements to such registration statement and the prospectus used in connection with such registration statement as may be necessary to comply with the provisions of the Securities Act with respect to the disposition of all securities covered by such registration statement.

4.3    Furnish to the Holders covered by such registration statement such numbers of copies of a prospectus, including a preliminary prospectus, in conformity with the requirements of the Securities Act, and such other documents as they may reasonably request in order to facilitate the disposition of such Registrable Securities.

4.4    Use all reasonable efforts to register and qualify the securities covered by such registration statement under such other securities or Blue Sky laws of such jurisdictions as shall be reasonably requested by the Holders thereof, provided that the Company shall not be required in connection therewith or as a condition thereto to qualify to do business or to file a general consent to service of process in any such states or jurisdictions.

4.5    Except for registrations effectuated pursuant to Section 2.1, enter into and perform its obligations under an underwriting agreement, in usual and customary form, with the managing underwriter of such offering.  Each Holder participating in such underwriting shall also enter into and perform its obligations under such an agreement.

4.6    Notify each Holder covered by such registration statement at any time when a prospectus relating thereto is required to be delivered under the Securities Act of the happening of any event as a result of which the prospectus included in such registration statement, as then in effect, includes an untrue statement of a material fact or omits to state a material fact required to be stated therein or necessary to make the statements therein not misleading in the light of the circumstances then existing.

4.7    List, within ten (10) days after the date hereof, the Shares for trading on the Nasdaq National Market.

4.8    Use all reasonable efforts to remain eligible to use Form S-3 for registration of its securities.

5.    Provision of Information.

It shall be a condition precedent to the obligations of the Company to take any action pursuant to this Agreement that the selling Holders shall furnish to the Company such information regarding themselves, the Registrable Securities held

-4-

PWSP 00001.53

by them, and the intended method of disposition of such securities as shall be reasonably required to effect the registration of the Registrable Securities.

6. Expenses.

The Company shall bear and pay all expenses incurred by the Company in connection with any registration, filing or qualification of Registrable Securities with respect to the registrations pursuant to Sections 2 and 3 hereof for each Holder thereof (which right may be assigned as provided in Section 9 hereof), including (without limitation) all registration, filing and qualification fees, printers' and accounting fees relating or apportionable thereto, fees and disbursements of counsel for the Company, and of one counsel to the selling Holders (not to exceed $10,000), blue sky fees and expenses, including fees and disbursements of counsel related to all blue sky matters, the expenses of providing materials pursuant to Section 4.3 hereof, but excluding all underwriting discounts and commissions relating to Registrable Securities, which shall be borne by the Holders. Notwithstanding the foregoing, the Company shall not be required to pay for any expenses of any registration proceeding begun pursuant to Section 2 if the registration request is subsequently withdrawn at the request of the Holders of a majority of the Registrable Securities to be registered (in which case all participating Holders shall bear such expenses); provided, however, that if at the time of such withdrawal, such Holders have learned of a material adverse change in the condition, business or prospects of the Company from that known to such Holders at the time of their request, then the Holders shall not be required to pay any of such expenses and shall retain their rights pursuant to Section 2.

7. Underwriting Requirements.

In connection with any offering involving an underwriting of shares of Common Stock, the Company shall not be required under Section 3 to include any of the Holders' securities in such underwriting unless they accept the terms of the underwriting as agreed upon between the Company and the underwriters selected by it, and then only in such quantity as will not, in the opinion of the underwriters, jeopardize the success of the offering by the Company. If the total amount of securities, including Registrable Securities, requested by stockholders to be included in such offering exceeds the amount of securities sold other than by the Company that the underwriters reasonably believe compatible with the success of the offering, then the Company shall be required to include in the offering only that number of such securities, including Registrable Securities, which the underwriters believe will not jeopardize the success of the offering. Subject to any contractual rights of other selling stockholders, the securities so included shall be apportioned pro rata among the selling stockholders according to the total amount of securities entitled to be included therein owned by each selling stockholder or in such other proportions as shall mutually be agreed to by such selling

-5-

PWSP 00001.54

stockholders, but in no event shall any shares being sold by a stockholder exercising a demand registration right be excluded from such offering. For purposes of the preceding parenthetical concerning apportionment, for any selling stockholder that is a Holder of Registrable Securities and that is a partnership or corporation, the partners, retired partners and stockholders of such Holder, or the estates and family members of any such partners and retired partners and any trusts for the benefit of any of the foregoing persons shall be deemed to be a single "selling stockholder," and any pro rata reduction with respect to such "selling stockholder" shall be based upon the aggregate amount of shares carrying registration rights owned by all entities and individuals included in such "selling stockholder," as defined in this sentence.

8.    Indemnification.

In the event any Registrable Securities are included in a registration statement under this Agreement:

8.1    To the extent permitted by law, the Company will indemnify and hold harmless each Holder of such Registrable Securities, the officers and directors of each such Holder, any underwriter (as defined in the Securities Act) for such Holder and each person, if any, who controls such Holder or underwriter within the meaning of the Securities Act or the Exchange Act, against any losses, claims, damages or liabilities (joint or several) to which they may become subject under the Securities Act, the Exchange Act or other federal or state law, insofar as such losses, claims, damages or liabilities (or actions in respect thereof) arise out of or are based upon any of the following statements, omissions or violations (collectively, a "Violation"):  (i) any untrue statement or alleged untrue statement of a material fact contained in such registration statement, including any preliminary prospectus or final prospectus contained therein or any amendments or supplements thereto, (ii) the omission or alleged omission to state therein a material fact required to be stated therein, or necessary to make the statements therein not misleading, or (iii) any violation or alleged violation by the Company of the Securities Act, the Exchange Act, any state securities law or any rule or regulation promulgated under the Securities Act, the Exchange Act or any state securities law; and the Company will reimburse each such Holder, officer or director, underwriter or controlling person for any legal or other expenses reasonably incurred by them in connection with investigating or defending any such loss, claim, damage, liability or action; provided, however, that the indemnity agreement contained in this Section 8.1 shall not apply to amounts paid in settlement of any such loss, claim, damage, liability or action if such settlement is effected without the consent of the Company (which consent shall not be unreasonably withheld), nor shall the Company be liable in any such case for any such loss, claim, damage, liability or action to the extent that it arises out of or is

-6-

based upon a Violation which occurs in reliance upon and in conformity with written information furnished expressly for use in connection with such registration by any such Holder, officer, director, underwriter or controlling person.

8.2    To the extent permitted by law, each selling Holder (severally but not jointly) will indemnify and hold harmless the Company, each of its directors, each of its officers who have signed the registration statement, each person, if any, who controls the Company within the meaning of the Securities Act, any underwriter and any other Holder selling securities in such registration statement or any of its directors or officers or any person who controls such Holder, against any losses, claims, damages or liabilities to which the Company or any such director, officer or underwriter or controlling person, or other such Holder or director, officer or controlling person may become subject, under the Securities Act, the Exchange Act or other federal or state law, insofar as such losses, claims, damages or liabilities (or actions in respect thereto) arise out of or are based upon any Violation, in each case to the extent (and only to the extent) that such Violation occurs in reliance upon and in conformity with written information furnished by such Holder expressly for use in connection with such registration; and each such Holder will reimburse any legal or other expenses reasonably incurred by the Company or any such director, officer, controlling person, underwriter or controlling person, other Holder, officer, director, or controlling person in connection with investigating or defending any such loss, claim, damage, liability, or action; provided, however, that the indemnity agreement contained in this Section 8.2 shall not apply to amounts paid in settlement of any such loss, claim, damage, liability or action if such settlement is effected without the consent of the Holder, which consent shall not be unreasonably withheld; provided, that in no event shall any indemnity under this Section 8.2 exceed the gross proceeds received by such Holder from the sale of Registrable Securities as contemplated hereunder.

8.3    Promptly after receipt by an indemnified party under this Section 8 of notice of the commencement of any action (including any governmental action), such indemnified party will, if a claim in respect thereof is to be made against any indemnifying party under this Section 8, deliver to the indemnifying party a written notice of the commencement thereof and the indemnifying party shall have the right to participate in, and, to the extent the indemnifying party so desires, jointly with any other indemnifying party similarly noticed, to assume the defense thereof with counsel mutually satisfactory to the parties; provided, however, that an indemnified party shall have the right to retain its own counsel, with the fees and expenses to be paid by the indemnifying party, if representation of such indemnified party by the counsel retained by the indemnifying party would be inappropriate due to actual or potential differing interests between such

PWSP 00001.56

indemnified party and any other party represented by such counsel in such proceeding. The failure to deliver written notice to the indemnifying party within a reasonable time of the commencement of any such action, if prejudicial to its ability to defend such action, shall relieve such indemnifying party of any liability to the indemnified party under this Section 8, but the omission so to deliver written notice to the indemnifying party will not relieve it of any liability that it may have to any indemnified party otherwise than under this Section 8.

8.4    The obligations of the Company and Holders under this Section 8 shall survive the completion of any offering of Registrable Securities in a registration statement under this Agreement, and otherwise.

9.    Assignment of Registration Rights.

The right to enforce the Company's obligation to register Registrable Securities pursuant to this Agreement may be assigned by a Holder only to a transferee or assignee who becomes the holder of at least **[three hundred thousand (300,000) shares]** of Registrable Securities, or a portion of the Loan convertible into that amount of Registrable Securities; provided, that the Company is, within a reasonable time after such transfer, furnished with written notice of the name and address of such transferee or assignee and the securities with respect to which such registration rights are being assigned; and provided, further, that the rights so assigned shall be effective only if the transferee or assignee continues to be a wholly-owned subsidiary of a Holder.

10.    Termination of Registration Rights.

The Company's obligations pursuant to this Agreement shall terminate as to any Holder of Registrable Securities on the earlier to occur of (i) the **[second]** anniversary of the Effective Date as defined in the Loan Agreement, and (ii) such time when all Registrable Securities held by the Holder may be sold pursuant to Rule 144 under the Securities Act during any three-month period.

11.    Miscellaneous.    Miscellaneous{tc \l 111 ". Miscellaneous"}.

11.1    Successors and Assigns. Except as otherwise provided herein, the terms and conditions of this Agreement shall inure to the benefit of and be binding upon the respective successors and assigns of the parties. Nothing in this Agreement, express or implied, is intended to confer upon any party other than the parties hereto or their respective successors and assigns any rights, remedies, obligations, or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement.

PWSP 00001.57

11.2   Notices.  Unless otherwise provided, any notice, request, demand or other communication required or permitted under this Agreement shall be given in writing and shall be deemed effectively given upon personal delivery to the party to be notified, or when sent by telecopier (with receipt confirmed and promptly confirmed by personal delivery, U.S. first-class mail or carrier), or overnight courier service, or upon deposit with the United States Post Office, by registered or certified mail, postage prepaid and addressed as follows (or at such other address as a party may designate by notice to the other):

If to the Company:

SONICblue Incorporated
2841 Mission College Blvd.
Santa Clara, California 95054
Attention:  Ken Potashner
Telephone:
Telecopier: (408) 588-8050
e-mail:  Kpotashner@sonicblue.com

with a copy to:

Pillsbury Winthrop
2550 Hanover Street
Palo Alto, California 94304
Attention:  Jorge A. Del Calvo, Esq.
Telephone:
Telecopier: (650) 233-4545
e-mail:

If to the Lender:

VIA Technologies, Inc.
8F, No. 533 Chung-Cheng Road,
Hsing-Tien,
Taipei, Taiwan
Republic of China
Attn:  Wen-Chi Chen, President
Telephone:
Facsimile:
e-mail:

-9-

with copies to:

Heller Ehrman White & McAuliffe LLP
4250 Executive Square, 7th Floor
La Jolla, CA 92037
Attention: Alan Jacobs, Esq.
Telephone: (858) 450-8489
Telecopier: (858) 450-8499
e-mail: ajacobs@hewm.com

11.3 <u>Waivers</u>.  The observance of any term of this Agreement may be waived (either generally or in a particular instance and either retroactively or prospectively) only with the written consent of the party against whom such waiver is sought to be enforced.  No waiver by either party of any default with respect to any provision, condition or requirement hereof shall be deemed to be a continuing waiver in the future thereof or a waiver of any other provision, condition or requirement hereof; nor shall any delay or omission of either party to exercise any right hereunder in any manner impair the exercise of any such right accruing to it thereafter.

11.4 <u>Severability</u>.  If one or more provisions of this Agreement are held to be unenforceable, invalid or void by a court of competent jurisdiction, such provision shall be excluded from this Agreement and the balance of this Agreement shall be interpreted as if such provision were so excluded and shall be enforceable in accordance with its terms.

11.5 <u>Entire Agreement; Amendments</u>.

(a)  Except as otherwise provided herein or in the Loan Agreement, this Agreement contains the entire understanding of the parties with respect to the matters covered herein and supersedes all prior agreements and understandings, written or oral, between the parties relating to the subject matter hereof.

(b)  Any term of this Agreement may be amended and the observance of any term of this Agreement may be waived (either generally or in a particular instance and either retroactively or prospectively), only with the written consent of the Company and the holders of a majority of the Registrable Securities then outstanding.  Any amendment or waiver effected in accordance with this paragraph shall be binding upon each holder of any Registrable Securities then outstanding, each future holder of all such Registrable Securities, and the Company.

-10-

11.6 <u>Governing Law</u>. This Agreement shall be governed by and construed under the laws of the State of Delaware (irrespective of its choice of law principles).

11.7 <u>Counterparts</u>. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

11.8 <u>Titles and Subtitles</u>. The titles and subtitles used in this Agreement are used for convenience only and are not to be considered in construing or interpreting this Agreement. Any reference in this Agreement to a statutory provision or rule or regulation promulgated thereunder shall be deemed to include any similar successor statutory provision or rule or regulation promulgated thereunder.

PWSP 00001.60

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

SONICBLUE INCORPORATED

By _____

    Ken Potashner
    Chief Executive Officer

VIA TECHNOLOGIES, INC.

By _____

    Wen-Chi Chen

    _____

188730 v03.LA (41m$03!.DOC)
(17010.0004)

-12-

# EXHIBIT 8

| | |
|---|---|
| **From:** | Barron, Austin [Abarron@OMM.com] |
| **Sent:** | Friday, May 12, 2006 6:19 PM |
| **To:** | Johnson, Steven J.; hkevane@pszyjw.com; Boro, Jr., Albert J. |
| **Cc:** | Uhland, Suzzanne; Eberhart, David |
| **Subject:** | RE: CORRECTED -- Via comments on Sonicblue settlement agreement--Confidential Settlement Communication |

**Attachments:**     sb settlement.austin5.doc; compare.doc



sb
:ment.austin5.doc (1          compare.doc (126
                    KB)

All-

Attached are a clean and a redline of the Settlement Agreement, reflecting the changes from Intel's last clean draft. I apologize for the way the redline looks, but we've been trying to balance any number of comments from a multitude of people, and working with drafts and comments that jump ahead or get left behind sometimes. I _think_, however, that this should get us extremely close.

As a reader's guide, a lot of this is cleanup. The language in Section 5 concerning the IP transfer has been clarified, and there are a few other threads that have been chased down to be consistent throughout (such as the effective date, appealable order issue).

Redacted as Confidential          Redacted as Confidential

There are a few sections left that I didn't want to get into, because they appear to involve issues that are solely between Intel and Via. I attempted to identify these with a [*[text]*]. I think these should be the only remaining open items.

We look forward to hearing from you.

Sincerely,

Austin K. Barron
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, CA  90071
Tel:  (213) 430-6425
Fax:  (213) 430-6407
abarron@omm.com

_____

**From:** Uhland, Suzzanne
**Sent:** Monday, May 08, 2006 12:26 PM
**To:** Barron, Austin
**Subject:** FW: CORRECTED -- Via comments on Sonicblue settlement agreement--Confidential Settlement Communication

_____

**From:** Henry Kevane [mailto:HKevane@pszyjw.com]

1

**Sent:** Monday, May 08, 2006 12:15 PM
**To:** Johnson, Steven J.; Uhland, Suzzanne
**Cc:** Bal, Colleen; Luther Orton
**Subject:** CORRECTED -- Via comments on Sonicblue settlement agreement--Confidential Settlement Communication


Here are the corrected comments of Via to the settlement agreement.  As I mentioned, can you kindly return or delete the previous email.   Thanks.

Henry


-----Original Message-----
**From:** Johnson, Steven J. [mailto:sjjohnson@gibsondunn.com]
**Sent:** Thursday, April 27, 2006 4:06 PM
**To:** Henry Kevane; suhland@omm.com
**Subject:** Intel comments on Sonicblue settlement agreement--Confidential Settlement Communication


Henry and Suzzanne:

Attached are Intel's comments on the settlement agreement, marked against the last draft received from VIA.

Regards,

Steve J.

"MMS <Gibsondunn.net>" made the following annotations.
--------------------------------------------------------------------------------

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.
========================================================================
===

2

## SETTLEMENT AGREEMENT

This Settlement Agreement is made effective as of the Effective Date (as defined below) by and among VIA Technologies, Inc., S3 Graphics Co. Ltd., S3 Graphics, Inc., S3-VIA, Inc., Intel Corporation, and SONICblue, Inc.

### Section I – Definitions

1.  "Adversary Proceeding" as used herein means the case entitled *SONICblue Incorporated v. VIA Technologies, Inc.* (case No. 04-5556) filed by Debtor against Claimants and S3G Inc., on or about December 21, 2004, including all counterclaims.

2.  "Amended and Restated Investment Agreement" as used herein shall mean the written agreement entitled "Amended and Restated Investment Agreement" between VIA and Debtor dated August 28, 2000, as amended and supplemented. Amended and Restated Investment Agreement shall include all of the letters and other agreements executed as a part of the transaction contemplated in the Amended and Restated Investment Agreement, including, without limitation, the Joint Venture Agreement between Debtor, Sonica3, Inc. and VIA, dated as of January 3, 2001, the Class A Shares Option Agreement between Debtor and VIA, dated as of January 3, 2001, the Guaranty executed by VIA and dated as of January 3, 2001, and certain so-called side letters, dated as of January 3, 2001, executed by Debtor and Claimants amending the Amended and Restated Investment Agreement.

3.  "Approval Order" as used herein shall mean an order of the Bankruptcy Court, or another court of competent jurisdiction, approving this Settlement Agreement without change (unless such change is approved in writing by all Parties hereto) and authorizing Debtor's entry into and performance under this Settlement Agreement.

4.  "Assumption Motion" as used herein shall mean the motion filed by Debtor in the Debtor's Bankruptcy Case on December 17, 2004, seeking to assume the Patent Cross License Agreement pursuant to 11 U.S.C. § 365.

5.  "Bankruptcy Cases" as used herein shall mean collectively the jointly-administered Chapter 11 cases captioned *In re SONICblue Incorporated*, et al., Nos. 03-51775 to 51778, and any other bankruptcy cases or entities substantively consolidated therewith; and "Debtor's Bankruptcy Case" shall mean the Chapter 11 case captioned *In re SONICblue Incorporated*, No. 03-51775, including any other bankruptcy cases or entities substantively consolidated therewith.

6.  "Bankruptcy Code" as used herein shall mean Title 11 of the United States Code, including without limitation Chapter 11 thereof, 11 U.S.C. §§ 101 et seq.

7.  "Bankruptcy Court" as used herein shall mean the United States Bankruptcy Court for the Northern District of California, San Jose Division.

8.  "Claimants" as used herein shall mean VIA Technologies, Inc., and S3 Graphics Co. Ltd.

1

PWSP 00001.265

9.      "Claimants' Proofs of Claim" as used herein shall mean the proofs of claim filed by Claimants in the Debtor's Bankruptcy Case on or about July 17, 2003.

10.     "Debtor" as used herein shall mean SONICblue, Inc., formerly known as S3 Incorporated, as debtor and debtor-in-possession.

11.     "Effective Date" as used herein shall mean the date eleven days after the entry of the Approval Order on the docket of the Bankruptcy Court, provided that no appeal has been filed prior to such time, or if an appeal has been filed then "Effective Date" shall mean such later date as the Approval Order is upheld on appeal and any deadlines for further appeal have expired.

12.     "Graphics Chip Business" as used herein shall have the same meaning as the term "Graphics Chip Business" defined in Article I of the Amended and Restated Investment Agreement.

13.     "Intel" as used herein shall mean Intel Corporation.

14.     "Intel-VIA Settlement Agreement" as used herein shall mean the written agreement entitled "Litigation Settlement Agreement" between VIA and Intel dated as of April 7, 2003.

15.     "Investment Agreement" as used herein shall mean the written agreement entitled "Investment Agreement" between VIA and Debtor dated April 10, 2000, as amended and supplemented.

16.     "JV Entities" as used herein shall mean S3-VIA, S3G Co., and S3G Inc.

17.     "Party" as used herein shall refer to any of the parties to this Settlement Agreement (*e.g.*, VIA Technologies, Inc., S3 Graphics Co. Ltd., S3 Graphics, Inc., S3-VIA, Inc., Intel Corporation or SONICblue, Inc.), and "Parties" shall mean all of them (*i.e,* VIA Technologies, Inc., S3 Graphics Co. Ltd., S3 Graphics, Inc., S3-VIA, Inc., Intel Corporation and SONICblue, Inc.).

18.     "PCL" as used herein shall mean the written agreement entitled "Patent Cross License Agreement" between Intel and Debtor dated December 16, 1998.

19.     "Petition Date" as used herein shall mean March 21, 2003.

20.     "S3-VIA Investment Agreement" as used herein shall mean the written agreement entitled "Joint Venture Agreement" dated as of October 27, 1999, by and between VIA, Debtor and S3Ventures, Ltd., a Cayman Islands company which is a wholly-owned subsidiary of Debtor.

21.     "S3G Co." as used herein shall mean S3 Graphics Co. Ltd.

22.     "S3G Inc." as used herein shall mean S3 Graphics, Inc.

PWSP 00001.266

23.    "S3-VIA" as used herein shall mean S3-VIA, Inc.

24.    "Stay Motion" as used herein shall mean the motion for relief from the automatic stay imposed by 11 U.S.C. § 362 in order to terminate the PCL, originally filed by Intel in the Debtor's Bankruptcy Case on or about June 6, 2003, and renewed on May 13, 2004.

25.    "VIA" as used herein shall mean VIA Technologies, Inc.

## Section II – Recitals

WHEREAS, on March 21, 2003, Debtor and certain of its affiliates commenced the Bankruptcy Cases by filing voluntary petitions for bankruptcy protection under Chapter 11 of the Bankruptcy Code.

WHEREAS, on or about June 6, 2003, Intel filed the Stay Motion seeking to terminate the PCL.

WHEREAS, on July 17, 2003, Claimants filed Claimants' Proofs of Claim, which sought a claim in excess of $100 million.

WHEREAS, on December 17, 2004, Debtor filed the Assumption Motion seeking to assume the PCL.

WHEREAS, on December 21, 2004, Debtor commenced the Adversary Proceeding, challenging Claimants' Proofs of Claim and seeking unspecified compensatory and punitive damages, and Claimants thereafter filed answers denying liability and asserting counter-claims against Debtor.

WHEREAS, the Parties have engaged in good faith settlement negotiations to resolve actual and potential disputes relating to the foregoing and otherwise.

WHEREAS, given the breadth and complexity of the Parties' disputes, as well as the numerous and contested legal and factual issues that would be involved in resolving them, and in order to avoid the costs and risks of litigation, the Parties have agreed to enter into this global settlement.

WHEREAS, the Parties have carefully considered the terms of this Settlement Agreement and, after having had the opportunity to consult with their respective attorneys, are satisfied that it is fair and reasonable.

NOW, THEREFORE, for good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the Parties agree as follows:

PWSP 00001.267

### Section III – Settlement Terms

Subject in each case to the effectiveness of this Settlement Agreement on the terms and conditions set forth herein, the undersigned hereby agree as follows:

### Condition Precedent

1.    Condition Precedent. This Settlement Agreement, and each and every covenant, release, reservation or other agreement herein, is subject to, and conditioned upon, the occurrence of the Effective Date. If, for any reason, the Effective Date does not occur (despite the Parties' good faith efforts) or the Approval Order is later reversed or vacated (and not later reinstated), then this Settlement Agreement shall be deemed null and void and of no effect and the Parties shall be in the same position as if the Settlement Agreement had not been entered into.

### Administrative Matters

2.    Proceedings Dismissed. Immediately upon satisfaction of the condition precedent in paragraph 1, (a) the Stay Motion and the Assumption Motion shall be, and shall be deemed to be, withdrawn with prejudice, and (b) the Adversary Proceeding (including any motions or proceedings pending within the Adversary Proceeding) shall be, and shall be deemed to be, dismissed with prejudice and without costs to any Party. The Parties each agree to file and shall file any additional notices, stipulations or other papers required by the Bankruptcy Court in order to confirm these withdrawals and dismissals. The Parties agree that this Settlement Agreement shall remain effective notwithstanding any substantive consolidation of the Debtor with another entity or entities.

3.    Allowed Claim. Claimants shall jointly hold a single, allowed general unsecured claim in the Debtor's Bankruptcy Case, which claim shall be afforded the benefits and priority of Debtor's other allowed general unsecured claims and shall be neither senior nor junior to any other allowed general unsecured claim, in the amount of $12.5 million ($12,500,000), representing a compromise of the claims that have been asserted by the Claimants for damages and other relief based, *inter alia*, on alleged breaches of the Amended and Restated Investment Agreement, including, without limitation, liquidated damages for the alleged breach of section 5.6 thereof (the "Allowed Claim"). Claimants and the Debtor agree that the Allowed Claim is not, and shall not be treated as, "Senior Indebtedness" under the terms of the Debtor's Indenture, dated as of April 22, 2002, for the 7-3/4% Secured Senior Subordinated Convertible Debentures due 2005. The allocation of the Allowed Claim as between the Claimants shall be at the sole discretion of Claimants. The Allowed Claim shall not be subject to reconsideration, objection, reduction, increase, counterclaim, subordination, offset or recoupment, and shall be allowed without necessity of any further filings or amendments, including any proof of claim.

4.    Filed Proofs of Claim Disallowed. Subject to the allowance in full of the Allowed Claim as set forth in paragraph 3, the Claimants' Proofs of Claim each shall be deemed withdrawn and disallowed with prejudice.

PWSP 00001.268

### Intellectual Property Matters

5.    <u>Transfer of Intellectual Property to S3G Co</u>.  Debtor shall use its commercially reasonable best efforts to transfer to S3G Co., or its designee, the intellectual property related to or used in the Graphics Chip Business that currently remains in Debtor's possession, is reasonably available and was to be contributed pursuant to the Amended and Restated Investment Agreement (the "Transferred Intellectual Property"), and to execute any transfer documents related to the Transferred Intellectual Property.  Such efforts with respect to the Transferred Intellectual Property will include, without limitation, the following:

a.    Execution by Debtor of transfer documents relating to all patents and patent applications listed on Schedule 1 to the Bill of Sale (as defined in the Amended and Restated Investment Agreement) and patents, trademarks, copyrights and other items listed in Schedule 3.14(a)(ii) to the Amended and Restated Investment Agreement that remain in Debtor's possession and are reasonably available.  VIA and Debtor agree that Debtor's execution, with requisite formalities, of the transfer documents listed on Exhibit 1 to this Settlement Agreement shall be deemed to satisfy Debtor's obligations under this  paragraph 5(a).  Pursuant to paragraph 7(b) of Section III of this Settlement Agreement,



Redacted as Confidential

Redacted as Confidential

b.    Execution by Debtor of the various documents necessary to record the trademark assignments.  VIA and Debtor agree that Debtor's execution, with requisite formalities, of the transfer documents listed on Exhibit 2 to this Settlement Agreement shall be deemed to satisfy Debtor's obligations under this paragraph 5(b).

c.    Delivery by Debtor of all patent, trademark and copyright files and other documents relating to the Transferred Intellectual Property to the extent that the same may be located after a reasonable search.

d.    Delivery by Debtor of a list of all licensed technology and the underlying licenses that were being utilized in the Graphics Chip Business prior to the January 3, 2001, closing to the extent that such a list or lists may be located after a reasonable search.

e.    Delivery by Debtor of the complete employee files for relevant employees identified by VIA (*e.g.*, employees listed as inventor(s) or author(s) on any patent, patent application, or copyright transferred or to be transferred to S3G Co.) whose names are listed on Exhibit 3 to this Settlement

PWSP 00001.269

Agreement, including resumes, offer letters, employment agreements, performance reviews, benefits files and immigration files, but only to the extent that such files may be located after a reasonable search and that such disclosure may be permitted by the Bankruptcy Court in light of employee privacy rights.

f.     Delivery by Debtor of all original data tapes to the extent the same may be located after a reasonable search.

g.     Delivery by Debtor of the executed customer and vendor non-disclosure agreements to the extent the same may be located after a reasonable search and such disclosure is not prohibited by the terms of such agreements.

6.     <u>Claimants' Expense</u>. Claimants shall reimburse Debtor for its reasonable out-of-pocket expenses incurred in locating and transferring the Transferred Intellectual Property, shall prepare drafts of any documents needed to effectuate the transfer (subject to revisions by the Parties), and shall reimburse Debtor for reasonable filing fees and costs incurred to preserve the status of the Transferred Intellectual Property pending its transfer to S3G Co. or its designee.

7.     <u>PCL</u>     Redacted as Confidential

a.

b.



Redacted as Confidential

PWSP 00001.270

c.

d.



Redacted as Confidential

e.

8.    Intel-VIA Settlement Agreement

Redacted as Confidential

Redacted as Confidential

9.    Transfer of Class A Shares of S3G Co.    Debtor shall transfer or cause to be transferred to VIA or its designee for no further consideration all Class A Common Shares of S3G Co. held by Sonica3, Inc. (or other party) within ten business days after the Effective Date. The "Class A Shares Option Agreement," between Debtor and VIA, dated as of January 3, 2001, shall be deemed terminated upon the Effective Date.

10.    [redacted] Subsidiaries.    VIA[*[, Intel]*] and the JV Entities agree



Redacted as Confidential

PWSP 00001.271

## Releases

11.    Releases by Debtor of VIA, S3G Co., S3G Inc. and S3-VIA.    As of the Effective Date, and excepting rights created, preserved or guarantied by this Settlement Agreement, Debtor, on behalf of itself and its affiliates, subsidiaries, predecessors, successors, and assigns, and each of their respective representatives, trustees, officers, directors, employees, agents, partners, co-venturers, insurers, accountants, attorneys, affiliates, subsidiaries, predecessors, successors, assigns, shareholders and other parties claiming through them or acting on their behalf (collectively, but solely in such capacities, the "Debtor Released Parties"), on the one hand, hereby releases, acquits and forever discharges VIA, each of its respective affiliates, subsidiaries, predecessors, successors, and assigns, and each of their respective representatives, trustees, officers, directors, employees, agents, partners, co-venturers, insurers, accountants, attorneys, affiliates, subsidiaries, predecessors, successors, assigns, shareholders and other parties claiming through them or acting on their behalf (collectively, but solely in such capacities, the "VIA Released Parties"), and the JV Entities, and each of their respective affiliates, subsidiaries, predecessors, successors, and assigns, and each of their respective representatives, trustees, officers, directors, employees, agents, partners, co-venturers, insurers, accountants, attorneys, affiliates, subsidiaries, predecessors, successors, assigns, shareholders and other parties claiming through them or acting on their behalf (collectively, but solely in such capacities, the "JV Released Parties"), from and against any and all claims, counterclaims, demands, liabilities, causes of action, defenses, damages, expenses (including, but not limited to, attorneys' fees and costs), duties or obligations – whether asserted on an individual, representative, or derivative basis, whether known or unknown, suspected or unsuspected, fixed or contingent, accrued or not yet accrued – that the Debtor Released Parties now has, has had, or may at any time have based on events or acts or omissions occurring on or before the Effective Date, including, but not limited to (a) the Bankruptcy Cases, (b) the Adversary Proceeding, (c) the PCL, (d) any and all claims for indemnity or contribution arising from or based on events or acts or omissions occurring on or before the Effective Date, and/or (e) any and all claims or interests arising under or relating to any and all agreements between each group of the parties to this paragraph, including, without limitation, the S3-VIA Investment Agreement, the Investment Agreement, the Amended and Restated Investment Agreement, and the Class A Shares Option Agreement.

12.    Releases by VIA, S3G Co., S3G Inc. and S3-VIA of Debtor.    As of the Effective Date, and excepting rights created, preserved or guarantied by this Settlement Agreement, VIA, on behalf of itself and the VIA Released Parties, and the JV Entities, each on behalf of themselves and the JV Released Parties, hereby release, acquit and forever discharge the Debtor Released Parties from and against any and all claims, counterclaims, demands, liabilities, causes of action, defenses, damages, expenses (including, but not limited to, attorneys' fees and costs), duties or obligations – whether asserted on an individual, representative, or derivative basis, whether known or unknown, suspected or unsuspected, fixed or contingent, accrued or not yet accrued – that each of the VIA Released Parties or the JV Released Parties, respectively, now has, has had, or may at any time have based on events or acts or omissions occurring on or before the Effective Date, including, but not limited to (a) the Bankruptcy Cases, (b) the Adversary Proceeding, (c) the PCL, (d) any and all claims for indemnity or contribution arising from or based on events or acts or omissions occurring on or before the Effective Date, and/or (e) any and all claims or interests arising under or relating to any and all agreements between each

PWSP 00001.272

group of the parties to this paragraph, including, without limitation, the S3-VIA Investment Agreement, the Investment Agreement, the Amended and Restated Investment Agreement, and the Class A Shares Option Agreement.

13.    Release by Intel of Debtor.



Redacted as Confidential

Redacted as Confidential

Redacted as Confidential

Redacted as Confidential

14.    Release by Debtor of Intel.

Redacted as Confidential

Redacted as Confidential

PWSP 00001.273

Redacted as Confidential

15.    Release by Intel

Redacted as Confidential

Redacted as Confidential

16.    Release by Intel

Redacted as Confidential

Redacted as Confidential

PWSP 00001.274



Redacted as Confidential

17.    <u>Release</u> Redacted as Confidential of Intel.

Redacted as Confidential

Redacted as Confidential

## Miscellaneous

18.    <u>Motion to Approve</u>.  Debtor shall file and prosecute a motion seeking approval of this Settlement Agreement by the Bankruptcy Court, and the Parties hereto shall cooperate in efforts to ensure that such motion is approved forthwith.

19.    <u>Each Party to Bear Own Costs</u>.  Except as provided for in Section 5 of this Settlement Agreement, each Party hereto shall bear its own costs and expenses (including, but not limited to, attorneys' fees) in connection with the negotiation, execution, and obtaining of Court approval of this Settlement Agreement, and all matters addressed, settled or released hereby.

PWSP 00001.275

20.    Waiver of Statutory Limitation on General Releases.  With respect to the matters released hereby, each of the Parties hereto, for itself and on behalf of any other Party on whose behalf it acts hereunder, hereby waives and relinquishes any and all rights which they or any of them may have under the provisions of § 1542 of the Civil Code of the State of California, or any analogous provision under state or federal law, which provides as follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

21.    No Admission of Liability.  The Parties hereto each acknowledge that this Settlement Agreement is a compromise of disputed rights and claims among the Parties and that it shall not be construed as an admission of any liability by any Party hereto.

22.    Due Authority.  Each person signing this Settlement Agreement, including but not limited to any person signing as counsel for a Party, hereby represents and warrants that he or she has been duly authorized and has the requisite authority to execute and deliver this Settlement Agreement on behalf of such Party and to bind his or her employer, principal or respective client to the terms and conditions of this Settlement Agreement.

23.    Due Investigation.  The Parties acknowledge that, in making this Settlement Agreement, they rely entirely upon their own judgment, beliefs and interest and, where applicable, the advice of their own counsel and that they each have had a reasonable period of time to consider this Settlement Agreement.

24.    Drafting of Settlement Agreement.  The Parties agree that each Party and, where applicable, its counsel have reviewed this Settlement Agreement, and that each fully understands and voluntarily accepts all the provisions contained in this Settlement Agreement.  The Parties further agree that this Settlement Agreement was the product of negotiations between the Parties and that any rule of construction requiring that ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this Settlement Agreement.  The language of all parts of this Settlement Agreement shall in all cases be construed as a whole, according to its fair meaning and not strictly for or against any of the Parties.

25.    Integrated Agreement.  This Settlement Agreement is an integrated document that sets forth the entire agreement between the Parties, and it supersedes any and all prior agreements, promises, representations and understandings, whether written or oral, between or among the Parties pertaining to the subject matter hereof.

26.    Amendments.  No modification or amendment of this Settlement Agreement shall be binding or enforceable unless in writing and signed by all of the Parties to the modification or amendment.

27.    Successors and Assigns.  This Settlement Agreement shall be binding only upon, and only inure to the benefit of, the Parties and their respective heirs, executors, successors,

administrators and assigns, including any chapter 11 or chapter 7 trustee appointed to administer the Debtor's estate in the Bankruptcy Case.

28.    Choice of Law, Jurisdiction. This Settlement Agreement shall be interpreted and construed in accordance with the provisions of the Bankruptcy Code and, where not inconsistent, the laws of the State of California, without giving effect to California's rules regarding conflict of laws. The Bankruptcy Court shall have jurisdiction over any and all disputes, controversies, claims or other matters arising under or otherwise relating to this Settlement Agreement.

29.    Headings. The headings of sections and paragraphs in this Settlement Agreement have been included only for convenience, and shall not be deemed in any manner to modify or limit any of the provisions of this Settlement Agreement, or be used in any manner in the interpretation of this Settlement Agreement.

30.    Counterparts. This Settlement Agreement may be executed in one or more counterparts, including by facsimile, each of which shall be deemed an original, but all of which together constitute one and the same instrument.

31.    Further Assurances. The Parties shall execute and deliver all documents and perform all further acts that may reasonably be necessary to effectuate the provisions and purpose of the Settlement Agreement.

PWSP 00001.277

| SONICblue, Inc. | Dated: May ___, 2006 |
| | |
| | By: _____ |
| Intel Corporation | Dated: May ___, 2006 |
| | |
| | By: _____ |
| VIA Technologies, Inc. | Dated: May ___, 2006 |
| | |
| | By: _____ |
| S3 Graphics Co. Ltd. | Dated: May ___, 2006 |
| | |
| | By: _____ |
| S3 Graphics, Inc. | Dated: May ___, 2006 |
| | |
| | By: _____ |
| S3-VIA, Inc. | Dated: May ___, 2006 |
| | |
| | By: _____ |

PWSP 00001.278

PWSP 00001.279

## SETTLEMENT AGREEMENT

This Settlement Agreement is made effective as of the Effective Date (as defined below) by and among VIA Technologies, Inc., S3 Graphics Co. Ltd., S3 Graphics, Inc., S3-VIA, Inc., Intel Corporation, and SONICblue, Inc.

### Section I — Definitions

1.    "Adversary Proceeding" as used herein means the case entitled *SONICblue Incorporated v. VIA Technologies, Inc.* (case No. 04-5556) filed by Debtor against Claimants and S3G Inc., on or about December 21, 2004, including all counterclaims.

2.    "Amended and Restated Investment Agreement "" as used herein shall mean the written agreement entitled "Amended and Restated Investment Agreement" between VIA and Debtor dated August 28, 2000, as amended and supplemented.    Amended and Restated Investment Agreement shall include all of the letters and other agreements executed as a part of the transaction contemplated in the Amended and Restated Investment Agreement, including, without limitation, the following: [LIST ALL AGREEMENTS FROM THE CLOSING BOOK BY NAME]Joint Venture Agreement between Debtor, Sonica3, Inc. and VIA, dated as of January 3, 2001, the Class A Shares Option Agreement between Debtor and VIA, dated as of January 3, 2001, the Guaranty executed by VIA and dated as of January 3, 2001, and certain so-called side letters, dated as of January 3, 2001, executed by Debtor and Claimants amending the Amended and Restated Investment Agreement.

3.    "Approval Order" as used herein shall mean a final and non-appealablean order of the Bankruptcy Court, or another court of competent jurisdiction, approving this Settlement Agreement without change (unless such change is approved in writing by all Parties hereto) and authorizing Debtor's entry into and performance under this Settlement Agreement.

4.    "Assumption Motion" as used herein shall mean the motion filed by Debtor in the Debtor's Bankruptcy Case on December 17, 2004, seeking to assume the Patent Cross License Agreement pursuant to 11 U.S.C. § 365.

5.    "Bankruptcy Cases" as used herein shall mean collectively the jointly-administered Chapter 11 cases captioned *In re SONICblue Incorporated*, et al., Nos. 03-51775-778 to 51778, and any other bankruptcy cases or entities substantively consolidated therewith; and "Debtor's Bankruptcy Case" shall mean the Chapter 11 case captioned *In re SONICblue Incorporated*, No. 03-51775, including any other bankruptcy cases or entities substantively consolidated therewith.

6.    "Bankruptcy Code" as used herein shall mean Chapter 11 of Title 11 of the United States Code, including without limitation Chapter 11 thereof, 11 U.S.C. §§ 101 et seq.

7.    "Bankruptcy Court" as used herein shall mean the United States Bankruptcy Court for the Northern District of California, San Jose Division.

8.   "Claimants" as used herein shall mean VIA Technologies, Inc., and S3 Graphics Co. Ltd.

9.   "Claimants' Proofs of Claim" as used herein shall mean the proofs of claim filed by Claimants in the Debtor's Bankruptcy Case on or about July 17, 2003.

10.  "Debtor" as used herein shall mean SONICblue, Inc., formerly known as S3 Incorporated~~.~~, as debtor and debtor-in-possession.

11.  "Effective Date" as used herein shall mean the date ~~the Approval Order becomes a final Order after any appeal, or after the time for appeal has run.~~eleven days after the entry of the Approval Order on the docket of the Bankruptcy Court, provided that no appeal has been filed prior to such time, or if an appeal has been filed then "Effective Date" shall mean such later date as the Approval Order is upheld on appeal and any deadlines for further appeal have expired.

12.  "Graphics Chip Business" as used herein shall have the same meaning as the term "Graphics Chip Business" defined in Article I of the Amended and Restated Investment Agreement.

13.  "Intel" as used herein shall mean Intel Corporation.

14.  "Intel-VIA Settlement Agreement" as used herein shall mean the written agreement entitled "Litigation Settlement Agreement ~~between VIA Technologies Inc. and Intel Corporation~~" between VIA and Intel dated as of April 7, 2003.

15.  "Investment Agreement" as used herein shall mean the written agreement entitled "Investment Agreement" between VIA and Debtor dated April 10, 2000, as amended and supplemented.

16.  "JV Entities" as used herein shall mean S3-VIA, S3G Co., and S3G Inc.

17.  "Party" as used herein shall refer to any of the parties to this Settlement Agreement (e.g., VIA Technologies, Inc., S3 Graphics Co. Ltd., S3 Graphics, Inc., S3-VIA, Inc., Intel Corporation or SONICblue, Inc.), and "Parties" shall mean all of them (i.e, VIA Technologies, Inc., S3 Graphics Co. Ltd., S3 Graphics, Inc., S3-VIA, Inc., Intel Corporation and SONICblue, Inc.).

18.  "PCL" as used herein shall mean the written agreement entitled "Patent Cross License Agreement" between Intel and Debtor dated December 16, 1998.

19.  "Petition Date" as used herein shall mean March 21, 2003.

20.  "S3-VIA Investment Agreement" as used herein shall mean the written agreement entitled "Joint Venture Agreement" dated as of October 27, 1999, by and between VIA, Debtor and S3Ventures, Ltd., a Cayman Islands company which is a wholly-owned subsidiary of Debtor.

21.  "S3G Co." as used herein shall mean S3 Graphics Co. Ltd.

2    DeltaView comparison of file://L:/moms/WP/sb settlement.intel.doc and file://L:/moms/WP/sb settlement.austin5.doc. Performed on 5/12/2006.

22. "S3G Inc." as used herein shall mean S3 Graphics, Inc.

23. "S3-VIA" as used herein shall mean S3-VIA, Inc.

24. "Stay Motion" as used herein shall mean the motion for relief from the automatic stay imposed by 11 U.S.C. § 362 in order to terminate the PCL, originally filed by Intel in the Debtor's Bankruptcy Case on or about June 6, 2003, and renewed on May 13, 2004.

25. "VIA" as used herein shall mean VIA Technologies, Inc.

3    DeltaView comparison of file://L:/moms/WP/sb settlement.intel.doc and file://L:/moms/WP/sb settlement.austin5.doc. Performed on 5/12/2006.

## Section II —- Recitals

WHEREAS, on March 21, 2003, Debtor filed a~~and~~ certain of its affiliates commenced the Bankruptcy Cases by filing voluntary petitions for bankruptcy protection under Chapter 11 of the Bankruptcy Code.

WHEREAS, on or about June 6, 2003, Intel filed the Stay Motion seeking to terminate the PCL.

WHEREAS, on July 17, 2003, Claimants filed Claimants' Proofs of Claim, which sought a claim in excess of $100 million.

WHEREAS, on December 17, 2004, Debtor filed the Assumption Motion seeking to assume the PCL.

WHEREAS, on December 21, 2004, Debtor commenced the Adversary Proceeding, challenging Claimants' Proofs of Claim and seeking unspecified compensatory and punitive damages, and Claimants thereafter filed ~~an answer~~answers denying liability and asserting ~~various~~ counter-claims against Debtor.

-WHEREAS, the Parties have engaged in good faith settlement negotiations to resolve actual and potential disputes relating to the foregoing and otherwise.

WHEREAS, given the breadth and complexity of the Parties' disputes, as well as the numerous and contested legal and factual issues that would be involved in resolving them, and in order to avoid the costs and risks of litigation, the Parties have agreed to enter into this global settlement.

WHEREAS, the Parties have carefully considered the terms of this Settlement Agreement and, after having had the opportunity to consult with their respective attorneys, are satisfied that it is fair and reasonable.

NOW, THEREFORE, for good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the Parties agree as follows:

## Section III – Settlement Terms

Subject in each case to the effectiveness of this Settlement Agreement on the terms and conditions set forth herein, the undersigned hereby agree as follows:

## Condition Precedent

1.    Condition Precedent.  This Settlement Agreement, and each and every covenant and, release, reservation or other agreement herein, is subject to, and conditioned upon, the ~~entry of the Approval Order and such Order becoming a final Order after any appeal, or after the time for appeal has run~~occurrence of the Effective Date.  If, for any reason, the ~~Approval Order is~~Effective Date does not ~~entered~~occur (despite the ~~Debtor's~~Parties' good faith efforts ~~to seek approval~~) or the Approval Order is later reversed or vacated~~,~~ (and not later reinstated), then this Settlement

4    DeltaView comparison of file://L:/moms/WP/sb settlement.intel.doc and file://L:/moms/WP/sb settlement.austin5.doc. Performed on 5/12/2006.

PWSP 00001.283

Agreement shall be deemed null and void and of no effect, then and the Parties shall be in the same position as if the Settlement Agreement had not been entered into.

## Administrative Matters

2. _Proceedings Dismissed_. Immediately upon satisfaction of the condition precedent in paragraph 1, (a) the Stay Motion and the Assumption Motion shall be, and shall be deemed to be, withdrawn with prejudice, and (b) the Adversary Proceeding (including any motions or proceedings pending within the Adversary Proceeding) shall be, and shall be deemed to be, dismissed with prejudice and without costs to any Party. The Parties each agree to file and shall file any additional notices, stipulations or other papers required by the Bankruptcy Court in order to confirm these withdrawals and dismissals. The Parties agree that this Settlement Agreement shall remain effective notwithstanding any substantive consolidation of the Debtor with another entity or entities.

3. _Allowed Claim_. Claimants shall jointly hold a single, allowed general unsecured claim in the Debtor's Bankruptcy Case, which claim shall be afforded the benefits and priority of Debtor's other allowed general unsecured claims and shall be neither senior nor junior to any other allowed general unsecured claim, in the amount of $12.5 million ($12,500,000), representing a compromise of the claims that have been asserted by the Claimants for damages and other relief based, _inter alia_, on alleged breaches of the Amended and Restated Investment Agreement, including, without limitation, liquidated damages for the alleged breach of section 5.6 thereof (the "Allowed Claim"). Claimants and the Debtor agree that the Allowed Claim is not, and shall not be treated as, "Senior Indebtedness" under the terms of the Debtor's Indenture, dated as of April 22, 2002, for the 7-3/4% Secured Senior Subordinated Convertible Debentures due 2005. The allocation of the Allowed Claim as between the Claimants shall be at the sole discretion of Claimants. The Allowed Claim shall not be subject to reconsideration, objection, reduction, increase, counterclaim, subordination, offset or recoupment, and shall be allowed without necessity of any further filings or amendments, including any proof of claim.

-4. _Filed Proofs of Claim Disallowed_. Subject to the allowance in full of the Allowed Claim as set forth in paragraph 3, the Claimants' Proofs of Claim each shall be deemed withdrawn and disallowed with prejudice.

## Intellectual Property Matters

5. _Transfer of Intellectual Property to S3G Co_. Debtor shall use its commercially reasonable best efforts (i) to transfer to S3G Co., or its designee, the intellectual property related to or used in the Graphics Chip Business that currently remains in Debtor's possession, is reasonably available and was to be contributed pursuant to the Amended and Restated Investment Agreement (the "Transferred Intellectual Property"), and (ii) to execute any transfer documents related to the Transferred Intellectual Property, as identified in the attached Schedule of. Such efforts with respect to the Transferred Intellectual Property prepared by Claimants and Debtor, includingwill include, without limitation, the following items:

> a. AllExecution by Debtor of transfer documents relating to all patents and patent applications listed on Schedule 1 to the Bill of Sale (as defined in the

5    DeltaView comparison of file://L:/moms/WP/sb settlement.intel.doc and file://L:/moms/WP/sb settlement.austin5.doc. Performed on 5/12/2006.

Amended and Restated Investment Agreement) and patents, trademarks, copyrights and other items listed in Schedule 3.14(a)(ii) to the Amended and Restated Investment Agreement that remain in Debtor's possession and are reasonably available. (VIA and Debtor agree that Debtor's execution, with requisite formalities, of the transfer documents ~~attached as~~listed on Exhibit 1 to this Settlement Agreement shall be deemed to satisfy Debtor's obligations under this paragraph 5(ii) ~~with regard to the matters of this subparagraph (a).)~~a). Pursuant to paragraph 7(b) of Section 7(b)III of this Settlement Agreement,



Redacted as Confidential                    Redacted as Confidential

b.    ~~The~~Execution by Debtor of the various documents necessary to record the trademark assignments. (VIA and Debtor agree that Debtor's execution, with requisite formalities, of the transfer documents ~~attached as~~listed on Exhibit 2 to this Settlement Agreement shall be deemed to satisfy Debtor's obligations under this paragraph 5(ii) ~~with regard to the matters of this subparagraph (b).)~~b).

c.    ~~All~~Delivery by Debtor of all patent, trademark and copyright files and other documents relating to the Transferred Intellectual Property to the extent that the same may be located after a reasonable search.

d.    ~~A~~Delivery by Debtor of a list of all licensed technology and the underlying licenses that were being utilized in the Graphics Chip Business prior to the January 3, 2001, closing to the extent that such a list or lists may be located after a reasonable search.

e.    ~~The~~Delivery by Debtor of the complete employee files for relevant employees ~~to be~~ identified by VIA (e.g., employees listed as inventor(s) or author(s) on any patent, patent application, or copyright transferred or to be transferred to S3G Co.) whose names are listed on Exhibit 3 to this Settlement Agreement, including resumes, offer letters, employment agreements, performance reviews, benefits files and immigration files, but only to the extent that such files may be located after a reasonable search and that such disclosure may be permitted by the Bankruptcy Court in light of employee privacy rights.

f.    ~~All~~Delivery by Debtor of all original data tapes to the extent the same may be located after a reasonable search.

PWSP 00001.285

g.   ~~The~~Delivery by Debtor of the executed customer and vendor non-disclosure agreements to the extent the same may be located after a reasonable search and such disclosure is not prohibited by the terms of such agreements.

6.   <u>Claimants' Expense</u>.   Claimants shall reimburse Debtor for its reasonable out-of-pocket expenses incurred in <u>locating and</u> transferring the Transferred Intellectual Property, shall prepare drafts of any documents needed to effectuate the transfer (subject to revisions by the Parties), and shall reimburse Debtor for reasonable filing fees and costs incurred to preserve the status of the Transferred Intellectual Property pending its transfer ~~or to transfer the Transferred Intellectual Property~~ to S3G Co. or its designee.

7.   ~~License from Intel Under~~ PCL



Redacted as Confidential

a.

b.

Redacted as Confidential

<u>c.</u>

<u>d.</u>

7     DeltaView comparison of file://L:/moms/WP/sb settlement.intel.doc and file://L:/moms/WP/sb settlement.austin5.doc. Performed on 5/12/2006.

PWSP 00001.286



Redacted as Confidential

e.

8.    Intel-VIA Settlement Agreement

Redacted as Confidential

Redacted as Confidential

9.    <u>Transfer of Class A Shares of S3G Co.</u>  Debtor shall transfer or cause to be transferred to VIA or its designee for no further consideration all Class A Common Shares of S3G Co. held by Sonica3, Inc. (or other party) within ten business days after the Effective Date.  The "Class A Shares Option Agreement," between Debtor and VIA, dated as of January 3, 2001, shall be deemed terminated upon the Effective Date.

10.    cted as Confid<u>Subsidiaries</u>.  VIA[*[, Intel]*] and the JV Entities agree



Redacted as Confidential

Redacted as Confidential

l as Confidential

## **Releases**

11.    <u>Releases by Debtor of VIA, S3G Co., S3G Inc. and S3-VIA.  As of the Effective Date, and excepting rights created, preserved or guarantied by this Settlement Agreement, Debtor, on behalf of itself and its affiliates, subsidiaries, predecessors, successors, and assigns, and each of their respective representatives, trustees, officers, directors, employees, agents, partners, co-venturers, insurers, accountants, attorneys, affiliates, subsidiaries, predecessors, successors, assigns, shareholders and other parties claiming through them or acting on their behalf (collectively, but solely in such capacities, the "Debtor Released Parties"), on the one hand, hereby releases, acquits and forever discharges VIA, each of its respective affiliates, subsidiaries,</u>

8    DeltaView comparison of file://L:/moms/WP/sb settlement.intel.doc and file://L:/moms/WP/sb settlement.austin5.doc. Performed on 5/12/2006.

predecessors, successors, and assigns, and each of their respective representatives, trustees, officers, directors, employees, agents, partners, co-venturers, insurers, accountants, attorneys, affiliates, subsidiaries, predecessors, successors, assigns, shareholders and other parties claiming through them or acting on their behalf (collectively, but solely in such capacities, the "VIA Released Parties"), and the JV Entities, and each of their respective affiliates, subsidiaries, predecessors, successors, and assigns, and each of their respective representatives, trustees, officers, directors, employees, agents, partners, co-venturers, insurers, accountants, attorneys, affiliates, subsidiaries, predecessors, successors, assigns, shareholders and other parties claiming through them or acting on their behalf (collectively, but solely in such capacities, the "JV Released Parties"), from and against any and all claims, counterclaims, demands, liabilities, causes of action, defenses, damages, expenses (including, but not limited to, attorneys' fees and costs), duties or obligations – whether asserted on an individual, representative, or derivative basis, whether known or unknown, suspected or unsuspected, fixed or contingent, accrued or not yet accrued – that the Debtor Released Parties now has, has had, or may at any time have based on events or acts or omissions occurring on or before the Effective Date, including, but not limited to (a) the Bankruptcy Cases, (b) the Adversary Proceeding, (c) the PCL, (d) any and all claims for indemnity or contribution arising from or based on events or acts or omissions occurring on or before the Effective Date, and/or (e) any and all claims or interests arising under or relating to any and all agreements between each group of the parties to this paragraph, including, without limitation, the S3-VIA Investment Agreement, the Investment Agreement, the Amended and Restated Investment Agreement, and the Class A Shares Option Agreement.

12.    11. Releases between Debtor and VIA, S3G Co., S3G Inc. and S3-VIA.   As of the Effective Date, Debtor, on behalf of itself and its affiliates, subsidiaries, successors, and assigns, on the one hand, andReleases by VIA, S3G Co., S3G Inc. and S3-VIA of Debtor. As of the Effective Date, and excepting rights created, preserved or guarantied by this Settlement Agreement, VIA, on behalf of itself and the VIA Released Parties, and the JV Entities, each on behalf of themselves and their respective affiliates, subsidiaries, successors, and assigns, on the other hand, shallthe JV Released Parties, hereby release, acquit and forever discharge the other group of parties, and each of their respective past and present representatives, trustees, officers, directors, employees, agents, partners, co-venturers, insurers, accountants, attorneys, affiliates, subsidiaries, predecessors, successors and assigns,Debtor Released Parties from and against any and all claims, counterclaims, demands, liabilities, causes of action, defenses, damages, expenses (including, but not limited to, attorneys' fees and costs), duties or obligations – whether asserted on an individual, representative, or derivative basis, whether known or unknown, suspected or unsuspected, fixed or contingent, accrued or not yet accrued – that each of the VIA Released Parties or the JV Released Parties, respectively, now has, has had, or may at any time have based on events andor acts or omissions occurring on or before the Effective Date, including, but not limited to, any and all claims or interests arising under or relating to (a) the Chapter 11 Case (a) the Bankruptcy Cases, (b) the Adversary Proceeding, (c) the PCL, ;—(d) any and all claims for indemnity or contribution arising from or based on events or acts or omissions occurring on or before the Effective Date, and/or (e) any and all claims or interests arising under or relating to any and all agreements between each group of the parties to this paragraph, including, without limitation, the S3-VIA Investment Agreement, the Investment Agreement, and the Amended and Restated Investment Agreement.  To avoid confusion, the foregoing release includes a mutual general release and waiver of any and all rights and obligations of VIA and SONICblue under the Class A Option., and the Class A Shares Option Agreement.

9        DeltaView comparison of file://L:/moms/WP/sb settlement.intel.doc and file://L:/moms/WP/sb settlement.austin5.doc. Performed on 5/12/2006.

PWSP 00001.288

13.    12.  — Release by Intel of Debtor.



Redacted as Confidential

Redacted as Confidential

10    DeltaView comparison of file://L:/moms/WP/sb settlement.intel.doc and file://L:/moms/WP/sb settlement.austin5.doc. Performed on 5/12/2006.

PWSP 00001.289

Redacted as Confidential

14.    13.    Release by Debtor of Intel.

Redacted as Confidential                    Redacted as Confidential

15.    14.    Release by Intel

Redacted as Confidential                    Redacted as Confidential

11    DeltaView comparison of file://L:/moms/WP/sb settlement.intel.doc and
file://L:/moms/WP/sb settlement.austin5.doc. Performed on 5/12/2006.



Redacted as Confidential

16. ~~15.~~ Release by Intel

Redacted as Confidential

Redacted as Confidential

12    DeltaView comparison of file://L:/moms/WP/sb settlement.intel.doc and
file://L:/moms/WP/sb settlement.austin5.doc. Performed on 5/12/2006.

PWSP 00001.291

Redacted as Confidential

17.   16.   Release Redacted as Confident of Intel.

Redacted as Confidential

Redacted as Confidential

13   DeltaView comparison of file://L:/moms/WP/sb settlement.intel.doc and
file://L:/moms/WP/sb settlement.austin5.doc. Performed on 5/12/2006.

PWSP 00001.292

## Miscellaneous

18.  ~~16.~~ Motion to Approve.  Debtor shall file and prosecute a motion seeking approval of this Settlement Agreement by the Bankruptcy Court, and the Parties hereto shall cooperate in efforts to ensure that such motion is approved forthwith.

19.  ~~17.~~ Each Party to Bear Own Costs.  Except as provided for in Section 5 of this Settlement Agreement, each Party hereto shall bear its own costs and expenses (including, but not limited to, attorneys' fees) in connection with the negotiation, execution, and obtaining of Court approval of this Settlement Agreement, and all matters addressed, settled or released hereby.

20.  ~~18.~~ Waiver of Statutory Limitation on General Releases.  With respect to the matters released hereby, each of the Parties hereto, for itself and on behalf of any other Party on whose behalf it acts hereunder, hereby waives and relinquishes any and all rights which they or any of them may have under the provisions of § 1542 of the Civil Code of the State of California, or any analogous provision under state or federal law, which provides as follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

21.  ~~19.~~ No Admission of Liability.  The Parties hereto each acknowledge that this Settlement Agreement is a compromise of disputed rights and claims among the Parties and that it shall not be construed as an admission of any liability by any Party hereto.

22.  ~~20.~~ Due Authority.  Each person signing this Settlement Agreement, including but not limited to any person signing as counsel for a Party, hereby represents and warrants that he or she has been duly authorized and has the requisite authority to execute and deliver this Settlement Agreement on behalf of such Party and to bind his or her employer, principal or respective client to the terms and conditions of this Settlement Agreement.

23.  ~~21.~~ Due Investigation.  The Parties acknowledge that, in making this Settlement Agreement, they rely entirely upon their own judgment, beliefs and interest and, where applicable, the advice of their own counsel and that they each have had a reasonable period of time to consider this Settlement Agreement.

24.  ~~22.~~ Drafting of Settlement Agreement.  The Parties agree that each Party and, where applicable, its counsel have reviewed this Settlement Agreement, and that each fully understands and voluntarily accepts all the provisions contained in this Settlement Agreement. The Parties further agree that this Settlement Agreement was the product of negotiations between the Parties and that any rule of construction requiring that ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this Settlement Agreement. The language of all parts of this Settlement Agreement shall in all cases be construed as a whole, according to its fair meaning and not strictly for or against any of the Parties.

14    DeltaView comparison of file://L:/moms/WP/sb settlement.intel.doc and file://L:/moms/WP/sb settlement.austin5.doc. Performed on 5/12/2006.

25. ~~23.~~ Integrated Agreement.                    Redacted as Confidential
Redacted as Confidential

~~hereof, this~~This Settlement Agreement is an integrated document that sets forth the entire agreement between the Parties, and it supersedes any and all prior agreements, promises, representations and understandings, whether written or oral, between or among the Parties pertaining to the subject matter hereof.

26. ~~24.~~ Amendments. No modification or amendment of this Settlement Agreement shall be binding or enforceable unless in writing and signed by all of the Parties to the modification or amendment.

27. Successors and Assigns. This Settlement Agreement shall be binding only upon, and only inure to the benefit of, the Parties and their respective heirs, executors, successors, administrators and assigns, including any chapter 11 or chapter 7 trustee appointed to administer the Debtor's estate in the Bankruptcy Case.

28. ~~25.~~ Choice of Law, Jurisdiction. This Settlement Agreement shall be interpreted and construed in accordance with the provisions of the Bankruptcy Code and, where not inconsistent, the laws of the State of California, without giving effect to California's rules regarding conflict of laws. The Bankruptcy Court shall have jurisdiction over any and all disputes, controversies, claims or other matters arising under or otherwise relating to this Settlement Agreement.

29. ~~26.~~ Headings. The headings of sections and paragraphs in this Settlement Agreement have been included only for convenience, and shall not be deemed in any manner to modify or limit any of the provisions of this Settlement Agreement, or be used in any manner in the interpretation of this Settlement Agreement.

30. ~~27.~~ Counterparts. This Settlement Agreement may be executed in one or more counterparts, including by facsimile, each of which shall be deemed an original, but all of which together constitute one and the same instrument.

31. ~~28.~~ Further Assurances. The Parties shall execute and deliver all documents and perform all further acts that may reasonably be necessary to effectuate the provisions and purpose of the Settlement Agreement.

15    DeltaView comparison of file://L:/moms/WP/sb settlement.intel.doc and file://L:/moms/WP/sb settlement.austin5.doc. Performed on 5/12/2006.

| | |
|---|---|
| SONICblue, Inc. | Dated: ~~April~~May ___ , 2006<br><br><br><br>By: _____ |
| Intel Corporation | Dated: ~~April~~May ___ , 2006<br><br><br><br>By: _____ |
| VIA Technologies, Inc. | Dated: ~~April~~May ___ , 2006<br><br><br><br>By: _____ |
| S3 Graphics Co. Ltd. | Dated: ~~April~~May ___ , 2006<br><br><br><br>By: _____ |
| S3 Graphics, Inc. | Dated: ~~April~~May ___ , 2006<br><br><br><br>By: _____ |
| S3-VIA, Inc. | Dated: ~~April~~May ___ , 2006<br><br><br><br>By: _____ |

16    DeltaView comparison of file://L:/moms/WP/sb settlement.intel.doc and
file://L:/moms/WP/sb settlement.austin5.doc. Performed on 5/12/2006.

17    DeltaView comparison of file://L:/moms/WP/sb settlement.intel.doc and
file://L:/moms/WP/sb settlement.austin5.doc. Performed on 5/12/2006.

PWSP 00001.296

# **<u>EXHIBIT 9</u>**

## Boro, Jr., Albert J.

| | |
|---|---|
| **From:** | Barron, Austin [Abarron@OMM.com] |
| **Sent:** | Friday, June 16, 2006 12:14 PM |
| **To:** | Barron, Austin; Johnson, Steven J.; Uhland, Suzzanne; Henry Kevane; Boro, Jr., Albert J. |
| **Cc:** | Hayter, Dana W |
| **Subject:** | RE: DOC_CENTRAL-#42507-v2-Intel_Via_Settlement_Agreement_06-16-06.DOC |
| **Attachments:** | compare.doc |

whups.  _now_ the redline is attached.

**From:** Barron, Austin
**Sent:** Friday, June 16, 2006 12:14 PM
**To:** 'Johnson, Steven J.'; Uhland, Suzzanne; Henry Kevane; 'albert.boro@pillsburylaw.com'
**Cc:** Hayter, Dana W
**Subject:** RE: DOC_CENTRAL-#42507-v2-Intel_Via_Settlement_Agreement_06-16-06.DOC

Redline attached.

**From:** Johnson, Steven J. [mailto:sjjohnson@gibsondunn.com]
**Sent:** Friday, June 16, 2006 12:05 PM
**To:** Barron, Austin; Uhland, Suzzanne; Henry Kevane
**Cc:** Hayter, Dana W
**Subject:** FW: DOC_CENTRAL-#42507-v2-Intel_Via_Settlement_Agreement_06-16-06.DOC

Austin,

Attached is a clean copy of the revised Settlement Agreement with additional comments from Intel.  While we walk over to the meeting, can you do a redline against the
draft you sent me yesterday?

We will see you in a few minutes.

Steve J.

=================================================================================
This message may contain confidential and privileged information. If it has been sent to you in error,
please reply to advise the sender of the error and then immediately delete this message.
=================================================================================

PWSP 00001.337

# SETTLEMENT AGREEMENT

This Settlement Agreement is made effective as of the Effective Date (as defined below) by and among VIA Technologies, Inc., S3 Graphics Co. Ltd., S3 Graphics, Inc., S3-VIA, Inc., Intel Corporation, and SONICblue, Inc.

## Section I – Definitions

1.  "Adversary Proceeding" as used herein shall mean the case entitled *SONICblue Incorporated v. VIA Technologies, Inc.* (case No. 04-5556) filed by Debtor against Claimants and S3G Inc., on or about December 21, 2004, including without limitation all counterclaims.

2.  "Amended and Restated Investment Agreement" as used herein shall mean the written agreement entitled "Amended and Restated Investment Agreement" between VIA and Debtor dated August 28, 2000, as amended and supplemented. Amended and Restated Investment Agreement shall include all of the letters and other agreements executed as a part of the transaction contemplated in the Amended and Restated Investment Agreement, including without limitation the Joint Venture Agreement between Debtor, Sonica3, Inc., and VIA, dated as of January 3, 2001, the Class A Shares Option Agreement between Debtor and VIA, dated as of January 3, 2001, the Guaranty executed by VIA and dated as of January 3, 2001, and certain so-called side letters, dated as of January 3, 2001, executed by Debtor and Claimants amending the Amended and Restated Investment Agreement.

3.  "Approval Order" as used herein shall mean an order of the Bankruptcy Court, or another court of competent jurisdiction, approving this Settlement Agreement without change (unless such change is approved in writing by all Parties hereto) and authorizing Debtor's entry into and performance under this Settlement Agreement.

4.  "Assumption Motion" as used herein shall mean the motion filed by Debtor in Debtor's Bankruptcy Case on December 17, 2004, seeking to assume the PCL pursuant to 11 U.S.C. § 365.

5.  "Bankruptcy Cases" as used herein shall mean collectively the jointly-administered Chapter 11 cases captioned *In re SONICblue Incorporated*, et al., Nos. 03-51775 to 51778, and any other bankruptcy cases or entities substantively consolidated therewith; and "Debtor's Bankruptcy Case" shall mean the Chapter 11 case captioned *In re SONICblue Incorporated*, No. 03-51775, including without limitation any other bankruptcy cases or entities substantively consolidated therewith.

6.  "Bankruptcy Code" as used herein shall mean Title 11 of the United States Code, including without limitation Chapter 11 thereof, 11 U.S.C. §§ 101 et seq.

7.  "Bankruptcy Court" as used herein shall mean the United States Bankruptcy Court for the Northern District of California, San Jose Division.

PWSP 00001.338

8.   "Bankruptcy Successor" as used herein shall mean any trustee appointed in the Bankruptcy ~~Cases or other party entitled or empowered to enforce rights of the Debtors' estates,~~ including without limitation any chapter 11 or chapter 7 trustee or any official or unofficial committee appointed or acting in the case to enforce rights of, or defend claims against, the Debtors or their estates.

9.   "Claimants" as used herein shall mean VIA Technologies, Inc., and S3 Graphics Co. Ltd.

10.  "Claimants' Proofs of Claim" as used herein shall mean the proofs of claim filed by Claimants in Debtor's Bankruptcy Case on or about July 17, 2003.

11.  "Debtor" as used herein shall mean SONICblue, Inc., formerly known as S3 Incorporated, as debtor and debtor-in-possession.

12.  "Development Assistance Agreement" as used herein shall mean the written agreement entitled "Development Assistance Agreement" between Intel and Debtor dated December 16, 1998.

13.  "Effective Date" as used herein shall mean the date eleven days after the entry of the Approval Order on the docket of the Bankruptcy Court, provided that no appeal has been filed prior to such time, or if an appeal has been filed then "Effective Date" shall mean such later date as the Approval Order is upheld on appeal and any deadlines for further appeal have expired.

14.  "Graphics Chip Business" as used herein shall have the same meaning as the term "Graphics Chip Business" defined in Article I of the Amended and Restated Investment Agreement.

15.  "Intel" as used herein shall mean Intel Corporation.

16.  "Intel REDACTED AS CONFIDENTIAL  has the meaning given that term in Section 7(b).

17.  "Intel-VIA Settlement Agreement" as used herein shall mean the written agreement entitled "Litigation Settlement Agreement between VIA Technologies Inc. and Intel Corporation" between VIA and Intel dated as of April 7, 2003.

18.  "Investment Agreement" as used herein shall mean the written agreement entitled "Investment Agreement" between VIA and Debtor dated April 10, 2000, as amended and supplemented.

19.  "JV Entities" as used herein shall mean S3-VIA, S3G Co., and S3G Inc.

20.  "Party" as used herein shall refer to any of the parties to this Settlement Agreement (*e.g.*, VIA Technologies, Inc., S3 Graphics Co. Ltd., S3 Graphics, Inc., S3-VIA, Inc., Intel Corporation or SONICblue, Inc.), and "Parties" shall mean all of them (*i.e,* VIA Technologies, Inc., S3 Graphics Co. Ltd., S3 Graphics, Inc., S3-VIA, Inc., Intel Corporation and SONICblue, Inc.).

PWSP 00001.339

21. "PCL" as used herein shall mean the written agreement entitled "Patent Cross License Agreement" between Intel and Debtor dated December 16, 1998.

22. "Petition Date" as used herein shall mean March 21, 2003.

23. "S3-VIA Investment Agreement" as used herein shall mean the written agreement entitled "Joint Venture Agreement" dated as of October 27, 1999, by and between VIA, Debtor and S3Ventures, Ltd., a Cayman Islands company which is a wholly-owned subsidiary of Debtor.

24. "S3G Co." as used herein shall mean S3 Graphics Co. Ltd.

25. "S3G Inc." as used herein shall mean S3 Graphics, Inc.

26. "S3-VIA" as used herein shall mean S3-VIA, Inc.

27. "Stay Motion" as used herein shall mean the motion for relief from the automatic stay imposed by 11 U.S.C. § 362 in order to terminate the PCL, originally filed by Intel in Debtor's Bankruptcy Case on or about June 6, 2003, and renewed on May 13, 2004.

28. "Trade Secret Agreement" as used herein shall mean the written agreement entitled "Trade Secret Disclosure and License Agreement" between Intel and Debtor dated December 16, 1998.

29. "VIA" as used herein shall mean VIA Technologies, Inc.

## Section II – Recitals

WHEREAS, on March 21, 2003, Debtor and certain of its affiliates commenced the Bankruptcy Cases by filing voluntary petitions for bankruptcy protection under Chapter 11 of the Bankruptcy Code.

WHEREAS, on or about June 6, 2003, Intel filed the Stay Motion seeking to terminate the PCL.

WHEREAS, on July 17, 2003, Claimants filed Claimants' Proofs of Claim, which sought a claim in excess of $100 million.

WHEREAS, on December 17, 2004, Debtor filed the Assumption Motion seeking to assume the PCL.

WHEREAS, on December 21, 2004, Debtor commenced the Adversary Proceeding, challenging Claimants' Proofs of Claim and seeking unspecified compensatory and punitive damages, and Claimants thereafter filed answers denying liability and asserting counter-claims against Debtor.

WHEREAS, the Parties have engaged in good faith settlement negotiations to resolve actual and potential disputes relating to the foregoing and otherwise.

PWSP 00001.340

WHEREAS, given the breadth and complexity of the Parties' disputes, as well as the numerous and contested legal and factual issues that would be involved in resolving them, and in order to avoid the costs and risks of litigation, the Parties have agreed to enter into this global settlement.

WHEREAS, the Parties have carefully considered the terms of this Settlement Agreement and, after having had the opportunity to consult with their respective attorneys, are satisfied that it is fair and reasonable.

NOW, THEREFORE, for good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the Parties agree as follows:

### Section III – Settlement Terms

Subject in each case to the effectiveness of this Settlement Agreement on the terms and conditions set forth herein, the undersigned hereby agree as follows:

### Condition Precedent

1.    Condition Precedent.  This Settlement Agreement, and each and every covenant, release, reservation or other agreement herein, is subject to, and conditioned upon, the occurrence of the Effective Date.  If, for any reason, the Effective Date does not occur (despite the Parties' good faith efforts) or the Approval Order is later reversed or vacated (and not later reinstated), then this Settlement Agreement shall be deemed null and void and of no effect and the Parties shall be in the same position as if the Settlement Agreement had not been entered into.

### Administrative Matters

2.    Proceedings Dismissed.  Immediately upon satisfaction of the condition precedent in paragraph 1, (a) the Stay Motion and the Assumption Motion shall be, and shall be deemed to be, withdrawn with prejudice, and (b) the Adversary Proceeding (including without limitation any motions or proceedings pending within the Adversary Proceeding) shall be, and shall be deemed to be, dismissed with prejudice and without costs to any Party.  The Parties each agree to file and shall file any additional notices, stipulations or other papers required by the Bankruptcy Court in order to confirm these withdrawals and dismissals.  The Parties agree that this Settlement Agreement shall remain effective notwithstanding any substantive consolidation of Debtor with another entity or entities, provided that Claimants reserve their rights to object to such consolidation as a holder of an allowed unsecured claim.

3.    Allowed Claim.  Claimants shall jointly hold a single, allowed general unsecured claim in Debtor's Bankruptcy Case, which claim shall be afforded the benefits of, and shall be pari passu with, the other allowed general unsecured claims against Debtor in Debtor's Bankruptcy Case, in the amount of $12.5 million ($12,500,000), representing a compromise of the claims that have been asserted by the Claimants for damages and other relief based, *inter alia*, on alleged breaches of the Amended and Restated Investment Agreement, including without limitation liquidated damages for the alleged breach of section 5.6 thereof (the "Allowed Claim").  Claimants and Debtor agree that the Allowed Claim is not, and shall not be treated as, "Senior Indebtedness"

under the terms of Debtor's Indenture, dated as of April 22, 2002, for the 7-3/4% Secured Senior Subordinated Convertible Debentures due 2005. The allocation of the Allowed Claim as between the Claimants shall be at the sole discretion of Claimants. The Allowed Claim shall not be subject to reconsideration, objection, reduction, increase, counterclaim, subordination, offset or recoupment, and shall be allowed without necessity of any further filings or amendments, including without limitation any proof of claim.

4.    Filed Proofs of Claim Disallowed. Subject to the allowance in full of the Allowed Claim as set forth in paragraph 3, the Claimants' Proofs of Claim each shall be deemed withdrawn and disallowed with prejudice.

## Intellectual Property Matters

5.    Transfer of Intellectual Property to S3G Co. Debtor shall use its commercially reasonable best efforts to transfer to S3G Co., or its designee, the intellectual property related to or used in the Graphics Chip Business that currently remains in Debtor's possession, is reasonably available and was to be contributed pursuant to the Amended and Restated Investment Agreement (the "Transferred Intellectual Property"), and to execute any transfer documents related to the Transferred Intellectual Property. Such efforts with respect to the Transferred Intellectual Property will include, without limitation, the following:

a.    Execution by Debtor of transfer documents relating to all patents and patent applications listed on Schedule 1 to the Bill of Sale (as defined in the Amended and Restated Investment Agreement) and patents, trademarks, copyrights and other items listed in Schedule 3.14(a)(ii) to the Amended and Restated Investment Agreement that remain in Debtor's possession and are reasonably available. VIA and Debtor agree that Debtor's execution, with requisite formalities, of the transfer documents listed on Exhibit 1 to this Settlement Agreement shall be deemed to satisfy Debtor's obligations under this paragraph 5(a). Pursuant to paragraph 7(b) of Section III of this Settlement Agreement,

REDACTED AS
CONFIDENTIAL

b.    Execution by Debtor of the various documents necessary to record the trademark assignments. VIA and Debtor agree that Debtor's execution, with requisite formalities, of the transfer documents listed on Exhibit 2 to this Settlement Agreement shall be deemed to satisfy Debtor's obligations under this paragraph 5(b).

c.    Delivery by Debtor of all patent, trademark and copyright files and other documents relating to the Transferred Intellectual Property to the extent that the same may be located after a reasonable search.

PWSP 00001.342

     d.     Delivery by Debtor of a list of all licensed technology and the underlying licenses that were being utilized in the Graphics Chip Business prior to the January 3, 2001, closing to the extent that such a list or lists may be located after a reasonable search.

     e.     Delivery by Debtor of the complete employee files for relevant employees identified by VIA (*e.g.*, employees listed as inventor(s) or author(s) on any patent, patent application, or copyright transferred or to be transferred to S3G Co.), including without limitation resumes, offer letters, employment agreements, performance reviews, benefits files and immigration files, but only to the extent that such files may be located after a reasonable search and that such disclosure is consistent with employee privacy rights.

     f.     Delivery by Debtor of all original data tapes to the extent the same may be located after a reasonable search.

     g.     Delivery by Debtor of executed customer and vendor non-disclosure agreements to the extent the same may be located after a reasonable search and such disclosure is not prohibited by the terms of such agreements.

     6.     <u>Claimants' Expense</u>. Claimants shall (a) reimburse Debtor for its third-party filing fees incurred in perfecting, preserving, registering or transferring the Transferred Intellectual Property, and (b) prepare drafts of any documents needed to effectuate the transfer (subject to revisions by the Parties) of the Transferred Intellectual Property.

     7.     <u>PCL</u>

     a.

     b.

REDACTED AS CONFIDENTIAL

PWSP 00001.343

c.

d.

REDACTED AS
CONFIDENTIAL

e.

PWSP 00001.344

REDACTED AS
CONFIDENTIAL

8.    Intel-VIA Settlement Agreement

REDACTED AS
CONFIDENTIAL

9.    Transfer of Class A Shares of S3G Co.  Debtor shall transfer or cause to be transferred to VIA or its designee for no further consideration all Class A Common Shares of S3G Co. held by Sonica3, Inc. (or other party) within ten business days after the Effective Date.  The "Class A Shares Option Agreement," between Debtor and VIA, dated as of January 3, 2001, shall be deemed terminated upon the Effective Date.

10.    Subsidiaries.  VIA, Intel and the JV Entities agree

REDACTED AS
CONFIDENTIAL

REDACTED AS
CONFIDENTIAL

## Releases

11.    Releases by Debtor of VIA, S3G Co., S3G Inc. and S3-VIA.  As of the Effective Date, and excepting rights created or preserved by this Settlement Agreement, Debtor, on behalf of itself and its affiliates, subsidiaries, predecessors, successors, and assigns (solely in such capacities), and each of their respective officers, directors, employees, agents, partners, insurers, accountants, attorneys and shareholders (collectively, but solely in such capacities, the "Debtor-VIA Releasing Parties"), hereby releases, acquits, and forever discharges VIA, each of its affiliates, subsidiaries, predecessors, successors, and assigns (solely in such capacities), and each of their respective officers, directors, employees, agents, partners, insurers, accountants, attorneys

PWSP 00001.345

and shareholders (collectively, but solely in such capacities, the "Debtor-VIA Released Parties"), and the JV Entities, and each of their respective affiliates, subsidiaries, predecessors, successors, and assigns (solely in such capacities), and each of their respective officers, directors, employees, agents, partners, insurers, accountants, attorneys and shareholders (collectively, but solely in such capacities, the "Debtor-JV Released Parties"), from and against any and all claims, counterclaims, demands, liabilities, causes of action, defenses, damages, expenses (including, but not limited to, attorneys' fees and costs), duties or obligations, whether asserted on an individual, representative, or derivative basis, whether known or unknown, suspected or unsuspected, fixed or contingent, accrued or not yet accrued, that any of Debtor-VIA Releasing Parties now has, has had, or may at any time have against VIA or, in such capacity, its affiliates, subsidiaries, predecessors, successors, and assigns or, in such capacity, their respective officers, directors, employees, partners, insurers, accountants, attorneys and shareholders, or against the JV Entities or, in such capacity, its affiliates, subsidiaries, predecessors, successors, and assigns or, in such capacity, their respective officers, directors, employees, partners, insurers, accountants, attorneys and shareholders, from and against any and all claims, counterclaims, demands, liabilities, causes of action, defenses, damages, expenses (including, but not limited to, attorneys' fees and costs), duties or obligations – whether asserted on an individual, representative, or derivative basis, whether known or unknown, suspected or unsuspected, fixed or contingent, accrued or not yet accrued – that Debtor-VIA Releasing Parties now has, has had, or may at any time have based on events or acts or omissions occurring on or before the Effective Date, including, but not limited to (a) the Bankruptcy Cases, (b) the Adversary Proceeding, (c) the PCL, (d) the creation, operation or activities of the JV Entities, (e) any and all surety claims or claims for indemnity or contribution arising from or based on events or acts or omissions occurring on or before the Effective Date, and/or (f) any and all claims or interests arising under or relating to any and all agreements between or among each group of the parties to this paragraph, including without limitation the S3-VIA Investment Agreement, the Investment Agreement, the Amended and Restated Investment Agreement, and the Class A Shares Option Agreement.

12.    Releases by VIA, S3G Co., S3G Inc. and S3-VIA of Debtor.  As of the Effective Date, and excepting rights created or preserved by this Settlement Agreement, VIA, on behalf of itself and its affiliates, subsidiaries, predecessors, successors, and assigns (solely in such capacities), and each of their respective officers, directors, employees, agents, partners, insurers, accountants, attorneys and shareholders (collectively, but solely in such capacities, the "VIA-Debtor Releasing Parties"), and the JV Entities, each on their own behalf and on behalf of each of their respective affiliates, subsidiaries, predecessors, successors, and assigns (solely in such capacities), and each of their respective officers, directors, employees, agents, partners, insurers, accountants, attorneys and shareholders (collectively, but solely in such capacities, the "JV-Debtor Releasing Parties"), hereby releases, acquits, and forever discharges Debtor, each of its affiliates, subsidiaries, predecessors, successors, and assigns (solely in such capacities), and each of their respective officers, directors, employees, agents, partners, insurers, accountants, attorneys and shareholders (collectively, but solely in such capacities, the "VIA-Debtor Released Parties"), from and against any and all claims, counterclaims, demands, liabilities, causes of action, defenses, damages, expenses (including, but not limited to, attorneys' fees and costs), duties or obligations, whether asserted on an individual, representative, or derivative basis, whether known or unknown, suspected or unsuspected, fixed or contingent, accrued or not yet accrued, that any of the VIA-Debtor Releasing Parties or the JV-Debtor Releasing Parties now has, has had, or may at any time have against Debtor or, in such capacity, its affiliates, subsidiaries, predecessors,

successors, and assigns or, in such capacity, their respective officers, directors, employees, agents, partners, insurers, accountants, attorneys and shareholders, from and against any and all claims, counterclaims, demands, liabilities, causes of action, defenses, damages, expenses (including, but not limited to, attorneys' fees and costs), duties or obligations – whether asserted on an individual, representative, or derivative basis, whether known or unknown, suspected or unsuspected, fixed or contingent, accrued or not yet accrued – that each of the VIA-Debtor Releasing Parties or the JV-Debtor Releasing Parties, respectively, now has, has had, or may at any time have based on events or acts or omissions occurring on or before the Effective Date, including, but not limited to (a) the Bankruptcy Cases, (b) the Adversary Proceeding, (c) the PCL, (d) the creation, operation or activities of the JV Entities, (e) any and all surety claims or claims for indemnity or contribution arising from or based on events or acts or omissions occurring on or before the Effective Date, and/or (f) any and all claims or interests arising under or relating to any and all agreements between or among each group of the parties to this paragraph, including without limitation the S3-VIA Investment Agreement, the Investment Agreement, the Amended and Restated Investment Agreement, and the Class A Shares Option Agreement.

      13.    <u>Release by Intel of Debtor.</u>

REDACTED AS CONFIDENTIAL

REDACTED AS
CONFIDENTIAL

14.    Release by Debtor of Intel.

REDACTED AS
CONFIDENTIAL

PWSP 00001.348

REDACTED AS
CONFIDENTIAL

12

REDACTED AS
CONFIDENTIAL

15.    Release by Intel

REDACTED AS
CONFIDENTIAL

PWSP 00001.350

REDACTED AS
CONFIDENTIAL

16.    Release by Intel

REDACTED AS
CONFIDENTIAL

17.    Release  of Intel.

REDACTED AS
CONFIDENTIAL

PWSP 00001.351

REDACTED AS
CONFIDENTIAL

## Miscellaneous

18.    Motion to Approve.  Debtor shall file and prosecute a motion seeking approval of this Settlement Agreement by the Bankruptcy Court, and the Parties hereto shall cooperate in efforts to ensure that such motion is approved forthwith.

19.    Each Party to Bear Own Costs.  Except as provided for in Section 6 of this Settlement Agreement, each Party hereto shall bear its own costs and expenses (including, but not limited to, attorneys' fees) in connection with the negotiation, execution, and obtaining of Court approval of this Settlement Agreement, and all matters addressed, settled or released hereby.

20.    Waiver of Statutory Limitation on General Releases.  With respect to the matters released hereby, each of the Parties hereto, for itself and on behalf of any other Releasing Party on whose behalf it gives a release  hereunder, hereby waives and relinquishes any and all rights which they or any of them may have under the provisions of § 1542 of the Civil Code of the State of California, or any analogous provision under state or federal law, which provides as follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

PWSP 00001.352

21.  No Admission of Liability.  The Parties hereto each acknowledge that this Settlement Agreement is a compromise of disputed rights and claims among the Parties and that it shall not be construed as an admission of any liability by any Party hereto.

22.  Due Authority.  Each person signing this Settlement Agreement, including but not limited to any person signing as counsel for a Party, hereby represents and warrants that he or she has been duly authorized and has the requisite authority to execute and deliver this Settlement Agreement on behalf of such Party and to bind his or her employer, principal or respective client to the terms and conditions of this Settlement Agreement.

23.  Due Investigation.  The Parties acknowledge that, in making this Settlement Agreement, they rely entirely upon their own judgment, beliefs and interest and, where applicable, the advice of their own counsel and that they each have had a reasonable period of time to consider this Settlement Agreement.

24.  Drafting of Settlement Agreement.  The Parties agree that each Party and, where applicable, its counsel have reviewed this Settlement Agreement, and that each fully understands and voluntarily accepts all the provisions contained in this Settlement Agreement.  The Parties further agree that this Settlement Agreement was the product of negotiations between the Parties and that any rule of construction requiring that ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this Settlement Agreement.  The language of all parts of this Settlement Agreement shall in all cases be construed as a whole, according to its fair meaning and not strictly for or against any of the Parties.

25.  Integrated Agreement.  This Settlement Agreement is an integrated document that sets forth the entire agreement between the Parties, and it supersedes any and all prior agreements, promises, representations and understandings, whether written or oral, between or among the Parties pertaining to the subject matter hereof.

26.  Amendments.  No modification or amendment of this Settlement Agreement shall be binding or enforceable unless in writing and signed by all of the Parties to the modification or amendment.

27.  Binding on Bankruptcy Successors.  This Settlement Agreement shall remain in force and effective against any Bankruptcy Successor of the Debtors.

28.  Choice of Law, Jurisdiction.  This Settlement Agreement shall be interpreted and construed in accordance with the provisions of the Bankruptcy Code and, where not inconsistent, the laws of the State of California, without giving effect to California's rules regarding conflict of laws.  The Bankruptcy Court shall have jurisdiction over any and all disputes, controversies, claims or other matters arising under or otherwise relating to this Settlement Agreement.

29.  Headings.  The headings of sections and paragraphs in this Settlement Agreement have been included only for convenience, and shall not be deemed in any manner to modify or limit any of the provisions of this Settlement Agreement, or be used in any manner in the interpretation of this Settlement Agreement.

PWSP 00001.353

30.     Counterparts.  This Settlement Agreement may be executed in one or more counterparts and in original or by facsimile, each of which shall be deemed an original, but all of which together constitute one and the same instrument.

31.     Further Assurances.  The Parties shall execute and deliver all documents and perform all further acts that may reasonably be necessary to effectuate the provisions and purpose of the Settlement Agreement.

| SONICblue, Inc. | Dated: June ___, 2006 |
| | |
| | By: _____ |
| Intel Corporation | Dated: June ___, 2006 |
| | |
| | By: _____ |
| VIA Technologies, Inc. | Dated: June ___, 2006 |
| | |
| | By: _____ |
| S3 Graphics Co. Ltd. | Dated: June ___, 2006 |
| | |
| | By: _____ |
| S3 Graphics, Inc. | Dated: June ___, 2006 |
| | |
| | By: _____ |
| S3-VIA, Inc. | Dated: June ___, 2006 |
| | |
| | By: _____ |

19

PWSP 00001.356

Document comparison done by DeltaView on Friday, June 16, 2006 12:12:06 PM

| Input: | |
|---|---|
| Document 1 | file://L:/moms/WP/sb settlement.discussion.doc |
| Document 2 | file://L:/moms/WP/sb settlement.intel 3.doc |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 29 |
| Deletions | 19 |
| Moved from | 1 |
| Moved to | 1 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 50 |