STROOCK & STROOCK & LAVAN LLP
Lewis Kruger (admitted *pro hac vice*)
Kenneth Pasquale (admitted *pro hac vice*)
180 Maiden Lane
New York, New York 10038
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

STROOCK & STROOCK & LAVAN LLP
Alan Z. Yudkowsky (State Bar No. 194994)
2029 Century Park East, Suite 1800
Los Angeles, California 90067
Telephone: (310) 556-5800
Facsimile: (310) 556-5959

Counsel for Portside Growth & Opportunity Fund,
Smithfield Fiduciary LLC, and Citadel Equity Fund Ltd.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Van C. Durrer II (State Bar No. 226693)
Glenn Walter (State Bar No. 220015)
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071
Telephone: (213) 687-5000
Facsimile: (213) 687-5600

Counsel for Citadel Equity Fund Ltd.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re                                      :
:
SONICBLUE INCORPORATED, a Delaware        :
corporation; DIAMOND MULTIMEDIA           :
SYSTEMS, INC., a Delaware corporation;    :
REPLAYTV, INC., a Delaware corporation;   :
and SENSORY SCIENCE CORPORATION, a        :
Delaware corporation,                     :
:
       Debtors and Debtors in Possession.  :
:
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No. C-07-02553 RMW

(Related to Case No. CV 07-06025-RMW)

**SENIOR NOTEHOLDERS' OMNIBUS REPLY TO RESPONSES TO CROSS-MOTION FOR LIMITED STAY**

Date: January 11, 2008
Time: 9:00 a.m.
Place: Courtroom 6, 4th Floor
Judge: Hon. Ronald M. Whyte

---

Senior Noteholders' Omnibus Reply to Responses to Cross-Motion for Limited Stay - Case No. C 07-02553 RMW

Portside Growth & Opportunity Fund, Smithfield Fiduciary LLC, and Citadel Equity Fund Ltd. (collectively, the "Senior Noteholders") hereby submit this omnibus reply ("Reply") to the responses filed by the reconstituted official committee of unsecured creditors (the "Reconstituted Committee") [Appeal Docket No. 34][1], SB Claims[2] [Appeal Docket No. 37], and the Chapter 11 Trustee [Appeal Docket No. 54] (collectively, the "Objectors"), in further support of the Senior Noteholders' Cross-Motion for a Limited Stay of Proceedings (the "Stay Motion").

## INTRODUCTION

The Objectors exaggerate both the scope and the effect of the requested stay. The Senior Noteholders do not seek to stay the fact-finding discovery process related to either the Trustee's Investigation or the Adversary Proceeding. Likewise, the Senior Noteholders do not seek to impede any actions that seek to determine whether Pillsbury committed any wrongdoing or which seek affirmative relief from Pillsbury. Finally, the Senior Noteholders do not seek to delay the underlying bankruptcy cases in any way. In fact, just the opposite is true. The Senior Noteholders' aim is to put these cases back on track toward prompt confirmation of an objectively fair plan that implements immediate distributions to all creditors (including SB Claims).

Although wrapped in the shroud of feigned public interest and alleged fraud on the Bankruptcy Court, the Motions for Partial Modification of the Settlement Order and the Adversary Proceeding only impact two sets of parties—SB Claims and the Senior Noteholders. Thus, if the limited stay is granted, parties in interest will remain free to continue to investigate the conduct of Pillsbury, seek to disgorge the professional fees paid to Pillsbury or otherwise seek additional affirmative relief from Pillsbury related to the conduct of Pillsbury professionals. Put simply, the

---

[1] The retention by the Reconstituted Committee of the McNutt Law Group, LLP (the "McNutt Firm") has not yet been approved by the Bankruptcy Court. The McNutt Firm's application [Docket No. 2568] is subject to objection by both the Senior Noteholders [Docket No. 2589] and Pillsbury Winthrop Shaw Pittman LLP [Docket No. 2627] due to the McNutt Firm's representation of the predecessors to, and members in, SB Claims for a period of over two years while those parties attempted to acquire VIA/S3G's claim against the Debtors' estates. This claim was ultimately acquired by SB Claims and forms the basis for the Adversary Proceeding.

[2] Capitalized terms that are undefined herein shall have the meaning ascribed to them in the Memorandum of Points and Authorities in Support of Senior Noteholders' Opposition to Motion to Dismiss Appeal and Cross-Motions for Limited Stay of Proceedings and/or to Withdraw Reference of Chapter 11 Cases [Appeal Docket No. 22] (the "Senior Noteholders' MOL").

Motions for Partial Modification of the Settlement Order have nothing to do with truth finding or the integrity of the judicial process, and everything to do with SB Claims' prosecution of its pecuniary interests against the Senior Noteholders.

The Senior Noteholders have at all times supported, and continue to support, the prompt confirmation of a plan of reorganization that provides for an initial distribution to unsecured creditors. Indeed, the Senior Noteholders voluntarily agreed to fund a reserve from their distributions under a plan proposed by the Chapter 11 Trustee in July 2007 in excess of 145% of SB Claims' purported "allowed" claim in the unlikely event that SB Claims was successful in the Adversary Proceeding. Despite SB Claims' continued attempts at revisionist history, it was – in the unbiased words of the Chapter 11 Trustee – SB Claims that "derailed" the plan "as part of its litigation strategy." (Declaration Of Lewis Kruger In Support Of Senior Noteholders' Omnibus Reply To Responses To Cross-Motion For Limited Stay ("Kruger Declaration"), filed concurrently herewith, Ex. A (Third Supplemental Declaration in Connection with the Employment of Alston & Bird LLP as Counsel to Dennis J. Connelly, the Chapter 11 Trustee, Exhibits (Letter from Dennis J. Connelly, Chapter 11 Trustee, to William McGrane, counsel to SB Claims (Nov. 16, 2007) at 2 [Docket No. 2614]).) The requested stay does not impair confirmation of a plan or prompt distributions to unsecured creditors under a confirmed plan. The stay will only affect litigation between two sophisticated parties, and, try as it might to adorn the mantle of "defender of the oppressed",[3] SB Claims seeks nothing more than to line its own pockets for its own economic benefit through the litigation strategy it is pursuing.

The requested stay, therefore, will not have any of the purported negative effects to the Debtors' estates that are alleged by the Objectors. Rather, the only effect of the stay will be to

---

[3] We note for the Court that until early 2007, neither SB Claims nor any of its predecessors or principals owned any significant claims (based on representations made by counsel to SB Claims, in February 2007, SB Claims acquired approximately $160,000 in claims previously purchased by one of its members, Argo) in the Bankruptcy Cases, which cases have been active since March 2003. SB Claims did not acquire the at issue VIA/S3G claim until April 24, 2007 and it did so with the express purpose to pursue a litigation strategy against the Senior Noteholders. (See Claims Transfer Agreement, RJN, Ex. 13 at 2-3 [Docket No. 2316].)

provide the Senior Noteholders with the opportunity to present a full and accurate picture of their conduct and to avoid the waste of estate resources in the underlying Chapter 11 cases.

## ARGUMENT

### A.  *The Stay Motion Was Timely Filed*

The Senior Noteholders requested a stay of only three matters before the Bankruptcy Court: two related motions to effect a partial rescission of a voluntary, integrated settlement with VIA (*i.e.*, the Motions for Partial Modification of the Settlement Order), and the Adversary Proceeding. Although the Senior Noteholders filed this Appeal on May 11, 2007, only recently has SB Claims' litigation strategy demonstrated that a stay of certain proceedings is necessary to preserve this Court's jurisdiction.  While SB Claims correctly notes that after the filing of this Appeal, on June 14, 2007, the Bankruptcy Court volunteered that "it had not predetermined any issues that are going to come before us," (Transcript of Proceedings, June 14, 2007 at 23-24 [Docket 2375]), there were no motions or pleadings on file by SB Claims at the time that threatened, on their face, the Senior Noteholders' ability to obtain this Court's effective review of the factual findings on appeal to this Court (the "Appellate Issues").

Prompted by SB Claims, however, the Bankruptcy Court thereafter improperly relied on its hastily formed assessment of the Appellate Issues in ordering the reconstitution of the Initial Creditors Committee, finding at the October 4, 2007 hearing that the Senior Noteholders had failed to disclose their involvement in the settlement negotiations, the Conflict of Interest with Pillsbury, and their role within the Initial Creditors Committee (Transcript of Proceedings, Sept. 20, 2007, RJN, Ex. 22 at 50-52 [Docket No. 2505]), even though the Bankruptcy Court refused to conduct an evidentiary hearing.[4]  Therefore, it was not until the October 4, 2007 hearing that the Bankruptcy Court's interpretation of the record and the meaning of its prior statements became unclear. Because the Appellate Issues were already on appeal, and the Senior Noteholders believed that the

---

[4] As evidenced by this Appeal, the Senior Noteholders respectfully submit that there is overwhelming evidence that will demonstrate that such findings are clearly erroneous once the Senior Noteholders are given an opportunity to present them.  (See Motion for Clarification, or in the Alternative, Leave to File a Motion for Reconsideration, RJN, Ex. 8 at 7 – 11 [Docket No. 2231].)

constitution of the creditors committee was an issue best left under the circumstances to the Office of the United States Trustee, the Senior Noteholders did not appeal this ruling.

SB Claims, however, apparently became emboldened by the Bankruptcy Court's ruling on the reconstitution of the Initial Creditors Committee and filed the Motions for Partial Modification of the Settlement Order on October 31, 2007.  Because these motions are mere attempts by SB Claims to obtain partial summary judgment on key issues that are subject to this Appeal and related to the Adversary Proceeding, not to mention intertwined in a web of facts that are only now in the process of discovery (including, for example, whether and how SB Claims laid in wait to sabotage these Bankruptcy Cases or the consequences of such conduct), it is entirely appropriate for the Senior Noteholders to seek a stay of such motions pending the outcome of this Appeal.  And, since the Motions for Partial Modification of the Settlement Order were not filed by SB Claims until October 31, 2007, the Senior Noteholders could not have requested a stay of the motions before then.  Accordingly, the Stay Motion filed on November 20, 2007 is timely.

### *B. The Stay Motion Is Correctly Before The District Court*

Bankruptcy Rule 8005 provides that a motion for a stay pending appeal "must <u>ordinarily</u> be presented to the bankruptcy judge in the first instance."  Fed. R. Bankr. P. 8005 (emphasis added).  For the reasons set forth in the Senior Noteholders' MOL, the Senior Noteholders believe that the Stay Motion is properly before the District Court in the first instance.  Despite this belief, however, on November 14, 2007 (prior to filing the Stay Motion) the Senior Noteholders moved the Bankruptcy Court for a stay of the Motions for Partial Modification of the Settlement Order.  (See Senior Noteholders' Notice of Motion and Motion for a Continuance of Motions for Partial Modification of Settlement Order or, in the Alternative, Limited Stay of Proceedings [Docket No. 2561].)  The Bankruptcy Court heard the Senior Noteholders' motion on December 7, 2007, and summarily denied the request for a stay.  (Kruger Decl., Ex. B (Transcript of Proceedings, Dec. 7, 2007) at 37 [Docket No. 2652].)

Moreover, the Bankruptcy Court also denied the Senior Noteholders' request for a continuance and scheduled a hearing for February 7, 2008—even though the parties universally agreed that discovery related to Pillsbury's conduct was not yet complete.  Although at SB Claims'

urging,[5] the Bankruptcy Court again stated that "I certainly don't feel that I've prejudged the case," the Bankruptcy Court made its ruling in part based on its erroneous determination that "as SB Claims ably points out, the basic facts surrounding Pillsbury's failure to disclose a conflict of interest <u>are already part of the record</u> before me." (<u>See</u> Kruger Decl., Ex. B (Transcript of Proceedings, Dec. 7, 2007) at 36, 38 [Docket No. 2652] (emphasis added).) In other words, although the Motions for Partial Modification of the Settlement Order seek to modify a single provision of an integrated settlement agreement for the sole benefit of SB Claims to the sole detriment of the Senior Noteholders—the Bankruptcy Court, yet again, appears ready to rely on a "record" to justify the supplementation of orders that remain on appeal before this Court.

### *C. The Senior Noteholders Meet The Standard For Granting A Stay*

For the reasons set forth in the Senior Noteholders' MOL, the Senior Noteholders respectfully submit that they meet the standard for the granting of a stay. Furthermore, as set forth above, there is simply no harm to other parties in this case by the granting of the requested stay and the public interest is not served by a premature hearing on the Motions for Partial Modification of the Settlement Order, which is effectively a hearing on the Adversary Proceeding. The Motions for Partial Modification of the Settlement Order present nothing more than corollary or alternative relief to the Adversary Proceeding, which is a dispute between two non-debtor parties. Although SB Claims has made the pursuit of its profits the central issue of these bankruptcy cases, the requested stay would not prevent the confirmation of a plan or distributions to unsecured creditors. Indeed, if not for SB Claims' strategy to derail the Chapter 11 Trustee's proposed plan, initial distributions to unsecured creditors would likely have been made by the time of the hearing set on the instant motion.

---

[5] Mr. Shaffer requested the Bankruptcy Court to reiterate its impartiality: "Mr. Burk is absolutely right that this Court has not prejudged anything. And I would ask this Court for the assistance of the District Court, respectfully I ask this Court to reiterate that point once again, because concerns have been raised in the stay and withdrawal motion by Mr. Kruger on that issue and I think he and I can debate that, but there's only one person in the world who can answer that. And I think the District Court would be – it would be beneficial for the District Court, for this Court to reiterate its views on that issue before the Court addresses it itself." (Kruger Decl., Ex. B (Transcript of Proceedings, Dec. 7, 2007) at 35-36 [Docket No. 2652].)

### D. The Bankruptcy Court Lacks Jurisdiction Over Matters On Appeal

The filing of a notice of appeal divests the [lower] court of its control over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982); see Hill & Sandford, LLP v. Mirzai (In re Mirzai), 236 B.R. 8, 10 (B.A.P. 9th Cir. 1999) (applying principle to bankruptcy cases). The purpose behind this rule is to "avoid the confusion and waste of time that might flow from putting the same issues before two courts at the same time. Padilla, 222 F.3d at 1190; Mirzai, 236 B.R. at 8.

SB Claims accurately points out that the Bankruptcy Court may exercise "narrowly limited" jurisdiction to "preserve the status quo while the case is pending in (an) appellate court." United States v. El-O-Pathic Pharmacy, 192 F.2d 62, 79 (9th Cir. 1951). SB Claims fails to acknowledge, however, that in preserving the status quo, the Bankruptcy Court "retains jurisdiction to implement or enforce the judgment or order but may not alter or expand upon the judgment." Padilla, 222 F.3d at 1190 (emphasis added); Rains v. Flinn (In re Rains), 428 F.3d 893, 904 (9th Cir. 2005); see McClatchy Newspapers v. Cent. Valley Typographical Union No. 46, 686 F.2d 731, 735 (9th Cir. 1982) (finding lower court had no jurisdiction to enter amended judgment giving new directives after notice of appeal filed). For example, in Rains, the bankruptcy court was permitted to enforce a settlement agreement after a notice of appeal was filed because doing so "merely effectuated the express terms of the settlement agreement, and did not alter or expand upon the order approving the settlement agreement." 428 F.3d at 904. Here, the Bankruptcy Court below has not merely been effectuating the Orders; rather, it has taken its findings of fact in the Orders and expanded upon the relief already given by, for example, reconstituting the Initial Creditors Committee. Because the proceedings currently before the Bankruptcy Court rely upon those same findings of fact, they afford the Bankruptcy Court continuing opportunities to alter and expand upon the

1 | Orders, which it may not do.  Id.  The Senior Noteholders, therefore, seek a stay of such
2 | proceedings.  Accordingly, the instant motion should be granted.

Dated:  December 17, 2007         STROOCK & STROOCK & LAVAN LLP
                                  LEWIS KRUGER
                                  KENNETH PASQUALE
                                  ALAN Z. YUDKOWSKY


                                  By:   /s/ Alan Z. Yudkowsky
                                        Alan Z. Yudkowsky

                                        Attorneys for Portside Growth & Opportunity
                                        Fund, Smithfield Fiduciary LLC, and Citadel
                                        Equity Fund Ltd.


Dated:  December 17, 2007         SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                                  VAN C. DURRER II
                                  GLENN WALTER


                                  By:   /s/ Glenn Walter
                                        Glenn Walter

                                        Attorneys for Citadel Equity Fund Ltd.

## ATTESTATION OF FILING

Pursuant to General Order No. 45 § X(B), I hereby attest that I have obtained concurrence in the filing of this Notice of Cross-Motion and Cross-Motion for Limited Stay of Proceedings and have on file all holograph signatures for any signatures indicated by a "conformed" signature within this e-filed document.

By: /s/ Alan Z. Yudkowsky
Alan Z. Yudkowsky
Attorneys for Portside Growth & Opportunity Fund, Smithfield Fiduciary LLC, and Citadel Equity Fund Ltd.