FRIEDMAN DUMAS & SPRINGWATER LLP
CECILY A. DUMAS (S.B. NO. 111449)
150 Spear Street, Suite 1600
San Francisco, CA 94105
Telephone Number: (415) 834-3800
Facsimile Number: (415) 834-1044
Email Address: cdumas@friedumspring.com

ALSTON & BIRD LLP
GRANT T. STEIN
1201 West Peachtree Street
Atlanta, GA 30309
Telephone Number: (404) 881-7000
Facsimile Number: (404) 881-7777
Email Address: grant.stein@alston.com
(admitted *pro hac vice*)

*Attorneys for Dennis J. Connolly in His Capacity as*
*Chapter 11 Trustee for SONICblue Incorporated, et al.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re | Case No. C-07-06025 RMW |
| SONICBLUE INCORPORATED, a Delaware corporation, DIAMOND MULTIMEDIA SYSTEMS, INC., a Delaware corporation, REPLAYTV, INC., a Delaware corporation, and SENSORY SCIENCE CORPORATION, a Delaware corporation, | (Related to Case No. C-07-02553 RMW) **CHAPTER 11 TRUSTEE'S OPPOSITION TO MOTION TO WITHDRAW REFERENCE OF CHAPTER 11 CASES** |
| Debtors. | Date: January 11, 2008<br>Time: 9:00 a.m.<br>Place: Courtroom 6, 4th Floor<br>280 South First Street<br>San Jose, CA 95113 |
| | Judge: Hon. Ronald M. Whyte |

Dennis J. Connolly, chapter 11 trustee (the "Trustee") of the bankruptcy estates of SONICblue Incorporated, Diamond Multimedia Systems, Inc., ReplayTV, Inc. and Sensory Science Corporation (collectively, the "Debtors") hereby submits his Opposition to the Motion to Withdraw Reference of Chapter 11 Cases filed by Portside Growth &

1    Opportunity Fund, Smithfield Fiduciary LLC and Citadel Equity Fund Ltd. (the
2    "2002 Noteholders"), and respectfully represents as follows:

3

4                        **I. INTRODUCTION**

5            Mandatory withdrawal of the reference under 28 U.S.C. § 157(d) is not
6    applicable in this case, and permissive withdrawal of the reference as requested by the
7    2002 Noteholders is not appropriate.  There is no efficiency to be gained by removing
8    administration of the bankruptcy cases from the Bankruptcy Court on the premise that an
9    appeal of factual findings (an appeal that should be dismissed) somehow precludes the
10   Bankruptcy Court from dealing with the other issues before it.

11           The Bankruptcy Court issued two memorandum orders in these jointly-
12   administered bankruptcy cases.  In the first order, issued on March 26, 2007, the court
13   disqualified Debtors' counsel, directed appointment of a chapter 11 trustee, and declined to
14   convert the case to chapter 7.  In the second order, issued on May 4, 2007, the court denied a
15   request by the 2002 Noteholders for "clarification" of the first order.  The two memorandum
16   orders contain several factual statements reflecting the record then before the Bankruptcy
17   Court, and possible inferences from that record.  The 2002 Noteholders disagree with several
18   of these statements, which were made in the context of disqualifying a law firm and finding
19   that it was in the best interest of creditors to appoint a chapter 11 trustee and not to convert
20   the case to a case under chapter 7.  The 2002 Noteholders filed a notice of appeal, not to
21   challenge any of the Bankruptcy Court's actual decisions (disqualifying counsel, appointing a
22   trustee, and keeping the case in chapter 11), but to "reform" the orders by removing the
23   discussion of the record and facts that it reflected—which the 2002 Noteholders characterize
24   as the court's "Findings."

25           The Trustee moved to dismiss the appeal on the ground that the Findings are
26   not subject to review independent of the Bankruptcy Court's actual decisions.   The
27   2002 Noteholders responded with an opposition, a cross-motion to stay proceedings (which
28   the Trustee has already opposed), and the present motion to withdraw the reference of the

1  bankruptcy cases (the "Motion to Withdraw Reference").  The ground presented for the

2  Motion to Withdraw Reference is that the filing of the notice of appeal rendered the

3  Bankruptcy Court's jurisdiction of the bankruptcy cases "unclear," and therefore it would be

4  efficient for the district court to take over the bankruptcy cases in their entirety.

5  The motion should be denied.  Its premise—that the 2002 Noteholders' appeal

6  of the Findings deprived the Bankruptcy Court of jurisdiction over certain crucial aspects of

7  the cases—is fundamentally flawed.  As the Trustee has already argued, the Findings are not

8  independently subject to review, so the appeal is subject to dismissal.  Even if the Findings

9  were reviewable as part of this appeal, the Bankruptcy Court would lack jurisdiction only to

10  vacate or modify those Findings.  The Bankruptcy Court would continue to have full

11  jurisdiction to administer the bankruptcy cases.  The idea that a court improperly

12  "supplements" its Findings by referring to them in subsequent determinations has no legal

13  support.

14

15  ## II.  ARGUMENT

16  ### A.    The Standards for Considering a Motion to Withdraw the Reference.

17  The United States Court of Appeals for the Ninth Circuit addressed the basic

18  standards for consideration of a motion to withdraw the reference under 28 U.S.C. § 157(d) in

19  *Security Farms v. International Brotherhood of Teamsters, Chauffers, Warehousemen &*

20  *Helpers*, 124 F.3d 999, 1008 (9th Cir. 1997):

21  > In determining whether cause exists, a district court should consider the
22  > efficient use of judicial resources, delay and costs to the parties, uniformity of
     > bankruptcy administration, the prevention of forum shopping, and other related
23  > factors.  *See In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993).

24  In this case, it is clear that mandatory withdrawal of the reference is not

25  applicable, and permissive withdrawal of the reference as requested by the 2002 Noteholders

26  is not appropriate.

27

28

**B.**     **The Findings Are Not Subject to Review.**

The 2002 Noteholders argue that the Bankruptcy Court's jurisdiction is called into question by the appeal of its March 26 and May 4 orders. Because this Court is already reviewing those orders—so the argument goes—it would serve efficiency for this Court to take over the cases altogether rather than allow the Bankruptcy Court to continue under a jurisdictional cloud. But as the Trustee has argued in his Motion to Dismiss Appeal [Docket No. 14] and in his Opposition to Cross-Motion for Limited Stay of Proceedings [Docket No. 54], there is nothing properly on appeal to this Court in the first place—only "findings" that were not necessary to the decisions and that are not part of the judgment. Because this Court has no basis for reviewing those Findings, there is no efficiency-based reason for it to withdraw the reference of the cases as a whole.

**C.**     **The Appeal, Even If Legitimate, Only Prevents the Bankruptcy Court from Vacating or Modifying its March 26 and May 4 Orders.**

The 2002 Noteholders suggest that the Bankruptcy Court has exceeded its authority by issuing orders (specifically, an order to reconstitute the creditors' committee) based on the same Findings as are contained in the orders on appeal. They insist that such subsequent orders improperly "supplement" the orders on appeal, and they warn that unless this Court intervenes, "there is a substantial risk that such violations will continue." Appellants' Memorandum of Points and Authorities [Docket No. 22] ("Appellants' Memorandum") at 26.

There is no support for the idea that a bankruptcy court exceeds its jurisdiction by "supplementing" an appealed order in this way. Absent a stay, a bankruptcy court "retains jurisdiction over all other matters that it must undertake 'to implement or enforce the judgment or order.'" *Sherman v. SEC (In re Sherman)*, 491 F.3d 948, 967 (9th Cir. 2007) (quoting *Neary v. Padilla (In re Padilla)*, 222 F.3d 1184, 1190 (9th Cir. 2000)). Even if (as the 2002 Noteholders maintain) the March 26 and May 4 orders stood as final adjudications of the Findings, the Bankruptcy Court would retain the jurisdiction to implement or enforce

those Findings while the orders are on appeal.  The appeal would prevent the Bankruptcy Court only from "alter[ing] or expand[ing] upon the judgment." *Id.*  "A pending appeal divests a bankruptcy court of jurisdiction to vacate or modify an order which is on appeal," *Marino v. Classic Auto Refinishing (In re Marino)*, 234 B.R. 767, 769 (9th Cir. BAP 1999). The Bankruptcy Court in this case has neither vacated nor modified the March 26 or the May 4 orders during the pendency of this appeal, nor has there been any danger of it doing so.

The 2002 Noteholders insist that a court may not "supplement" orders that are on appeal.  Their use of the word "supplement" comes from the case of *Hill & Sandford, LLP v. Mirzai (In re Mirzai)*, 236 B.R. 8, 10 (9th Cir. BAP 1999): "[A] trial court cannot enter an order that supplements the order on appeal because such supplementation would change the status quo."  In *Mirzai*, the bankruptcy court had issued an order awarding compensation to the debtor's law firm over the debtor's objection.  The bankruptcy appellate panel reversed the decision and remanded with instructions to deny compensation and require disgorgement of fees.  The law firm appealed the BAP's decision to the court of appeals.  While the law firm's appeal was pending, the bankruptcy court ordered disgorgement.  The BAP found that this constituted a "supplemental" order that changed the status quo: "The bankruptcy court in the instant appeal entered a judgment on remand from this panel, which judgment was the opposite of that which had been entered in the first instance and appealed.  This plainly changed the status quo." *Mirzai*, 236 B.R. at 10.

In the case of *In re Padilla*, 222 F.3d 1184 (9th Cir. 2000)—which is also cited in support of the 2002 Noteholders' argument—the bankruptcy court similarly altered the status quo while an appeal was pending.  The court had originally dismissed the bankruptcy petition, but after the BAP reversed that decision, the court granted a discharge and dismissed the case, even though the BAP's decision was itself still on appeal.  This was a change from the status quo—it changed the situation that prevailed under the court's original decision.

In contrast, the Bankruptcy Court in this case has done nothing to change the status quo.  The 2002 Noteholders assert that the court has issued orders based on findings similar to those that are on appeal.  Accepting this contention, those orders were (according to

1    the 2002 Noteholders themselves) consistent with the Bankruptcy Court's earlier Findings.

2    Unlike the orders in *Mirzai* and *Padilla*, they did not change the status quo. The Bankruptcy

3    Court in this case has not repudiated its earlier orders; it has not modified those orders; it has

4    not supplemented those orders. It has simply continued administering the bankruptcy cases

5    before it in a manner consistent with those orders, doing nothing to interfere with this Court's

6    appellate jurisdiction and giving no cause to withdraw the reference.

7

8        D.    **The Bankruptcy Court Can and Should Continue Administering the Bankruptcy Cases.**

9

10        The appeal by the 2002 Noteholders imposes no limit on the Bankruptcy

11   Court's ability to continue to fully administer the bankruptcy cases before it. For example, in

12   *United States v. Revie*, 834 F.2d 1198 (5th Cir. 1987), the Fifth Circuit was directly

13   confronted with an argument that a bankruptcy court's orders were ineffectual because a

14   notice of appeal had been filed. 834 F.2d at 1204. The Fifth Circuit clearly set forth the rule

15   that "a court maintains continuing jurisdiction to enforce a judgment" and that this

16   jurisdiction continues "[u]ntil the judgment has been properly stayed or superseded." *Id.* at

17   1205 (citations omitted). At issue in *Revie* was a turnover order; the Court explicitly

18   determined that notwithstanding the filing of a notice of appeal, "a bankruptcy court retains

19   jurisdiction to conduct proceedings intended to enforce a turnover order until such time as the

20   enforcement of the order has been stayed." *Id.* The Fifth Circuit also recognized that its

21   ruling was consistent with the general rule of *Griggs v. Provident Consumer Discount Co.*,

22   459 U.S. 56, 58 (1982), that once a notice of appeal is filed, the trial court loses "control over

23   those aspects of the case involved in the appeal." The fact that the trial court can no longer

24   change or modify its order does not limit its ability to enforce that order.

25        *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585 (6th Cir. 1987), addresses

26   another aspect of the finality and enforceability of an order absent a stay pending appeal. In

27   *Cincinnati Bronze*, the Sixth Circuit considered the effect of a notice of appeal on an order

28   directing compliance with a subpoena. Quoting the Ninth Circuit's decision in *Wedbush,*

1   *Noble, Cooke, Inc. v. SEC*, 714 F.2d 923, 924 (9th Cir., 1983), the court noted that "the mere

2   pendency of an appeal does not, in itself, disturb the finality of a judgment."  829 F.2d at 588.

3   *See Hovey v. McDonald*, 109 U.S. 150, 161 (1883).  The court affirmed the principle of law

4   that "[a]lthough a district court may not alter or enlarge the scope of its judgment pending

5   appeal, it does retain jurisdiction to enforce the judgment."   829 F.2d at 588 (citations

6   omitted).  *See also Farmhand, Inc. v. Anel Eng'g Indus.*, 693 F.2d 1140, 1146 (5th Cir. 1982).

7       The point of the preceding is two-fold.  First, not only is the March 26, 2007

8   Order fully effective, but everything else that is ongoing in the Bankruptcy Court is

9   unimpaired by the appeal taken by the 2002 Noteholders.   Second, the argument that

10  withdrawal of the reference would lead to some efficiency after the Bankruptcy Court has

11  spent tremendous time and effort dealing with the complex and intricate factual and legal

12  issues that are present in the SONICblue bankruptcy case, and that it should be jettisoned,

13  does not make practical or common sense.  To the contrary, it would result in exactly the

14  opposite of what *Security Farms* addresses: it would result in inefficient use of judicial

15  resources, delay and costs to the parties, lack of uniformity in bankruptcy administration, and

16  forum shopping.

17

18      **E.     The Contested Matters Are Core Proceedings.**

19      The 2002 Noteholders also suggest that withdrawal of the reference is

20  appropriate because the SonicBlue Claims adversary proceeding and related contested matters

21  are "at best boot-strapped into matters that may customarily be considered 'core'"—namely,

22  non-core state-law contract and fraud claims.  Appellants' Memorandum at 34.  That point is

23  debatable with respect to the adversary proceeding.[1]  With respect to the contested matters, it

24

25      [1]  The 2002 Noteholders themselves have acknowledged that "the claims for relief seeking equitable
    subordination and related equitable relief are core proceedings," though they contest the core status of other claims in

26  the adversary proceeding.  Defendants' Answer to Complaint for Equitable Subordination, to Determine Proper
    Classification, and for Declaratory Relief Regarding Senior Indebtedness Status, Bankr. N.D. Cal. (San Jose) Adv. P.

27  No. 07-05082, Docket No. 52 (filed Oct. 12, 2007), at ¶ 9.  The contract aspect of the adversary proceeding is non-
    core as it relates to a pre-bankruptcy contract and is not a counterclaim against the claims of the 2002 Noteholders.

28  However, on balance, given how far the adversary proceeding has progressed and the predominance of the equitable
    aspects in the proceeding, the core/non-core aspect is *de minimis* in its impact.  *See also McClelland v. Grubb & Ellis*

1    is flat-out wrong.  The contested matters arise from motions filed by SonicBlue Claims under

2    Bankruptcy Rule 9024 (incorporating Fed. R. Civ. P. 60) seeking to modify, vacate, and

3    otherwise obtain relief from the Bankruptcy Court's October 31, 2006 Order Granting

4    Debtors' Motion for Approval of Settlement of VIA and Intel Litigation [Bankruptcy Court

5    Docket No. 1981].  In that order, the Bankruptcy Court found and determined (quite properly)

6    that "this matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (C), (G)

7    and/or (O)," *id.* at 2.  Any proceeding revisiting the matter would itself necessarily be a core

8    proceeding.

9             That the contested matters are core proceedings is also clear from the grounds

10   on which the motions are based, including the post-petition non-disclosure by Debtors'

11   counsel of a material conflict of interest and an alleged breach of fiduciary duty by members

12   of the creditors' committee.  Such matters could only arise in the context of a bankruptcy

13   case—a common definition of a core proceeding.  *See Gruntz v. County of Los Angeles (In re*

14   *Gruntz)*, 202 F.3d 1074, 1081 (9th Cir. 2000) ("In general, a 'core proceeding' in bankruptcy

15   is one that 'invokes a substantive right provided by title 11 or … a proceeding that, by its

16   nature, could arise only in the context of a bankruptcy case.") (quoting *Wood v. Wood (In re*

17   *Wood)*, 825 F.2d 90, 97 (5th Cir. 1987)) (alteration in original).  The core/non-core status of

18   the contested matters provides no basis for withdrawing the reference of those matters—let

19   alone for withdrawing the reference of the bankruptcy cases as a whole.

20            Even in the context of the adversary proceeding, the breach of fiduciary duty

21   and fraud issues arise directly out of conduct by members of a committee of unsecured

22   creditors appointed in a bankruptcy case pursuant to federal bankruptcy law, whose fiduciary

23   obligations are therefore creatures of federal law.  Such a situation presents a core claim,

24   because it deals with and arises out of the administration of the bankruptcy estate and the

25   debtor-creditor relationship.  *See* 28 U.S.C. § 157(b)(2)(A) and (O).

26

27

28   *Consulting Services Co. (In re McClelland)*, 377 B.R. 446, 455 (Bankr. SDNY 2007) (a proceeding is not non-core merely because state-law issues are involved).

### III.  CONCLUSION

The Motion to Withdraw Reference is based on the premise that the Bankruptcy Court has lost its jurisdiction and exceeded its authority with respect to crucial aspects of these bankruptcy cases.  The Bankruptcy Court has done neither.  There is no cause to withdraw the reference.  To the contrary, the Bankruptcy Court should continue to administer all matters before it, including the litigation in the SonicBlue Claims adversary proceeding, which arises directly out of conduct that occurred in the bankruptcy cases.  The motion to withdraw the reference should be denied.

Dated: December 21, 2007                     Respectfully submitted,

                                             FRIEDMAN DUMAS & SPRINGWATER LLP

                                             By:   /s/ Cecily A. Dumas
                                                   Cecily A. Dumas

                                                   -and-

                                                   ALSTON & BIRD LLP
                                                   Grant T. Stein
                                                   1201 West Peachtree Street
                                                   Atlanta, GA 30309-3424
                                                   (404) 881-7000