1   ROBERT A. GREENFIELD (039648)
    FRANK A. MEROLA (136934)
2   K. JOHN SHAFFER (153729)
3   STUTMAN, TREISTER & GLATT PC
    1901 Avenue of the Stars, 12th Floor
4   Los Angeles, CA 90067
    Telephone:    (310) 228-5600
5   Facsimile:    (310) 228-5788

6   WILLIAM McGRANE (057767)
7   BERNARD S. GREENFIELD (066017)
    McGRANE GREENFIELD LLP
8   40 South Market Street, 7th Floor
    San Jose, CA 95113
9   Telephone:    (408) 995-5600
    Facsimile:    (408) 995-0308
10

11  Counsel for SonicBlue Claims LLC

12                  UNITED STATES DISTRICT COURT

13                 NORTHERN DISTRICT OF CALIFORNIA

14                       SAN JOSE DIVISION

15

| | |
|---|---|
| 16 PORTSIDE GROWTH & OPPORTUNITY FUND, et al., | Case Nos. C-07-02553 RMW and C-07-06025-RMW |
| 17  Appellants, | |
| 18  vs. | OPPOSITION TO MOTION TO WITHDRAW REFERENCE OF CHAPTER 11 CASES |
| 19 OFFICIAL COMMITTEE OF | |
| 20 UNSECURED CREDITORS, et al., | Date:  January 11, 2008 |
| 21  Appellees. | Time:  9:00 a.m. |
| 22 (Appeal from In re SONICblue, Incorporated, et al., Bankr. N.D. Cal. (San Jose), No. 03-51775 MM) | Place: Courtroom 6, 4th Floor Judge:  Hon. Ronald M. Whyte |
| 23 | |

24

25

26

27

1

# TABLE OF CONTENTS

2

I.     INTRODUCTION ................................................................................1

3

II.    STATEMENT OF FACTS ...............................................................3

4

III.   ARGUMENT .....................................................................................3

5

    A.    The Noteholders' Motion Is Untimely..........................................3

6

    B.    The Noteholders Have Failed To Meet Their Burden To Demonstrate
          Good Cause To Withdraw The Reference. ...............................5

7

        1.   Withdrawing The Reference Would Result In A Tremendous Waste Of Judicial
             Resources................................................................................ 6

8

9

        2.   Withdrawing The Reference Would Cause Delay And Increase Costs.............. 9

10

        3.   Granting The Noteholders' Motion Would Threaten The Uniformity Of
             Bankruptcy Administration And Encourage Forum Shopping. ...................... 10

11

12

        4.   There Are No Other Related Factors Supporting The Motion To Withdraw The
             Reference................................................................................. 11

13

14

CONCLUSION ...............................................................................................16

15

16

17

18

19

20

21

22

23

24

25

26

27

i

467535; 2

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Canter Family Trust  v. Canter (In re Canter)*, 299 F.3d 1150 (9th Cir. 2002) ....... 2, 6, 10

4

*CDX Liquidating Trust v. Venrock Associates*, 2005 U.S. Dist. LEXIS 16704 (N.D. Ill.
    August 10, 2005)................................................................................... 3, 5, 12

5

*Dionne v. Simmons (In re Simmons)*, 200 F.3d 738 (11th Cir. 2000).................................. 5

6

*Eastman Kodak Co. v. Atlanta Retail, Inc. (In re Atlanta Retail, Inc.)*, 456 F.3d 1277
    (11th Cir. 2006)........................................................................................ 12

7

*FTC v. First Alliance Mortgage Co.*, 282 B.R. 894 (C.D. Cal. 2001)............................ 1, 6

8

*Hawaiian Airlines, Inc. v. Mesa Air Group, Inc.*, 355 B.R. 214 (D. Hawaii 2006) ........... 6

9

*Hupp v. Educational Credit Management Corp.*, 2007 U.S. Dist. LEXIS 68199 (Bankr.
    S.D. Cal. 2007) ........................................................................................ 4

10

*In re 3DO Co.*, 2004 U.S. Dist. LEXIS 25367 (N.D. Cal. April 27, 2004)..................... 12

11

*In re Baldwin-United Corp.*, 57 B.R. 751 (S.D. Ohio 1985) .................................................. 3

12

*In re Bank of New England Corp.*, 360 B.R. 1 (D. Mass. 2007) ..................................... 14

13

*In re Childs*, 342 B.R. 823 (D. Ala. 2006).................................................................. 16

14

*In re Com 21*, 2005 U.S. Dist. LEXIS 34339 (N.D. Cal. 2005) ........................... 11, 13, 15

15

*In re Enron Creditors Recovery Corp.*, 370 B.R. 64 (Bankr. S.D.N.Y. 2007)................. 14

16

*HA 2003, Inc. v. Federal Ins. Co. (In re HA 2003, Inc.)*, 2004 U.S. Dist. LEXIS 4674
    (N.D. Ill. March 22, 2004)........................................................................ 5

17

*In re Padilla*, 222 F.3d 1184 (9th Cir. 2000) .................................................................. 8

18

*In re Payless Cashways, Inc.*, 215 B.R. 409 (Bankr. W.D. Mo. 1997) ............................ 14

19

*Levey v. McIntyre (In re J. O'Brien Leasing)*, 1997 U.S. Dist. LEXIS 10597 (N.D. Ill.
    July 17, 1997) ............................................................................................ 5

20

*Pacific Fisheries Corp. v. HIH Cas. & Gen. Ins., Ltd.*, 239 F.3d 1000 (9th Cir. 2001)... 15

21

*Resolution Trust Co. v. Best Prods. Co. (In re Best Prods. Co.)*, 68 F.3d 26 (2d Cir. 1995)
    .................................................................................................. 14

22

*Security Farms v. International Brotherhood of Teamsters*, 124 F.3d 999 (9th Cir. 1997)
    .............................................................................................. 2, 3, 5, 6

23

*Sigma Micro Corp. v. Healthcentral.com*, 504 F.3d 775 (9th Cir. 2007)................. 5, 7, 11

24

25

26

27

**Statutes**

28 U.S.C. § 157 ................................................................................ *passim*

Bankruptcy Code section 510(a) ....................................................... 7

Bankruptcy Code section 510(c) ....................................................... 7

Bankruptcy Code section 1102 .......................................................... 7

Bankruptcy Code section 1122(a) ................................................. 7, 13

Bankruptcy Code section 1123(a) ..................................................... 7

Bankruptcy Code section 1123(a)(1) ............................................... 13

Bankruptcy Rule 3013 ................................................................. 7, 13

Bankruptcy Rule 9015(a) .................................................................. 16

Bankruptcy Rule 9019 ...................................................................... 13

Fed.R.Civ.P. 38 ................................................................................. 2

OPPOSITION TO MOTION TO WITHDRAW REFERENCE OF CHAPTER 11 CASES

# I.    INTRODUCTION

SonicBlue Claims LLC ("SB Claims") opposes the Motion to Withdraw Reference of Chapter 11 Cases ("Motion") filed by appellants Portside Growth & Opportunity Fund, Smithfield Fiduciary LLC, and Citadel Equity Fund Ltd. ("Noteholders").

The Noteholders seek to withdraw the entire reference in the chapter 11 cases that have been pending since March, 2003. Their principal argument for this extraordinary relief is that, because the Bankruptcy Court noted the appearance of possible wrongdoing by the Noteholders in connection with appointing a chapter 11 trustee in March, 2007, the Bankruptcy Court has been divested of jurisdiction to do anything that might in any way relate to that possible wrongdoing, so long as their appeal is pending (whether in this Court or the Ninth Circuit). Both SB Claims and the chapter 11 trustee already have demonstrated that the Noteholders' jurisdictional arguments are without merit in their Oppositions to the Noteholders' motion to stay various proceedings in the Bankruptcy Court.[1] The Noteholders' request to withdraw the reference, however, further demonstrates just how absurd the Noteholders' jurisdictional arguments are, and it further shows why accepting their arguments would wreak havoc with the administration of this chapter 11 case.

The Noteholders have the burden to demonstrate why the reference should be withdrawn. *FTC v. First Alliance Mortgage Co.*, 282 B.R. 894, 902 (C.D. Cal. 2001). They have failed to meet that burden:

1.    **The Motion is untimely.**   The Noteholders' Motion was not "made as promptly as possible in light of the developments in the bankruptcy proceeding." *Security Farms v. International Brotherhood of Teamsters*, 124 F.3d 999, 1007 n.3 (9th

---

[1]    *See* SB Claims' Opposition To Cross-Motion For Limited Stay Of Proceedings filed November 30, 2007 [Docket No. 37] ("SB Claims' Stay Opposition"); Chapter 11 Trustee's Opposition To Cross-Motion For Limited Stay Of Proceedings filed December 10, 2007 [Docket No. 54].

1    Cir. 1997) (internal quotations omitted); *see also* 28 U.S.C. § 157(d) (motion to withdraw

2    the reference must be "timely").  The Noteholders waited more than ***six months*** after the

3    Bankruptcy Court denied their motion for reconsideration.  During that time, the

4    Noteholders appeared at numerous hearings, filed and litigated substantive motions, and

5    answered the adversary complaint filed against them.  Never once during this time did the

6    Noteholders assert that the Bankruptcy Court lacked jurisdiction, or that the reference

7    should be withdrawn.  The Noteholders did not start making these arguments until after

8    they failed to obtain the substantive relief they requested in the District Court.

9         **2.      The Motion is without merit**.  The Noteholders have the burden to show

10   that cause exists to withdraw the reference based upon factors including (1) the efficient

11   use of judicial resources, (2) delay and costs to the parties, (3) uniformity of bankruptcy

12   administration, and (4) the prevention of forum shopping.  *Canter Family Trust  v.*

13   *Canter (In re Canter)*, 299 F.3d 1150, 1154 (9th Cir. 2002).  None of these factors favor

14   the relief the Noteholders seek.  The Bankruptcy Court is far more familiar with the case,

15   having presided over it for nearly five years.  Most, if not all, of the remaining issues

16   involve core bankruptcy matters,[2] including plan confirmation, possible equitable

17   subordination of the Noteholders' claims, and the determinations as to the allowance and

18   priority of the Noteholders' claims.  There is no right to a jury trial with respect to these

19   matters and, even if there had been, the Noteholders waived that right by failing to

20   demand it within the time required by Fed.R.Civ.P. 38.  Finally, even the Noteholders

21   admit that their principal motivation is their displeasure with how the Bankruptcy Court

22   has resolved certain disputes since their May 4 motion for reconsideration was denied.

23   Long after the chapter 11 trustee was appointed, the Noteholders continued to willingly

24   litigate in the Bankruptcy Court, until they became displeased with the Bankruptcy

25   Court's rulings.  Now they seek refuge in this Court, making outlandish accusations that

26

27   _____

[2]    *See* 28 U.S.C. § 157(b).

2

1   the "Noteholders have had no opportunity to be heard" in the Bankruptcy Court.[3]  The

2   Motion is forum shopping, plain and simple.

3        Withdrawal of the reference "is the exception, not the rule." *CDX Liquidating*

4   *Trust v. Venrock Associates*, 2005 U.S. Dist. LEXIS 16704, *4 (N.D. Ill. August 10,

5   2005). "Withdrawal of the reference is not intended to be an escape hatch from

6   bankruptcy court to district court." *Id.* In the present case, the Noteholders' only

7   complaint is that they are displeased with certain of the Bankruptcy Court's rulings. The

8   Noteholders' desire to try their luck in this Court, however, cannot substitute for the

9   requirement that they present a showing of good cause to withdraw the reference.

10              **II.    STATEMENT OF FACTS**

11       In the interests of brevity, SB Claims incorporates the "Background and

12   Statement of Facts" contained in SB Claims' Stay Opposition [Docket No. 37] filed in

13   this Court on November 30, 2007.

14               **III.    ARGUMENT**

15   **A.    The Noteholders' Motion Is Untimely.**

16       Judicial Code section 157(d) requires that a motion to withdraw the reference be

17   "timely." The Ninth Circuit has made clear that "timely" means "made as promptly as

18   possible in light of the developments in the bankruptcy proceeding." *Security Farms*,

19   124 F.3d at 1007 n.3 (quoting *In re Baldwin-United Corp.*, 57 B.R. 751, 754 (S.D. Ohio

20   1985)).

21       The Noteholders have been anything but prompt. The Noteholders waited more

22   than *six months* after the Bankruptcy Court denied their motion for reconsideration to

23   either seek to stay the Bankruptcy Court proceedings or to withdraw the reference.

24   Moreover, during that more than six-month period (from May 4 to November 20), the

25   ────────────────────

26   [3]   *See* Memorandum Of Points And Authorities In Support Of Noteholders' Opposition
         To Motion To Dismiss Appeal And Cross-Motions For Limited Stay Of Proceedings
27       And/Or To Withdraw Reference Of Chapter 11 Cases [Docket No. 22] at 3:21-24
         ("Noteholders' Memorandum").

1   Noteholders actively participated in the Bankruptcy Court proceedings, including

2   (1) moving to dismiss SB Claims' Adversary Proceeding against them,[4] (2) answering the

3   complaint in the Adversary Proceeding when their motion to dismiss was denied,[5] and

4   (3) participating in no less than six hearings in the Bankruptcy Court between May and

5   November, 2007.[6]  SB Claims' Stay Opposition further details the Noteholders' active

6   participation in the Bankruptcy Court litigation during this time.  *See* pp. 30-32.  Never

7   once during these many months did the Noteholders even so much as hint that the

8   Bankruptcy Court lacked jurisdiction, or that the proceedings otherwise should be

9   transferred to this Court.

10          The Noteholders would have been perfectly happy with a Bankruptcy Court

11  judgment on the merits in the Adversary Proceeding, provided that it was in their favor.

12  It was only when the Bankruptcy Court ruled against them that the Noteholders decided

13  to seek refuge in this Court.  *See Hupp v. Educational Credit Management Corp.*, 2007

14  U.S. Dist. LEXIS 68199, *9 (Bankr. S.D. Cal. 2007) (motion to withdraw denied as

15  untimely because "[t]he record in the Bankruptcy Court makes clear that [the moving

16  party] chose to litigate this case extensively in the Bankruptcy Court by conducting

17  discovery and filing numerous motions . . . ").  It is pure gamesmanship for the

18  Noteholders to have sought substantive relief in the Bankruptcy Court, and, only when

19  the Bankruptcy Court ruled against them, to now claim that the Bankruptcy Court should

20  have not been deciding substantive issues in the first place.

21

22  ───────────────
    [4]   Defendants' Motion To Dismiss [Bankr. Adversary Proceeding No. 07-05082,
23        Docket No. 12].

24  [5]   Defendants' Answer To Complaint For Equitable Subordination, To Determine
          Proper Classification, And For Declaratory Relief Regarding Senior Indebtedness
25        Status at ¶ 9 [Bankr. Adversary Proceeding No. 07-05082, Docket No. 52].

26  [6]   *See* Transcripts of Hearings held June 14, 2007 (Bk. Docket No. 2375), September 5,
          2007 (Bk. Docket No. 2501), September 20, 2007 (Bk. Docket No. 2505), September
27        27, 2007 (Bk. Docket No. 2511), October 15, 2007 (Bk. Docket No. 2530), and
          November 1, 2007 (Bk. Docket No. 2557).

1  **B.     The Noteholders Have Failed To Meet Their Burden To Demonstrate**
2          **Good Cause To Withdraw The Reference.**

3          In order to prevail on their permissive motion to withdraw the reference under 28

4  U.S.C. §157(d), the Noteholders must present good cause. *Security Farms*, 124 F.3d at

5  1008 ("The district court's authority for *permissive* withdrawal is governed by the first

6  sentence of 28 U.S.C. §157(d): 'The district court *may* withdraw . . . any case or

7  proceeding on its motions or on timely motion of a party, *for good cause shown*.' 28

8  U.S.C. §157(d)." (emphasis added)).  The requirement of "good cause" is "not an empty

9  requirement." *Dionne v. Simmons (In re Simmons)*, 200 F.3d 738, 741 (11th Cir. 2000).

10  Withdrawal of the reference "is the exception, not the rule," *CDX Liquidating Trust*, 2005

11  U.S. Dist. LEXIS 16704, at *4, and it "is not intended to be an escape hatch from

12  bankruptcy court to district court." *Id.*  Moreover, the Ninth Circuit has made clear that,

13  as a general matter, the Bankruptcy Courts are best suited to resolve bankruptcy-related

14  matters. "As has been explained before, this system promotes judicial economy and

15  efficiency by making use of the bankruptcy court's unique knowledge of Title 11 and

16  familiarity with the actions before them." *Sigma Micro Corp. v. Healthcentral.com*, 504

17  F.3d 775, 787-88 (9th Cir. 2007).

18          The express language and legislative history of § 157(d) make clear that
            Congress intended to have bankruptcy proceedings adjudicated in the
19          bankruptcy court unless withdrawal was essential to preserve a higher
            interest.  Accordingly, courts have been cautious in applying § 157(d) so
20          that the exception does not swallow the rule.  Withdrawal, even
            discretionary withdrawal, is permitted only in a limited number of
21          circumstances.

22  *HA 2003, Inc. v. Federal Ins. Co. (In re HA 2003, Inc.)*, 2004 U.S. Dist. LEXIS

23  4674, at *5 (N.D. Ill. March 22, 2004) (quoting *Levey v. McIntyre (In re J.*

24  *O'Brien Leasing)*, 1997 U.S. Dist. LEXIS 10597, at *2 (N.D. Ill. July 17, 1997)).

25          The Ninth Circuit "consider[s] the following factors in determining whether good

26  cause exists under §157(d):  'The efficient use of judicial resources, delay and costs to the

27  parties, prevention of forum shopping, and other related factors.'"  *In re Canter*, 299 F.3d

5

467535v.2

1    at 1154 (9th Cir. 2002) (quoting *Security Farms*, 124 F.3d at 1008).  The burden of proof

2    rests on the moving party – here the Noteholders – to demonstrate good cause.  *See*

3    *Hawaiian Airlines, Inc. v. Mesa Air Group, Inc.*, 355 B.R. 214, 218 (D. Hawaii 2006);

4    *First Alliance Mortg. Co.*, 282 B.R. at 902.  In the present case, ***none*** of these factors

5    weigh at all in favor or withdrawing the reference.

6        1.  **Withdrawing The Reference Would Result In A Tremendous Waste Of**
7           **Judicial Resources.**

8          The Noteholders' request for relief is sweeping.  The Noteholders move "for an

9    order withdrawing the reference of the chapter 11 cases of SONICblue Incorporated,

10   Diamond Multimedia Systems, Inc., Replay TV, Inc. and Sensory Science Corporation,

11   pending before the United States Bankruptcy Court for the Northern District of

12   California."  Notice of Motion and Motion to Withdraw the Reference of Chapter 11

13   Cases ("Notice of Motion") [Docket No. 47] at 1:6-12.  It is self-evident that such a result

14   could only lead to "an inefficient allocation of judicial resources, especially because the

15   bankruptcy court [is] more familiar with the facts and issues of the case."  *In re Canter*,

16   299 F.3d at 1154.  The SONICblue bankruptcy cases have been pending for more than

17   four years.  The Bankruptcy Court's docket reflects over 2,600 docket entries.  The

18   Bankruptcy Court is intimately familiar with the factual and legal issues raised and the

19   involved history of these proceedings.  Moreover, the Bankruptcy Court is well suited to

20   resolve the remaining issues in this case, including confirming a plan of reorganization

21   and resolving issues such as the allowance and priority of the Noteholders' claims.

22         "Rather than enhancing efficiency, [withdrawing the reference could only cause]

23   an inefficiency, engendering a series of nonproductive motions and hearings."  *Canter*,

24   299 F.3d at 1154.  Such action would negatively impact the bankruptcy administration

25   and needlessly disrupt the processing of the case and "effectively 'derail[] the

26   [bankruptcy] process provided by statute.  [citation]"  *Id*.  The efficient administration of

27   this case and the wise use of judicial resources compel that the Noteholders' Motion be

6

1  denied.  Withdrawing the reference "would effectively subvert this system." *See In re*

2  *HealthCentral.com*, 504 F.3d at 788.

3      Moreover, even if the Noteholders' Motion to withdraw the reference were

4  limited to the Adversary Proceeding that SB Claims is pursuing against the Noteholders,

5  such relief would result in serious judicial inefficiencies.  The Adversary Proceeding

6  seeks (i) equitable subordination of the Noteholders' claims, pursuant to Bankruptcy

7  Code section 510(c),[7] (ii) classification of the Noteholders' claims for purposes of

8  proposing and confirming a plan of reorganization, pursuant to Bankruptcy Code sections

9  1122(a) and 1123(a), and Bankruptcy Rule 3013,[8] and (iii) enforcement of subordination

10  provisions in the Indenture governing the Noteholders' claims, pursuant to Bankruptcy

11  Code section 510(a), which issue involves, in material part, whether a purported,

12  ***postpetition*** waiver of the subordination provisions may be invalidated based upon the

13  conduct of the Noteholders ***during the bankruptcy case***, including with respect to their

14  participation on, and control of, the official committee of unsecured creditors appointed

15  pursuant to Bankruptcy Code section 1102.  Thus, much of the litigation has, and will

16  continue to, center upon the actions of parties during the bankruptcy cases (including

17  Bankruptcy Court-approved professionals), and actions taken in the Bankruptcy Court

18  itself.

19      Moreover, discovery in the Adversary Proceeding is being conducted in tandem

20  with all other discovery in the case, including the chapter 11 trustee's ongoing

21  investigation.  Although the Noteholders seem to suggest that the discovery process can

22  be left in the Bankruptcy Court – totally divorced from the underlying substantive

23

24

---

25  [7]  References to the "Bankruptcy Code" are to title 11 of the United States Code.

26  [8]  Federal Rule of Bankruptcy Procedure 3013 provides that "For purposes of the plan
and its acceptance, the court may, on motion after hearing on notice as the court may
27  direct, determine classes of creditors and equity security holders pursuant to §§ 1122,
1222(b)(1), and 1322(b)(1) of the Code."

1    proceedings that would be withdrawn to this Court – such a rubric would cause

2    duplication and a risk of inconsistent rulings.

3         The Noteholders rely on a single, easily distinguishable case to argue that the

4    continuing jurisdiction of the Bankruptcy Court is "at best unclear" and therefore judicial

5    efficiency can somehow be advanced by withdrawing the reference.  Noteholders'

6    Memorandum at pp. 32:7 – 33:13.  The case they rely upon, *In re Padilla*, 222 F.3d 1184,

7    1187 (9th Cir. 2000), involved the appeal of an unquestionably overarching issue – the

8    Bankruptcy Appellate Panel's ("BAP's") reversal of a motion to dismiss a chapter 7 case

9    for bad faith.  After the BAP's reversal, and while an appeal was pending in the Ninth

10   Circuit, the Bankruptcy Court discharged the debtor's debts and closed the case.  *Id.*  The

11   Ninth Circuit noted that "[t]he rule divesting lower courts of jurisdiction of aspects of a

12   case pending appeal 'is judge-made doctrine designed to avoid confusion and waste of

13   time that might flow from putting the same issues before two courts at the same time.'

14   [citations]  The rule is not absolute."  *Id.* at 1190.

15        Unlike *In re Padilla*, the issues involved in the Noteholders' appeal will not

16   drastically change the status quo or impact substantial rights directly involved in the

17   appeal.  To the contrary, the Noteholders appeal only statements made during the course

18   of the Bankruptcy Court's decisions as to the possible "appearance" of wrongdoing by

19   the Noteholders.  As SB Claims has already noted, the Bankruptcy Court was careful to

20   qualify the statements at issue, using limiting language such as "may have," "appear,"

21   and "raise questions."  SB Claims' Stay Opposition [Docket No. 37] at p. 34:7-18 & n.

22   45.  Moreover, the Bankruptcy Court repeatedly has reassured the Noteholders that they

23   will have the opportunity to conduct discovery and litigate those issues as the

24   proceedings in the Bankruptcy Court head toward a final resolution.  The Bankruptcy

25   Court's observations were, at most, interlocutory, and the Noteholders' appeal of them

26   does not divest the Bankruptcy Court of jurisdiction to proceed over the issues and

27   proceedings pending before it.

8

OPPOSITION TO MOTION TO WITHDRAW REFERENCE OF CHAPTER 11 CASES

1    The Noteholders also seem to confuse the concepts of "*facts*" and "*findings*."

2    The Noteholders contend that, because the Bankruptcy Court ordered the reconstitution

3    of the Creditors' Committee based upon some of the same *facts* that were presented

4    during the chapter 11 trustee proceedings, the Bankruptcy Court must have felt bound by

5    its *findings* made in connection with the trustee proceedings.  The Bankruptcy Court,

6    however, did no such thing.  The Bankruptcy Court did not say – or even suggest – that

7    she or any of the parties were bound by her decision appointing the chapter 11 trustee.

8    Rather, she relied upon certain facts that were in the record – facts which no party in this

9    case (including the Noteholders) have ever reasonably disputed.[9]  Moreover, the

10    Noteholders failed to file either a written objection to the Committee reconstitution

11    motion, nor submitted any evidence in opposition to it.  Rather, the Noteholders showed

12    up in Court the day of the hearing and, midway through it, requested  for the first time a

13    further evidentiary hearing (without providing any indication of what new evidence they

14    wanted to produce).  At the time, the Committee reconstitution motion had been pending

15    for more than three months.  The Noteholders did not appeal the Bankruptcy Court's

16    order reconstituting the Committee (which was entered more than two months ago),[10] and

17    yet they are trying to collaterally attack it through their Motion to withdraw the reference.

18    Allowing a party to get a second bite at the apple is not an appropriate basis for

19    withdrawing the reference.

20    **2.    Withdrawing The Reference Would Cause Delay And Increase Costs.**

21    The Noteholders do not, and cannot, offer any viable showing that withdrawing

22    the reference here – in whole or in part -- would reduce delay and save costs.

23    _____

24    [9]   *See* Transcript of September 20, 2007 Hearing [Bankruptcy Court Docket No. 2502]
25    at 48-50.

26    [10]  *See* Order Granting Motion For Order (1) Directing United States Trustee To Change
      The Membership Of Official Committee Of Creditors Holding Unsecured Claims, Or
27    (2) Directing The Appointment Of A New Trade Creditor Committee [Bankruptcy
      Court Docket No. 2510] entered October 4, 2007.

9

1    Withdrawing the reference would have precisely the opposite impact.  It would

2    immediately slow down the process and increase the costs to the parties.  The Bankruptcy

3    Court has already in effect made such a finding when it ruled that "it's also apparent that

4    the imposition of a stay [pending this appeal] is likely to further delay the prompt

5    resolution of the adversary proceeding and the case as whole."  December 7, 2007

6    Transcript at 39:12-14.[11]  The proof is truly in the pudding.  The Noteholders alone filed

7    a thirty-six (36) page brief (the Opposition Memorandum) and supported it with a

8    Request for Judicial Notice of sixty-seven (67) exhibits consisting of pleadings, briefs,

9    and transcripts from the bankruptcy proceedings.  [Docket No. 23.]  While SB Claims

10   acknowledges that the 67 exhibits would be important for this Court to read and absorb

11   (among countless other filings and rulings) if the motion to withdraw the reference were

12   granted, SB Claims contends that asking this Court to undertake such an effort, with the

13   parties to provide the required guidance, is both unnecessary and would unavoidably lead

14   to undue delay and exponentially increased costs.

15   　　　　3.　　　　**Granting The Noteholders' Motion Would Threaten The Uniformity**
16   　　　　　　　　　**Of Bankruptcy Administration And Encourage Forum Shopping.**

17   　　　　　The Noteholders' obvious motivation here is to seek a different forum hoping for

18   better results.  To withdraw the reference would improperly encourage forum shopping

19   by essentially reversing the Bankruptcy Court with respect to many of its determinations

20   that have allowed this case to move forward again.  *See In re Canter*, 299 F.3d at 1154.

21   In fact, the relief the Noteholders seek by moving to withdraw the references of the

22   SONICblue chapter 11 cases is much broader than any possible relief they could get even

23   if the appeal were to survive the motions to dismiss and somehow be granted.  If the

24   appeal were to be granted, at most, several statements of "appearances" in the Court's

25

26   _____

27   [11]  A copy of the December 7, 2007 Hearing Transcript is attached as Exhibit B to the
　　　　Declaration Of Lewis Kruger In Support Of Senior Noteholders' Omnibus Reply To
　　　　Responses To Cross-Motion For Limited Stay [Docket No. 60] as Exhibit B.

10

1    decisions regarding the appointment of the chapter 11 trustee and the disqualification of

2    the Debtor's former counsel would be stricken. In contrast, transferring administration of

3    the SonicBlue chapter 11 cases to this Court would invite endless opportunities to re-visit

4    the many steps the parties and the Bankruptcy Court have taken along the way of trying

5    to put these cases back on track. Such an outcome "would run counter to our bankruptcy

6    system." *In re Healthcentral.com*, 504 F.3d at 787.

7        Stated simply, the Noteholders cannot be permitted to expand their right to

8    appeal, under proper circumstances, orders of the Bankruptcy Court by boot-strapping to

9    the appeal the motion to withdraw the reference. The Noteholders are not entitled to a

10    free pass allowing them to leap past the Bankruptcy Court and have all determinations

11    going forward made by this Court, whether in the bankruptcy cases as a whole or even if

12    limited to the SB Claims Adversary Proceeding.

13        As in *In re Com 21*, 2005 U.S. Dist. LEXIS 34339, at *32 (N.D. Cal. 2005), and

14    as in countless other cases that are handled through the bankruptcy system, "the first four

15    enumerated factors favor resolution of [the claims] in bankruptcy court." Unlike *In re*

16    *Com 21*, as discussed next, there is no right to a jury trial that can be invoked by the

17    Noteholders or any other related factor that can support a withdrawal of the reference.

18        **4.    There Are No Other Related Factors Supporting The Motion To**
           **Withdraw The Reference.**
19

20        The Noteholders, though requesting the withdrawal of the reference for all the

21    SonicBlue chapter 11 cases, make several undeveloped arguments suggesting (1) that the

22    issues in the SB Claims Adversary Proceeding can somehow be considered "non-core"

23    issues and (2) such issues predominate over the remaining "core" issues in the

24    bankruptcy cases as a whole. Noteholders' Memorandum at pgs. 34:1 – 35:9. Even

25    considered alone, however, SB Claims' Adversary Proceeding does turn on "core"

26    bankruptcy issues.

27

11

1    First, the Adversary Proceeding involves an action for equitable subordination

2    based upon the Noteholders' *postpetition* conduct and which seeks to determine the

3    relative priority of claims between competing creditors. The Noteholders *admitted* in

4    their Answer in SB Claims' Adversary Proceeding that "the claims for relief seeking

5    equitable subordination and related equitable relief are core proceedings."[12] Even if the

6    Noteholders had not made this admission (which they conveniently fail to disclose to this

7    Court), the law is clear that these are core matters at the heart of the bankruptcy process.

8    A "claim of equitable subordination is a core claim because it arises under the

9    Bankruptcy Code. *See* 11 U.S.C. §510(c)(1)." *CDX Liquidating Trust v. Venrock*

10    *Associates*, 2005 U.S. Dist. LEXIS 16704, *6 (N.D. Ill. August 10, 2005); *see also*

11    *Eastman Kodak Co. v. Atlanta Retail, Inc. (In re Atlanta Retail, Inc.)*, 456 F.3d 1277,

12    1287-88 (11th Cir. 2006). It is of no moment if an equitable subordination claim may be

13    based upon fraud-type causes of action; it is still core. "Thus, [even] non-core fraud,

14    breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims are

15    intertwined with the core claim of equitable subordination. If an equitable reordering

16    cannot be accomplished without resolution of what would otherwise be a legal dispute,

17    then that dispute becomes an essential element of the broader equitable controversy.

18    Because those claims are enmeshed with the equitable subordination claim, they should

19    be treated as core claims." *CDX, supra*, at *8 (citations and quotations omitted); *see also*

20    *In re 3DO Co.*, 2004 U.S. Dist. LEXIS 25367, at *21-24 (N.D. Cal. April 27, 2004)

21    (holding that traditional contract and tort claims become equitable in nature when

22    included in an action for equitable subordination). As this Court has noted, "actions

23    based upon postpetition conduct connected with a bankruptcy proceeding are more likely

24

25

_____

26

27    [12] *See* Defendants' Answer To Complaint For Equitable Subordination, To Determine Proper Classification, And For Declaratory Relief Regarding Senior Indebtedness Status at ¶ 9 [Bankr. Adversary Proceeding No. 07-05082, Docket No. 52].

12

1    to be found core than prepetition actions." *In re Com 21*, 2005 U.S. Dist. LEXIS 34339

2    at *17.

3         Second, even with respect to SB Claims' claims for contractual subordination

4    (which the Noteholders do not admit are "core"), they are inexorably intertwined with the

5    bankruptcy process.  Among other things, determination of the relative priority of the

6    Noteholders' claims will be essential for determining which class the Noteholders' claims

7    must be placed in a plan of reorganization or liquidation.  Bankruptcy Code section

8    1123(a)(1) requires that a plan "designate, subject to section 1122 of this title, classes of

9    claims . . . ."  Bankruptcy Code section 1122(a), in turn, requires that claims be placed

10   "in a particular class only if such claim . . . is substantially similar to the other claims . . .

11   of such class."  If, as SB Claims asserts, the Noteholders' claims are subordinated to

12   those of SB Claims, then the claims will not be "substantially similar."  Bankruptcy Rule

13   3013 expressly provides that "[f]or purposes of the plan and its acceptance, the court

14   may, on motion after hearing on notice as the court may direct, determine classes of

15   creditors and equity security holders pursuant to §§ 1122, 1222(b)(1), and 1322(b)(1) of

16   the Code."  It is based upon these bankruptcy provisions – Bankruptcy Code sections

17   1122(a) and 1123(a)(1), and Bankruptcy Rule 3013 – that SB Claims seeks a

18   determination as to whether the Noteholders' claims are junior to their own.

19        Moreover, as with SB Claims' claims of equitable subordination, its claims of

20   contractual subordination depend, in large part, upon postpetition actions that the

21   Noteholders took in the bankruptcy cases.  The purported waiver of SB Claims' senior

22   status (through its predecessor in interest VIA) occurred as part of a settlement agreement

23   approved by the Bankruptcy Court pursuant to Bankruptcy Rule 9019.  SB Claims asserts

24   that the purported waiver was invalid because, among other things, the Noteholders and

25   counsel for the chapter 11 bankruptcy estate failed to disclose various material facts,

26   including the fact that counsel had a material, undisclosed conflict of interest vis-à-vis the

27   Noteholders at the time the motion to approve the settlement was submitted to the

13

1    Bankruptcy Court.  SB Claims further asserts that the Noteholders were able to use their

2    fiduciary position as controlling members of the official Creditors Committee to obtain

3    the purported waiver of their senior indebtedness obligations.  These allegations, if

4    proven, directly involve the administration of the chapter 11 case.

5         In any event, the majority view is that, even when subordination issues do not

6    involve postpetition events, these are "core" matters.  *See, e.g., In re Enron Creditors*

7    *Recovery Corp.*, 370 B.R. 64, 70-71 (Bankr. S.D.N.Y. 2007) (citing, among others,

8    *Resolution Trust Co. v. Best Prods. Co. (In re Best Prods. Co.)*, 68 F.3d 26, 31-32 (2d

9    Cir. 1995)); *see also In re Bank of New England Corp.*, 360 B.R. 1, 7-8 (D. Mass. 2007)

10   (denying motion to withdraw the reference for contractual subordination dispute,

11   rejecting argument that dispute was non-core).  As the Second Circuit recognized in *Best*

12   *Products*:

13        Fixing the order of priority of creditor claims against a debtor is an
          integral and historic bankruptcy function, and without this power the
14        bankruptcy court would be rendered powerless to rehabilitate a debtor.
          While enforcing subordination agreements is not listed as a core
15        proceeding, the power to prioritize distributions has long been recognized
          as an essential element of bankruptcy law.  As the bankruptcy court
16        correctly noted, it is hard to imagine an issue that is more at the heart of
          the bankruptcy process than is this.  Enforcement of a contractual
17        subordination agreement clearly involves the adjustment of the debtor-
          creditor relationship, determinations of the priority of liens, and
18        administration of the estate and so falls within the ambit of 28 U.S.C.
          § 157(b)(2)(A), (K), and (O).
19

20   *In re Best Prods.*, 68 F.3d at 31-32 (internal quotations and citations omitted).  This is

21   particularly true when, as here, the determination of the relative priority of the

22   Noteholders' claims is necessary to the plan confirmation process.  *See In re Payless*

23   *Cashways, Inc.*, 215 B.R. 409, 411 (Bankr. W.D. Mo. 1997) (holding that "the

24   classification of claims, as part of the process of determining whether a Plan of

25   Reorganization is confirmable, is a core proceeding"); *see also* 28 U.S.C. § 157(b)(2)(A),

26   (B), (K), and (O) ("core" proceedings including those that concern "the administration of

27   the estate," the allowance and estimation of claims "for the purposes of confirming a plan

14

1   under chapter 11," determining the "priority of liens," and "other proceedings affecting

2   the liquidation of assets of the estate").  When SB Claims' Adversary Proceeding is

3   viewed as a whole, it clearly is one that "includes administrative matters [during the

4   course of the main cases] that arise only in bankruptcy cases and would have no existence

5   outside of the bankruptcy." *In re Com 21*, 2005 U.S. Dist. LEXIS 34339 at *15.

6        In any event, even if certain of the issues raised in the Adversary Proceeding

7   could be considered noncore, that does not in any way compel withdrawal of the

8   reference.  The very structure of Judicial Code section 157, 28 U.S.C. § 157, makes clear

9   that the Bankruptcy Courts generally shall preside over both core and noncore matters.

10  Were it to be the rule that all, or even the majority, of noncore matters should be

11  withdrawn to the District Courts, the District Courts would be flooded with bankruptcy-

12  related matters.  However, regardless of whether such maters are core or noncore, it is

13  clear that Congress intended them to be resolved in most instances in the Bankruptcy

14  Courts, by the same judges who are overseeing the overall bankruptcy case to which the

15  matters relate.

16       Finally, the Noteholders' quixotic suggestion that, while they are not entitled to a

17  jury trial on the equitable subordination or declaratory relief claims, the action involves

18  the "sorts of factual determinations customarily reserved for juries" (Noteholders'

19  Memorandum at p. 35:13 – 16) must be disregarded.  Not only is there no right to a jury

20  trial on the claims, but since the Noteholders answered the SB Claims Adversary

21  Complaint without having made a demand for a jury trial,[13] they have forever waived any

22  right to a jury trial.  *Pacific Fisheries Corp. v. HIH Cas. & Gen. Ins., Ltd.*, 239 F.3d

23  1000, 1002 n. 2 (9th Cir. 2001) (Rule 38(b) provides in relevant part, "Any party may

24  demand a trial by jury of any issue triable of right by a jury by (1) serving upon the other

25

26

27   [13] *See* Defendants' Answer to Complaint for Equitable Subordination, etc. filed on
     October 12, 2007, in Adversary Proceeding No. 07-05082 [Docket No. 52],
     which does not include any Jury Demand.

1  parties a demand . . . not later than 10 days after the service of the last pleading directed

2  to such issue . . . ."[14] Because the answer filed was the "last pleading directed to such

3  issue, [the] jury demand was due within 10 days"); *In re Childs*, 342 B.R. 823, 830 (D.

4  Ala. 2006) ("This court agrees that for a party to be entitled to a jury trial in the district

5  court, the party must not only move to withdraw the reference to the bankruptcy court in

6  addition to making a proper jury demand, but that the motion to withdraw must be timely

7  made. To hold otherwise would be unduly disruptive to orderly procedure and would

8  allow a party to gamble on the outcome of proceedings in the bankruptcy court and, when

9  disappointed, try at the last minute to start all over again before another court.").

10      Accordingly, there is no basis to withdraw the reference, either as to the entire

11  chapter 11 cases, or as to the disputes involving the Noteholders. The Bankruptcy Court

12  should be permitted to complete its administration of the cases, as even the Noteholders

13  themselves supported for more than six months after the Bankruptcy Court denied their

14  motion for reconsideration.

15

16                          **CONCLUSION**

17      The Noteholders' Motion to Withdraw the Reference should be denied.

18  DATED:  December 21, 2007              STUTMAN, TREISTER & GLATT P.C.
                                           McGRANE GREENFIELD LLP
19

20                                         By _____
21                                         K. John Shaffer

22

23

24

25

26  _____

27  [14]  Federal Rule of Civil Procedure applies in bankruptcy cases, as set forth in
          Federal Rule of Bankruptcy Procedure 9015(a).

16