**E-FILED on** 1/20/2008

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re: SONICBLUE INC., et al. <br><br> PORTSIDE GROWTH & OPPORTUNITY FUND et al., <br><br> Appellants, <br> v. <br><br> OFFICIAL COMMITTEE OF UNSECURED CREDITORS et al., <br><br> Appellees. | Nos. C-07-02553 RMW <br><br> **[Re Dockets Nos. 14, 24, 46, 47]** <br><br> C-07-06025 RMW <br><br> **[Re Docket No. 1]** <br><br> ORDER GRANTING MOTION TO DISMISS SENIOR NOTEHOLDERS' APPEAL; DENYING LIMITED STAY; AND DENYING MOTION TO WITHDRAW REFERENCE |

    Portside Growth & Opportunity Fund, Smithfield Fiduciary LLC, and Citadel Equity Fund Ltd. (collectively, the "Senior Noteholders") have appealed from orders dated March 26, 2007 and May 4, 2007 rendered in the consolidated bankruptcy proceedings in *In re SONICblue, Inc.*. The Senior Noteholders do not appeal the actual action ordered in the bankruptcy court's decisions, rather, their appeal requests this court reform the bankruptcy court's orders to remove allegedly disparaging references to themselves and their attorneys unnecessary to the court's decisions.

Dennis J. Connolly, the Chapter 11 Trustee, ("Trustee") moves to dismiss the appeal. The Senior Noteholders oppose the motion, and make cross-motions to stay proceedings before the bankruptcy court related to the disputed statements and to withdraw the reference to the bankruptcy court.[1] The cross-motion brought out a flurry of oppositions from the Trustee, the Reconstituted Official Committee of Unsecured Creditors, and SonicBlue Claims LLC ("SB Claims"), to which the Senior Noteholders filed an omnibus reply. The Trustee has also filed an opposition to the motion to withdraw reference. The court has read the papers and considered the arguments of counsel presented at a hearing on January 11, 2008. For the reasons set forth below, the court grants the motion to dismiss the Senior Noteholders' appeal, denies the cross-motion for stay as moot, and denies the motion to withdraw the reference.

## I. BACKGROUND

The two pending cases arise from the bankruptcy court's decision to appoint a Chapter 11 Trustee and to disqualify Pillsbury Winthrop Shaw Pittman ("Pillsbury") as debtor's counsel.[2] While ostensibly focused on asking the court to remove allegedly unnecessary statements from two bankruptcy court orders, these appeals are about when and how the priority of various claims against the SONICblue estate will be decided.

### A.  The Bankruptcy Proceedings Culminating in the Disqualification Order

The Senior Noteholders own convertible debentures issued shortly before the SONICblue entities descended into bankruptcy. *In re SONICblue, Inc.*, 2007 WL 926871, at *2 (Bankr. N.D. Cal. Mar. 26, 2007). The indenture agreement covering these notes states that the notes are subordinate to, among other things, up to $15,000,000 in claims owed to VIA Technologies, Inc.

---

[1] The Senior Noteholders also filed a related case moving to withdraw the reference (07-6025). That motion incorporates the briefing and record from the 07-2553 appeal and adds no additional briefing. Accordingly, the court's order disposes of the motions in both cases.

[2] The bankruptcy court's orders at issue in these cases are available online. *In re Sonicblue, Inc.*, 2007 WL 926871 (Bankr. N.D. Cal. Mar. 26, 2007) (appointing trustee and disqualifying debtor's counsel); *In re SONICblue, Inc.*, 2007 WL 1321746 (Bankr. N.D. Cal. May 4, 2007) (denying "clarification" or reconsideration of the prior order). This court previously recounted some of the history of the SONICblue bankruptcy proceedings in denying leave to appeal the Trustee's selection of counsel. *In re SONICblue, Inc.*, 2007 WL 3342662, at *1-*3 (N.D. Cal. Nov. 5, 2007).

ORDER GRANTING MOTION TO DISMISS SENIOR NOTEHOLDERS' APPEAL; DENYING LIMITED STAY; AND DENYING MOTION TO WITHDRAW REFERENCE —Nos. C-07-02553 RMW;  C-07-06025 RMW
TSF                                                                                     2

("VIA"), a joint venture partner of SONICblue. *Id.* This is significant because the joint venture agreement between SONICblue and VIA entitled VIA, as well as the joint venture entity ("S3"), to liquidated damages of up to $70,000,000 each in the event that they could no longer use SONICblue's cross-license to certain Intel patents. *Id.* On behalf of SONICblue, Pillsbury issued an opinion letter to the Senior Noteholders regarding the enforceability of the debentures, which may have contained errors exposing Pillsbury to liability. *Id.* at *2-*3.

Shortly after issuing the debentures, SONICblue and its related entities filed for bankruptcy and retained Pillsbury as their bankruptcy counsel. *Id.* at *3. The United States Trustee assembled a committee of unsecured creditors that included the Senior Noteholders, but as participation waned over the course of the proceedings, the Senior Noteholders became the majority voice on the committee. *Id.* at *4.

Meanwhile, both VIA and S3 filed claims for $70 million against the estate. *Id.* at *5. SONICblue began an adversary proceeding against each of them, as well as litigation with Intel regarding rights under the patent license. *Id.* The parties began settlement negotiations, with SONICblue being advised by the creditors committee (of which the Senior Noteholders appear to have constituted an effective majority) and the Senior Noteholders' counsel. *Id.* at *5-*6. The settlement resulted in an allowed claim for $12,500,000, which would *not* be treated as senior indebtedness under the indenture agreement of the Senior Noteholders' debentures. *Id.* at *7.

While working on settling the issues relating to the patent license, SONICblue and Pillsbury, were also prosecuting objections to various claims. *Id.* After analyzing the Senior Noteholders' claims, Pillsbury contacted the Senior Noteholders to suggest their claims might be reduced for a variety of reasons. *Id.* at *7. The Senior Noteholders countered, pointing out that Pillsbury had issued an opinion letter that the Senior Noteholders had relied on, and that they would seek indemnification from Pillsbury for any shortfall in their recovery. *Id.* at *7-*8. This alleged conflict was not brought to the attention of the bankruptcy court at the time, and later resulted in Pillsbury's disqualification from the proceedings.

In its opinion on appointment and disqualification, the bankruptcy court laid out this history of the case. Two particular passages draw the Senior Noteholders' ire. First, in describing the joint venture (S3) between SONICblue and VIA, the court stated:

> The rights to use Intel's graphics patents were so important that the joint venture agreement included a liquidated damages clause at article 5.6 entitling the joint venture and VIA each to damages of up to $70 million if the joint venture were ever enjoined from using the Intel cross-license.

*Id.* at *1. Second, in describing the conduct of the Senior Noteholders and their counsel, the court stated:

> Because the bondholders appear to have used their position on the committee to insert themselves into the settlement negotiations without revealing a hidden agenda, they may have breached their fiduciary duty to the unsecured creditor body. Whether their motive was simply to save litigation costs for the estate by avoiding future litigation over the priority of VIA's claim, or, instead, to assure a larger return on their individual investments is not known. In fact, as Bennett noted, he had never personally appeared in court until March 19, 2007. During the four years of this case, he has operated in the shadows and, until January 23, 2007, it was not generally known to this court or the creditor body that the three senior bondholders were serving on the committee.

*Id.* at *13. The bankruptcy court's opinion concludes by holding that Pillsbury must be disqualified from representing SONICblue and that a Chapter 11 Trustee must be appointed. *Id.* at *15. The bankruptcy court's opinion does not make any findings or holdings regarding the viability of any claims, nor does it sanction or reprimand the Senior Noteholders or their counsel.

**B.    The Clarification Motion and Order**

Following the bankruptcy court's order, the Senior Noteholders moved to have the two passages reproduced above clarified or reconsidered. The bankruptcy court denied the motion, explaining:

> Let there be no doubt that the words and findings of my Memorandum Decision of March 26, 2007 were carefully selected to respond to the issues then before the court, which were whether to appoint a chapter 11 trustee pursuant to § 1104, whether to convert the case to chapter 7, and whether to disqualify counsel for the debtor. The findings made in support or denial of those motions must be understood in context.

*In re SONICblue, Inc.*, 2007 WL 1321746, at *1 (Bankr. N.D. Cal. May 4, 2007).

**C.    The Adversary Proceeding Between Senior Noteholders and SonicBlue Claims**

On April 27, 2007, SB Claims purchased the $12.5 million settlement claim ("the VIA claim"). On May 30, 2007, SB Claims began an adversary proceeding, 07-05082 MM, against the

Senior Noteholders, alleging claims for equitable subordination of the Senior Noteholders' claims to the VIA claim, classification of the VIA claim as Senior Indebtedness under the Senior Noteholders' notes' indentures, and declaratory relief that the VIA Claim is Senior Indebtedness under the indentures. The parties are currently conducting discovery in this case. This case also falls within the ambit of the stay requested by the Senior Noteholders.

### D. The Substance of the Appeal and Reference Motion

The Senior Noteholders filed the 07-2553 appeal on May 14, 2007. The specific issues on appeal are whether the bankruptcy court erred "in determining that VIA has a claim . . . against debtor SonicBlue" and "in describing the role of the Senior Noteholders and their counsel . . . in settlement negotiations and the bankruptcy case." *See* Docket No. 3, 07-02553 RMW, at 7 (N.D. Cal. May 24, 2007) (statement of issues on appeal). To be clear, the Senior Noteholders do not challenge the holdings of the bankruptcy court's orders, which ordered appointment of a Chapter 11 Trustee, disqualified Pillsbury, and denied "clarification" of the order. The Senior Noteholders only challenge certain statements made in the opinions. The Senior Noteholders argue that "the underlying bankruptcy estate (and innocent creditors) will continue to bleed from a thousand cuts as a result of the various contested matters that have been filed based primarily on the Findings." Opp'n at 18. Presumably the relief requested would be for this court to order the bankruptcy court to amend its opinion to remove any unsupported findings. Perhaps more significantly, the Senior Noteholders also request the court to stay any matters before the bankruptcy court involving the findings, or to withdraw the reference to the bankruptcy court of any matters involving the findings.

On November 29, 2007, the Senior Noteholders filed a separate case, 07-06025, to move to withdraw the reference to the bankruptcy court of all of the Chapter 11 cases because the bankruptcy court's jurisdiction has become "unclear." The Senior Noteholders did not file new briefing in support of this motion, but instead incorporated their briefing opposing the motion to dismiss the 07-2553 appeal.

## II. ANALYSIS

### A. The Motion to Dismiss

ORDER GRANTING MOTION TO DISMISS SENIOR NOTEHOLDERS' APPEAL; DENYING LIMITED STAY; AND DENYING MOTION TO WITHDRAW REFERENCE —Nos. C-07-02553 RMW;  C-07-06025 RMW
TSF                                                                                5

The parties do not dispute that the two orders subject to the appeal are appealable final orders. The Trustee instead argues that the appeal must be dismissed because the Senior Noteholders may not appeal "findings" or statements. The Senior Noteholders argue that this court possesses jurisdiction over their appeal for either of two reasons: one, that a party may appeal to reform a favorable judgment under certain conditions, and two, that a party may appeal findings which could collaterally estop them in later proceedings. As discussed below, neither argument prevails.

### 1.  Reformation of Favorable Judgments

As a general rule, courts "review judgments, not statements in opinions." *Environmental Protection Information Center, Inc. v. Pacific Lumber Co.*, 257 F.3d 1071, 1075 (9th Cir. 2001) (hereinafter "*EPIC*"). This rule is not rooted in Article III's limits on standing, but instead in historic practice and the statutes governing appellate jurisdiction. *Id.* Accordingly, courts have established exceptions to the general rule as prudence dictates. *Id.*

The Supreme Court has permitted appellate review to reform judgments that contain "immaterial" holdings. *Id.* (citing *Elec. Fittings Corp. v. Thomas & Betts Co.*, 307 U.S. 241 (1939)). The appeal in *Electrical Fittings* involved a judgment that decreed a patent claim valid, but also held that the defendant did not infringe the claim. *Elec. Fittings*, 307 U.S. at 242. The Court held that the portion of the judgment adjudging the claim valid was immaterial to the outcome, and that the defendant could appeal to the circuit court to have that portion of the decree eliminated. *Id.* To be clear, the appellate court would not have jurisdiction to hear the merits of the validity of the claim, the Court only held that the decree could be reformed to excise the unnecessary holding. *Id.*[3]

The Ninth Circuit has strictly limited this route of appellate review to reformations of *judgments*. *EPIC*, 257 F.3d at 1075. For example, in *EPIC*, the district court had issued findings of fact and conclusions of law on an environmental matter. *Id.* at 1074. Meanwhile, an agency decision issued that mooted the matter, so the district court dissolved its preliminary injunction but

---

[3] The facts of *Electrical Fittings* appear arcane because the case involved a defense of invalidity, and not a counterclaim for declaratory judgment of invalidity, as is now common. *See Cardinal Chem. Co v. Morton Int'l, Inc.*, 508 U.S. 83 (1993).

did not vacate its findings and conclusions. *Id.* The court then issued a judgment that read "it is ordered and adjudged that the motion for summary judgment and/or motion to dismiss as moot filed by defendants [Pacific Lumber] is granted and this action brought by plaintiffs [EPIC] is dismissed in its entirety." *Id.* at 1075. The defendants, Pacific Lumber, appealed to vacate the findings. *Id.* at 1074. The Ninth Circuit held that it lacked appellate jurisdiction pursuant to *Electrical Fittings* because the judgment contained no language to reform. *Id.*[4]

The parties appear to concede that the bankruptcy court's orders are "final" for the purposes of appellate review, and hence they are judgments. *See* Fed. R. Bankr. P. 9001(7). A judgment must be set forth in a separate document. Fed. R. Civ. P. 58(a). The rules of bankruptcy procedure incorporate Rule 58 and require a separate document for "every judgment entered in an adversary proceeding or contested matter." Fed. R. Bankr. P. 9021.[5] The Senior Noteholders argue that the lack of a separate document means that the entirety of the bankruptcy court's opinions are part of the "judgment." The Senior Noteholders misconstrue the separate document requirement. In this case, the lack of a separate document does not convert the bankruptcy court's memorandum orders into "judgments" that the Senior Noteholders can appeal to have reformed. *In re Schimmels*, 85 F.3d 416, 421-22 (9th Cir. 1996). On the contrary, even in the absence of a separate judgment, a memorandum order is not a "judgment." *Id.* at 421 (citing cases); *In re Rehbein*, 60 B.R. 436, 439 (9th Cir. B.A.P. 1986) ("A separate document means one separate from an opinion or memorandum of the court. It is not permissible to label an opinion an order."); *see also In re Garland*, 295 B.R. 347 (9th Cir. B.A.P. 2003) (discussing "the poorly understood requirements for preparing an effective form of judgment in federal civil practice"). Because the bankruptcy court memoranda about which the Senior Noteholders complain are not "judgments," the Senior Noteholders may not appeal to have them reformed pursuant to *Electrical Fittings*.

---

[4] In the end, the *EPIC* court did vacate the district court's ruling because it was issued despite the case being moot. 257 F.3d at 1076-77. The district court's order "flout[ed] the dictates of Article III" and rendered Pacific Lumber an aggrieved party, according it standing to appeal. *Id.* at 1077.

[5] It is not clear that the motions to disqualify and appoint a new trustee were "contested matters" requiring a judgment. However, Bankruptcy Rule 9001(7) defines "judgment" as "an appealable order." As the parties appear to concede that the two orders at issue are appealable, they are also judgments under the bankruptcy law.

To further clarify, the Senior Noteholders' appeal is wholly distinct from the appeal of a decree in *Electrical Fittings* and more akin to the run-of-the-mill appeal filed by attorneys that feel a court's opinion has "besmirched" them. *E.g.*, *Weissman v. Quail Lodge, Inc.*, 179 F.3d 1194, 1199-1200 (9th Cir. 1999); *In re Williams*, 156 F.3d 86, 90 (1st Cir. 1998); *In re Duro Indus., Inc.*, 293 B.R. 271, 276-77 (1st Cir. B.A.P. 2003). The Ninth Circuit has squarely rejected the appealability of "harsh judicial words" unless they are clearly identified in an order as sanctions. *Weissman*, 179 F.2d at 1200. The Senior Noteholders' attempt to avoid this body of law by characterizing the bankruptcy court's words as unnecessary findings in a "judgment" fails. In this case, the bankruptcy court did not sanction the Senior Noteholders or their attorneys; far from it, the bankruptcy court's discussion is quite tentative. The bankruptcy court made clear that it was taking the action it was because of an appearance of wrongdoing and the need to avoid the appearance of impropriety. It made no findings of actual impropriety and, in fact, anticipated investigation and litigation to determine whether there was any actual wrongdoing. Absent formally labeling the bankruptcy court's findings as sanctions (thus converting the statements into holdings), a lower court's statements (as opposed to its holdings) cannot be reviewed.

### 2. Possibility of Collateral Estoppel

Another route for a prevailing party to obtain appellate review is if an adverse collateral ruling or finding could have collateral estoppel effect in future litigation. *EPIC*, 257 F.3d at 1076. The Ninth Circuit has held that finding an order appealable because it could have collateral estoppel effect can seem circular because if the order is not appealable, it cannot have collateral estoppel effect. *Id.*

The Senior Noteholders argue that the bankruptcy court's denial of the motion for reconsideration enhanced the chance that a later court would hold that the findings were essential to the bankruptcy court's orders. While the order on the motion for reconsideration suggests that the findings may have been essential to the bankruptcy court's order, a finding must be more than "essential to the judgment" to support according collateral estoppel effect to the finding. *See generally Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979); Rest. 2d Judgments §§ 27, 28 (1982). For a variety of reasons, the "findings" the Senior Noteholders attack could never be

accorded collateral estoppel effect. For example, as the Senior Noteholders point out, they "were neither the moving party nor opposed the relief requested with respect to the First Opinion." Opp'n at 19, fn. 16. Furthermore, the order on the motion for reconsideration specifically limits the findings to the "context" of the motions and that "[t]here will be time later to focus attention on the conduct of the attorneys and fiduciaries involved." *In re SONICblue, Inc.*, 2007 WL 1321746, at *1-*2 (Bankr. N.D. Cal. May 4, 2007). That the bankruptcy court explicitly reserved deciding on the Senior Noteholders' and counsels' conduct show that the facts regarding their conduct were not "actually litigated." *See* Rest. 2d Judgments § 27.

The Senior Noteholders also argue that their fears of collateral estoppel are not "unfounded" because the bankruptcy court has relied on its prior findings in recent rulings. The bankruptcy court's reference to its prior concerns about the Senior Noteholders' conduct is not an application of collateral estoppel. The bankruptcy court has not precluded the Senior Noteholders from disproving the inference of possible misconduct that has led the bankruptcy court to order the debtor's counsel disqualified, appoint a trustee, and reconsitutute the creditors committee. That the bankruptcy court has noted the possible misconduct in issuing these orders is a finding of misconduct nor a basis for preclusion.

For all of these reasons, the Senior Noteholders fear of collateral estoppel is unfounded. Because the findings cannot be accorded collateral estoppel effect and because there is no judgment to reform, there is no basis for finding the Senior Noteholders aggrieved and according them prudential standing to appeal. Accordingly, the court grants the Trustee's motion to dismiss.

**B.    The Cross-Motion for Limited Stay**

The Senior Noteholders' opposition to the Trustee's motion to dismiss included a cross-motion for a "limited" stay of the bankruptcy proceedings touching on the challenged "findings." The Senior Noteholders proposed limiting the stay to the adversary proceeding with SB Claims and any motion to modify the VIA settlement. As the court has ordered the appeal dismissed, there is no need for a stay. Even were the motion to dismiss the appeal not granted, the court doubts that an appeal requesting that various background statements be removed from an opinion could justify

derailing what has already been a long and contentious bankruptcy proceeding. Accordingly, the cross-motion for a limited stay is denied.

### C. The Request to Withdraw Reference

The Senior Noteholders' opposition also includes a request to withdraw the reference of the bankruptcy proceedings from the bankruptcy court.

A district court may withdraw any part of a bankruptcy proceeding "for cause shown." 28 U.S.C. § 157(d). While some issues mandate withdrawal, the Senior Noteholders do not argue that these issues require withdrawal under 157(d); instead, they seek permissive withdrawal of the reference. The Ninth Circuit has held that "[i]n determining whether cause [for permissive withdrawal] exists, a district court should consider the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Security Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1008 (9th Cir. 1997).

The Senior Noteholders argue that a withdrawal is necessary to ensure efficient administration because the appeal of the bankruptcy court's findings has made the bankruptcy court's jurisdiction uncertain as to "the central issue in the administration of these Bankruptcy Cases." As discussed above, the court has dismissed the Senior Noteholders' appeal for want of standing. Accordingly, there are no doubts about the bankruptcy court's jurisdiction (and indeed, never would have been but for the Senior Noteholders' meritless appeal) and hence there is no need to withdraw the reference to ensure efficient administration.

The court also finds that these matters are more efficiently decided in the bankruptcy court before Judge Morgan. Judge Morgan is already intimately familiar with the proceedings, the ongoing discovery and the disputed issues. There being no cause to withdraw the reference, and substantial reasons for preserving the bankruptcy court's jurisdiction over these cases, the court denies the request to withdraw the reference.

//

//

//

### III.  ORDER

For the foregoing reasons, the court grants the motion to dismiss the Senior Noteholders' appeal, denies the cross-motion for stay as moot, and denies the motion to withdraw the reference. The clerk may close the files.

DATED: 1/20/2008

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

**United States District Court**
For the Northern District of California

ORDER GRANTING MOTION TO DISMISS SENIOR NOTEHOLDERS' APPEAL; DENYING LIMITED STAY; AND DENYING MOTION TO WITHDRAW REFERENCE —Nos. C-07-02553 RMW;  C-07-06025 RMW
TSF    11

**United States District Court**
For the Northern District of California

1 **Notice of this document has been electronically sent to:**

2 **Counsel for Appellants:**

3 Alan Z. Yudlowsky  AYudkowsky@stroock.com
   Lewis Kruger  lkruger@stroock.com
4 Thomas B. Watson  WatsonT@HBDlawyers.com

5 **Counsel for Appellee, Dennis J. Connolly:**

6 Robert Edward Clark  rclark@friedumspring.com
   Cecily A. Dumas  cdumas@friedumspring.com
7
   **Counsel for Debtor, SONICblue, Inc.:**
8
   Austin K. Barron  abarron@omm.com
9 Richard Alan Rogan  rrogan@jmbm.com

10 **Counsel for Official Committee of Unsecured Creditors:**

11 Todd Morris Arnold  tma@lnbrb.com
   Michael Adam Sweet  msweet@ml-sf.com
12
   **Counsel for SonicBlue Claims, LLC**
13
   William McGrane  wmcgrane@mcgranegreenfield.com
14 Bernard S. Greenfield  bgreenfield@mcgranegreenfield.com

15 **Notice of this document has been mailed to:**

16 **Counsel for Office of the U.S. Trustee:**

17 Nannette Dumas
   Office of the U.S. Trustee
18 280 South First Street
   #268
19 San Jose, CA 95113

20 Shannon L. Mounger-Lum
   Office of the U.S. Trustee
21 280 South First Street
   Suite 268
22 San Jose, CA 95113-0002

23 **U.S. Bankruptcy Court**

24 Marilyn Morgan
   U.S. Bankruptcy Court
25 280 South First Street
   Room 3035
26 San Jose, CA 95113

27 **USBC Manager-San Jose**

28 USBC Manager-San Jose

ORDER GRANTING MOTION TO DISMISS SENIOR NOTEHOLDERS' APPEAL; DENYING LIMITED STAY; AND DENYING
MOTION TO WITHDRAW REFERENCE —Nos. C-07-02553 RMW;  C-07-06025 RMW
TSF                                    12

1  US Bankruptcy Court
   280 South First Street
2  Room 3035
   San Jose, CA 95113
3
   Counsel are responsible for distributing copies of this document to co-counsel that have not
4  registered for e-filing under the court's CM/ECF program.

5

6  **Dated:**     1/20/08                                              TSF
                                                          **Chambers of Judge Whyte**
7